**LaMONICA HERBST & MANISCALCO, LLP**
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: (516) 826-6500
Joseph S. Maniscalco, Esq.
Adam P. Wofse, Esq.
Holly R. Holecek, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

| | |
|---|---|
| BH SUTTON MEZZ LLC, | Chapter 11 |
| a Delaware Limited Liability Company, | Case No.: 16-10455 (SHL) |
| SUTTON 58 OWNER LLC, | (Jointly Administered) |
| a Delaware Limited Liability Company, and | |
| SUTTON 58 OWNER LLC, | |
| a New York Limited Liability Company, | |

Debtors.
-------------------------------------------------------------------x


# DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION

**LAMONICA HERBST & MANISCALCO, LLP**
Attorneys for the Chapter 11 Debtors

By: Joseph S. Maniscalco, Esq.
Adam P. Wofse, Esq.
Holly R. Holecek, Esq.


3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500

## TABLE OF CONTENTS

Page

ARTICLE I    DEFINITIONS ................................................................................................2

ARTICLE II    CLASSIFICATION OF CLAIMS AND INTERESTS .....................................13

ARTICLE III    TREATMENT OF CLASSES ...........................................................................15

ARTICLE IV    IDENTIFICATION OF IMPAIRED CLAIMS UNDER THE PLAN ...............21

ARTICLE V    CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN
AND THE EFFECTIVE DATE ..........................................................................21

ARTICLE VI    EXECUTION AND IMPLEMENTATION OF PLAN .....................................21

ARTICLE VII    AMENDMENTS AND MODIFICATIONS ......................................................25

ARTICLE VIII    EXECUTORY CONTRACTS AND UNEXPIRED LEASES...........................25

ARTICLE IX    EFFECT OF CONFIRMATION; VESTING OF PROPERTY;
INJUNCTION .....................................................................................................27

ARTICLE X    CLAIMS MATTERS .........................................................................................30

ARTICLE XI    DUTIES AND RIGHTS OF DISTRIBUTING AGENT ...................................31

ARTICLE XII    UNCLAIMED DISTRIBUTIONS .....................................................................32

ARTICLE XIII    RETENTION OF JURISDICTION ....................................................................33

ARTICLE XIV    EVENTS OF DEFAULT ...................................................................................34

ARTICLE XV    GENERAL PROVISIONS ................................................................................35

**LaMONICA HERBST & MANISCALCO, LLP**
3305 Jerusalem Avenue
Wantagh, New York 11793
Telephone: (516) 826-6500
Joseph S. Maniscalco, Esq.
Adam P. Wofse, Esq.
Holly R. Holecek, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

| | |
|---|---|
| BH SUTTON MEZZ LLC, | Chapter 11 |
| a Delaware Limited Liability Company, | Case No.: 16-10455 (SHL) |
| SUTTON 58 OWNER LLC, | (Jointly Administered) |
| a Delaware Limited Liability Company, and | |
| SUTTON 58 OWNER LLC, | |
| a New York Limited Liability Company, | |

Debtors.
-------------------------------------------------------------------x

## <u>DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION</u>

The following joint plan of reorganization dated August 9, 2016 (the "**Plan**") is hereby proposed and filed by debtors and debtors-in-possession BH Sutton Mezz LLC ("**Sutton Mezz**"), a Delaware Limited Liability Company, Sutton 58 Owner LLC, a Delaware Limited Liability Company ("**Sutton Owner DE**") and Sutton 58 Owner LLC, a New York Limited Liability Company ("**Sutton Owner NY**", and together with Sutton Mezz and Sutton Owner DE, the "**Debtors**"), by their attorneys, LaMonica Herbst & Maniscalco, LLP ("**LH&M**"),[1] pursuant to Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

---

[1]    By Orders dated May 16, 2016 and May 12, 2016, LH&M was retained as bankruptcy counsel to Sutton Mezz and Sutton Owner DE, respectively. By application dated July 28, 2106, Sutton Owner NY seeks to employ LH&M to represent it as its bankruptcy counsel (the "**LH&M NY Retention Application**"). As of the date of this Plan, the LH&M NY Retention Application is pending before the Court.

# ARTICLE I

## DEFINITIONS

For purposes of this Plan, the following terms have the meanings set forth below with the meanings to be equally applicable to the singular and plural forms of the terms defined, unless a different meaning is clearly defined herein. Terms used in this Plan that are defined in the Bankruptcy Code will have the meaning assigned them.

1.01    "Acquisition Loan" means that loan allegedly made by Sutton Lender on or around June 19, 2015 in the principal amount of $125,850,000.00 to Sutton Owner DE and purportedly secured by a mortgage against the Real Property and the Development Rights.

1.02    "Acquisition Loan and Building Loan Claims" means the Disputed Claims of Sutton Lender on account of the Acquisition Loan and the Building Loan as against Sutton Owner DE and Sutton Owner NY.

1.03    "Additional Development Rights" means those additional zoning and development rights as disclosed on Schedule G to the respective petitions of Sutton Owner NY and Sutton Owner DE.

1.04    "Administrative Expense" means any cost or expense of administration of the Debtors' Chapter 11 cases entitled to priority in payment in accordance with the provisions of Sections 503(b) and 507(a)(1) of the Bankruptcy Code, or as may be allowed by Final Order, including, without limitation: (a) the actual and necessary costs and expenses of preserving the Debtors' estates (other than such Claims or portions thereof which, by their express terms, are not due or payable by the Effective Date); (b) all allowances of compensation for legal or other services or reimbursement of costs and expenses under applicable sections of the Bankruptcy Code or otherwise allowed by the Bankruptcy Court; and (c) any indebtedness or obligations incurred or assumed by the Debtors during the pendency of these Chapter 11 proceedings. To the

2

extent permitted under Section 506(b) of the Bankruptcy Code, an Administrative Expense includes unpaid interest and any reasonable unpaid fees, costs or charges provided for under the agreements under which the Administrative Expense arose.

1.05    "Adversary Proceeding" means that adversary proceeding commenced by the Debtors in the Bankruptcy Court under adversary proceeding number 16-01187-SHL to (i) recover damages from the Defendants for, among other things, breach of contract, breach of implied duty of good faith and fair dealing, contractual unconscionability, fraud, deceit, estoppel, equitable subordination, objection to claim, criminal usury, unjust enrichment and lender liability and (ii) obtain declaratory relief determining the nature, extent and validity of Defendants' purported liens against the Real Property and the Development Rights.

1.06    "Allowed Administrative Expense" means any Administrative Expense, or portion thereof, which has been allowed by Final Order of the Bankruptcy Court.

1.07    "Allowed Claim" means a Claim, other than an Administrative Expense that is: (a) listed in the Debtors' schedules, including any amendments thereto, filed in these Chapter 11 cases as of the Effective Date and not listed as "disputed," "contingent," "unliquidated," or "unknown" and as to which no objection to the allowance thereof is filed; (b) set forth in a proof of Claim timely and properly filed in these Chapter 11 cases on or before the deadline fixed by the Bankruptcy Court, or by applicable rule or statute, as the last day for filing such proof of Claim, or late filed with leave of the Bankruptcy Court after notice and opportunity for hearing having been given and as to which no objection to the allowance thereof is filed; (c) determined to be allowed by Final Order of the Bankruptcy Court, or (d) an amount that the Debtors are made aware of that they may be obligated to pay. To the extent permitted under Section 506(b) of the Bankruptcy Code, an Allowed Claim may include unpaid interest on such Claim and any

reasonable unpaid fees, costs or charges provided for under the agreements under which such Claim arose.

1.08    "Allowed Member Interest" means a Member Interest that is: (a) listed in the Debtors' schedules, including any attachment or amendments thereto, filed in these Chapter 11 cases as of the Effective Date and not listed as "disputed," "contingent," "unliquidated," or "unknown" and as to which no objection to the allowance thereof is filed; (b) set forth in a Proof of Interest timely and properly filed in these Chapter 11 cases on or before the deadline fixed by the Bankruptcy Court, or by applicable rule or statute, as the last day for filing such Proof of Interest, or late filed with leave of the Bankruptcy Court after notice and opportunity for hearing having been given and as to which no objection to the allowance thereof is filed; or (c) determined to be allowed by a Final Order of the Bankruptcy Court.

1.09    "Allowed Priority Claim" means all or that portion of an Allowed Claim entitled to priority under Sections 507(a)(3), (4) and (6) of the Bankruptcy Code. Except as may be allowed by the Bankruptcy Court in the case of an Allowed Priority Tax Claim under Section 507(a)(8) of the Bankruptcy Code, any interest on such claim which accrued after the appropriate Petition Date, shall be part of the Allowed Priority Claim.

1.10    "Allowed Priority Tax Claim" means any Allowed Claim, or portion thereof, except an Administrative Expense, that is entitled to priority in payment over Allowed Unsecured Claims pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.11    "Allowed Secured Claim" means that portion of an Allowed Claim that is secured by a valid and perfected lien on property of the Debtors, to the extent of the value of the interest of the holder of such Allowed Secured Claim in the property of the Debtors as determined by the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code, together with such interest

(including interest accrued on or after the Applicable Petition Date) fees, costs, and charges as may be allowed by the Bankruptcy Court under Section 506(b) of the Bankruptcy Code.

