## EXHIBIT 1

**Amended Joint Plan of Liquidation**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

In re:

BH SUTTON MEZZ LLC,
a Delaware limited liability company,
SUTTON 58 OWNER, LLC,
a Delaware limited liability company, and
SUTTON 58 OWNER, LLC,
a New York limited liability company,

                Debtors.

Chapter 11
Case No.:  16-10455 (SHL)
(Jointly Administered)

-----------------------------------------------------------------x

# JOINT CHAPTER 11 PLAN OF LIQUIDATION
## FILED BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND SUTTON 58 ASSOCIATES LLC, AS MODIFIED AND SUPPLEMENTED

WESTERMAN BALL EDERER
MILLER ZUCKER & SHARFSTEIN, LLP
*Attorneys for the Official Committee of Unsecured Creditors*
1201 RXR Plaza
Uniondale, New York 11556
Telephone:  (516) 622-9200

KRAMER LEVIN NAFTALIS &
 FRANKEL LLP
*Attorneys for Sutton 58 Associates LLC*
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9100

Dated: New York, New York
December 5, 2016

# TABLE OF CONTENTS

Page

ARTICLE I  DEFINITIONS ................................................................................................1

ARTICLE II  CLASSIFICATION OF CLAIMS AND INTERESTS ......................................14

ARTICLE III  TREATMENT OF CLAIMS ..............................................................................16

ARTICLE IV  IDENTIFICATION OF IMPAIRED CLAIMS UNDER THE PLAN ...............21

ARTICLE V  CONDITIONS PRECEDENT ...........................................................................21

ARTICLE VI  EXECUTION AND IMPLEMENTATION OF PLAN .....................................22

ARTICLE VII  AMENDMENTS AND MODIFICATIONS .......................................................30

ARTICLE VIII  EXECUTORY CONTRACTS AND UNEXPIRED LEASES...........................30

ARTICLE IX  EFFECT OF CONFIRMATION; VESTING OF PROPERTY;
SETTLEMENT, INJUNCTION, RELEASE AND RELATED
PROVISIONS .....................................................................................................32

ARTICLE X  CLAIMS MATTERS.........................................................................................35

ARTICLE XI  PROVISIONS REGARDING DISTRIBUTIONS .............................................38

ARTICLE XII  RETENTION OF JURISDICTION...................................................................40

ARTICLE XIII  GENERAL PROVISIONS ................................................................................42

KL2 2984791.5

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

In re:

BH SUTTON MEZZ LLC,
a Delaware limited liability company,
SUTTON 58 OWNER, LLC,
a Delaware limited liability company, and
SUTTON 58 OWNER, LLC,
a New York limited liability company,

                                 Debtors.

Chapter 11
Case No.:  16-10455 (SHL)
(Jointly Administered)

-----------------------------------------------------------------x

## JOINT CHAPTER 11 PLAN OF LIQUIDATION
## FILED BY OFFICIAL COMMITTEE OF UNSECURED
## CREDITORS AND SUTTON 58 ASSOCIATES LLC,
## AS MODIFIED AND SUPPLEMENTED

The following Joint Chapter 11 Plan of Liquidation dated November 14, 2016, as modified on November 22, 2016[1] and as supplemented on December 5, 2016 (the "**Plan**") on behalf of debtors and debtors-in-possession BH Sutton Mezz LLC, a Delaware limited liability company ("**Sutton Mezz**"), Sutton 58 Owner, LLC, a Delaware limited liability company ("**Sutton Owner DE**") Sutton 58 Owner, LLC, a New York limited liability company ("**Sutton Owner NY**", and together with Sutton Mezz and Sutton DE, the "**Debtors**"), is hereby jointly proposed and filed by Sutton 58 Associates LLC and the Official Committee of Unsecured Creditors (collectively, the "**Plan Proponents**") pursuant to Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

## ARTICLE I
## DEFINITIONS

For purposes of this Plan, the following terms have the meanings set forth below with the meanings to be equally applicable to the singular and plural forms of the terms defined, unless a different meaning is clearly defined herein.  Terms used in this Plan that are defined in the Bankruptcy Code will have the meaning assigned them.

1.01    "<u>Acquisition Loan</u>" means that loan made by the Lender which loan is asserted by the Lender to be secured by Liens on, among other things, the Real Property and the Development Rights.

---

[1]    The Plan was modified solely to amend the Auction date.

1.02    "Acquisition Loan and Building Loan Claims" means all Claims of the Lender arising under or in connection with, or otherwise relating to, the Acquisition Loan, the Building Loan or the Acquisition Loan and Building Loan Documents, including in respect of principal, interest, additional interest, fees, costs, protective advances and expenses. References in this Plan to Acquisition Loan and Building Loan Claims means one or both such Claims as Allowed by the Bankruptcy Court in connection with the Adversary Proceeding.

1.03    "Acquisition Loan and Building Loan Documents" means with respect to any of the Debtors (i) the Consolidated, Amended & Restated Promissory Note in favor of the Lender, (ii) the Acquisition Loan Agreement entered into with the Lender, (iii) the Building Loan Promissory Note in favor of the Lender, (iv) the Building Loan Agreement entered into with the Lender, (v) all pledge agreements, security agreements, mortgages, financing statements and other collateral documents relating to, or creating liens or security interests in respect of, any of the foregoing documents or the Claims arising thereunder or in connection therewith, and (vi) all instruments, documents and agreements related to the Acquisition Loan or the Building Loan or otherwise to any of the foregoing; as each of the foregoing may have been subsequently modified, amended, supplemented or otherwise revised from time to time.

1.04    "Administrative Expense Claims" means any cost or expense of administration of the Debtors' Chapter 11 Cases entitled to priority in payment in accordance with the provisions of Sections 503(b) and 507(a)(1) of the Bankruptcy Code, or as may be allowed by Final Order, including, without limitation:  (a) the actual and necessary costs and expenses incurred after the Applicable Petition Date of preserving the Debtors' Estates (other than such Claims or portions thereof which, by their express terms, are not due or payable by the Effective Date); (b) Professional Fee Claims; and (c) United States Trustee Fees.

1.05    "Administrative Expense Claim Bar Date" means the deadline for filing requests for payment of Administrative Expense Claims, which shall be the first Business Day that is thirty days following the Effective Date, unless otherwise ordered by the Bankruptcy Court, except with respect to Professional Fee Claims, which shall be subject to the provisions of Article III.

1.06    "Adversary Proceeding" means that adversary proceeding commenced by the Debtors in the Bankruptcy Court under adversary proceeding number 16-01187-SHL to, *inter alia*, (i) recover damages from the Defendants for, among other things, alleged breach of contract, breach of implied duty of good faith and fair dealing, contractual unconscionability, fraud, deceit, estoppel, equitable subordination, objection to claim, criminal usury, unjust enrichment and lender liability and (ii) obtain declaratory relief determining the nature, extent and validity of Defendants' purported liens against the Real Property and the Development Rights, and all proceedings and matters in connection therewith.

1.07    "Allowed Administrative Expense Claims" means any Administrative Expense Claim, or portion thereof, which has been allowed by Final Order of the Bankruptcy Court.

1.08    "Allowed Claim" means a Claim, other than an Administrative Expense Claim, that is:  (a) listed in the Debtors' schedules, including any amendments thereto, filed in these Chapter 11 Cases as of the Effective Date and not listed as "disputed," "contingent,"

2

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

"unliquidated," or "unknown" and as to which no objection to the allowance thereof is filed; (b) set forth in a proof of Claim timely and properly filed in these Chapter 11 Cases on or before the deadline fixed by the Bankruptcy Court, or by applicable rule or statute, as the last day for filing such proof of Claim, or late filed with leave of the Bankruptcy Court after notice and opportunity for hearing having been given, and as to which no objection to the allowance thereof is filed; or (c) determined to be allowed by Final Order of the Bankruptcy Court. To the extent permitted under Section 506(b) of the Bankruptcy Code, an Allowed Claim may include unpaid postpetition interest on such Claim and any reasonable unpaid postpetition fees, costs or charges provided for under the agreements under which such Claim arose.

1.09    "Allowed Membership Interest" means a Membership Interest that is: (a) listed in the Debtors' schedules, including any attachment or amendments thereto, filed in these Chapter 11 Cases as of the Effective Date and not listed as "disputed," "contingent," "unliquidated," or "unknown" and as to which no objection to the allowance thereof is filed; (b) set forth in a Proof of Interest timely and properly filed in these Chapter 11 Cases on or before the deadline fixed by the Bankruptcy Court, or by applicable rule or statute, as the last day for filing such Proof of Interest, or late filed with leave of the Bankruptcy Court after notice and opportunity for hearing having been given, and as to which no objection to the allowance thereof is filed; or (c) determined to be allowed by a Final Order of the Bankruptcy Court.

1.10    "Allowed Priority Claim" means any Allowed Claim, or portion thereof, that is a Priority Claim.

1.11    "Allowed Priority Tax Claim" means any Allowed Claim, or portion thereof, that is a Priority Tax Claim.

1.12    "Allowed Professional Fee Claims" means any Professional Fee Claim, or portion thereof, that has been allowed by Final Order of the Bankruptcy Court.

1.13    "Allowed Secured Claim" means any Allowed Claim, or portion thereof, that is a Secured Claim.

1.14    "Allowed Unsecured Claim" means any Allowed Claim, or portion thereof, that is an Unsecured Claim.

1.15    "Apartments" means those cooperative apartments identified as 1R, 2D and 2N located at 504 Merrick Road, Lynbrook, New York 11563.

1.16    "Applicable Petition Date" means as to Sutton Mezz, the Sutton Mezz Petition Date; as to Sutton Owner DE, the Sutton Owner DE Petition Date; and as to Sutton Owner NY, the Sutton Owner NY Petition Date.

1.17    "Assets" means all of the Debtors' right, title and interest in and to all of their respective assets and property, wherever held, including without limitation (and in each following clause without limiting the matters covered by or under any other clause), (i) the Real Property, (ii) the Development Rights, (iii) the Gemini Contract, and (iv) any and all contracts, agreements, instruments, plans, permits, licenses, approvals and documents appurtenant or relating to any of the foregoing (including, without limitation, any development rights, purchase

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

3

agreements and agreements to purchase any adjacent property); provided, however, that the Assets shall not include the Excluded Assets.

1.18    "<u>Auction</u>" means the auction held pursuant to the Bid Procedures Order.

1.19    "<u>Available Cash</u>" at any time means the aggregate amount of cash held by the Wind-Down Officer at such time less the sum of (i) cash to be distributed to holders of Allowed Administrative Expense Claims or holders of Allowed Claims in Classes 1, 2, 3, and 4, (ii) the Distribution Reserve at such time, (ii) the Wind-Down Reserve at such time, and (iv) the amount of Cash in the Disputed Claims Reserve at such time.

1.20    "<u>Avoidance Actions</u>" means any Claims, rights, defenses or other Causes of Action arising under any section of chapter 5 of the Bankruptcy Code, including Sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or under similar or related state or federal statutes and common law, including state fraudulent transfer laws, whether or not prosecution of such actions has commenced as of the Confirmation Date or the Effective Date.

1.21    "<u>Bankruptcy Code</u>" means Title 11 of the United States Code, and any amendments thereof applicable to the Debtors' Chapter 11 Cases and in effect on the Applicable Petition Date.

1.22    "<u>Bankruptcy Court</u>" means the United States District Court for the Southern District of New York and, to the extent of any reference made by such Court pursuant to 28 U.S.C. § 157, United States Bankruptcy Court for the Southern District of New York or any other Court having lawful jurisdiction over these Chapter 11 Cases.

1.23    "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, and any amendments or supplements thereto, including any local bankruptcy rules adopted by the Bankruptcy Court.

1.24    "<u>Bar Date</u>" means the deadline established by order of the Bankruptcy Court for the timely filing of Claims and Interests against a Debtor.

1.25    "<u>Bid Procedures</u>" means the bid procedures approved by the Bankruptcy Court in the Bid Procedures Order, in form and substance acceptable to the Plan Proponents, which will govern the Auction process for the Sale of the Assets

1.26    "<u>Bid Procedures Order</u>" means the order of the Bankruptcy Court approving bid procedures in connection with the Sale, in form and substance acceptable to the Plan Proponents, which order may be the Confirmation Order or a prior order of the Bankruptcy Court.

1.27    "<u>Building Loan</u>" means the loan made by the Lender, which loan is asserted by the Lender to be secured by Liens on, among other things, the Real Property and the Development Rights.

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

1.28    "Business Day" means any day other than Saturday, Sunday and any day that is a legal holiday or a day on which banking institutions in New York, New York are required or authorized by law or governmental action to close.

1.29    "Cash" means cash and cash equivalents, including bank deposits, checks and other similar items, in each case denominated in United States dollars.

1.30    "Cash Collateral Stipulation" means the *Stipulated and Agreed Upon Final Order (I) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363, and (II) Granting Related Relief*, dated July 27, 2016, and entered by the Bankruptcy Court on August 9, 2016 [Docket No. 179], including any amendments thereto.