1.12    "Allowed Unsecured Claim" means any Allowed Claim, or portion thereof, which is not an Allowed Administrative Expense Claim, an Allowed Secured Claim, an Allowed Priority Claim or and Allowed Priority Tax Claim.

1.13    "Apartments" means those cooperative apartments identified as 1R, 2D and 2N located at 504 Merrick Road, Lynbrook, New York 11563.

1.14    "Applicable Petition Date" means the Sutton Mezz Petition Date, the Sutton Owner DE Petition Date or the Sutton Owner NY Petition Date, as the appropriate case may be applicable.

1.15    "Appraisal" means that certain appraisal dated February 16, 2016, and prepared by Cushman & Wakefield, which provides valuations for the Real Property.

1.16    "Assets" means the Real Property, the Development Rights, the Additional Development Rights and the Sutton Mezz Membership Interests.

1.17    "Bankruptcy Code" means Title 11 of the United States Code, and any amendments thereof applicable to the Debtors' Chapter 11 cases and in effect on the Applicable Petition Date.

1.18    "Bankruptcy Court" means the United States District Court for the Southern District of New York and, to the extent of any reference made by such Court pursuant to 28 U.S.C. § 157, United States Bankruptcy Court for the Southern District of New York or any other Court having lawful jurisdiction over these Chapter 11 cases.

1.19    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, and any amendments or supplements thereto including any local bankruptcy rules adopted by the Bankruptcy Court.

1.20    "Building Loan" means that loan allegedly made by Sutton Lender on or around June 19, 2015 in the principal amount of $1.4 Million to Sutton Owner DE and purportedly secured by a mortgage against the Real Property and the Development Rights.

1.21    "Chapter 11" means Chapter 11 of the Bankruptcy Code.

1.22    "Claim" means a claim, as defined in Section 101(5) of the Bankruptcy Code, whether or not asserted against the Debtors.

1.23    "Class" means any class into which Claims are classified pursuant to Article II of the Plan on the Effective Date.

1.24    "Complaint" means that complaint filed by the Debtors against the Defendants in the Adversary Proceeding.

1.25    "Confirmation Account" means the bank account to be established by the Debtors to hold all funds necessary to make distributions under the Plan on the Effective Date.

1.26    "Confirmation Date" means the date on which the Confirmation Order is signed by the Bankruptcy Court Judge.

1.27    "Confirmation Order" means the Order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.28    "Creditors' Committee" means the Court appointed official committee of unsecured creditors for the Debtors' Chapter 11 cases.

1.29    "Development Rights" means the development air rights and construction license agreements from (a) 426 East 58th Street, New York, New York (Lot 36) totaling 13,185 square

6

feet; (b) 422 East 58th Street, New York, New York (Lot 37) totaling 21,750 square feet; (c) 434

and 436 East 58th Street, New York, New York (Lots 31 and 33) totaling 33,442 square feet; (d)

440 East 58th Street, New York, New York (Lot 30) totaling 13,556 square feet; (e) 442 East

58th Street, New York, New York (Lot 129) totaling 16,267 square feet; (f) 444-446 East 58th

Street, New York, New York (Lot 29) totaling 20,583 square feet; (g) 461 East 57th Street, New

York, New York (Lot 22) totaling 23,428 square feet; (h) 455 East 57th Street, New York, New

York (Lot 19) for a bridging agreement to allow for the acquisition of unused development air

rights from 461 East 57th Street, New York, New York; and (i) inclusionary development air

rights from Fisher Brothers for 57,000 square feet of air rights.

1.30    "DIP Facility" means prospective debtor-in-possession financing made by the

DIP Lender to the Debtors which will be secured by, among other things, a first priority

mortgage encumbering: (i) the Real Property; (ii) the Development Rights; (iii) the Sutton Mezz

Membership Interests; and (iv) the Apartments, with such liens to be granted a senior secured

super-priority, priming lien which will have priority over all other administrative expenses of the

kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code in the Debtors' bankruptcy

proceedings subject only to a carve-out for fees and expenses of the Professionals and the United

Stated Trustee.

1.31    "DIP Lender" means a lender selected by the Debtors to grant the DIP Facility.

1.32    "Debtors" means Sutton Mezz, Sutton Owner DE and Sutton Owner NY,

collectively.

1.33    "Defendants" means Sutton Lender, Gamma Lending, Gamma Lending II,

Gamma Funding, Gamma Funding Management, Gamma LLC and Gamma Real Estate, which

are defendants named in the Complaint filed by the Debtors in the Adversary Proceeding.

1.34    "<u>Distribution</u>" means the payments made by the Distributing Agent under the Plan to holders of Allowed Claims and Allowed Administrative Expenses.

1.35    "<u>Disputed Claim</u>" means a Claim (other than an Allowed Claim) proof of which has been filed with the Bankruptcy Court and an objection to the allowance of which has been filed with the Bankruptcy Court and an objection to the allowance of which has been or is interposed prior to the final date of the filing of such objection set forth in the Confirmation Order of such other applicable period of limitations fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, and as to which such dispute or objection has not been determined by a Final Order; and pursuant to a judgment or order of a court of competent jurisdiction which judgment or order has been stayed or as to which judgment or order (or any revisions, modifications or amendments thereof) the Debtors' time to appeal or seek review or rehearing has not expired by reason of statue of otherwise; provided, however that (i) with respect to any Disputed Claim for which a proof of claim has not been filed with the Bankruptcy Court in the amount of a sum certain and which has not been fixed by the Bankruptcy Court at a sum certain, the amount of such disputed claim, shall, for purposes of the Plan, be fixed or liquidated by the Bankruptcy Court prior to the Confirmation Date under Section 502 of the Bankruptcy Code or may be fixed by an agreement in writing between the attorneys for the Debtors and the holder thereof, or such disputed claims may be fixed or determined by a final order entered after the Confirmation Date, and (ii) the amount of any Disputed Claim may be such lesser amount of the amount in which such Disputed Claim was filed as the Bankruptcy Court may order or the Debtors and the holder of such a Disputed claim may agree upon in writing: and, provided further, that in no event shall any holder of a Disputed Claim if and when such Disputed Claim becomes an Allowed Claim, be entitled to receive from the Debtors an

amount greater than the amount of such Disputed Claim so estimated or determined by the Bankruptcy Court or agreed upon by the Debtors and the holder thereof.

1.36    "Distributing Agent" means Sutton Owner NY which will make the payments in accordance with the terms of this Plan.

1.37    "Effective Date" means the same date as the Sale Date.

1.38    "Estates" means the bankruptcy estates of each of the Debtors created under Section 541 of the Bankruptcy Code.

1.39    "Executory Contract" means any of the contracts to which one or more of the Debtors is a party and was a party on the Applicable Petition Date and which are executory within the meaning of Section 365 of the Bankruptcy Code.

1.40    "Exculpated Parties" means the Debtors and any of its current officers, directors, managers, partners, employees, person in control, agents, representatives, attorneys, accountants, financial advisors, brokers or other professional of the Debtors.

1.41    "Fee Applications" means any application of retained professionals under applicable provisions of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Debtors' Chapter 11 cases.

1.42    "Fee Claim" means a Claim under an applicable provision of the Bankruptcy Code or otherwise allowed by the Bankruptcy Court, for allowance of compensation and reimbursement of expenses to a professional in the Debtors' Chapter 11 cases.

1.43    "Final Order" means an order, judgment, decree, stipulation, or other agreement which is "so ordered" by the Bankruptcy Court, 14 days after the entry of which on the docket of the Bankruptcy Court, in these proceedings has not been reversed, stayed, modified or amended.

1.44    "Gamma Lending" means Gamma Lending S58 LP.

9

1.45    "Gamma Lending II" means Gamma Lending S58 II LP.

1.46    "Gamma Funding" means Gamma Funding LP.

1.47    "Gamma Funding Management" means Gamma Funding Management LP.

1.48    "Gamma LLC" means Gamma Funding LLC.

1.49    June Mezz Loan" means that loan allegedly made on or around June 19, 2015 by Sutton Lender in the principal amount of $20 Million to Sutton Mezz and purportedly secured by a pledge of Sutton Mezz Membership Interests.

1.50    "June Mezz Loan Claim" means the Disputed Claim of Sutton Lender on account of the June Mezz Loan as against Sutton Mezz.

1.51    "Litigations" means any litigation commenced under these Chapter 11 cases, including, without limitation, the Adversary Proceeding, actions to avoid and recover preferential and fraudulent transfers or to set aside secured liens.

1.52    "Member Interests" means all of the membership interests in the Debtors including, without limitation, the following parties and their agents, officers and directors: (a) Joseph Beninati 2015 Generation Skipping Trust; (b) Joseph Beninati; (c) Chris Jones; (d) Danny Lee; and (e) Sutton Opportunity LLC.

1.53    "Merger" means that purported merger of Sutton Owner NY into Sutton Owner DE effectuated by Certificate of Merger on or about March 17, 2015.