1.31    "Causes of Action" means any and all Claims, rights, defenses, offsets, recoupments, actions in law or equity or otherwise, causes of action, choses in action, suits, damages, rights to legal or equitable remedies, judgments, third-party claims, counterclaims and cross-claims against any Entity, whether arising under the Bankruptcy Code or federal, state, common, or other law, regardless of whether the subject of pending litigation or proceedings on the Confirmation Date, the Effective Date, or thereafter, including without limitation, as to Causes of Action of the Debtors:  (a) all Avoidance Actions; (b) all other Claims in avoidance, recovery, and/or subordination; and (c) all other actions described in the Disclosure Statement, the Schedules or the Plan.

1.32    "Chapter 11" means Chapter 11 of the Bankruptcy Code.

1.33    "Chapter 11 Cases" means the chapter 11 cases commenced by the Debtors, which are jointly administered and currently pending before the Bankruptcy Court.

1.34    "Claim" means a claim, as defined in Section 101(5) of the Bankruptcy Code, whether or not asserted against the Debtors.

1.35    "Claims Objection Deadline" means the first Business Day which is at least 90 days after the Effective Date, or such other date as may be established or extended by the Bankruptcy Court in accordance with the Plan.

1.36    "Class" means any class into which Claims are classified pursuant to Article II of the Plan on the Effective Date.

1.37    "Complaint" means that complaint filed by the Debtors against the Defendants in the Adversary Proceeding.

1.38    "Confirmation Date" means the date on which the Confirmation Order is signed by the Bankruptcy Court Judge.

1.39    "Confirmation Order" means the Order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.40    "Credit Bid" means any credit bid submitted by the Lender or its designee to acquire some or all of the Assets on account of the Lender's Allowed Secured Claims under the

5

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

Acquisition Loan and Building Loan (as determined in connection with the Adversary Proceeding) and/or the Lender's Allowed Secured Claim under the Cash Collateral Stipulation.

1.41    "Credit Bid Agreement" means the purchase agreement submitted by the Lender or its designee in connection with any Credit Bid, but only after prior consultation with and reasonable consent of the Creditors' Committee.

1.42    "Creditors' Committee" means the official committee of unsecured creditors appointed in the Debtors' Chapter 11 Cases.

1.43    "Debtor Release" means the release set forth in Section 9.06.

1.44    "Debtors" means Sutton Mezz, Sutton Owner DE and Sutton Owner NY.

1.45    "Debtors' Professionals" means the Professionals retained by the Debtors in these Chapter 11 Cases.

1.46    "Defendants" means the Lender, Gamma Lending, Gamma Lending II, Gamma Funding, Gamma Funding Management, Gamma LLC and Gamma Real Estate, which are defendants named in the Complaint filed by the Debtors in the Adversary Proceeding.

1.47    "Development Rights" means the development air rights and construction license agreements from all zoning and development rights owned by or available to the Debtors and/or to which the Debtors have an interest, including the rights, licenses, easements and other agreements contained in those certain agreements (which may be Executory Contracts) with (a) the owners of (i) 426 East 58th Street, New York, New York (Lot 36), including certain construction licenses and the right to 13,185 square feet of unused development rights; (ii) 422 East 58th Street, New York, New York (Lot 37), including the right to 21,750 square feet of unused development rights; (iii) 434 and 436 East 58th Street, New York, New York (Lots 31 and 33), including certain construction licenses and the right to 33,442 square feet of unused development rights; (iv) 440 East 58th Street, New York, New York (Lot 30), including the right to 13,556 square feet of unused development rights; (v) 442 East 58th Street, New York, New York (Lot 129), including the right to 16,267 square feet of unused development rights; (vi) 444-446 East 58th Street, New York, New York (Lot 29), including the right to 22,583 square feet of unused development rights; (vii) 461 East 57th Street, New York, New York (Lot 22), including the right to 23,428 square feet unused development rights; and (viii) 455 East 57th Street, New York, New York (Lot 19) for a bridging agreement, including the right to use such property as a pass-through, to allow for the acquisition of unused development air rights from 461 East 57th Street, New York, New York; and (b) Gemini Residential LLC for 16,490 square feet of Affordable Floor Area (which equates to 57,715 square feet of inclusionary air rights) in accordance with that certain Inclusionary Air Rights Purchase Agreement dated January 20, 2015.

1.48    "Disputed Claim" means a Claim that is not yet an Allowed Claim, including because such Claim is unliquidated; provided, however, that a Disputed Claim shall not include any portion of the Claim that is an Allowed Claim.

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

1.49    "Disputed Claims Reserve" means the reserve established on the later of the Sale Date or the Effective Date, or as soon thereafter as reasonably practicable, and maintained, by the Wind-Down Officer, funded with cash in an amount sufficient to pay holders of Unsecured Claims that are Disputed Claims, if and when such Disputed Claims become Allowed Claims, as set forth more fully in Article XI.

1.50    "Distributing Agent" means the Wind-Down Officer, or any Entity engaged by the Wind-Down Officer to perform the function of a distributing agent in respect of payments in accordance with the terms of this Plan.

1.51    "Distribution Reserve" means the reserve established by the Wind-Down Officer on the later of the Sale Date or the Effective Date, or as soon thereafter as reasonably practicable, for maintaining cash from time to time necessary to satisfy payments after the Effective Date to holders of certain Allowed Claims, as provided in Section 10.05.

1.52    "Effective Date" means the first Business Day upon which each of the conditions in Section 5.02 has been satisfied or waived as provided herein, or such later day as may be reasonably agreed to by the Plan Proponents.

1.53    "Entity" means an "entity" as such term is defined in Section 101(15) of the Bankruptcy Code.

1.54    "Equity Interest" means any "equity security" as defined in Section 101(16) of the Bankruptcy Code, of a Debtor existing immediately prior to the Effective Date, or any other instrument evidencing an ownership interest in any of the Debtors.

1.55    "Estates" means the bankruptcy estates of each of the Debtors created under Section 541 of the Bankruptcy Code.

1.56    "Excluded Assets" means (i) the Apartments, (ii) Cash on hand in the Estates as of the Effective Date which Cash is not cash collateral of the Lender, (iii) Causes of Action (other than Causes of Action against the Lender and/or the Lender's Related Persons), (iv) Other Personal Property (except to the extent that any such Other Personal Property is included as an acquired asset as part of any Sale), and (v) if Lender (or its designee) is the Purchaser, such other assets and property (if any) that the Lender (or its designee) excludes from any Credit Bid pursuant to the Credit Bid Agreement.

1.57    "Exculpated Parties" means (i) the members of the Creditors' Committee in such capacity and all of their respective Related Persons in such capacities, (ii) the Lender and all of their respective Related Persons, and (iii) the Debtors' Professionals.  For the avoidance of doubt, neither the Debtors nor any Related Person relative to the Debtors (other than the Debtors' Professionals) is an Exculpated Party or otherwise entitled to any of the releases and exculpations under the Plan.

1.58    "Executory Contract" means a contract or unexpired lease (including, with respect to each of the foregoing, any modifications, amendments, addenda or supplements thereto or restatements) to which one or more of the Debtors is a party and that is subject to assumption or rejection under Section 365 of the Bankruptcy Code and the Confirmation Order.

7

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

1.59    "Expense Contribution" means, subject to the occurrence of a Lender Resolution, $300,000, which the Lender shall contribute pursuant to Section 6.02 on the later of (i) the Effective Date (or as soon thereafter as is reasonably practicable if a Lender Resolution has not occurred by the Effective Date) or (ii) the Sale Date, and which funds shall be used to fund the wind-down of the Debtors, including to pay costs and expenses, including legal and other fees, incurred by the Wind-Down Officer and its professionals or otherwise distributed in accordance with Section 6.02.

1.60    "Final Order" means an order or judgment of the Court that has not been reversed, stayed, modified, or amended and as to which the time to appeal or seek review, rehearing, reargument, or certiorari has expired and as to which no appeal or petition for review, rehearing, reargument, stay, or certiorari is pending, or as to which any right to appeal or to seek certiorari, review, or rehearing has been waived, or if an appeal, reargument, petition for review, certiorari, or rehearing has been sought, the order or judgment of the Court has been affirmed by the highest court to which the order was appealed or from which the reargument, review, or rehearing was sought, or certiorari has been denied, and as to which  the time to take any further appeal, or seek further reargument, review, certiorari, or rehearing has expired.

1.61    "Final Distribution Date" means the date on which the Wind-Down Officer makes a final distribution of Available Cash pursuant to Section 11.02 of this Plan. The Final Distribution Date shall be a date, as determined by the Wind-Down Officer, (i) which is after the liquidation into cash of all assets of the Debtors (other than those assets abandoned) and collection of other sums due or otherwise remitted or returned to the Estates, and (ii) on or after which the Wind-Down Officer makes a final distribution from the Disputed Claims Reserves after final resolution of all Disputed Claims.

1.62    "Gamma Lending" means Gamma Lending S58 LP.

1.63    "Gamma Lending II" means Gamma Lending S58 II LP.

1.64    "Gamma Funding" means Gamma Funding LP.

1.65    "Gamma Funding Management" means Gamma Funding Management

1.66    "Gamma LLC" means Gamma Funding LLC.

1.67    "Gemini Contract" means the Inclusionary Air Rights Purchase Agreement dated as of January 20, 2015, between one or more of the Debtors and Gemini Residential, LLC.

1.68    "Grandfathering" means in the event of the enactment of an amendment to the New York City Zoning Resolution (the "NYC Zoning Amendment") that in any way further restricts the  potential development of the Real Property, (a) the Department of Buildings or the New York City Board of Standards and Appeals, as the case may be, has determined, pursuant to Zoning Resolution Section 11-331, that construction of the proposed development on the Real Property may be continued pursuant to a building permit issued prior to the effective date of the NYC Zoning Amendment; or (b) the New York City Board of Standards and Appeals has determined, under principles of common law vesting, that sufficient work has been undertaken and sufficient expenditures have been made to establish a vested right to complete construction

8

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

authorized pursuant to the Zoning Resolution regulations in effect prior to the effective date of any NYC Zoning Amendment.

1.69 "Initial Plan Funding" means, subject to the occurrence of a Lender Resolution, $4,000,000, which the Lender shall contribute pursuant to Section 6.02 on the later of (i) the Effective Date (or as soon thereafter as is reasonably practicable if a Lender Resolution has not occurred by the Effective Date) or (ii) the Sale Date, and which funds shall be used to make distributions under the Plan.

1.70 "Late Filed Claim" means any Claim that is tardily filed against a Debtor after the applicable Bar Date and any Claim filed against Sutton Owner NY that was not also timely filed against any of the other Debtors.

1.71 "Lender" means Sutton 58 Associates LLC.

1.72 "Lender Additional Cash Bid" shall have the meaning ascribed to it in Section 6.02

1.73 "Lender Contribution" means the Initial Plan Funding, the Subsequent Plan Funding, if any, and the Expense Contribution; provided, that the Lender Contribution shall be made only in the event that a Lender Resolution occurs, including if the Lender elects to deem a Lender Resolution to have occurred as provided herein.

1.74 "Lender Credit Bid Threshold" means the sum of (x) Lender's Allowed Secured Claims for the Acquisition Loan and Building Loan, (y) Lender's Claims under the Cash Collateral Stipulation, and (z) the Initial Plan Funding and the Expense Contribution.

1.75 "Lender Deficiency Claim" means the aggregate amount of the Lender's Allowed Secured Claim for the Acquisition Loan and Building Loan Claims less

(i) if the Lender (or its designee) is the Purchaser pursuant to the Credit Bid Agreement, the amount of the Lender's Credit Bid; or

(ii) if the Lender (or its designee) is not the Purchaser pursuant to the Credit Bid Agreement, the amount of Sale Proceeds that are actually received by the Lender in respect of its Allowed Secured Claims in accordance with the Plan.

1.76 "Lender Resolution" means that the Lender and its affiliated and related entities, including Gamma LLC, prevail on issues and claims in the Adversary Proceeding such that the full amount of the Acquisition Loan and Building Loan Claims are Allowed Secured Claims; provided however that a Lender Resolution shall be deemed to have occurred for all purposes hereunder if any of the following occurs:  (i) the Lender prevails on some, but not all, of the issues and claims in the Adversary Proceeding, and nonetheless elects to deem a Lender Resolution to have occurred, (ii) the Lender (or its designee) acquires the Assets under the Plan, or (iii) the Lender consents or otherwise does not object to the sale of the Assets to a Third Party Purchaser for an amount less than the sum of (x) Lender's Allowed Secured Claims for the Acquisition Loan and Building Loan, and (y) Lender's Claims under the Cash Collateral Stipulation,.

9

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

1.77    "Lien" means a "lien" as defined in Section 101(37) of the Bankruptcy Code and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

1.78    "Membership Interests" means all of the membership interests in the Debtors.