1.54    "Plan" means this joint plan of reorganization of the Debtors and any amendments permitted in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.55    "Priority Tax Claims" mean those Claims of governmental units that are entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.56    "Professionals" means any attorneys, accountants, appraisers, consultants, brokers, auctioneers, and other professionals retained or to be compensated pursuant to an order of the Bankruptcy Court, pursuant to, inter alia, Sections 327, 328, 330, 503(b) or 1103 of the Bankruptcy Code in the Debtors' Chapter 11 cases.

1.57    "Project" means the Debtors' development project site located at, and incidental to, the Real Property.

1.58    "Real Property" means the real property located at 428, 430 and 432 East 58th Street, New York, New York 10022.

1.59    "Sale" means the sale of the Assets that may be conducted by the Debtors through either a broker or auctioneer.

1.60    "Sale Date" means May 1, 2017, subject to extensions in the Debtors' sole and reasonable discretion.

1.61    "State Court Action" means that action styled, *Sutton 58 Associates LLC v. Joseph Beninati, Christopher Jones, Daniel Lee*, pending in the Supreme Court of the State of New York, County of New York, and assigned Index No. 651296/2016.

1.62    "Sutton Lender" means Sutton 58 Associates LLC.

1.63    "Sutton Mezz" means BH Sutton Mezz LLC.

1.64    "Sutton Mezz Membership Interests" means the 100% membership interest owned by Sutton Mezz in and to Sutton Owner NY and Sutton Owner DE.

1.65    "Sutton Mezz Petition Date" means February 26, 2016, the date that Sutton Mezz filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

1.66    "Sutton Owner DE" means Sutton 58 Owner, LLC, a Delaware Limited Liability Company.

1.67    "Sutton Owner DE Petition Date" means April 6, 2016, the date that Sutton Owner DE filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

1.68    "Sutton Owner NY" means Sutton 58 Owner, LLC, a New York Limited Liability Company.

1.69    "Sutton Owner NY Petition Date" means July 12, 2016, the date that Sutton Owner NY filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

1.70    "Sutton Principals" means Joseph Beninati, Christopher Jones and Daniel Lee.

1.71    "Terms of Sale" means those terms of sale that shall govern the Sale of the Assets.

1.72    "Unclaimed Property" means any cash (together with and interest earned hereon) unclaimed on the 180th day following the Effective Date and subsequent distributions. Unclaimed Property includes: (a) checks (and the funds represented thereby) which have been returned as undeliverable without a proper forwarding address; (b) checks (and the funds represented thereby) which have not been paid; and (c) checks (and the funds represented thereby) which were not mailed or delivered because of the absence of a proper address to mail or deliver such check.

1.73    "Unsecured Creditor" means the holder of an Allowed Unsecured Claim.

# ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    General Classification Rule

A Claim that is properly included in more than one Class is in a Class to the extent it qualifies within the description of such Class and is in a different Class to the extent it qualifies within the description of such different Class.

2.02    Acceptance of Classification

Any holder of a Claim who fails to object, in writing, to the classification of Claims provided in the Plan, and who has not filed such objection with the Bankruptcy Court and served such objection upon counsel for the Debtors, the United States Trustee and all parties that have filed a notice of appearance in these cases, at least twenty (20) days prior to the hearing on confirmation of the Plan, shall be deemed to have accepted such classification and shall be bound thereby.

2.03    Unclassified Claims

2.03.1        Administrative Expense Claims: This Class consists of all Allowed Administrative Expense Claims, including those of Debtors' counsel and accountants, the Creditors' Committee's counsel, or other retained professionals as authorized by and subject to the approval of the Bankruptcy Court (or such retained professionals to the extent Bankruptcy Court authorization of such retention is unnecessary).

2.03.2        United States Trustee Quarterly Fees: All statutory quarterly fees due to the United States Trustee that come due up to and including the earlier of the date of entry of a final decree closing these Chapter 11 proceedings or of the date of entry of an order dismissing or converting these cases to one under Chapter 7 of the Bankruptcy Code.

2.03.3          Priority Tax Claims: Claims of governmental units that are entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

2.04    Classification

For purposes of the Plan, except for all Unclassified Claims as set forth above, all Claims shall be placed in the following Classes, which Classes shall be mutually exclusive.

2.04.1          Class 1 Claims – Allowed Governmental Unit Lien Claims. This class consists of Allowed Secured Claims of governmental agencies, if any, whose claims against the Real Property or the Project arise by operation of law or judgment for unpaid real property taxes or other real property related violations that have converted to liens.

2.04.2          Class 2 Claims – Disputed June Mezz Loan Claim. This class consists of the Disputed Claim held by Sutton Lender with respect to the June Mezz Loan.

2.04.3          Class 3 Claims – Disputed Acquisition and Building Loan Claims. This class consists of the Disputed Claim held by Sutton Lender with respect to the Acquisition Loan and the Building Loan.

2.04.4          Class 4 Claims - Allowed Non-Governmental Real Property Lien Claims. This class consists of Allowed Secured Claims of non-governmental agencies that have a valid lien against the Real Property on account of mechanics liens or judgment liens, other than those in Class 1, Class 2 or Class 3.

2.04.5          Class 5 Claims – Allowed Priority Claims. This class consists of unsecured claims that are not Administrative Expense Claims, Secured Claims, Priority Tax Claims, but which may be entitled to priority under Section 507 of the Bankruptcy Code (excluding those claims entitled to priority under Section 507(a)(8) of the Bankruptcy Code).

2.04.6          Class 6 Claims – Allowed Unsecured Claims. This class consists of general unsecured, non-priority claims against the Debtors' estates that are not Administrative Expense Claims, Secured Claims, Priority Tax Claims or Priority Claims.

2.04.7          Class 7 Claims – Administrative Convenience Claims. This class consists of Allowed Unsecured Claims each in the amount less than $30,000.00.

2.04.8          Class 8 Claims – Member Interests. This class consists of the Allowed Member Interests.

**ARTICLE III**

**<u>TREATMENT OF CLASSES</u>**

3.01    <u>Allowed Administrative Expense Claims</u>

Administrative Expense Claims are unimpaired. Each holder of an Allowed Administrative Expense Claim shall be paid in full, in cash, on the Effective Date or on such other date and upon such other terms as may be agreed upon by the holder of such Allowed Administrative Expense Claim and the Debtors. In the event of any subsequent conversion of these cases to cases under Chapter 7 of the Bankruptcy Code, all payments on account of any Allowed Administrative Expense Claim are deemed to have been made in the ordinary course of the Debtors' business and will not be deemed preferential or unauthorized under Sections 547 or 549 of the Bankruptcy Code. Holders of Administrative Expense Claims are not entitled to vote on the Plan and are deemed to have accepted the Plan.

Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors will be assumed and paid by the Debtors in accordance with the terms and conditions of the arrangements with the particular creditor and in accordance with ordinary business terms.

15

3.02    United States Trustee Claims

The United States Trustee claims are unimpaired. The Debtors shall pay all statutory fees due to the United States Trustee as they come due up to and including the earlier of the date of entry of a final decree closing these Chapter 11 proceedings or of the date of entry of an order dismissing or converting these cases to one under Chapter 7 of the Bankruptcy Code.

3.03    Priority Tax Claims

Priority Tax Claims are unimpaired. Allowed Priority Tax Claims of governmental units, if any, will be paid in full, in cash, on or within thirty (30) days after the Effective Date.

3.04    Class 1 Claims - Allowed Governmental Unit Lien Claims

Governmental Unit Lien Claims are impaired. The Allowed Governmental Unit Lien Claims shall be paid in full, without interest, on or within thirty (30) days after the Effective Date. Therefore, Class 1 is impaired and entitled to vote on the Plan.

3.05    Class 2 Claims – Disputed June Mezz Loan Claim

This class is impaired. This class consists of the Disputed Claim of Sutton Lender on account of the June Mezz Loan as against Sutton Mezz. On July 13, 2016, the Debtors commenced the Adversary Proceeding by the filing of the Complaint contesting the nature, extent and validity of the lien associated with the June Mezz Loan and seeking to, among other things, expunge, reclassify and/or reduce the June Mezz Loan Claim. In the event that the Debtors are successful in expunging the June Mezz Loan Claim in its entirety, this class shall receive no distribution under this Plan and any and all obligations arising under, or in connection with, the June Mezz Loan Claim shall be deemed extinguished, null, void and of no further force and effect, and any liens associated with the June Mezz Loan shall be stricken of record under the Uniform Commercial Code and/or by the New York County Clerk. In the event that the

16

Debtors are successful in reclassifying the June Mezz Loan Claim to a general unsecured claim, this class shall have no further lien or Secured Claim against Sutton Mezz, any liens associated with the June Mezz Loan shall be stricken of record under the Uniform Commercial Code and/or by the New York County Clerk, and this claim, to the extent and amount allowed by the Bankruptcy Court, will either receive the same distribution as Class 6 – Allowed Unsecured Claims or will be subordinated to all Allowed Claims and classes of these estates on account of the allegations raised in the Complaint and shall be paid from the remaining Sale proceeds, to the extent and amount allowed by the Bankruptcy Court, within 30 days of a judicial determination allowing the Disputed Sutton June Mezz Loan Claim by Final Order. In the event that the June Mezz Loan Claim is deemed to be a valid secured claim as against Sutton Mezz then in the event of a Sale of the Assets this class will be subordinated to all Allowed Claims and classes of these estates on account of the allegations raised in the Complaint and shall be paid from the remaining Sale proceeds, to the extent and amount allowed by the Bankruptcy Court, within 30 days of a judicial determination allowing the Disputed Sutton June Mezz Loan Claim by Final Order. In the event that the Adversary Proceeding has not been determined pursuant to a Final Order prior to a closing on the Sale of the Assets then the Debtors shall reserve funds from the net proceeds of the Sale in connection with the Disputed June Mezz Loan Claim in accordance with Article X herein. The Disputed June Mezz Loan Claim shall not incur any interest or penalties as of the Confirmation Date. Therefore, Class 2 is impaired and entitled to vote on the Plan.