1.79    "Mezz Loan" means that loan made by the Lender to Sutton Mezz, which loan is secured by Liens on the Sutton Owner DE Membership Interests.

1.80    "Mezz Loan Claims" means all Claims of the Lender against Sutton Mezz arising under or in connection with, or otherwise relating to, the Mezz Loan or the Mezz Loan Documents, including in respect of principal, interest, additional interest, fees, costs, protective advances and expenses.

1.81    "Mezz Loan Documents" means (i) the Mezzanine Promissory Note made by Sutton Mezz in favor of the Lender, (ii) the Mezzanine Loan Agreement between Sutton Mezz and the Lender, (iii) all pledge agreements, security agreements, financing statements and other collateral documents relating to, or creating liens or security interests in respect of, any of the foregoing documents or the Claims arising thereunder or in connection therewith, and (iv) all instruments, documents and agreements related to the Mezz Loan or otherwise related to any of the foregoing; as each of the foregoing may have been subsequently modified, amended, supplemented or otherwise revised from time to time.

1.82    "Other Personal Property" means such furniture, equipment and other tangible personalty not used in connection with or located at the Real Property and used in connection with the Apartments.

1.83    "Other Secured Claims" means any Secured Claim, including Claims secured by properly perfected mechanics', materialmen's, or similar liens, against property of any Debtor, but excluding the Acquisition Loan and Building Loan Claims and the Mezz Loan Claims.

1.84    "Person" has the meaning assigned to it in Section 101(41) of the Bankruptcy Code.

1.85    "Plan" means this Joint Plan of Liquidation and any amendments permitted in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.86    "Plan Proponents" means the Creditors' Committee and the Lender.

1.87    "Plan Supplement" means a compilation of documents and forms of documents, schedules and exhibits to the Plan to be filed with the Bankruptcy Court, and additional documents filed as supplements or amendments to the Plan Supplement, including the following: (i) the Purchase Agreement, (ii) the Bid Procedures, (iii) the Wind-Down Officer Agreement, and (iv) the identity of the initial Wind-Down Officer, each in form and substance reasonably acceptable to the Plan Proponents.

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

1.88    "Post-Confirmation Estate Assets" means (i) as of the Effective Date, the Excluded Assets and, prior to the closing of the Sale, the Assets, (ii) such additional or different corpus, assets or investments, if any, as the Wind-Down Officer may from time to time acquire and/or hold and administer under the provisions of the Plan, and (iii) any and all dividends, rents, royalties, income, proceeds and other receipts of, from or attributable to the foregoing.

1.89    "Priority Claims" means those Claims that are entitled to priority in payment under Section 507(a) of the Bankruptcy Code that are not Administrative Expense Claims or Priority Tax Claims.

1.90    "Priority Tax Claims" means those Claims of governmental units that are entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

1.91    "Pro Rata Share" means with respect to any Class of Claims at any time, the proportion that the amount of Claim in such Class bears to the aggregate amount of all Claims in such Class at such time (including Claims that are Disputed Claims at such time).  For the purpose of this definition, the amount of a Disputed Claim shall be the amount of such Claim as estimated in accordance with the provisions of Section 11.02.

1.92    "Professional Fee Claims" means Claims against the Debtors of Professionals or any other Person for compensation and/or reimbursement of expenses pursuant to Section 327, 328, 330, 331, 363 or 503(b) of the Bankruptcy Code for Claims of Professionals accruing prior to the Effective Date.

1.93    "Professional Fee Claims Bar Date" means 4:00 p.m. (prevailing Eastern time) on the date that is sixty (60) days after the Effective Date.

1.94    "Professionals" means all attorneys, accountants, appraisers, consultants, brokers, auctioneers, financial advisors, investment bankers, and other professionals retained or to be compensated in the Debtors' Chapter 11 Cases pursuant to an order of the Bankruptcy Court, pursuant to, inter alia, Sections 327, 328, 330, 331, 363, 503(b) or 1103 of the Bankruptcy Code.

1.95    "Purchase Agreement" means the Asset Purchase and Sale Agreement pursuant to which some or all of the Assets would be sold to a Third Party Purchaser in accordance with the Plan, the Confirmation Order and the Bid Procedures. The form of the Purchase Agreement shall be a Plan Supplement.

1.96    "Purchaser" means the Person selected at the Auction, in accordance with the Bid Procedures, as having made the highest and best bid, in accordance with the Bid Procedures, to purchase the Assets pursuant to, and on the terms and conditions set forth in, either (i) with respect to a Third Party Purchaser, the Purchase Agreement or (ii) with respect to Lender (or its designee), the Credit Bid Agreement.

1.97    "Real Property" means the real property located at 428, 430 and 432 East 58th Street, New York, New York 10022, together with any and all rights, interests, hereditaments, entitlements and appurtenances of any nature now or hereafter belonging, relating or pertaining thereto, including any and all development and air rights.

11

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

1.98    "Rejection Damage Claim" means any Claim arising from the rejection of any Executory Contract in accordance with Article VIII of the Plan.

1.99    "Related Persons" means as to any Person, such Person's current and former direct and indirect equityholders, members, partners, subsidiaries, affiliates, funds, managers, investors, managing members, officers, directors, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents and other representatives (including their respective equityholders, members, partners, subsidiaries, affiliates, funds, managers, managing members, officers, directors, employees, advisors, principals, attorneys, professionals, accountants, investment bankers, consultants, agents and other representatives).

1.100    "Released Claims" means Claims, Equity Interests, Causes of Action or liabilities that have been released pursuant to the Plan or as to which the Exculpated Parties are exculpated pursuant to Section 9.08 of the Plan.

1.101    "Released Parties" means the members of the Creditors' Committee in their capacity as such and the Lender and all of their respective Related Persons.  For the avoidance of doubt, neither the Debtors nor any Related Person relative to the Debtors is a Released Party or otherwise entitled to any of the releases and exculpations under the Plan.

1.102    "Releasing Party" means each of: (a) the holders of Claims, (b) the holders of Equity Interests, (c) the Creditors' Committee, and (d) with respect to each of the foregoing entities in clauses (a) through (c), such person's current and former Affiliates, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals, in each case in their capacity as such.

1.103    "Sale" means the sale of the Assets in accordance with the Bid Procedures and the Confirmation Order and on the terms set forth in either the Credit Bid Agreement or the Purchase Agreement, as applicable, which is effectuated through this Plan pursuant to Sections 363 and 1123 of the Bankruptcy Code.

1.104    "Sale Date" means the date on which the closing occurs and the Assets are sold pursuant to this Plan, the Confirmation Order and the Bid Procedures Order.

1.105    "Sale Proceeds" means the proceeds of the Sale (a) to a Third Party Purchaser pursuant to a Purchase Agreement or (b) if and to the extent the Lender (or its designee) acquires the Assets, cash proceeds paid by the Lender (or its designee), if any, in excess of the Lender Credit Bid Threshold as provided for more fully in Section 6.02 (which provides that cure amounts and other obligations assumed by the Lender (or its designee) on account of any assumed Executory Contracts shall not be included in the determination of the cash portion of its purchase price for such calculation purposes).

1.106    "Secured Claim" means any Claim that is (a) secured by a valid, perfected and enforceable Lien on any property of any Debtor that is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, to the extent of the value of such property, as determined pursuant to Section 506(a) of the Bankruptcy Code, or (b) subject to a valid right of setoff under Section 553 of the Bankruptcy Code.

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

1.107   "State Court Action" means that action styled, *Sutton 58 Associates LLC v. Joseph Beninati, Christopher Jones, Daniel Lee*, pending in the Supreme Court of the State of New York, County of New York, and assigned Index No. 651296/2016.

1.108   "Subordinated Claim" means a Claim that is subordinated pursuant to Section 510(b) or 501(c) of the Bankruptcy Code, or by Order of the Bankruptcy Court, or otherwise.

1.109   "Subsequent Distribution" means any distribution of Available Cash made to the holders of Allowed Claims on a Subsequent Distribution Date in accordance with Section 11.02 of this Plan.

1.110   "Subsequent Distribution Date" means any date, as determined by the Wind-Down Officer, which is after the Effective Date and prior to the Final Distribution Date, on which a distribution of Available Cash is made to holders of Allowed Claims in accordance with Section 11.02 of this Plan.

1.111   "Subsequent Plan Funding" is defined in Section 6.02.

1.112   "Sutton Mezz" means BH Sutton Mezz LLC.

1.113   "Sutton Owner DE Membership Interests" means the membership interest in Sutton Owner DE.

1.114   "Sutton Mezz Membership Interests" means the membership interest in Sutton Mezz.

1.115   "Sutton Mezz Petition Date" means February 26, 2016, the date that Sutton Mezz filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

1.116   "Sutton Owner DE" means Sutton 58 Owner, LLC, a Delaware limited liability company.

1.117   "Sutton Owner DE Petition Date" means April 6, 2016, the date that Sutton Owner DE filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

1.118   "Sutton Owner NY" means Sutton 58 Owner, LLC, a New York limited liability company.

1.119   "Sutton Owner NY Petition Date" means July 12, 2016, the date that Sutton Owner NY filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

1.120   "Third Party Purchaser" means the Person who is not the Lender (or its designee) and who is selected at the Auction, in accordance with the Bid Procedures, as having made the highest and best bid, in accordance with the Bid Procedures, to purchase the Assets pursuant to, and on the terms and conditions set forth in, the Purchase Agreement.

13

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

1.121    "Third Party Release" means the release set forth in Section 9.07.

1.122    "United States Trustee" means the United States Trustee for the Southern District of New York.

1.123    "United States Trustee Fees" means all fees and charges assessed against the Estates under section 1930 of title 28 of the United States Code.

1.124    "Unsecured Claim" means any Claim, or portion thereof (including the Acquisition Loan and Building Loan Claim and the Mezz Loan Claim, in each case to the extent such Claims are not Secured Claims), which is not an Administrative Expense Claim, a Secured Claim, an Acquisition Loan and Building Loan Claim (to the extent such Claim is a Secured Claim), a Mezz Loan Claim (to the extent such Claim is a Secured Claim), a Priority Claim, a Priority Tax Claim, a Subordinated Claim, or a Late Filed Claim.

1.125    "Wind-Down Officer" means such Person to be identified in a Plan Supplement and to be appointed under the Plan to wind up the affairs of the Debtors as provided herein.

1.126    "Wind-Down Officer Agreement" means the agreement governing the terms and conditions of the employment of the Wind-Down Officer, dated as of the Effective Date, in the form included in the Plan Supplement.

1.127    "Wind-Down Reserve" means an amount of cash set aside from time to time by the Wind-Down Officer to fund the wind up of the Debtors and to pay costs, fees and expenses, and reserve for liabilities, including costs, fees, and expenses of the Estates payable after the Effective Date, which amount shall be funded with the Expense Contribution or from the Sale Proceeds.

1.128    Rules of Construction.  For the purposes of the Plan: (1) any capitalized term that is used but not defined in the Plan has the meaning assigned to such term, if any, in the Bankruptcy Code; (2) unless otherwise stated herein, any reference in the Plan to an existing document or exhibit shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (3) except as otherwise provided in the Plan, all references in the Plan to "Articles" or "Sections" are references to Articles or Sections of the Plan; (4) except as otherwise provided in the Plan, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (5) the words "includes" and "including" are not limiting, and shall be deemed to be followed by the words "without limitation"; (6) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (8) any immaterial effectuating provisions may be interpreted by the Plan Proponents in a manner that is consistent with the overall purpose and intent of the Plan without further order of the Bankruptcy Court.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    General Classification Rule

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

A Claim that is properly included in more than one Class is in a Class to the extent it qualifies within the description of such Class and is in a different Class to the extent it qualifies within the description of such different Class.

2.02    Unclassified Claims

2.02.1    Administrative Expense Claims:  Allowed Administrative Expense Claims, including Professional Fee Claims and United States Trustee Fees incurred by the United States Trustee.

2.02.2    Priority Tax Claims:    Claims of governmental units that are entitled to priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code.

2.03    Classification

For purposes of the Plan, except for all Unclassified Claims as set forth above, all Claims shall be placed in the following Classes, which Classes shall be mutually exclusive.

2.03.1    Class 1 Claims – Priority Claims.  This Class consists of Priority Claims.

2.03.2    Class 2 Claim – Cash Collateral Claim.  This Class consists of the Allowed Secured Claim of the Lender under the Cash Collateral Stipulation.

2.03.3    Class 3 Claims – Secured Acquisition Loan and Building Loan Claims.  This Class consists of the Acquisition Loan and Building Loan Claims to the extent such Claims are Secured Claims.

2.03.4    Class 4 Claims – Other Secured Claims.  This Class consists of Other Secured Claims.

2.03.5    Class 5 Claims – Unsecured Claims against Sutton Owner DE. This Class consists of Unsecured Claims against Sutton Owner DE.

2.03.6    Class 6 Claims – Mezz Loan Claim.  This Class consists of the Mezz Loan Claim to the extent such Claim is a Secured Claim.