3.06    Class 3 Claims - Disputed Acquisition Loan and Building Loan Claims

This class is impaired. This class consists of the Disputed Claims of Sutton Lender on account of the Acquisition Loan and the Building Loan claims as against Sutton Owner DE and Sutton Owner NY. The Complaint attacks the nature, extent and validity of liens on the Real

17

Property and the Development Rights. The claims related to the Building Loan are usurious and the Debtors intend to seek summary judgment on those claims. Under New York law, those claims should be dismissed by the Court. In the event that the Debtors are successful in expunging the Acquisition Loan and/or the Building Loan Claim in their entirety, this class shall receive no distribution under this Plan and any and all obligations arising under, or in connection with, the Acquisition Loan and the Building Loan shall be deemed extinguished, null, void and of no further force and effect, and any liens associated with the Acquisition Loan and the Building Loan shall be stricken of record by the New York County Clerk. In the event that the Debtors are successful in releasing the secured liens against the Real Property and the Development Rights, and reclassifying the Acquisition Loan and the Building Loan to a general unsecured claim against Sutton Owner DE, Sutton Owner NY, or both, then this class shall have no further lien or Secured Claim against Sutton Owner DE and Sutton Owner NY, any liens associated with the Acquisition Loan and the Building Loan shall be stricken of record by the New York County Clerk, and this claim, to the extent and amount allowed by the Bankruptcy Court, will either receive the same distribution as Class 6 – Allowed Unsecured Claims or will be subordinated to all Allowed Claims and classes of these estates on account of the allegations raised in the Adversary Proceeding and shall be paid from the remaining Sale proceeds, to the extent and amount allowed by the Bankruptcy Court, within 30 days of a judicial determination allowing the Disputed Acquisition Loan or the Building Loan, or both, by Final Order. In the event that either Acquisition Loan or the Building Loan, or both, are deemed to be valid secured claims as against Real Property then in the event of a Sale of the Assets this class will be subordinated to all Allowed Claims and classes of these estates on account of the allegations raised in the Complaint and shall be paid from the remaining Sale proceeds, to the extent and

amount allowed by the Bankruptcy Court, within 30 days of a judicial determination allowing wither the Disputed Acquisition Loan Claim or the Disputed Building Loan Claim by Final Order. In the event that the Adversary Proceeding has not been determined pursuant to a Final Order prior to a closing on the Sale of the Assets then the Debtors shall reserve funds from the net proceeds of the Sale in connection with the Disputed Acquisition Loan Claim and the Disputed Building Loan Claim in accordance with Article X herein. The Disputed Acquisition Loan Claim and the Disputed Building Loan Claim shall not incur any interest or penalties as of the Confirmation Date. Therefore, Class 3 is impaired and entitled to vote on the Plan.

3.07    Class 4 Claims - Allowed Non-Governmental Real Property Lien Claims

This class is impaired. This class consists of Allowed Secured Claims of non-governmental agencies that have a valid lien against the Real Property on account of mechanics liens or judgment liens, other than those in Class 1, Class 2 or Class 3. This class will be paid in full, without interest, on or within thirty (30) days after the Effective Date. Therefore, Class 4 is impaired and entitled to vote on the Plan.

3.08    Class 5 Claims – Allowed Priority Claims

This class is impaired. This class consists of unsecured claims that are not Administrative Expense Claims, Secured Claims, Priority Tax Claims, but which may be entitled to priority under Section 507 of the Bankruptcy Code (excluding those claims entitled to priority under Section 507(a)(8) of the Bankruptcy Code). This class will be paid in full, without interest, on or within thirty (30) days after the Effective Date. Therefore, Class 5 is impaired and entitled to vote on the Plan.

3.09    Class 6 Claims – Allowed Unsecured Claims

This class is impaired. This class consists of general unsecured, non-priority claims of the Debtors' estates, except for those claimants treated in Class 7, that are not Administrative Expense Claims, Secured Claims, Priority Tax Claims or Priority Claims. This class will be paid, without interest, from the proceeds remaining from the Sale, within 30 days of the Effective Date. Therefore, this class is impaired and entitled to vote on the Plan.

3.10    Class 7 Claims – Administrative Convenience Claims

This class is impaired. This class consists of Allowed Unsecured Claims each in the amount less than $30,000.00. The total aggregate amount of such class equals approximately $174,432.48. All Allowed Unsecured Claims with a filed or scheduled claim each in the amount less than $30,000.00 shall be paid 57% of their respective claims (i.e. the aggregate approximate amount of $100,000.00) from one or more of the Member Interests within thirty (30) days after the Confirmation Order becoming a Final Order. Therefore, this class is impaired and entitled to vote on the Plan.

3.11    Class 8 Claims – Member Interest

This class is unimpaired. This class consists of the Allowed Member Interests of the Debtors. The Member Interest shall be paid any funds remaining in the Confirmation Account after the payment of Allowed Administrative Expense Claims and Allowed Claims in accordance with the Plan and in accordance with their legal rights. The Member Interest shall retain their respective equity interests in the Debtors to the extent and nature as they existed on the Applicable Petition Date. In an effort to facilitate the Debtors' Plan, the Member Interests shall make a capital contribution to the Debtors in an amount necessary to pay Class 7 in accordance with the Plan. Therefore, Class 8 is unimpaired and not entitled to vote on the Plan.

## ARTICLE IV

## IDENTIFICATION OF IMPAIRED CLAIMS UNDER THE PLAN

4.01    Unimpaired Classes

Administrative Claims, the United States Trustee Claims, the Priority Tax Claims, and

Class 8 are not impaired under the Plan and are deemed to have accepted the Plan.

4.02    Impaired Classes

Claims in Classes 1, 2, 3, 4, 5, 6 and 7 are impaired under the Plan and entitled to vote to

accept or reject the Plan.

## ARTICLE V

## CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN
## AND THE EFFECTIVE DATE

5.01    In order for the Plan to be confirmed, the Confirmation Order must be entered by

the Bankruptcy Court and be a Final Order.

5.02    As set forth above, the Effective Date shall occur on the Sale Date, as more

specifically detailed below.

## ARTICLE VI

## EXECUTION AND IMPLEMENTATION OF PLAN

6.01    Timing of Plan

The implementation of the Plan occurs on the Effective Date, after the Confirmation

Order has been entered by the Bankruptcy Court and has become a Final Order; provided,

however, that the Debtors, in their sole discretion, may waive the requirement that the

Confirmation Order be a Final Order.

21

6.02    <u>Source of Funding and Implementation of the Plan</u>

The Debtors believe that Sutton Owner NY was, and still remains, a distinct and separate entity from Sutton Owner DE and has separate and distinct assets from Sutton Owner DE. As detailed in the Complaint, Sutton Owner NY is the legal and equitable owner of the Real Property, the Development Rights and the Additional Development Rights. Regardless of the foregoing, and in and effort to implement the Plan, Sutton Owner NY will permit its assets to be utilized for the benefit of each of the Debtors' estates and their Allowed Claims.

The Debtors shall commence a joint marketing program for a Sale of the Assets. In connection with the Sale, the Debtors shall retain a reputable, qualified real estate broker to offer and market the Assets for sale over a period of seven (7) months commencing on the Confirmation Date. The Sale of the Assets shall take place on the Sale Date. During that time, the Debtors intend to work with its retained real estate broker in assembling the required information so that prospective buyers can conduct all required due diligence in an efficient and responsible manner. The Debtors intend to shall launch a virtual online due diligence portal which will contain information regarding the Assets. A copy of the Terms of Sale containing the precise terms of the Debtors' Sale of the Assets is annexed hereto as **<u>Exhibit "A"</u>**. On the Effective Date, the Debtors shall sell, assign, transfer and convey all right, title and interest in and to the Assets in accordance with this Plan and the Terms of Sale. The Sale shall be free and clear of all liens, claims, and encumbrances of whatever kind or nature with such liens, claims, and encumbrances (to the extent and amount allowed), which such liens, if any, to attach to the proceeds of sale in the same order and priority as they existed on the Applicable Petition Date. As permitted by the Sections 1123(a)(5) and 1123(b)(4) of the Bankruptcy Code, confirmation of the Plan by the Bankruptcy Court shall constitute approval of a sale of the Assets to a

prospective buyer and the authorization for the Debtors to close on the sale of the Assets. The Effective Date shall be the date which is the later of the closing on the sale of the Real Property and the Development Rights or the Apartments. Pursuant to Sections 363(f)(4) and 363(k) of the Bankruptcy Code, Sutton Lender and any of its affiliates may not credit bid for the purchase of any of the Assets on account of their Disputed Claims.