2.03.7    Class 7 Claims – Unsecured Claims against Sutton Mezz.  This Class consists of any Unsecured Claims against Sutton Mezz.

2.03.8    Class 8 Claims – Subordinated Claims.  This Class consists of any Subordinated Claims.

2.03.9    Class 9 Claims – This Class consists of any Late Filed Claims.

2.03.10    Class 10 Interests – This Class consists of the Sutton Mezz Membership Interests.

15

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

## ARTICLE III
## TREATMENT OF CLAIMS

3.01    Administrative Expense Claims

(a)    Administrative Expense Claim Bar Date.    A notice setting forth the Administrative Expense Claim Bar Date will be filed on the Bankruptcy Court's docket and served with the notice of the Effective Date.   No other notice of the Administrative Expense Claim Bar Date will be provided.   All requests for payment of Administrative Expense Claims that accrued on or before the Effective Date (other than Professional Fee Claims, which are subject to the provisions of Section 3.04 of the Plan) must be filed with the Bankruptcy Court and served on counsel for the Plan Proponents and the Wind-Down Officer by the Administrative Expense Claim Bar Date.   Any requests for payment of Administrative Expense Claims that are not properly filed and served by the Administrative Expense Claim Bar Date shall be disallowed automatically without the need for any objection or any action by the Bankruptcy Court.

Unless Lender as a Plan Proponent or the Wind-Down Officer objects to a timely filed and properly served Administrative Expense Claim by the Claims Objection Deadline, or such Administrative Expense Claim has been allowed by prior order of the Bankruptcy Court, then such Administrative Expense Claim shall be deemed allowed in the amount requested.   If Lender as a Plan Proponent or the Wind-Down Officer objects to an Administrative Expense Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Expense Claim should be allowed and, if so, in what amount.

(b)    Treatment.   Each holder of an Allowed Administrative Expense Claim (other than holders of Professional Fee Claims or United States Trustee Fees) shall be paid in full, in cash, by the Wind-Down Officer on or as soon as reasonably practicable after the later of the Effective Date, the Sale Date and the date on which such Claim becomes an Allowed Administrative Expense Claim, or on such other date and upon such other terms as may be agreed by the holder of such Allowed Administrative Expense Claim and the Wind-Down Officer or ordered by the Bankruptcy Court.   In the event of any subsequent conversion of the Chapter 11 Cases to cases under Chapter 7 of the Bankruptcy Code, all payments on account of any Allowed Administrative Expense Claim are deemed to have been made in the ordinary course of the Debtors' business and will not be deemed preferential or unauthorized under Sections 547 or 549 of the Bankruptcy Code.   Holders of Administrative Expense Claims are not entitled to vote on the Plan and are deemed to have accepted the Plan.

Allowed Administrative Expense Claims other than Professional Fee Claims representing liabilities incurred in the ordinary course of business by the Debtors will be paid by the Wind-Down Officer in accordance with the terms and conditions of the arrangements with the particular creditor and in accordance with ordinary business terms.

The Allowed Administrative Expense Claims of the Lender under the Cash Collateral Stipulation are subject to the treatment of such Claims under Section 3.06 below.

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

3.02    United States Trustee Fees

The United States Trustee Fees are unimpaired.  All United States Trustee Fees incurred by the United States Trustee prior to the Effective Date and not yet paid shall be paid by the Wind-Down Officer on or as soon as reasonably practicable after the Effective Date in accordance with the applicable schedule for payment of such fees.  Until each of the Chapter 11 Cases is closed by entry of a final decree of the Bankruptcy Court, the Wind-Down Officer shall pay all additional United States Trustee Fees incurred in accordance with the applicable schedule for the payment of such fees.

3.03    Priority Tax Claims

Priority Tax Claims are unimpaired.  Allowed Priority Tax Claims, if any, will be paid in full, in cash, by the Wind-Down Officer on or as soon as reasonably practicable after the later of the Effective Date and the Sale Date.

3.04    Professional Fee Claims.

(a)    Professional Fee Claims Bar Date.    All final applications for payment of Professional Fee Claims shall be filed with the Bankruptcy Court and served on the Plan Proponents and the Wind-Down Officer on or before the Professional Fee Claims Bar Date.  Any Professional Fee Claim that is not asserted in accordance with this Section 3.04 shall be deemed disallowed under this Plan and the holder thereof shall be enjoined from commencing or continuing any Cause of Action, employment of process or act to collect, offset, recoup or recover such Claim against any of the Estates, the Wind-Down Officer or any of their respective assets or property.

(b)    Treatment.  Each holder of an Allowed Professional Fee Claim shall be paid in cash in an amount equal to such Allowed Professional Fee Claim on or as soon as reasonably practicable after the first Business Day following the date upon which such Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court, unless such holder shall agree to a different treatment of such Claim.

3.05    Class 1 Claims – Priority Claims

Each holder of an Allowed Claim in this Class will be paid in full on or as soon as reasonably practicable after the later of the Sale Date or the Effective Date.  Class 1 is impaired and entitled to vote on the Plan.

The Allowed Priority Claims of the Lender under the Cash Collateral Stipulation are subject to the treatment of such Claims under Section 3.06 below.

3.06    Class 2 Claim – Cash Collateral Stipulation

The treatment of this Class shall be based upon whether the Assets are sold to a Third Party Purchaser or the Lender (or its designee).  Except in the event of a Lender Resolution, if the Assets are sold to a Third Party Purchaser, then, on the Sale Date, the Wind-Down Officer shall apply the Sale Proceeds to pay, in full in Cash, the Lender's Allowed Secured Claim under

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

the Cash Collateral Stipulation.  In the alternative, the Lender (or its designee) shall be entitled, in the Lender's discretion, to include its Allowed Secured Claim under the Cash Collateral Stipulation as part of any Credit Bid.   For the avoidance of doubt, Lender will not receive any distributions from the Lender Contribution on account of its Class 2 Claim.  Class 2 is impaired and entitled to vote on the Plan.

3.07    Class 3 Claims – Secured Acquisition Loan and Building Loan Claims

(a)    The Acquisition Loan and Building Loan Claims have been determined by the Bankruptcy Court to be Secured Claims, and shall be treated as Allowed Secured Claims as provided for in this Class 3.[2]

(b)    Treatment.  (i) On the Sale Date, if the Lender (or its designee) is the Purchaser of the Assets, then (x) the Lender (or its designee) shall receive the Assets free and clear of all Liens, claims, charges, encumbrances or interests of any kind or nature, as provided in the Credit Bid Agreement and the Confirmation Order, and (y) the Lender agrees to forego any right to an additional distribution from Sutton Owner DE under the Plan on account of (1) its Class 3 Acquisition Loan and Building Loan Claims, (2) its Class 5 Lender Deficiency Claim, if any, or (3) its Class 2 Claim under the Cash Collateral Stipulation for any Secured Claim, Priority Claim, Administrative Expense Claim or other Claim of the Lender as provided for under such Cash Collateral Stipulation; provided, however, that nothing in this Plan shall impair in any respect (x) the Lender's (or its designee's) rights to include any such Claims as part of any Credit Bid, or (y) any Claim or Cause of Action that the Lender has or may have against any other Entity relating to or arising in connection with any such Lender Deficiency Claim or other Claims, or any right of the Lender to pursue such Claims and Causes of Action, all of which shall survive the confirmation and effectiveness of this Plan.  For the avoidance of doubt, (i) under this scenario Lender will not receive any distributions from the Lender Contribution, and (ii) nothing herein shall impair Lender's Claims in any other Class.

(ii)    Alternatively, if a Lender Resolution occurs because the Lender consents or otherwise does not object to the sale of the Assets to a Third Party Purchaser for an amount less than the sum of (x) Lender's Allowed Secured Claims for the Acquisition Loan and Building Loan, and (y) Lender's Claims under the Cash Collateral Stipulation, then (a) the Wind-Down Officer shall apply the Sale Proceeds on the Sale Date to pay, in Cash, the aggregate amount of the Allowed Claims in Class 3 until fully paid, and (b) the Lender agrees to forego any right to an additional distribution from Sutton Owner DE under the Plan on account of its Class 3 Acquisition Loan and Building Loan Claims, its Class 5 Lender Deficiency Claim, if any, or its Class 2 Claim under the Cash Collateral Stipulation for any Secured Claim, Priority Claim, Administrative Expense Claim or other Claim of the Lender as provided for under such Cash Collateral Stipulation; provided, however, that nothing in this Plan shall impair in any respect (x) the Lender's (or its designee's) rights to include any such Claims as part of any Credit Bid, or (y) any Claim or Cause of Action that the Lender has or may have against any other Entity relating to or arising in connection with any such Lender Deficiency Claim or other Claims, or any right of the Lender to pursue such Claims and Causes of Action, all of which shall survive the

---

[2] In accordance with the Bankruptcy Court's determination pursuant to the Adversary Proceeding, Lender has amended its Claim to exclude interest on the Building Loan.

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

confirmation and effectiveness of this Plan. For the avoidance of doubt, (i) under this scenario Lender will not receive any distributions from the Lender Contribution, and (ii) nothing herein shall impair Lender's Claims in any other Class.

(iii)  Alternatively, if there is a Lender Resolution and the Assets are sold to a Third Party Purchaser for an amount in excess of the sum of (x) Lender's Allowed Secured Claims for the Acquisition Loan and Building Loan, and (y) Lender's Claims under the Cash Collateral Stipulation,  then, after payment in full of (or establishment of reserves for) Allowed Claim in Class 2, on the Sale Date, the Wind-Down Officer shall apply the Sale Proceeds to pay, in Cash, (aa) the aggregate amount of Lender's Allowed Secured Claims in Class 3 until fully paid, and (bb) to reimburse the Lender in full for the amount of the Initial Plan Funding and the Expense Contribution (if such amounts are paid by the Lender). For the avoidance of doubt, (i) under this scenario Lender will not receive any distributions from the Lender Contribution, but rather, will be reimbursed for the Initial Plan Funding and the Expense Contribution to the extent such amounts are paid by the Lender and (ii) nothing herein shall impair Lender's Claims in any other Class.

(iv)  Finally, if no Lender Resolution occurs and the Assets are sold to a Third Party Purchaser, then, after payment in full of (or establishment of reserves for) Allowed Claim in Class 2, on the Sale Date, the Wind-Down Officer shall apply the remaining Sale Proceeds to pay, in Cash, the aggregate amount of Lender's Allowed Secured Claims in Class 3 until fully paid.

(c)    Class 3 is impaired and entitled to vote on the Plan.

3.08    Class 4 Claims - Other Secured Claims

Except to the extent that a holder of an Other Secured Claim that is an Allowed Secured Claim agrees to a less favorable treatment of such Other Secured Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Other Secured Claim, the holder thereof shall receive on or as soon as practicable after the later of the Effective Date or the Sale Date, at the election of the Wind-Down Officer: (A) payment in full in Cash, or (B) delivery of the collateral securing such Claim. Class 4 is impaired and entitled to vote on the Plan.

Notwithstanding the foregoing, to the extent the value of the Assets is less than Lender's total Allowed Secured Claims for the Acquisition Loan and Building Loan Claims and under the Cash Collateral Stipulation, then, pursuant to Section 506(a) of the Bankruptcy Code and as a result of the Lender being undersecured, any mechanic's lien claims that are junior to such Allowed Secured Claims of Lender will be classified and treated as Unsecured Claims as provided for in Class 5.

3.09    Class 5 Claims – Unsecured Claims against Sutton Owner DE

This Class is impaired. Each holder of an Allowed Claim against Sutton Owner DE in this Class shall receive its Pro Rata Share of Available Cash (as provided for below) when and as such distributions are made. Class 5 is impaired and entitled to vote on the Plan.

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

After satisfaction in full of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Claims in Classes 1, 2, 3 and 4, and unless otherwise agreed to by the holder of an Allowed Unsecured Claim in Class 5, the Wind-Down Officer shall pay to each holder of an Allowed Unsecured Claim in Class 5 its Pro Rata Share of Available Cash (not to exceed the amount of its Allowed Claim) on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the Sale Date and (iii) the date on which such Claim becomes an Allowed Claim.  If, after the Effective Date, any Cash is available from, among other things, the liquidation of the Excluded Assets, the prosecution and enforcement of Causes of Action, the release of funds from the Distribution Reserve or the Disputed Claims Reserve or the Wind-Down Reserve, or unclaimed, undeliverable or time-barred distributions to holders of Allowed Claims pursuant to this Plan and, in any such case, becomes Available Cash, each holder of an Allowed Unsecured Claim in Class 5 will be paid on a Subsequent Distribution Date, if any, and the Final Distribution Date its Pro Rata Share of such Available Cash at such time in accordance with Section 11.02 of this Plan, provided that the aggregate distributions received pursuant to the Plan do not exceed the amount of the Allowed Claim.

The treatment of the Lender's Allowed Unsecured Claim (if any) in Class 5 shall be subject to the provisions of Section 3.07(b).