Under a Sale, Distributions to all Allowed Administrative Expense Claims and Allowed Claims under the Plan (to the extent not already paid) will be funded from the initial proceeds realized from the Sale of the Assets substantially in the following order:

(i)     customary and traditional closing costs including the fees and expenses of the estates' retained real estate broker, and to the extent applicable any capital gains taxes, title fees, recording costs, real estate tax adjustments, utility adjustments and transfer taxes that may be due and owing as of the closing;

(ii)    repayment of $1,761.882.07, plus interest at six (6%) from the date of such advances, or such other amount as may be advanced, to Sutton Lender on account of that certain final order authorizing the use of cash collateral;

(iii)   payments for additional zoning and development rights related to the Project in order to "fully mass" the Project in an approximate amount of $23 Million[2];

(iv)    a return of approximately $5.4 Million to Sutton Lender for monies advanced to Fisher Brothers in connection with the acquisition of air rights;

(v)     payment of fees and expenses of the Professionals of the Debtors' estates including the Debtors' retained professionals, attorneys and accountants, counsel

---

[2]    According to the Appraisal, the valuation of the Project will be increased by approximately $75 Million once it is "fully massed" with its air rights. As such, the Debtors seek to market and sell the Assets with the air rights so as to maximize value for the benefit of the Debtors' estates and their creditors.

to the Creditors' Committee and other retained professionals, and any outstanding fees owed to the United States Trustee;

(vi)      Allowed Claims in Classes 1 and 4-6, in the order of their classes;

(vii)     $3.0 Million to be placed into a litigation trust (the "**Litigation Trust**") to be held by, and for the benefit of, LaMonica Herbst & Maniscalco, LLP or other retained professionals of the Debtors in connection with costs and expenses related to the Adversary Proceeding;

(viii)    The balance of Sale proceeds to be reserved in connection with Disputed Claims of Sutton Lender and Class 8 Allowed Member Interests until a Final Order is entered by the Bankruptcy Court with respect to all counts alleged in the Adversary Proceeding.

The sale and transfer of the Assets by the Debtors to a buyer shall not result in the incurrence of any transfer tax, stamp tax or similar tax as those taxes are exempt under Section 1146(a) of the Bankruptcy Code. The Office of the City Register of the City of New York shall record any documents effectuating such transfer without the payment of such transfer taxes.

The Apartments shall be sold by separate application and further Order of the Court.

On or after the Effective Date, the Debtors shall continue to exist with all the powers of a limited liability company under applicable law, may use and dispose of property and compromise or settle any claims in accordance with this Plan.

Notwithstanding the foregoing, the Debtors reserve their rights up to and until the acceptance by the Debtors of an offer to purchase the Assets in accordance with the Terms of Sale, to seek and obtain financing from a DIP Facility. In the event that the Debtors agree to terms with a DIP Lender for a DIP Facility, the Debtors shall seek such approval from the

Bankruptcy Court and reserve the right to amend this Plan as it may be affected by the DIP Facility.

## ARTICLE VII

## AMENDMENTS AND MODIFICATIONS

7.01    Amendment of Plan

The Debtors reserve the right to amend and modify the Plan prior to the Confirmation Date in any manner they determine necessary to obtain confirmation of the Plan, to the extent permitted by the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court. Such amendments may be made at or prior to the hearing on confirmation of the Plan without further notice to any party in interest, except that such amended Plan shall be filed with the Court. After the Confirmation Date, the Debtors may, upon Order of Bankruptcy Court, in accordance with Section 1127(b) of the Bankruptcy Code, remedy any defects, or omissions or reconcile any inconsistency in this Plan in a manner necessary to carry out the purposes and intent of the Plan.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.01    Assumption/Rejection of Executory Contracts and Unexpired Leases

In the event of a Sale, the Debtors shall be deemed to have assumed, as of the Effective Date, the executory contracts that relate to the purchase of certain zoning and development rights, including the Development Rights and the Additional Development Rights, except that JAL 58 LLC shall be subject to the New Lease (as defined below).

To the extent the Debtors were a lessee to any other executory contracts and/or unexpired leases, as of the Applicable Petition Date, the Debtors shall be deemed to have rejected each executory contract and unexpired lease to which it is a party, unless such contract or lease: (i) was previously assumed or rejected by the Debtors, (ii) previously expired or terminated

25

pursuant to its own terms, or (iii) is the subject of a motion to assume filed on or before the Confirmation Date. The Confirmation Order shall constitute an order of the Court under Sections 363 and 365 of the Bankruptcy Code rejecting the contract and lease assumptions described above, as of the Effective Date. Notwithstanding any language to the contrary, the Debtors expressly reserve all rights to file a motion prior to the Confirmation Date seeking to assume any other executory contracts or unexpired leases not described above, on a case by case basis, in accordance with the terms set forth above.

To the extent applicable, any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, under Section 365(b)(1) of the Bankruptcy Code, at the option of the Debtors or the assignee of the Debtors assuming such contract or lease, by cure, or by such other treatment as to which each Debtors and such non-Debtor party to the executory contract or unexpired lease shall have agreed in writing. If there is a dispute regarding (i) the nature or amount of any cure, (ii) the ability of the Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, cure shall occur within thirty (30) days following the entry of a Final Order resolving the dispute and approving the assumption or the assumption and assignment, as the case may be.

If the rejection by the Debtors, pursuant to the Plan or otherwise, of an executory contract or unexpired lease results in a rejection claim that is not theretofore evidenced by a timely filed proof of claim or a proof of claim that is deemed to be timely filed under applicable law, then such Claim shall be forever barred and shall not be enforceable against the Debtors or the

Debtors' estates, unless a proof of claim is filed with the Clerk of the Court and served upon

counsel for the Debtors within thirty (30) calendar days of entry of the Confirmation Order.

Notwithstanding any language to the contrary herein, pursuant to a stipulation dated in

August 2016, Sutton Owner DE enter into a new month to month lease with its landlord, JAL 58,

LLC, with respect to Apartment 3A in the building located 422 East 58th Street, New York, New

York 10022 for a monthly payment of $2,700 per month (the "**New Lease**"). The New Lease is a

month to month tenancy and will not cause any unnecessary burden on the Debtors to perform.

Under the New Lease, three (3) months of security deposits have been paid to the landlord by the

principals. Sutton Owner DE intends to continue with the New Lease.

## ARTICLE IX

## EFFECT OF CONFIRMATION; VESTING OF
## PROPERTY; INJUNCTION

9.01    On the Confirmation Date, the terms of this Plan bind all holders of all Claims

against the Debtors, whether or not such holders accept this Plan.

9.02    Discharge of Debts

The rights afforded herein and the treatment of all Claims herein shall be in exchange for

a complete satisfaction, discharge and release of Claims of any of any nature whatsoever, against

the Debtors, the Debtors' estates or any of its/their assets or properties and any retained

professional in the case. Except as otherwise provided herein, on the Effective Date, all such

Claims against the Debtors shall be satisfied, discharged and released in full, and all persons or

entities are precluded and enjoined from asserting against the Debtors, the reorganized Debtors,

their successors, or their assets or property any other or further Claims based upon any act,

omission, transaction or other activity of any kind or nature that occurred before the

Confirmation Date.

9.03    Injunction

Effective on the Confirmation Date, all creditors who have held, hold, or may hold Claims against the Debtors or their assets are enjoined from taking any of the following actions against or affecting the Debtors or the assets of the Debtors with respect to such Claims (other than actions brought to enforce any rights or obligations under the Plan or appeals, if any, from the Confirmation Order): (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against the Debtors or the assets of the Debtors or any direct or indirect successor in interest to the Debtors, or any assets of any such transferee or successor; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Debtors or their assets or any direct or indirect successor in interest to the Debtors, or any assets of such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or the assets of the Debtors or any direct or indirect successor in interest to the Debtors, or any assets of any such transferee or successor other than as contemplated by the Plan; (iv) asserting any set-off, right of subrogation or recoupment of any kind directly or indirectly against any obligation due the Debtors or their assets or any direct or indirect transferee of any assets of, or successor in interest to, the Debtors; and (v) proceeding in any manner in any place whatsoever that does not conform to or comply with the provisions of the Plan.