3.10    Class 6 Claim – Secured Mezz Loan Claim

(a)    The Mezz Loan Claim has been determined by the Bankruptcy Court to be an Allowed Secured Claim pursuant to the Adversary Proceeding.

(b)    Treatment.  In the event of a Sale to a Third Party Purchaser, the Lender shall receive all Available Cash after the payment in full of (or establishment of a reserve for) all Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Claims in all prior classes of Claims, until the payment in full of the Mezz Loan Claim.

(c)    Class 6 is impaired and is entitled to vote on the Plan.

3.11    Class 7 Claims – Unsecured Claims against Sutton Mezz

This Class is impaired.  In the event of a Sale to a Third Party Purchaser, if Available Cash remains after the payment in full of (or establishment of a reserve for) all Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Claims in all prior classes of Claims, then each holder of Allowed Unsecured Claims against Sutton Mezz shall receive its Pro Rata Share of such remaining Available Cash until the payment in full of all Allowed Unsecured Claims against Sutton Mezz. Class 7 is impaired and entitled to vote on the Plan.

3.12    Class 8 Claims – Subordinated Claims

This Class is impaired.  In the event of a Sale to a Third Party Purchaser, if Available Cash remains after payment in full of (or establishment of a reserve for) all Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Claims in all prior classes of Claims, then each holder of an Allowed Claim that is a Subordinated Claim shall

20

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

receive its Pro Rata Share of such remaining Available Cash until the payment in full of such Allowed Claim.  Class 8 is impaired and entitled to vote on the Plan.

3.13    Class 9 Claims – Late Filed Claims

This Class is impaired.  In the event of a Sale to a Third Party Purchaser, if Available Cash remains after payment in full of (or establishment of a reserve for) all Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Claims in all prior classes of Claims, then each holder of an Allowed Claim that is a Late Filed Claim shall receive its Pro Rata Share of such remaining Available Cash until the payment in full of such Allowed Claim.  Class 9 is impaired and entitled to vote on the Plan.

3.14    Class 10 Interests – Sutton Mezz Membership Interests

This Class is impaired.  In the event of a Sale to a Third Party Purchaser, if Available Cash remains after the payment in full of (or establishment of a reserve for) all Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Claims in all prior classes of Claims, then the holders of the Sutton Mezz Membership Interests shall receive their pro rata share of such remaining Available Cash.  Class 10 is impaired and entitled to vote on the Plan.

## ARTICLE IV

## IDENTIFICATION OF IMPAIRED CLAIMS UNDER THE PLAN

4.01    Impaired Classes

Classes 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10 are impaired under the Plan and are entitled to vote to accept or reject the Plan.

## ARTICLE V

## CONDITIONS PRECEDENT

5.01    Conditions Precedent to Confirmation

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived in accordance with the terms of the Plan:

5.01.1    The Bankruptcy Court shall have approved the Disclosure Statement in form and substance reasonably acceptable to the Plan Proponents;

5.01.2    The Bankruptcy Court shall have entered the Bid Procedures Order in form and substance reasonably acceptable to the Plan Proponents;

5.01.3    The Plan shall be in form and substance reasonably acceptable to the Plan Proponents;

21

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

5.01.4        The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Plan Proponents; and

5.01.5        The Bankruptcy Court shall have determined and entered an order finally adjudicating the issues in the Adversary Proceeding, including without limitation, the allowance of the Acquisition Loan and Building Loan Claims and the Mezz Loan Claim.

5.02    Conditions Precedent to the Effective Date

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived in accordance with the terms of the Plan:

5.02.1        The Bankruptcy Court shall have entered the Confirmation Order, which shall grant final approval of the Plan;

5.02.2        The Confirmation Order shall be in full force and effect and not subject to any stay, modification or injunction;

5.02.3        Except to the extent not required under the Confirmation Order or other order of the Bankruptcy Court, all governmental and material third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained or entered, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that could restrain, prevent or otherwise impose materially adverse conditions on such transactions; and

5.02.4        All documents and agreements necessary to implement the Plan, as listed and set forth in the Plan Supplement, will have (a) been tendered for delivery and (b) been effected or executed by all Entities party thereto, or will be deemed executed and delivered by virtue of the effectiveness of the Plan as expressly set forth herein, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

5.03    Waiver of Conditions to Confirmation or the Effective Date

The conditions set forth in this Article V may be waived in whole or part in writing by the Plan Proponents at any time without an order of the Bankruptcy Court.

## ARTICLE VI

## EXECUTION AND IMPLEMENTATION OF PLAN

6.01    Timing of Plan

Notwithstanding anything in Bankruptcy Rule 3020(e) to the contrary, (i) the entry of the Confirmation Order shall constitute a Final Order and the period in which an appeal must be filed shall commence upon the entry thereof, and (ii) the Confirmation Order shall take effect immediately upon its entry and the Plan Proponents are authorized to consummate the Plan

22

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

immediately after entry of the Confirmation Order and the satisfaction or waiver of all other conditions to the Effective Date of the Plan, in accordance with the terms of the Plan.

6.02   Funding of the Plan

This Plan shall be implemented based upon the Sale of the Assets.

In the event a Lender Resolution occurs, including if the Lender elects to deem a Lender Resolution to have occurred as provided herein, then on the later of (i) the Effective Date or as soon as reasonably practicable thereafter if the Lender Resolution occurs after the Effective Date, or (ii) the Sale Date, the Lender will fund the Plan by transferring to the Wind Down Officer (x) the Initial Plan Funding and (y) the Expense Contribution; provided, however, that as and to the extent provided in Section 3.07(b), the Sale Proceeds shall be applied on the Sale Date to reimburse the Lender in full for the amount of the Initial Plan Funding and the Expense Contribution (if such amounts have been previously paid by the Lender). Any portion of the Expense Contribution that is not required for the payment of the costs and expenses described above may be distributed to holders of Allowed Claims as provided in this Plan. If the Lender (or its designee) acquires the Assets as the Purchaser pursuant to the Credit Bid Agreement, then one (but not both) of the following will apply: (A) upon the qualification of the Real Property for Grandfathering, the Lender shall fund an additional $500,000 under the Plan, *or* (B) alternatively, if the Lender sells the Real Property to a third party on or before the nine-month anniversary of the Sale Date and the Net Sale Proceeds exceed $190 million, then the Lender shall fund 50% of such excess under the Plan (up to $500,000), but in no event will the Lender be required to fund more than an additional $500,000 under the Plan. The additional alternative (and mutually exclusive) funding contributions contemplated by the immediately preceding sentence are referred to as the "Subsequent Plan Funding". For purposes of this provision, "Net Sale Proceeds" means the cash proceeds received by the Lender for the sale of the Real Property net of (a) commissions, broker fees, attorneys' fees, accountants' fees, investment banking fees and other reasonable transaction costs, fees and expenses properly attributable to such transaction and payable by the Lender in connection therewith; (b) all stamp, transfer, mortgage recording or other similar tax or governmental assessment paid by Lender (or its designee) in connection with any such sale, including an appropriate reserve (if applicable) for taxes; (c) carrying costs (including insurance, taxes, security and other direct preservation and maintenance costs) for the Property incurred by the Lender (or its designee) for any period prior to and including the date of any such sale; and (d) any amounts escrowed or reserved against indemnification obligations or purchase price adjustments. The Lender Contribution shall be payable only in the event that a Lender Resolution occurs, including if the Lender elects to deem a Lender Resolution to have occurred as provided herein. For the avoidance of doubt, the Lender's sole payment obligation under the Plan, including in respect of any acquisition of Assets under a Credit Bid Agreement, shall be the Lender Contribution; provided however that if and to the extent the Lender (or its designee) acquires the Assets under the Plan for an amount in excess of the Lender Credit Bid Threshold, then the Lender (or its designee) shall pay as additional consideration the cash portion of its purchase price on account of its purchase of the Assets in excess of the Lender Credit Bid Threshold (such excess amount, the "Lender Additional Cash Bid") (and, for the avoidance of doubt, the Lender's obligation with respect to the Subsequent Plan Funding shall be reduced or extinguished on a dollar for dollar basis by the amount of the Lender Additional Cash Bid); provided further however that cure amounts and

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

other obligations assumed by the Lender (or its designee) on account of any assumed Executory Contracts shall not be included in the determination of the cash portion of its purchase price for such calculation purposes. In the event that a Third Party Purchaser is the Purchaser, then the Plan shall be funded with the Sale Proceeds of such Sale as provided for in the Plan, proceeds of the sale of Post-Confirmation Estate Assets and, if applicable, the Lender Contribution.

6.03    Sale of Assets.

Pursuant to the Confirmation Order and the Bid Procedures, the Assets shall be sold at the Auction pursuant to Sections 363, 365 and 1123(a)(5) of the Bankruptcy Code.

In the event a Lender Resolution occurs, including if the Lender elects to deem a Lender Resolution to have occurred as provided herein, the following procedures shall govern the Sale: The Lender agrees to serve (either directly or through a designee) as a stalking horse bidder pursuant to a Credit Bid Agreement, which offer is subject to a marketing and auction process pursuant to the Bid Procedures to solicit higher and better bids.  The Auction shall take place on or before December 13, 2016. The Auction may be adjourned for up to one week such that it occurs on or before December 20, 2016 with the prior consent of the Committee and the Lender, which consent shall not be unreasonably withheld.  The Lender shall be entitled to submit one or more Credit Bids in the Auction that may include a bid of up to the full amount of the Allowed Secured Claims for the Acquisition Loan and Building Loan Claims (including all pre- and post-petition interest, additional interest, fees, costs, protective advances and expenses) plus the Allowed Secured Claim under the Cash Collateral Stipulation, without regard to the value of the Lender's collateral, and any Credit Bids that include such Allowed Secured Claims shall be treated as equal in value to a cash bid of an equal amount.  At the conclusion of the Auction, and in accordance with the Bid Procedures, the Debtors shall select the highest and best bid.  In the event that a Third Party Purchaser is the successful bidder, then the Debtors and the Third Party Purchaser shall enter into the Purchase Agreement, which shall be in form and substance acceptable to the Lender (whose consent shall not be unreasonably withheld).  The Sale of the Assets to a Third Party Purchaser under the Purchase Agreement or to the Lender (or its designee) under the Credit Bid Agreement shall be consummated on the terms thereof on or before February 28, 2017, and the Assets shall be sold to the Purchaser free and clear of all Liens, claims, charges, encumbrances or interests of any kind or nature.

6.04    Exemption From Certain Transfer Taxes

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan and the making or delivery of an instrument of transfer of property, pursuant to or in connection with the Plan, the Sale pursuant to the Purchase Agreement or any Credit Bid Agreement shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax or governmental assessment in the United States or by any other governmental unit, and the Confirmation Order shall direct and be deemed to direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to the Sale of the Assets to the Purchaser and the sale or other disposition of the Excluded Assets.

24

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

6.05    Wind Down of the Debtors

The Debtors shall continue to exist after the Effective Date for the purposes of making distributions to holders of Allowed Claims under the Plan, and to take any other steps in furtherance thereof or as may be reasonably necessary or appropriate to wind-down their affairs and their Estates, including with respect to liquidating and/or abandoning the Excluded Assets, as appropriate, and filing and prosecuting objections to Claims.  The principal purpose of the Debtors shall be to implement the Plan, including to liquidate, collect and maximize the Cash value of the Assets and the Excluded Assets, and to make distributions on account of Allowed Claims in accordance with the terms of the Plan.

On the Effective Date, all existing officers, directors, managers and members of the Debtors shall be deemed to have resigned and the Wind-Down Officer shall be appointed to wind up the affairs of the Debtors, as provided herein.

The activities and operations of the Debtors and the Wind-Down Officer shall be funded through the Wind-Down Reserve to be established on or as soon as reasonably practicable after the Effective Date for the purpose of maintaining Cash from time to time necessary to satisfy the reasonable costs and expenses of the Wind-Down Officer, including fees and costs incurred in connection with (i) the implementation of the Plan, (ii) the liquidation of the Excluded Assets, (iii) the resolution of Disputed Claims and Causes of Action, (iv) the winding down of the Estates and affairs of the Debtors, (v) the reserves for potential liabilities and (vi) compensation for the Wind-Down Officer and its professionals, advisors and other agents.  The Wind-Down Reserve shall initially be funded as of the later of the Effective Date and the Sale Date from either (i) the Expense Contribution in the event of a Lender Resolution or (ii) after the application of the Sale Proceeds pursuant to Section 3.07(b), the Wind-Down Officer from the Sale Proceeds and proceeds of the sale of Post-Confirmation Estate Assets in all other circumstances.  Any cash released from the Wind-Down Reserve shall be available for distribution to holders of Allowed Unsecured Claims.

The certificate of incorporation, by-laws, limited liability company agreement, operating agreement or similar corporate constituent documents of each Debtor shall be deemed amended, to the extent necessary, in order to effectuate the provisions of this Article VI, and to the extent such documents are deemed amended, such amendments are deemed to be approved pursuant to the Plan and require no further action or approval of any kind or nature.