9.04    Release

Effective on the Confirmation Date, to the extent authorized by Section 1141 of the Bankruptcy Code, the Debtors, Joseph Beninati, Chris Jones, Danny Lee, Joseph Beninati 2015 Generation Skipping Trust and Sutton Opportunity LLC, and each of their respective officers,

directors, members, agents, representatives, general partners, managers, or employees and any professional person employed by any of the foregoing in these Chapter 11 proceedings including attorneys and accountants, shall be deemed released from all Claims, demands, actions, claims for relief, causes of actions, suits, debts, covenants, agreements and demands of any nature whatsoever, in law and in equity, that any creditor had, or now has, or may hereafter have against the Debtors, Joseph Beninati, Chris Jones, Danny Lee, Joseph Beninati 2015 Generation Skipping Trust and Sutton Opportunity LLC, and each of their respective officers, directors, members, agents, representatives, general partners, managers, or employees and any professional person employed by any of the foregoing in these Chapter 11 proceedings including attorneys and accountants, arising prior to the Confirmation Date. Except as otherwise provided herein and in Section 1141 of the Bankruptcy Code, all Persons shall be precluded and enjoined from asserting claims against the Debtors, Joseph Beninati, Chris Jones, Danny Lee, Joseph Beninati 2015 Generation Skipping Trust and Sutton Opportunity LLC, and each of their respective officers, directors, members, agents, representatives, general partners, managers, or employees and any professional person employed by any of the foregoing in these Chapter 11 proceedings including attorneys and accountants, their assets or properties, or against any property that is distributed, or is to be distributed under the Plan, any other or further Claim upon any acts or omissions, transactions or other activity of any kind or nature that occurred prior to the Confirmation Date.

9.05    Exculpation

The Debtors, Joseph Beninati, Chris Jones, Danny Lee, Joseph Beninati 2015 Generation Skipping Trust and Sutton Opportunity LLC, and each of their respective officers, directors, members, agents, representatives, general partners, managers, or employees and any professional

persons employed by any of the foregoing in these Chapter 11 proceedings including attorneys and accountants who provided services to the Debtors' estates during these Chapter 11 cases, and all direct or indirect predecessors-in-interest to any of the foregoing Persons, will not have or incur any liability to any Person for any act taken or omission occurring on or after the Applicable Petition Date in connection with or related to these estates, including but not limited to (i) the commencement and administration of these Chapter 11 cases, (ii) the operation of the Debtors during the pendency of these Chapter 11 cases, (iii) formulating, preparing, disseminating, implementing, confirming, consummating or administering the Plan (including soliciting acceptances or rejections thereof); (iv) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken during the administration of these Chapter 11 cases or in connection with the Plan; or (v) any distributions made pursuant to the Plan.

    9.06    Co-Debtor Stay

    Pursuant to Section 362 of the Bankruptcy Code, the State Court Action and any related claims as against the Sutton Principals shall be stayed through the later of the Sale Date or the entry of a Final Order with respect to all claims raised in the Adversary Proceeding.

## ARTICLE X

## CLAIMS MATTERS

    10.01  In the event that objections to Claims are filed by the Debtors, the Debtors will determine the amount of cash to be reserved with respect to the Disputed Claim in a sum not less than the amount required to pay the Disputed Claim under the Plan on account of such Claim, if said Claim was proved and allowed, in full, and keep on deposit such funds in the Confirmation Account. Contested Claims that are litigated to judgment, settled or withdrawn will be satisfied from the funds held for that purpose. Should the amount reserved by the Debtors on account of

the Disputed Claim exceed the amount required to satisfy the Contested Claim, any excess will be distributed to the Debtors.

10.02    Objections to Claims, to the extent not already commenced by the Debtors, must be filed and served no later than 60 days after the Confirmation Order becomes a Final Order or within such other time period as may be fixed by the Court; provided however that the Debtors will have 60 days from the filing of such any such Claim to file an objection.

## ARTICLE XI

## DUTIES AND RIGHTS OF DISTRIBUTING AGENT

11.01    Nomination of the Debtors to make Distributions

Sutton Owner NY shall be the Distributing Agent and plan administrator under the Plan and shall be responsible for making all distributions under the Plan. Sutton Owner NY shall be responsible for all aspects of the Sale in conjunction with a retained real estate broker, including marketing, reviewing bids and closing on the transactions. The Distributing Agent shall be nominated as such as part of the confirmation of the Plan and such nomination is effective upon the Confirmation Date. The Distributing Agent will be responsible for implementing and effectuating all provisions of the Plan in accordance with its terms. The Distributing Agent will serve without compensation but may seek to retain a professional to properly coordinate, calculate and effectuate the distributions under the Plan.

11.02    Duties and Rights of Distributing Agent

Pursuant to the Plan, the Distributing Agent will pay all Allowed Administrative Expenses, allowed pursuant to an Order of the Court, and will distribute the monies payable to the holders of Allowed Claims, on or after the Effective Date of the Plan and in accordance with the Plan, or upon such other terms as may be agreed upon between the Debtors and such Allowed Claim.

11.03   Compensation of Debtors' Professionals

After confirmation, to the extent the Professionals provide services to the Debtors in connection with this Plan, they shall provide invoices to the Debtors for the fees incurred and any disbursements expended on behalf of the Debtors under the confirmed Plan on a monthly basis. In the event that no objection to the invoice is asserted within ten (10) days of delivery by the Debtors, LH&M or other professionals retained by the Debtors, shall be authorized to draw down from the Litigation Trust in order to pay such invoices to the Professional(s). In the event a dispute over the fees of the Debtors' Professionals cannot be resolved consensually, the dispute will be resolved through an appropriate application to the Court. The parties agree that the Court retains jurisdiction to resolve any fee dispute, to the extent one arises.

## ARTICLE XII

## UNCLAIMED DISTRIBUTIONS

12.01   For a period of 180 days following the Effective Date, unclaimed property will be held by the Debtors in a depository in compliance with Section 345 of the Bankruptcy Code for the holders of Allowed Claims which have failed to claim such distribution. For a period of 180 days following the Effective Date, and for a period of 180 days following subsequent distributions, unclaimed property due to the holder of an Allowed Claim will be released by the Debtors and delivered to such holder upon presentation and proper proof by such holder of its entitlement thereto.

12.02   At the end of the 180 days following the Effective Date and subsequent distributions, all unclaimed distributions together with the interest thereon, will be distributed to the reorganized Debtor.

## ARTICLE XIII

## RETENTION OF JURISDICTION

13.01   The Bankruptcy Court will retain jurisdiction under Chapter 11 of the Bankruptcy Code and, for the purposes set forth in Section 1127(b) of the Bankruptcy Code, for a period of 180 days from the Effective Date, including, *inter alia*, the following:

a)      to hear and determine all Claims concerning the classification, allowance or disallowance of any Claim, if any;

b)      to hear and determine all Claims arising out of any agreement entered into by the Debtors after the Petition Date, if any;

c)      to alter, modify and amend the Plan pursuant to Section 1127 of the Bankruptcy Code, or to remedy any defect, cure any omissions or reconcile any inconsistency in the Plan or Confirmation Order as may be necessary or advisable to carry out the purpose and intent of the Plan and to the extent authorized by the Bankruptcy Code or Bankruptcy Rules;

d)      to hear and adjudicate the Litigations, including without limitation, any settlement of such Litigations, and/or any disputes concerning settlement of the Litigations, or to enforce and/or implement the terms of any such settlement;

e)      to hear and determine such other matters as may be provided for in the Confirmation Order of the Bankruptcy Court, and for the purposes set forth in Sections 1127(b) and 1142 of the Bankruptcy Code or as contained in Bankruptcy Rules 1019 and 3020(d);

f)      to hear and determine all applications for compensation;

g)      to make such orders *ex parte* or upon application, and to hear and adjudicate any settlements or disputes concerning the provisions of this Plan, or to enforce and/or implement the terms of the Plan;

    h)       to enter a final order or decree concluding the Debtors' Chapter 11 cases or an order of substantial consummation; and

    i)       to determine other matters contained in the Confirmation Order or that is authorized under the provisions of the Bankruptcy Code.

## ARTICLE XIV

## EVENTS OF DEFAULT

14.01   The following events constitute defaults under the Plan:

    a)       the Debtors fail to perform or observe any of the covenants, representations or warranties contained in this Plan; and

    b)       the Debtors fail to make any payments provided for in the Plan.

14.02   Subject to Section 14.03 herein, the occurrence of any events of default, without the prior written consent of the United States Trustee, if any, entitles any creditor or party in interest to move this Court, on notice to the Debtors, Debtors' counsel, the United States Trustee, and the Court, to declare the Plan terminated and of no further force and effect, and any deferred indebtedness and any accruals of interest on payments, if any, shall then become immediately due and payable. Failure or delay by any creditor or party in interest to give such notice or to make such motion to declare an event of default shall not constitute a waiver or release of any right of any creditor or party in interest to move to declare a default by reason of such event or any other prior or subsequent event of default.

14.03   Upon written receipt from any creditor or parties in interest of a Notice of Default, the Debtors will have 30 days from receipt of a Notice of Default to cure such default and during such 30 days, any creditor or party in interest will take no action to terminate this Plan. If such default is cured within the 30 day period, then the Plan will continue in full force and effect. Notice must be sent to the Debtors by certified mail, return receipt requested to the

following addresses: LaMonica Herbst & Maniscalco, LLP, counsel for the Debtor, 3305 Jerusalem Avenue, Suite 201, Wantagh, New York 11793, Attn: Joseph S. Maniscalco, Esq. and Adam P. Wofse, Esq.; and the Debtors, 500 West Putnam Avenue, Suite 400, Greenwich, CT 06830 Attn: Mr. Joseph Beninati.