6.06    Wind-Down Officer

The identity of the Wind-Down Officer shall be disclosed in a Plan Supplement and will be subject to the approval of the Bankruptcy Court in the Confirmation Order.  After the Effective Date, the Wind-Down Officer may be removed and/or replaced by order of the Bankruptcy Court. The Wind-Down Officer may appoint a successor reasonably acceptable to the Lender, it being understood that there shall exist no period of time in which no person or entity has assumed the rights, and is responsible for performing the duties and obligations, of the Wind-Down Officer hereunder. The Wind-Down Officer shall have the right to petition the Court to appoint a successor Wind-Down Officer.  Any such successor shall have and shall

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

assume all of the rights, duties and obligations of the Wind-Down Officer as set forth in this Plan.

The Wind-Down Officer shall be deemed the representative of the Estates under Section l123(b)(3)(B) of the Bankruptcy Code, and shall have all rights associated therewith. Pursuant to the terms of the Wind-Down Officer Agreement, the Wind-Down Officer shall have all duties, powers, and standing authority necessary to implement the Plan and to administer and liquidate the assets of the Estates for the benefit of the holders of Allowed Claims, and shall be entitled to indemnification and exculpation from the Estates, including the following:

(a)    Appointment of Wind-Down Officer. Effective immediately on the Effective Date, the Wind-Down Officer is hereby designated, appointed and vested with full authority and control over the Post-Confirmation Estate Assets, including, without limitation, the Excluded Assets and to effectuate and consummate the Sale of the Assets at the Auction in accordance with the terms of the Plan. The Wind-Down Officer will have the powers and responsibilities of a Disbursing Agent and trustee in all respects as it relates to all matters set forth in the Plan, including the Sale of the Assets in accordance with the terms hereof and the Bid Procedures and the distribution of any Sale Proceeds.

(b)    Duties and Powers.

(i)    On the Effective Date, the Wind-Down Officer will be the representative of and successor to the Debtors, and will have the rights and powers provided in the Bankruptcy Code, in addition to any rights and powers granted herein and in the Confirmation Order. Without limiting the foregoing, the Wind-Down Officer will be the successor-in-interest to the Debtors with respect to all interests constituting Post-Confirmation Estate Assets and with respect to the creditors holding Claims under the Plan. The Wind-Down Officer shall act in a fiduciary capacity for the holders of all Allowed Claims under the Plan. The Wind-Down Officer shall assume all of the responsibilities, duties and obligations of the Debtors' former officers, directors, managers or managing members that arise on or after the Effective Date, and is empowered and authorized to satisfy such responsibilities, duties and obligations without further corporate or limited liability company authority as may have been required prior to the Effective Date. The Wind-Down Officer will pay from the Post-Confirmation Estate Assets (other than the Assets) all ordinary and necessary costs of protecting, preserving, disposing, liquidating and realizing upon the Post-Confirmation Estate Assets. The Wind-Down Officer will liquidate and administer the Post-Confirmation Estate Assets, including making distributions therefrom, all in accordance with the terms of the Plan. Unless otherwise excused or exempted from doing so by the Bankruptcy Code, the Wind-Down Officer will abide by all laws, including tax laws. The Wind-Down Officer shall have sole and exclusive authority for the retention of professionals to assist in any manner on and after the Effective Date.

(ii)    The Wind-Down Officer will have the power to take any and all actions which, in the business judgment of the Wind-Down Officer, are necessary

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

or appropriate to fulfill its obligations under the Plan, including, but not limited to, each of the powers set forth below:

(A) hold, manage, protect, administer, collect, sell, liquidate, prosecute, transfer, resolve, settle, adjust, invest, distribute or otherwise dispose of any Post-Confirmation Estate Assets solely for the benefit of holders of Allowed Claims and solely in accordance with the Plan and, as to the Assets, the Bid Procedures, including without limitation executing deeds, assignments and similar conveyance instruments with respect to the Assets;

(B) make all distributions to be funded under the Plan;

(C) assume control over all of the Post-Confirmation Estate Assets;

(D) pay all necessary expenses incurred in connection with the duties and responsibilities of the Wind-Down Officer under the Plan to the extent of available funds, including funds in the Wind-Down Reserve;

(E) administer, implement and enforce all provisions of the Plan;

(F) administer the Plan and the Post-Confirmation Estate Assets;

(G) abandon any Post-Confirmation Estate Assets (other than the Assets);

(H) to invest Cash in accordance with Section 345 of the Bankruptcy Code or otherwise as permitted by order of the Bankruptcy Court;

(I) to purchase and carry all insurance policies and pay all premiums and costs deemed necessary and advisable;

(J) undertake such other responsibilities as are reasonable and appropriate in connection with the Plan; and

(K) take all actions necessary to effectuate the Auction of the Assets and the disposition of the Sale Proceeds in accordance with the terms hereof and the Bid Procedures.

(c)     Compensation.   The Wind-Down Officer shall be compensated as specified in the Wind-Down Officer Agreement and shall be paid by the Estates, subject to and consistent with the Wind-Down Budget.

(d)     Wind-Down Officer Exculpation.   To the extent permitted by Section 1125(e) of the Bankruptcy Code, the Wind-Down Officer, together with its partners, members, officers, directors, employees, agents and representatives, are exculpated pursuant to the Plan from all Persons, entities (as defined in the Bankruptcy Code), holders of Claims and Interests, and all other parties in interest, from any and all causes of action, of any kind or nature, arising out of the discharge by the Wind-Down Officer of

27

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

the powers and duties conferred upon the Wind-Down Officer by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Wind-Down Officer's willful misconduct or gross negligence.  To the extent permitted by Section 1125(e) of the Bankruptcy Code, no Holder of a Claim or an Interest, or representative thereof, shall have or pursue any cause of action (i) against the Wind-Down Officer or its partners, members, officers, directors, employees, agents and representatives for making Plan Distributions in accordance with the Plan, or (ii) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan.  Nothing contained in this section shall preclude or impair any holder of an Allowed Claim from bringing an action in the Bankruptcy Court to compel the making of Distributions contemplated by the Plan on account of such Allowed Claim.

(e)    Miscellaneous.  Upon the completion of all acts required to be performed by the Wind-Down Officer under the Plan and the filing by the Wind-Down Officer of a certification to that effect with the Bankruptcy Court (which may be included in the application for entry of the Final Decree), the Wind-Down Officer shall be relieved of its duties under the Plan for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Wind-Down Officer or payments to be made in connection therewith.  From and after the Effective Date, the Wind-Down Officer shall not be required to file any document, or take any action, to withdraw the Debtors' business operation from any States where the Debtors previously conducted business operations.

As soon as practicable after final distributions under the Plan, the Wind-Down Officer shall wind up the affairs of the Debtors, pay all applicable Taxes, file final tax returns, arrange for storage of its records and dissolve the Debtors pursuant to applicable law.  As soon as practicable thereafter, the Wind-Down Officer shall file with the Bankruptcy Court a final report of distributions and perform such other duties as are specified in the Plan, whereupon the Wind-Down Officer shall have no further duties under the Plan.

6.07    Dissolution of the Debtors

Pursuant to the Confirmation Order, the Wind-Down Officer shall be authorized, in its sole and absolute discretion, to take all actions reasonably necessary to manage and dissolve the Debtors and their subsidiaries under applicable laws, including the laws of the jurisdictions in which they may be organized or registered, notwithstanding any applicable consent requirements or other restrictions contained in any agreements or other documents to which any Debtor is a party.  In this regard, the notices of the filing of these bankruptcy cases and this Plan to creditors, the opportunity provided to creditors to file proofs of claims in these bankruptcy cases and the provisions for payments to creditors provided under this Plan shall be deemed to constitute and effectuate the dissolution and winding-up of the Debtors' business as contemplated under applicable non-bankruptcy law for dissolved limited liability companies without any further action or notice by (i) the Debtors or their former or existing members, managers, officers, directors, representatives or employees, or (ii) the Wind-Down Officer.  All applicable regulatory or governmental units or agencies shall accept any certificates or other documents

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

filed by the Wind-Down Officer and shall take all steps necessary or appropriate to allow and effect the prompt dissolution and/or winding-up of the Debtors as herein provided. The Wind-Down Officer is authorized to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation. Whether or not dissolved, the Debtors shall have no authorization to implement the provisions of this Plan from and after the Effective Date except as specifically provided otherwise in the Plan.

Without limitation on the foregoing, Sutton Owner DE is the successor by merger to Sutton Owner NY, and, accordingly, the Chapter 11 Case of Sutton Owner NY shall be deemed automatically dismissed on the Effective Date.

6.08    Corporate Action; Effectuating Documents

The Wind-Down Officer will be authorized to take any actions and effect transactions, including conversions, dissolutions, transfers, liquidations and other corporate transactions, as may be determined by the Wind-Down Officer to be necessary or appropriate to implement the terms of the Plan. The Wind-Down Officer may utilize the aforementioned authority without any further notice to or action, order or approval of the Bankruptcy Court.

The Wind-Down Officer shall be authorized and directed to issue, execute, deliver, file or record the contracts, agreements, securities, instruments, deeds, omnibus assignments, notices, other instruments of transfer and other documents reasonably necessary or desirable to effectuate the transactions contemplated by the Plan, and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, in each case without the need for any approvals, authorizations or consents, except for those expressly required by the Plan.

Each of the Debtor's officers, directors and managers, and any Person having any similar position or performing similar services, shall be deemed terminated as of the Effective Date, in each case without any further action, filing, vote, consent or notice, and all such Persons shall be released from all further authority relating to the Debtors or the Chapter 11 Cases. Upon such termination, the Wind-Down Officer shall be charged with the authority, duties, responsibilities and obligations relating to and arising from operations of the Debtors and these Chapter 11 Cases.

On the Effective Date, the Membership Interests and all other instruments evidencing Equity Interests in the Debtors shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order or rule, and the Equity Interests evidenced thereby shall be extinguished.

6.09    Preservation of Causes of Action

Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement entered into or effected in connection with or pursuant to the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, any and all Claims and Causes of Action that were owned by the Debtors or their Estates as of the Effective Date, including all Avoidance Actions,

29

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

shall vest in the Estates on the Effective Date, and the Wind-Down Officer shall have the exclusive right to pursue and enforce such Claims and Causes of Action.

**ARTICLE VII**
**AMENDMENTS AND MODIFICATIONS**

7.01    Amendment of Plan

The Plan may be amended and modified upon the consent of all of the Plan Proponents (with such consent not to be unreasonably withheld, conditioned or delayed) prior to the Confirmation Date in any manner to the extent permitted by the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court.  Subject to the foregoing, such amendments may be made at or prior to the hearing on confirmation of the Plan without further notice to any party in interest, except that such amended Plan shall be filed with the Court.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan may be altered, amended or modified materially (one or more times) by the Plan Proponents after Confirmation; and, to the extent necessary, the Plan Proponents may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan. Any such modification or supplement will be considered a modification of the Plan and will be made in accordance with this Section 7.01.

Entry of the Confirmation Order will mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to Section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

**ARTICLE VIII**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

8.01    Assumption/Rejection of Executory Contracts

Except as otherwise provided in the Credit Bid Agreement or any Purchase Agreement, as of the Sale Date, each Debtor shall be deemed to have rejected each Executory Contract to which it is a party, unless such Executory Contract (i) was previously assumed or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to assume and assign filed on or before the Confirmation Date, including in connection with the Sale; or (iv) is designated as an Executory Contract on the Schedule of Assumed and Assigned Executory Contracts and Unexpired Leases attached to the Plan or filed as part of the Plan Supplement.  The Confirmation Order shall constitute an order of the Court under Sections 363, 365 and 1123(b) of the Bankruptcy Code approving the assumptions and assignments or rejections described above, as of the Sale Date.  Each Executory Contract assumed and assigned pursuant to the Plan, or by Bankruptcy Court order, will vest in and be fully enforceable by the

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

applicable assignee in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court. No Executory Contract shall be deemed assumed absent actual assignment of such Executory Contract to the Purchaser.

To the extent applicable, any monetary amounts by which each Executory Contract to be assumed and assigned pursuant to the Plan is in default shall be satisfied, under Section 365(b)(1) of the Bankruptcy Code, by the assignee of such Executory Contract (i.e., the Purchaser of the Assets to the extent that the acquired Assets include such Executory Contract(s)), by cure, or by such other treatment as to which the assignee and such non-Debtor party to the Executory Contract shall have agreed in writing. If there is a dispute regarding (i) the nature or amount of any cure, (ii) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the Executory Contract to be assumed and assigned, or (iii) any other matter pertaining to assumption, cure shall occur within thirty days following the entry of a Final Order resolving the dispute and approving the assumption and assignment, or as may be agreed upon by the assignee and the counterparty to such Executory Contract; provided, however, that, with respect to any Credit Bid Agreement, the Lender reserves the right to exclude from assignment any and all Executory Contracts should it determine not to pay the applicable cure costs; provided further, however, that the Gemini Contract shall be assumed and assigned to Lender (or its designee) under any Credit Bid Agreement, and, in such circumstances, the Lender (or its designee) will pay all required cure costs relating to the Gemini Contract without offset or deduction to the Lender Contribution at the closing of the Sale. If a Third Party Purchaser acquires the Assets, the Gemini Contract and such other Executory Contracts (if any) that constitute Development Rights shall be assumed and assigned to such Third Party Purchaser under the Purchase Agreement and such Third Party Purchaser will pay all required cure costs relating to the Gemini Contract and such other Executory Contracts (if any) that constitute Development Rights at the closing of the Sale.