## ARTICLE XV

## GENERAL PROVISIONS

15.01   Headings

The headings used in the Plan are inserted for convenience or reference only and neither constitute a portion of the Plan nor in any manner affect the provisions or interpretations of this Plan.

15.02   Notices

Notices will be deemed given when received. All notices, requests or demands described in or required to be made in accordance with the Plan must be in writing and must be delivered personally or by registered or certified mail, return receipt requested, to:

Attorneys for the Debtors:

Attention:
Joseph S. Maniscalco, Esq.
Adam P. Wofse, Esq.
Holly R. Holecek, Esq.
LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Facsimile: (516) 826-0222

To the Debtors:
Joseph Beninati
500 West Putnam Ave, Suite 400
Greenwich, Connecticut 06830

35

15.03    Change of Address

The Debtors may change the address at which they are to receive notices under the Plan by sending written notice pursuant to the provisions of this Article to the person to be charged with the knowledge of such change.

15.04    Rounding to the nearest dollar

Any other provision of the Plan to the contrary withstanding, no payments of portions of a Dollar will be made. Whenever any payment of a portion of a Dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole Dollar (up or down).

15.05    Post-Confirmation Reporting

The Debtors shall file post-confirmation operating reports on a quarterly basis, upon the conclusion of each respective quarter, as follows: January 20th, April 20th, July 20th and October 20th, until the earlier of the entry of a final decree, conversion or dismissal of these cases.

15.06    Minimum Distributions

If a Distribution to be made to a given holder of an Allowed Claim would be $20.00 or less, notwithstanding any contrary provision of this Plan, no such Distribution will be made to such holder. Any unclaimed Distributions shall be retained by the Distributing Agent for Distribution pursuant to the terms of the Plan.

15.07    Successors and Assigns

The rights and obligations of any entity named or referred to in the Plan will be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

15.08   Governing Law

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

15.09   References

Unless otherwise specified, all references in the Plan to Sections and Articles are to Sections and Articles of the Plan.

Dated: August 9, 2016
       Wantagh, New York              **LaMonica Herbst & Maniscalco, LLP**
                                      Attorneys for the Chapter 11 Debtors

                             By:      *s/ Joseph S. Maniscalco*
                                      Joseph S. Maniscalco, Esq.
                                      Adam P. Wofse, Esq.
                                      Holly R. Holecek, Esq.
                                      3305 Jerusalem Avenue, Suite 201
                                      Wantagh, New York 11793
                                      Telephone: (516) 826-6500

Dated: August 9, 2016
       Greenwich, Connecticut         **BH Sutton Mezz LLC, a Delaware Limited
                                      Liability Company**

                             By:      *s/ Joseph Beninati*
                                      Joseph Beninati,
                                      Managing Member

                                      **Sutton 58 Owner LLC, a Delaware Limited
                                      Liability Company**

                             By:      *s/ Joseph Beninati*
                                      Joseph Beninati,
                                      Managing Member

                                      **Sutton 58 Owner LLC, a New York Limited
                                      Liability Company**

                             By:      *s/ Joseph Beninati*
                                      Joseph Beninati,
                                      Managing Member

**Exhibit "A"**

**Terms of Sale**

The following terms of sale (the "**Terms of Sale**") shall govern the sale (the "**Sale**") of the following assets: (i) the real properties located at, and known as, 428, 430 and 432 East 58th Street, New York, New York 10022 (the "**Real Property**"); (ii) the development air rights and construction license agreements from (a) 426 East 58th Street, New York, New York (Lot 36) totaling 13,185 square feet; (b) 422 East 58th Street, New York, New York (Lot 37) totaling 21,750 square feet; (c) 434 and 436 East 58th Street, New York, New York (Lots 31 and 33) totaling 33,442 square feet; (d) 440 East 58th Street, New York, New York (Lot 30) totaling 13,556 square feet; (e) 442 East 58th Street, New York, New York (Lot 129) totaling 16,267 square feet; (f) 444-446 East 58th Street, New York, New York (Lot 29) totaling 20,583 square feet; (g) 461 East 57th Street, New York, New York (Lot 22) totaling 23,428 square feet; (h) 455 East 57th Street, New York, New York (Lot 19) for a bridging agreement to allow for the acquisition of unused development air rights from 461 East 57th Street, New York, New York; and (i) inclusionary development air rights from Gemini Residential, LLC for 57,000 square feet of air rights (the "**Development Rights**"); (iii) those additional zoning and development rights as disclosed on Schedule G to the respective bankruptcy petitions of Sutton Owner NY and Sutton Owner DE (the "**Additional Development Rights**"); and (iv) the 100% membership interest owned by Sutton Mezz in and to Sutton Owner NY and Sutton Owner DE (as those entities are defined below)(the "**Membership Interests**", and together with the Real Property, the Development Rights and the Additional Development Rights, the "**Assets**").

The Sale is being made pursuant to a joint plan of reorganization dated August 9, 2016 (the "**Plan**") filed by BH Sutton Mezz LLC ("**Sutton Mezz**"), Sutton 58 Owner, LLC, a New York Limited Liability Company ("**Sutton Owner NY**") and Sutton 58 Owner, LLC, a Delaware Limited Liability Company ("**Sutton Owner DE**", and together with Sutton Mezz and Sutton Owner NY, the "**Debtors**"). The Debtors' Chapter 11 bankruptcy cases are being jointly administered before the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under case number 16-10455-SHL. The Sale of the Assets is being conducted pursuant to Bankruptcy Code Sections 363(b), (d), (f), (k) and (m) and is subject to confirmation of the Plan.

## I.    <u>Qualified Bidder Status</u>

Any potential individual, partnership or entity that wishes to tender an offer or bid to purchase the Assets must be deemed a "**Qualified Bidder**". A Qualified Bidder is a potential bidder who <u>on or before seven (7) months from the date of entry of an Order confirming the Plan,</u> but no later than fifteen (15) days prior to May 1, 2017 (the "**Sale Date**") delivers so as to be actually received by (a) the Debtors' retained real estate broker (the "**Broker**") and (b) counsel to the Debtors, LaMonica Herbst & Maniscalco, LLP ("**LH&M**"), 3305 Jerusalem Avenue, Suite 201, Wantagh, New York 11793, Attn: Joseph S. Maniscalco, Esq. (the "**Bid Deadline**"), the following:

1.    A written and signed irrevocable and binding offer (the "**Qualifying Statement**") that:

a.  fully discloses the identity of the person or entity that is bidding for the Assets (the "**Bidder**"). The Bidder must fully disclose all persons or entities that may be participating with the Bidder including the identity of any partner, member, equity holder or financial backer of the Bidder;

b.  contains a signed acknowledgment that the Bidder is not a partner, officer, director, stockholder, agent, employee or insider, directly or indirectly, of Sutton Associates and the Defendants (as those terms are defined in the Plan) or any member or person in control, directly or indirectly, of Sutton Associates and the Defendants;

c.  includes the Bidder's address, e-mail address and telephone number where the Bidder may be contacted along with its counsels information;

d.  states that the Bidder is financially able and interested in acquiring the Assets for the cash price of its offer without any contingencies as to financing and/or additional due diligence of any kind whatsoever, except as provided herein;

e.  contains a signed acknowledgment that any bid by the Bidder shall not be contingent upon such Bidder obtaining financing;

f.  contains a signed acknowledgment that the Bidder will be bound by its bid and the representation and statements made in the Qualifying Statement until seven days after the Closing Date (defined herein) or until such bid is rejected in writing by the Debtors or LH&M;

g.  is accompanied by a confidentially agreement with respect to all aspects of the Sale in a form to be provided by the Debtors;

h.  is accompanied by financial information which fairly and reasonably demonstrates the source of the Bidder's ability to close on the purchase of the Assets in the amount of its bid in the event that the Bidder is accepted by the Debtors or LH&M as the Successful Bidder (as defined herein);

i.  is accompanied by evidence that a good faith deposit in the amount of $5.0 Million Dollars in immediately available funds (the "**Deposit**") has been made by wire transfer to Sutton Owner NY's account pursuant to wire instructions to be provided; and

j.  contains a signed acknowledgment that if the Bidder is determined by the Debtors to be the Successful Bidder (defined herein) that it will, within two (2) business days after the Sale Date, increase the Deposit as necessary to an amount equal to $10.0 Million at the Sale with **time being of the essence** as to the Successful Bidder's obligation to increase the Deposit.