The Plan Proponents shall provide notices of proposed assumption and assignment and proposed cure amounts to applicable Executory Contract counterparties, together with procedures for objecting thereto and resolution of disputes by the Bankruptcy Court. Any objection by a counterparty to a proposed assumption and assignment or related cure amount must be filed, served and actually received by the Plan Proponents no later than the date on which objections to confirmation are due (or such other date as may be provided in the applicable assumption and assignment notice). Any counterparty to an Executory Contract that fails to object timely to the proposed assumption and assignment or cure amount will be deemed to have assented to such assumption and assignment and related cure cost (if any). Prior to the Effective Date, the Plan Proponents may settle any dispute regarding the amount of any cure cost without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

<u>Bar Date for Rejection Damage Claims</u>. Unless otherwise provided for by an order of the Bankruptcy Court entered on or prior to the Confirmation Date, any Rejection Damage Claim for an Executory Contract rejected by the Plan must be filed with the Bankruptcy Court within thirty (30) days of entry of the Confirmation Order, with a copy thereof served upon the Plan Proponents and the Wind-Down Officer. Any claimant, Person or Entity that fails to file and serve its Rejection Damage Claim within the period set forth above shall be forever barred from asserting a Claim against the Debtors, the Estates, the Post-Confirmation Estate Assets or

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

otherwise in or in connection with the Chapter 11 Cases.  All Allowed Rejection Damage Claims shall be classified an treated as Unsecured Claims as provided for in Class 5.

## ARTICLE IX

## EFFECT OF CONFIRMATION; VESTING OF PROPERTY; SETTLEMENT, INJUNCTION, RELEASE AND RELATED PROVISIONS

9.01    Binding Effect.

On the Effective Date, the terms of this Plan shall be immediately effective and enforceable and shall bind all holders of all Claims against or Equity Interests in the Debtors, whether or not such holders accept this Plan.

9.02    No Discharge

Pursuant to Section 1141(d)(3) of the Bankruptcy Code, neither the Plan nor confirmation of the Plan shall discharge any Claim against any of the Debtors or any of their respective Related Persons, and nothing herein or in the Confirmation Order shall or shall be deemed to discharge, release or exculpate any of the Debtors or any of their respective Related Persons from any Claims, all of which Claims shall survive the confirmation and effectiveness of the Plan.

9.03    Settlement

In accordance with and subject to the provisions of the Plan, pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Wind-Down Officer may compromise and settle Claims against the Debtors and Causes of Action against other Entities.

Subject to the payment of the Initial Plan Funding and Expense Contribution to the extent required under Section 6.02 or the other occurrence of a Lender Resolution hereunder, and in exchange for other consideration provided by the Lender hereunder, the Lender and its Related Persons shall be entitled to receive the Debtor Release and the Third Party Releases.

9.04    Employee and Retiree Benefits.

Except as otherwise provided in the Purchase Agreement or the Plan Supplement, to the extent not previously terminated or transferred to the Purchaser, all employee benefit plans shall be terminated as of the Effective Date.

9.05    Injunction

Except as otherwise provided in or to enforce the Plan or Confirmation Order, on and after Effective Date, all Entities who have held, currently hold, or may hold Claims, Liens, Equity Interests or Causes of Action against or in any Debtor, or that constitute Released Claims,

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

32

are permanently enjoined from taking any of the following actions: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the Assets, the Excluded Assets, the Wind-Down Officer, any Released Party or the assets of any Released Party, or any direct or indirect successor in interest of any of the foregoing, or any assets of any such transferee or successor, in each case on account of or in connection with or with respect to any such Claim, Lien, Equity Interest, Cause of Action or Released Claim, other than as contemplated by the Plan; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Assets, the Excluded Assets, the Wind-Down Officer, any Released Party or the assets of any Released Party, or any direct or indirect successor in interest of any of the foregoing, or any assets of any such transferee or successor, in each case on account of or in connection with or with respect to any such Claim, Lien, Equity Interest, Cause of Action or Released Claim; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien, claim or encumbrance of any kind against the Assets, the Excluded Assets, the Wind-Down Officer, any Released Party or the assets of any Released Party, or any direct or indirect successor in interest thereto, or any assets of any such transferee or successor, in each case on account of or in connection with or with respect to any such Claim, Lien, Equity Interest, Cause of Action or Released Claim, other than as contemplated by the Plan; (iv) asserting any set-off, right of subrogation or recoupment of any kind directly or indirectly against the Assets, the Excluded Assets, the Wind-Down Officer, any Released Party or the assets of any Released Party, or any obligation due from any Released Party, or any direct or indirect transferee of any assets thereof, or successor in interest thereto, in each case on account of or in connection with or with respect to any such Claim, Lien, Equity Interest, Cause of Action or Released Claim; and (v) commencing or continuing in any manner or action or other proceeding of any kind against the Assets, the Excluded Assets, the Wind-Down Officer, any Released Party or the assets of any Released Party, in each case on account of or in connection with or with respect to any such Claim, Lien, Equity Interest, Cause of Action or Released Claim; provided, that nothing contained herein shall be construed to prevent any entity from objecting to claims or defending against claims objections or collection actions whether by asserting a right of setoff or otherwise to the extent permitted by law.

9.06    Debtor Release

Effective as of the Effective Date, pursuant to Section 1123(b) of the Bankruptcy Code, to the fullest extent permitted by applicable law, and for good and valuable consideration, the adequacy of which is hereby confirmed on and after the Effective Date, each Released Party is deemed released by each and all of the Debtors, the Estates and the Wind-Down Officer from any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any or all of the Debtors, the Estates or the Wind-Down Officer, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that any or all of the Debtors, the Estates or the Wind-Down Officer could have been legally entitled to assert in its or their own right (whether individually or collectively), or on behalf of the holder of any Claim or Equity Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, (i) any or all of the Debtors or the Estates, (ii) the Debtors' restructuring efforts, (iii) the Chapter 11 Cases, (iv) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, (v)

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

the business or contractual arrangements between any Debtor and any Released Party, (vi) the restructuring or any alleged restructuring or reorganization of Claims and Equity Interests prior to or in the Chapter 11 Cases, (vii) the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of the Plan (or the property to be distributed under the Plan), the Disclosure Statement, any contract, instrument, release or other agreement or document related to any Debtor, the Chapter 11 Cases or the Estates created, modified, amended, terminated or entered into in connection with the Plan, (viii) the process of marketing, selling and disposing of the Assets pursuant to the Confirmation Order, the Bid Procedures Order or other orders entered by the Bankruptcy Court in the Chapter 11 Cases approving the sale or other disposition of Assets; or (ix) any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date relating to the Debtors, the Estates, the Chapter 11 Cases or the Plan or the property to be distributed thereunder, including, for the avoidance of doubt, those alleged in or related to the Complaint and the Adversary Proceeding and all Claims, Causes of Action or liabilities arising out of or relating to the Chapter 11 Cases.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, under Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors, the Estates, the Wind-Down Officer and all holders of Claims and Equity Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any or all of the Debtors, their respective Estates or the Wind-Down Officer and any holder of a Claim or Equity Interest or other Entity who would have been legally entitled to assert such Claim or Equity Interest on behalf of any of the Debtors or any of their Estates from asserting any Claim or Cause of Action released pursuant to the Debtor Release.

9.07    Third Party Release

Effective as of the Effective Date, each and all of the Releasing Parties (regardless of whether a Releasing Party is a Released Party) conclusively, absolutely, unconditionally, irrevocably and forever discharges and releases (and each Person so discharged and released shall be deemed discharged and released by the Releasing Parties) each and all of the Released Parties and their respective assets and property from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including with respect to any rights or Claims that could have been asserted against any or all of the Released Parties with respect to any derivative claims, asserted or assertable on behalf of any or all of the Debtors, the Estates or the Wind-Down Officer, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, (i) any or all of the Debtors or the Estates, (ii) the Debtors' restructuring efforts, (iii) the Chapter 11 Cases, (iv) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (v) the business or contractual arrangements between any Debtor and any Released Party, (vi) the restructuring or any alleged restructuring or reorganization of Claims and Equity

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

34

Interests prior to or in the Chapter 11 Cases, (vii) the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of the Plan (or the property to be distributed under the Plan), the Disclosure Statement, any contract, instrument, release or other agreement or document related to any Debtor, the Chapter 11 Cases or the Estates created, modified, amended, terminated or entered into in connection with the Plan, (viii) the process of marketing, selling and disposing of the Assets pursuant to the Confirmation Order, the Bid Procedures Order or other orders entered by the Bankruptcy Court in the Chapter 11 Cases approving the sale or other disposition of Assets; or (ix) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to the Debtors, the Estates or the Chapter 11 Cases, including, for the avoidance of doubt, those alleged in or related to the Complaint and the Adversary Proceeding and all Claims, Causes of Action or liabilities arising out of or relating to the Chapter 11 Cases. Notwithstanding anything to the contrary in the foregoing, the Third Party Release shall not release any obligation or liability of any party under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Third-Party Release; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third-Party Release.

9.08    Exculpation

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either of the Debtor Release or Third-Party Release, and except as otherwise specifically provided in the Plan, the Exculpated Parties are hereby released and exculpated from any claim, obligation, Cause of Action or liability for any act taken or omission occurring on or after the Applicable Petition Date in connection with or related to the Debtors, the Estates or the Chapter 11 Cases, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administering the Plan (including soliciting acceptances or rejections thereof); (ii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken during the administration of these Chapter 11 Cases or in connection with the Plan; (iii) any distributions made pursuant to the Plan; (iv) the negotiation, formulation or preparation of the Purchase Agreement, any Credit Bid Agreement and the sale of the Assets pursuant thereto; and (v) the negotiation, formulation or preparation of the Wind-Down Officer Agreement.

## ARTICLE X

## CLAIMS MATTERS

10.01    Objections to Claims.

35

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

The Wind-Down Officer shall have the exclusive authority (except with respect to the rights of the Lender as a Plan Proponent in this Plan) to file, settle, compromise, withdraw, or litigate to judgment any objections to Administrative Expense Claims and other Claims, except as provided herein and except with respect to the Acquisition Loan and Building Loan Claims, the Mezz Loan Claims, the Lender's Allowed Secured Claim under the Cash Collateral Stipulation, and any other Claim deemed to be an Allowed Claim as of the Effective Date or waived, relinquished, exculpated, released, compromised, settled or Allowed in the Plan or in a Final Order, which Acquisition Loan and Building Loan Claims, Mezz Loan Claims, Lender's Allowed Secured Claim under the Cash Collateral Stipulation and other Claims are not subject to objection by the Wind-Down Officer or any other Entity, but shall be resolved by the Bankruptcy Court, either in the Adversary Proceeding or otherwise; provided, however, this provision shall not apply to Professional Fee Claims, which may be objected to by any party-in-interest in these Chapter 11 Cases.  From and after the Effective Date, and except as provided herein, the Wind-Down Officer shall have and shall retain any and all available rights and defenses that the Debtors had with respect to any Claim based on the limitations imposed by Section 502 of the Bankruptcy Code and may settle or compromise any Disputed Claim without further notice to, order from, or approval of the Bankruptcy Court.

At any time prior to the Claims Objection Deadline, the Wind-Down Officer and/or the Lender as a Plan Proponent may file objections with the Bankruptcy Court and serve such objections on the holders of the Claims or Equity Interests to which objections are made. Nothing contained herein, however, shall limit the right of the Wind-Down Officer or the Lender as a Plan Proponent to object to Claims or Equity Interests, if any, filed or amended after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the Wind-Down Officer without notice or hearing.

Notwithstanding anything herein to the contrary with respect to the rights of the Wind-Down Officer, (i) the Lender as a Plan Proponent shall have the right to file, settle, compromise, withdraw, or litigate to judgment any objections to Administrative Expense Claims and other Claims, whether arising prior to or after the commencement of the Chapter 11 Cases, (ii) the Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the Lender as a Plan Proponent without notice or hearing, (iii) any rights of the Wind-Down Officer to settle, compromise, or withdraw any Administrative Expense Claims or other Claims shall be subject to the prior written consent of the Lender as a Plan Proponent not to be unreasonably withheld, or an order of the Bankruptcy Court, and (iv) any rights of the Lender as a Plan Proponent to settle, compromise, or withdraw any Administrative Expense Claims or other Claims shall be subject to the prior written consent of the Wind-Down Officer not to be unreasonably withheld, or an order of the Bankruptcy Court.