2

2.      An executed original of these Terms of Sale in which the Bidder agrees and
acknowledges that it will be irrevocably bound by each of the terms herein including the
following:

   a.      The Bidder expressly acknowledges that it has relied solely on its own
   independent due diligence, investigation, analysis and valuations of the
   Assets and that it did not rely upon any oral or written statements,
   representations, warranties, promises or guarantees whatsoever, whether
   expressed or implied with respect to the Assets from the Debtors, their
   professionals, agents and/or representatives.

   b.      The Debtors', their professionals, agents and representatives, have not
   made, and do not make, any representations as to the Assets physical
   condition, rents, leases, expenses, operations, value of the land or
   buildings thereon, or any other matter or thing affecting or related to the
   Assets, which might be pertinent to the purchase of the Assets, including,
   without limitation, (i) the current or future real estate tax liability,
   assessment or valuation of the Assets; (ii) the potential qualification of the
   Assets for any and all benefits conferred by or available under federal,
   state or municipal laws, whether for subsidies, special real estate tax
   treatment, insurance, mortgages, or any other benefits, whether similar or
   dissimilar to those enumerated; (iii) the compliance or non-compliance of
   the Assets, in its current or any future state, with applicable present or
   future zoning ordinances or other land use law or regulation, or the ability
   to obtain a change in the zoning or use, or a variance in respect to the
   Assets; (iv) the availability of any financing for the purchase, alteration,
   rehabilitation or operation of the Real Property from any source,
   including, but not limited to, any state, city or federal government or
   institutional lender; (v) the current or future use of the Assets; (vi) the
   present and future condition and operating state of any and all machinery
   or equipment on the Assets, if any, and the present or future structural and
   physical condition of any building thereon or its suitability for
   rehabilitation or renovation; (vii) the ownership or state of title of any
   personal property on the Assets; (viii) the presence or absence of any
   laws, ordinances, rules or regulations issued by any governmental
   authority, agency or board and any violations thereof; (ix) any present or
   future issues concerning subdivision or non-subdivision of the Assets; or
   (x) the compliance or non-compliance with environmental laws and the
   presence or absence of underground fuel storage tanks, any asbestos or
   other hazardous materials anywhere on the Assets.

   c.      The Bidder expressly acknowledges that any and all of its incurred
   expenses concerning any due diligence, such as obtaining title reports or
   environmental inspections, shall be the sole responsibility of the Bidder,

and under no circumstances shall the Debtors, their estates or professionals be responsible to pay such expenses.

d.    The Bidder expressly acknowledges that the Bidder will be responsible for completion of any ACRIS forms or applicable recording documents, if required, and fees associated in connection therewith.

e.    The Bidder expressly acknowledges that **time is of the essence** with respect to the Bidder's obligation to pay the Deposit (defined herein) and the balance of the purchase price on the Closing Date (defined herein), and that any failure by the Bidder to pay the balance of the purchase price on the Closing Date will result in the Debtors retaining the deposit as liquidated damages as an asset of the Debtors' estates, and the termination of the Bidder's right to acquire the Assets.

f.    The Bidder expressly acknowledges that **time is of the essence** as to the Bidder to perform all of the obligations required on its part in accordance with the Terms of Sale.

g.    The Bidder expressly acknowledges that no offer or bid for the Assets shall be deemed accepted by, or biding upon, the Debtors unless and until such offer or bid is accepted in writing by the Debtors or LH&M and approved by Order of the Bankruptcy Court.

h.    In the event that the Bidder is selected as the highest and best bid on the Sale Date (the "**Successful Bidder**"), the Bidder expressly acknowledges that it must close on the purchase of the Assets on a date (the "**Closing Date**") which is not later than 90 days from the date of entry of an Order of the Court confirming the sale of the Assets to the Bidder (the "**Sale Confirmation Order**"). The Debtors, in their sole discretion, may extend the Closing Date. The closing shall take place at the office of LH&M. Notwithstanding the foregoing, Debtors shall grant the Successful Bidder a single thirty (30) day extension (the "**Extension**"), at the request of the Successful Bidder, provided the Successful Bidder posts an additional, non-refundable deposit equal to $5.0 million so as to be received by the Debtors prior to the ninetieth (90th) day following the entry of the Sale Confirmation Order (the "**Additional Deposit**"). The Additional Deposit shall be made by wire transfer to Sutton 58 Owner LLC, a New York Limited Liability Company pursuant to wire instructions to be provided by the Debtors. If Successful Bidder elects for the Extension and wires the Additional deposit in accordance with the terms herein, the closing on the sale of the Assets shall take place on or before the one hundred and twentieth (120th) day following entry of the Sale Confirmation Order, **time being of the essence.**

4

     i.     The Successful Bidder shall be obligated to close on the purchase of the Assets and there is no contingency of any kind or nature that will permit the Successful Bidder to avoid its obligations under these Terms of Sale. Anything to the contrary contained in these Terms of Sale notwithstanding, the Debtors shall have the right to adjourn the Closing Date in order to remedy any defect to title.

     j.     The Bidder expressly acknowledges and agrees that in the event that another person or entity is selected as the Successful Bidder but fails to timely tender the Deposit or otherwise perform its obligation under these Terms of Sale, the Debtors, at their sole and absolute option, may contact the second highest bidder (the "**Second Bidder**") to sell the Assets to the Second Bidder without any further notice or approval of the Bankruptcy Court, without giving credit for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Debtors deems appropriate. Thereafter, the Second Bidder shall be deemed for all benefits and obligations to be the Successful Bidder.

     k.     The Bidder expressly acknowledges that the Assets are being sold in accordance with the Plan and pursuant to 11 U.S.C. § 363(b), (f) and (m), **<u>"AS IS", "WHERE IS" IN ITS CURRENT CONDITION, WITHOUT ANY REPRESENTATIONS, COVENANTS, GUARANTEES OR WARRANTIES OF ANY KIND OR NATURE WHATSOEVER</u>**, and free and clear of any liens, claims or encumbrances of whatever kind or nature, with such liens, if any, to attach to the proceeds of sale, and is subject to among other things (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; and (d) any building or zoning ordinances or any other applicable municipal regulations and violations thereof; (e) all leases, if any, as may exist or encumber the Assets or any portion thereof; and (f) environmental conditions.

     l.     The Bidder expressly acknowledges and agrees to otherwise be bound by all the terms of the Terms of Sale.

## II.   <u>Stalking Horse Option</u>

     The Debtors reserve the right to enter into an agreement (the "**Stalking Horse Agreement**") with a Qualified Bidder granting such party "stalking horse" rights to be the initial bidder at Sale. Should the Debtors, prior to the Sale, agree to provide a bidder "stalking horse" rights, such rights and procedures will include the following: (i) the "stalking horse" bidder shall pay to the Sutton Owner NY an amount equal to the lesser of $5 Million Dollars, or 10% of the "stalking horse" bid, prior to the Sale (the "**Stalking Horse Bid**"); and (ii) the "stalking horse" bidder must execute and agree to be bound by these Terms of Sale and Submit a Qualified Statement.

**III.**    **Opening Bid**

Unless the Debtors enter into a Stalking Horse Agreement, the Qualified Bidder that, in the Debtors' sole determination, has bid the highest and best amount for the purchase of the Assets shall be deemed to have submitted the opening bid for the Assets at the Sale (the "**Opening Bid**")

**IV.**    **The Sale**

The Debtors and the Broker shall conduct a public sale of the Assets on May 1, 2017 to be held at the United State Bankruptcy Court for the Southern District of New York located at One Bowling Green, New York, New York. The Sale shall be governed by the following procedures:

   a.    Each Qualified Bidder shall be required to confirm under oath that it has not engaged in any collusion with respect to the bidding or the Sale.

   b.    The Debtors in conjunction with the Broker shall determine the successive bid increments at the Sale.

   c.    Deposits submitted by the Qualified Bidders who do not become the successful bidder shall be returned by the Sutton Owner NY within four (4) business days after the Sale.

   d.    The Successful Bidder shall within two (2) business days after the Sale increase the Deposit as necessary to an amount equal to 10% of its final bid at the Sale with **time being of the essence** as to the Successful Bidder's obligation to increase the Deposit.

**V.**    **Miscellaneous**

The Debtors reserve the right to reject any offeror or bidder, who in the sole discretion of the Debtors, is believed not financially capable of consummating the purchase of the Assets. The Debtors reserve the right to withdraw the Assets from sale, at any point, for any reason whatsoever, as it deems necessary or appropriate. By participating in this process of the Bidder submits itself to the jurisdiction of the Bankruptcy Court and any disputes concerning the sale of the Assets shall be determined by the Bankruptcy Court.

Neither the Debtors', Debtors' counsel or the estates, shall be liable or responsible for the payment of fees of any broker that has not previously been approved by Order of the Bankruptcy Court.

Nothing contained in these Terms of Sale intended to supersede or alter any provisions of Title 11 of the United States Code (the "**Bankruptcy Code**") or otherwise interfere with the jurisdiction of the Bankruptcy Court. All of the terms and conditions set forth in these Terms of

Sale are subject to modification as may be directed by the Debtors or by the Bankruptcy Court. The Debtors, upon notification to the Office of the United States Trustee, reserves the right to modify the Terms of Sale to maintain consistency with the provisions of the Bankruptcy Code and/or prior orders of the Bankruptcy Court.

I have read these Terms of Sale and agree to be bound by them.

Date: _____

Bidder: _____

Signature: _____

Title: _____

Address _____

E-Mail: _____

Phone Number: _____

Attorney Info: _____