10.02    Estimation of Claims

The Wind-Down Officer may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code (other than any Claims of the Lender), regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any claim, including during the pendency of any appeal related to any such objection.  In the

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

36

event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Wind-Down Officer may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the aforementioned objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.  Claims may be estimated and thereafter resolved by any permitted mechanism.

### 10.03    Distributions After Allowance

The Wind-Down Officer shall make payments and distributions to each holder of a Disputed Claim that has become an Allowed Claim in accordance with the provisions of the Plan governing the class of Claims to which such holder belongs.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing all or part of any Disputed Claim becomes a Final Order, the Wind-Down Officer shall distribute to the holder of such Claim the distribution (if any) that would have been made to such holder on the Effective Date had such Allowed Claim been allowed on the Effective Date.  After a Disputed Claim becomes an Allowed Claim or otherwise is resolved, the excess Cash or other property, if any, that was reserved on account of such Disputed Claim, if any, shall become property of the Wind-Down Officer for distribution as provided in the Plan.

### 10.04    Prior Payment of Claims

Notwithstanding the contents of the Debtors' schedules, Claims listed therein as undisputed, liquidated and not contingent shall be reduced by the amount, if any, that was paid by the Debtors prior to the Effective Date, including pursuant to orders of the Bankruptcy Court.  To the extent such payments are not reflected in such schedules, such schedules will be deemed amended and reduced to reflect that such payments were made.

### 10.05    Distribution Reserve.

The Distribution Reserve shall, to the extent there is Available Cash, be established on the later of the Sale Date or the Effective Date or as soon as reasonably practicable thereafter for the purpose of maintaining cash from time to time necessary to satisfy (i) Administrative Expense Claims, Priority Tax Claims, Priority Claims and Other Secured Claims that are (a) Allowed Claims as of the Effective Date but that cannot be paid on or promptly following the Effective Date, or (b) Disputed Claims as of the Effective Date but that may become Allowed Claims after the Effective Date; and (ii) Professional Fee Claims that are Allowed Claims or that may become Allowed Claims on or after the Effective Date.  Any cash released from the Distribution Reserve shall be included in the calculation of Available Cash.

### 10.06    Disputed Claims Reserve

The Wind-Down Officer shall establish the Disputed Claims Reserve from Available Cash on the later of the Sale Date or the Effective Date or as soon thereafter as is reasonably practicable.  The Disputed Claims Reserve shall hold distributions to which holders of such Disputed Claims would be entitled under the Plan as of such date as if such Disputed Claims

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

were Allowed Claims either in the amounts of the Unsecured Claims as filed or in such amounts as estimated in accordance with Section 11.02.

Disputed Claims that become Allowed Unsecured Claims, in whole or in part, shall be satisfied exclusively out of the Disputed Claims Reserve.  The holder of any such Disputed Claim shall receive the amount of cash such holder would have received in accordance with the provisions of the Plan to the extent such holder's Unsecured Claim had been an Allowed Claim as of the initial date on which Available Cash was distributed to holders of Allowed Unsecured Claims.  In the event the cash remaining in the Disputed Claims Reserve shall be insufficient to satisfy all the Disputed Claims that have become Allowed Unsecured Claims and are due to be satisfied with distributions from the Disputed Claims Reserve, such Disputed Claims shall be satisfied Pro Rata from the Disputed Claims Reserve.  After all cash has been distributed from the Disputed Claims Reserve, no further distributions shall be made in respect of Disputed Claims.

If a Disputed Claim is disallowed, in whole or in part, then unless the Wind-Down Officer determines otherwise, there shall be released from the Disputed Claims Reserve, cash, in the amount of distribution made to the Disputed Claims Reserve in respect of such Disputed Claim since the Effective Date, which shall then be unreserved and unrestricted, and which shall be added to the Wind-Down Reserve or available for distribution to the holders of Allowed Unsecured Claims, as determined by the Wind-Down Officer.

If the Wind-Down Officer  at any time determines that it is not necessary to hold in the Disputed Claims Reserve all of the cash contained therein in order to satisfy all Disputed Claims that are Unsecured Claims, the Wind-Down Officer may, but shall not be required to, release from the Disputed Claims Reserve for distribution to holders of Allowed Unsecured Claims, or for deposit to the Wind-Down Reserve, some or all of the cash previously deposited to the Disputed Claims Reserve.  At such time as all Disputed Unsecured Claims have been resolved, any remaining cash in the Disputed Claims Reserve shall be released from the Disputed Claims Reserve for application as aforesaid.

## ARTICLE XI

## PROVISIONS REGARDING DISTRIBUTIONS

11.01    Cash Distributions

On or as soon as possible after the Effective Date, the Wind-Down Officer, in its capacity as Disbursing Agent, shall make cash distributions to holders of Allowed Claims as provided for under the Plan.

11.02    Subsequent Distribution Dates and Final Distribution Date

Unless otherwise provided in this Plan, to the extent Available Cash is available subsequent to the Effective Date, the Wind-Down Officer shall, on a Subsequent Distribution Date and on the Final Distribution Date, distribute such Available Cash to the holders of Claims entitled thereto that were Allowed Claims on the Effective Date or subsequently have become

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

38

Allowed Claims on or before the Subsequent or Final Distribution Date, as the case may be, in amounts necessary to cause such holders to have received aggregate distributions of Cash in respect of such Allowed Claims equal to the distributions that such holders would have received in respect of such Allowed Claims on the Effective Date if (x) such Available Cash had been available for distribution on the Effective Date, (y) such Allowed Claims had been Allowed Claims on the Effective Date in the amounts in which they are Allowed Claims on the Subsequent or Final Distribution Date, as the case may be, and (z) Claims or portions thereof that have become disallowed subsequent to the Effective Date and on or before the Subsequent or Final Distribution Date, as the case may be, had been disallowed on the Effective Date.

### 11.03   Rounding to the Nearest Dollar

Any other provision of the Plan to the contrary withstanding, no payments of portions of a Dollar will be made.  Whenever any payment of a portion of a Dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole Dollar (up or down).

### 11.04   Disbursing Agent

All distributions under the Plan shall be made by the Wind-Down Officer, as Disbursing Agent, or by such other Person designated by the Wind-Down Officer to act as a Disbursing Agent.

### 11.05   Minimum Distributions

If a distribution to be made to a given holder of an Allowed Claim would be $20.00 or less, notwithstanding any contrary provision of this Plan, no such distribution will be made to such holder.

### 11.06   Undeliverable Distributions and Unclaimed Property

If any distribution to a holder of an Allowed Claim is returned as undeliverable, no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, that such distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of six months from the applicable date of distribution.  After such date, all unclaimed property or interests in property shall revert to the relevant Debtor (notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws to the contrary), and the Claim of any holder to such property or interest in property shall be released, settled, compromised and forever barred.

### 11.07   Compliance with Tax Requirements/Allocations

In connection with the Plan, to the extent applicable, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Wind-Down Officer reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens and encumbrances. All Persons holding Claims or Equity Interests shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Notwithstanding any other provision of the Plan to the contrary, each Holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution.

## ARTICLE XII

## RETENTION OF JURISDICTION

12.01   Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction under Chapter 11 of the Bankruptcy Code over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, including, *inter alia*, the following:

a)   to hear and determine all Claims concerning the classification, allowance or disallowance of any Claim, if any, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims;

b)   to determine, adjudicate, or decide any other applications, adversary proceedings, contested matters, and any other matters pending on the Effective Date;

c)   to hear and determine any matter, case, controversy, suit, dispute, or Causes of Action regarding the existence, nature, and scope of the releases, injunctions, and exculpation provided under the Plan, and to enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

d)   to resolve disputes as to the ownership of any Claim or Equity Interest;

e)   to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, reversed, modified or vacated;

f)   to issue such orders in aid of execution of the Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

g)   to consider any modifications of the Plan, or to remedy any defect, cure any omissions or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court,

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

including the Confirmation Order, as may be necessary or advisable to carry out the purpose and intent of the Plan and to the extent authorized by the Bankruptcy Code or Bankruptcy Rules;

        h)     to hear and determine any matters relating to the Wind-Down Officer, including to hear and determine any actions brought against the Wind-Down Officer in connection with the Plan;

        i)     to hear and determine any issue for which the Plan requires a Final Order of the Bankruptcy Court;

        j)     to hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

        k)     to hear and determine any Causes of Action preserved under the Plan;

        l)     to hear and determine such other matters as may be provided for in the Confirmation Order of the Bankruptcy Court, and for the purposes set forth in Sections 1127(b) and 1142 of the Bankruptcy Code or as contained in Bankruptcy Rules 1019 and 3020(d);

        m)     to resolve any matters related to (i) the assumption, assumption and assignment, or rejection of any Executory Contract and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including cure claims pursuant to Section 365 of the Bankruptcy Code; or (ii) whether a contract or lease is or was executory or expired;

        n)     to enforce all orders previously entered by the Bankruptcy Court;

        o)     to issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation, or enforcement of the Plan or the Confirmation Order;

        p)     to hear and determine all matters related to applications for allowance of compensation or reimbursement of expenses to Professionals;

        q)     to hear and adjudicate any settlements or disputes concerning the interpretation, implementation, consummation or enforcement of provisions of this Plan, and to ensure that distributions to holders of Allowed Claims are accomplished pursuant to the Plan;

        r)     to enter a final order or decree concluding the Debtors' Chapter 11 Cases or an order of substantial consummation; and

        s)     to determine any other matters contained in the Confirmation Order or that are authorized under or not inconsistent with the provisions of the Bankruptcy Code.

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

## ARTICLE XIII

## GENERAL PROVISIONS

### 13.01    Headings

The headings used in the Plan are inserted for convenience or reference only and neither constitute a portion of the Plan nor in any manner affect the provisions or interpretations of this Plan.

### 13.02    Notices

Notices will be deemed given when received.  All notices, requests or demands described in or required to be made in accordance with the Plan must be in writing and shall be deemed to have been sufficiently given, for all purposes, if delivered (a) personally, (b) by registered or certified mail, return receipt requested, or (c) by overnight delivery, to:

Attorneys for the Creditors' Committee:

Westerman Ball Ederer
 Miller Zucker & Sharfstein, LLP
1201 RXR Plaza
Uniondale, New York 11556
Telephone:  (516) 622-9200
Attention:      Thomas A. Draghi, Esq.
                Eric G. Waxman III, Esq.

Attorneys for the Lender:


Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9100
Attention:  Adam Rogoff, Esq.
                P. Bradley O'Neill, Esq.


### 13.03    Change of Address

The Plan Proponents may change the address at which they are to receive notices under the Plan by sending written notice pursuant to the provisions of this Article to the person to be charged with the knowledge of such change.

### 13.04    Dissolution of Creditors' Committee

On the Effective Date, the Creditors' Committee shall dissolve and its members shall be released and discharged from all further authority, duties, responsibilities and obligations related

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

to and arising from and in connection with the Chapter 11 Cases; provided, that, the Creditors' Committee will not be dissolved, and the members of the Creditors' Committee will not be released or discharged of duties with respect to any applications for allowance of compensation and reimbursement of expenses (the "Post-Effective Date Matters"); provided, further, that, the Creditors' Committee will be dissolved and the members thereof discharged from all duties and obligations on the date upon which all services related the Post-Effective Date Matters are completed.

### 13.05    Post-Confirmation Reporting

The Debtors will remain obligated to file monthly operating reports for any months or portion of months prior to confirmation of the Plan.  The Wind-Down Officer shall file post-confirmation operating reports on a quarterly basis, upon the conclusion of each respective quarter until the earlier of the entry of a final decree, conversion or dismissal of these cases.

### 13.06    Terms of Injunctions or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to Section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan and the Confirmation Order shall remain in full force and effect in accordance with their terms.

### 13.07    Exhibits and Related Documents

All exhibits and documents Filed in relation to the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan.

### 13.08    Severability of Plan Provisions

Except as otherwise provided herein, if, before Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan, including the Third Party Releases, Debtor Releases and exculpation provisions, shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Plan Proponents' consent; and (c) nonseverable and mutually dependent.

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5

13.09    Plan Controls

In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, the provisions of the Plan shall control and take precedence.

13.10    Successors and Assigns

The rights and obligations of any entity named or referred to in the Plan will be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

13.11    Governing Law

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

13.12    References

Unless otherwise specified, all references in the Plan to Sections and Articles are to Sections and Articles of the Plan.

Dated:  December 5, 2016
            New York, New York

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

_____/s/ Joshua Kupchik_____
Pembrooke & Ives Luxurious Interiors LLC,
        Committee Chair
By:  Joshua Kupchik

SUTTON 58 ASSOCIATES LLC

_____/s/ Jonathan Kalikow_____
By:  Jonathan Kalikow
        Authorized Signatory

Exhibit 1 - Modified Joint Plan.DOCX
KL2 2984791.5