## Exhibit 3

**Amended Disclosure Statement**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re:

BH SUTTON MEZZ LLC,
a Delaware limited liability company,
SUTTON 58 OWNER, LLC,
a Delaware limited liability company, and
SUTTON 58 OWNER, LLC,
a New York limited liability company,
                              Debtors.

Chapter 11
Case No.:  16-10455 (SHL)
(Jointly Administered)

---------------------------------------------------------------x

## DISCLOSURE STATEMENT FOR JOINT
## CHAPTER 11 PLAN OF LIQUIDATION
## FILED BY OFFICIAL COMMITTEE OF UNSECURED
## CREDITORS AND SUTTON 58 ASSOCIATES LLC,
## <u>AS MODIFIED AND SUPPLEMENTED</u>

> **THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN.   ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.   THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

WESTERMAN BALL EDERER
MILLER ZUCKER & SHARFSTEIN, LLP
*Attorneys for the Official Committee of Unsecured Creditors*
1201 RXR Plaza
Uniondale, New York 11556
Telephone:  (516) 622-9200

KRAMER LEVIN NAFTALIS &
FRANKEL LLP
*Attorneys for Sutton 58 Associates LLC*
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9100

Dated: New York, New York
December 5, 2016

THE PLAN PROPONENTS ARE PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT TO HOLDERS OF CLAIMS AND INTERESTS FOR PURPOSES OF SOLICITING VOTES TO ACCEPT OR REJECT THE JOINT PLAN OF LIQUIDATION. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY OTHER PURPOSE. BEFORE DECIDING WHETHER TO VOTE FOR OR AGAINST THE PLAN, EACH HOLDER ENTITLED TO VOTE SHOULD CAREFULLY CONSIDER ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT.

THE PLAN (THE "**CREDITORS' PLAN**" OR "**PLAN**") IS PROPOSED AND SUPPORTED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS (THE "**COMMITTEE**") AND SUTTON 58 ASSOCIATES LLC (THE "**LENDER**," COLLECTIVELY WITH THE COMMITTEE, THE "**PLAN PROPONENTS**"). *__THE CREDITORS' PLAN PROVIDES FOR A RECOVERY FUND FOR THE PAYMENT OF ADMINISTRATIVE, PRIORITY AND OTHER CREDITORS, INCLUDING UNSECURED CREDITORS.__* THE CREDITORS' PLAN WAS NEGOTIATED BETWEEN THE COMMITTEE AND THE LENDER TO PROVIDE FOR A MATERIAL, VOLUNTARY PAYMENT BY THE LENDER (REFERRED TO AS THE "**LENDER CONTRIBUTION**") TO FUND THE CREDITORS' PLAN IN THE EVENT THAT THE LIQUIDATION SALE OF THE DEBTORS' REAL PROPERTY AND RELATED DEVELOPMENT RIGHTS DO NOT RESULT IN A DISTRIBUTION OF SALE PROCEEDS FOR THE BENEFIT OF CREDITORS OTHER THAN THE LENDER AS THE SENIOR SECURED CREDITOR.

*__THE DEBTORS HAVE WITHDRAWN THEIR PROPOSED CHAPTER 11 PLAN OF LIQUIDATION AND, AS SUCH, THE ONLY CHAPTER 11 PLAN BEING PURSUED IS THE CREDITORS' PLAN.__*

THE PLAN PROPONENTS URGE EACH HOLDER OF A CLAIM OR INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT AND THE PLAN.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE CREDITORS' PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTORS' CHAPTER 11 CASES, AND CERTAIN DOCUMENTS RELATED TO THE CREDITORS' PLAN, ATTACHED HERETO AND/OR INCORPORATED BY REFERENCE HEREIN. ALTHOUGH THE PLAN PROPONENTS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THEY ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE CREDITORS' PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES. FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BASED ON (I) SCHEDULES, PLEADINGS AND OTHER DOCUMENTS FILED BY THE DEBTORS, AND (II) FILED

PROOFS OF CLAIM, EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. THE PLAN PROPONENTS DO NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3016(B), AND LOCAL BANKRUPTCY RULE 3016-1 AND IS NOT NECESSARILY PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS.

THIS DISCLOSURE STATEMENT IS THE ONLY DOCUMENT AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE CREDITORS' PLAN.  NO OTHER REPRESENTATIONS CONCERNING THE DEBTORS, THE VALUE OF THEIR ASSETS OR BENEFITS OFFERED UNDER THE CREDITORS' PLAN HAVE BEEN AUTHORIZED.

UPON THE APPROVAL OF THE DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT, SUCH APPROVAL WILL MEAN THAT THE BANKRUPTCY COURT HAS FOUND THAT THE DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION TO PERMIT CREDITORS OF THE DEBTORS TO MAKE A REASONABLY INFORMED DECISION IN EXERCISING THEIR RIGHT TO VOTE UPON THE CREDITORS' PLAN, BUT THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE CREDITORS' PLAN.

ANY REPRESENTATIONS OR INDUCEMENTS MADE TO OBTAIN YOUR ACCEPTANCE WHICH ARE OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION WHETHER TO APPROVE THE CREDITORS' PLAN.

THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT. THIS DOCUMENT WAS COMPILED FROM INFORMATION OBTAINED BY THE PLAN PROPONENTS FROM THE DEBTORS AND FROM OTHER SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE PLAN PROPONENTS' KNOWLEDGE, INFORMATION AND BELIEF.

KL2 2984792.6

# TABLE OF CONTENTS

**Page**

I INTRODUCTION .................................................................................................. 1

II SUMMARY OF PLAN ....................................................................................... 3

    A.  Summary of Categories of Claims ................................................................ 3

    B.  Summary of Plan Distributions .................................................................... 5

III VOTING PROCEDURES AND REQUIREMENTS ......................................... 9

    A.  Vote Required for Acceptance by a Class .................................................. 10

    B.  Classes Not Entitled to Vote ...................................................................... 10

    C.  Voting ........................................................................................................ 10

IV HISTORY OF THE CHAPTER 11 CASE ....................................................... 11

    A.  Historical Background Of The Debtors And Events Leading Up To The
        Chapter 11 Filing ...................................................................................... 11

        i.     The Project .......................................................................................... 11

        ii.    The January 2015 Financing ............................................................... 11

        iii.   The June 2015 Financing .................................................................... 12

        iv.   Debtors' Default, Lender's Efforts to Foreclose, and the State Court Action .......... 13

    B.  The Jointly Administered Chapter 11 Cases ............................................... 13

        i.     The Sutton Mezz Case ........................................................................ 13

        ii.    The Sutton Owner DE Case ................................................................ 13

        iii.   The Sutton Owner NY Case ............................................................... 14

        iv.   The Debtors' Assets and Organizational Structure ............................. 14

    C.  Adversary Proceeding ................................................................................ 14

    D.  The Agreed Cash Collateral Order ............................................................ 15

    E.  Retention of Professionals ......................................................................... 16

    F.  Claims Bar Dates ...................................................................................... 16

V THE PLAN OF LIQUIDATION ........................................................................................ 17

    A.  Explanation of Chapter 11 .................................................................................... 17

    B.  Claims .................................................................................................................... 17

    C.  Classes Of Claims or Interests .............................................................................. 18

        1.    Administrative Expenses ............................................................................ 18
        2.    Priority Tax Claims .................................................................................... 19

    Classified Claims ........................................................................................................... 19

    D.  Treatment of Allowed Claims ............................................................................... 19

        Allowed Administrative Expense Claims ........................................................... 19
        United States Trustee Claims ............................................................................. 20
        Priority Tax Claims ............................................................................................ 20
        Class 1 Claims – Priority Claims ....................................................................... 21
        Class 2 Claims — Cash Collateral Stipulation .................................................. 21
        Class 3 Claims - Secured Acquisition Loan and Building Loan Claims ............ 21
        Class 4 Claims – Other Secured Claims ............................................................ 22
        Class 5 Claims — Unsecured Claims against Sutton Owner DE ....................... 23
        Class 6 Claims — Secured Mezz Loan Claim .................................................... 23
        Class 7 Claims — Unsecured Claims against Sutton Mezz ............................... 24
        Class 8 Claims — Subordinated Claims ............................................................ 24
        Class 9 Claims — Late Filed Claims ................................................................. 24
        Class 10 Interests — Sutton Mezz Membership Interests .................................. 24

VI IMPLEMENTATION OF THE PLAN ............................................................................ 24

    A.  Timing of Plan ...................................................................................................... 24

    B.  Plan Funding ......................................................................................................... 25

    C.  Sale of Assets ........................................................................................................ 26

    D.  Exemption From Certain Transfer Taxes ............................................................. 26

    E.  Wind Down of the Debtors ................................................................................... 27

    F.  Wind-Down Officer .............................................................................................. 27

    G.  Dissolution of the Debtors .................................................................................... 30

    H.  Corporate Action; Effectuating Documents ......................................................... 31

    I.  Preservation of Causes of Action ......................................................................... 31

    J.  Assumption/Rejection of Executory Contracts .................................................... 31

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

ii

VII EFFECT OF CONFIRMATION; DISCHARGE OF DEBTS; INJUNCTION; RELEASE ................................................................................................................ 33

    A.  Effect of Confirmation ................................................................................. 33

    B.  No Discharge of Debts ................................................................................. 33

    C.  Settlement ..................................................................................................... 33

    D.  Employee and Retiree Benefits .................................................................... 33

    E.  Injunction ..................................................................................................... 34

    F.  Debtor Release ............................................................................................. 34

    G.  Third Party Release ...................................................................................... 35

    H.  Exculpation .................................................................................................. 36

VIII CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN   AND THE EFFECTIVE DATE ..................................................................................... 37

    A.  Conditions Precedent to Confirmation ......................................................... 37

    B.  Conditions Precedent to the Effective Date ................................................. 37

    C.  Waiver of Conditions to Confirmation or the Effective Date ........................ 38

IX REQUIREMENTS FOR CONFIRMATION OF THE PLAN ................................. 38

    A.  Confirmation Hearing .................................................................................. 38

    B.  Objections to Confirmation .......................................................................... 38

    C.  Requirements for Confirmation of the Plan ................................................. 39

    D.  Feasibility .................................................................................................... 39

    E.  Best Interests of Creditors ........................................................................... 39

    F.  Acceptance of the Plan by Impaired Classes ............................................... 40

    G.  Confirmation without Acceptance by All Impaired Classes .......................... 41

X ALTERNATIVES TO THE PLAN AND OTHER CONSIDERATIONS ............... 42

    A.  Liquidation Under Chapter 7 ....................................................................... 42

    B.  Alternative Plan of Reorganization .............................................................. 42

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

iii

XI TAX CONSEQUENCES.................................................................................................... 42

XII CONCLUSION ............................................................................................................. 44

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

# I

## INTRODUCTION

Sutton 58 Associates LLC (the "**Lender**") and the Official Committee of Unsecured Creditors (the "**Committee**", and together with the Lender, the "**Plan Proponents**") submit this Joint Disclosure Statement (the "**Disclosure Statement**") pursuant to § 1125 of Title 11 of the United States Code (the "**Bankruptcy Code**"), to creditors of BH Sutton Mezz LLC, a Delaware limited liability company ("**Sutton Mezz**"), Sutton 58 Owner LLC, a Delaware limited liability company ("**Sutton Owner DE**"), and Sutton 58 Owner LLC, a New York limited liability company ("**Sutton Owner NY**", and together with Sutton Mezz and Sutton Owner DE, the "**Debtors**"), each a debtor and debtor in possession, in connection with: (i) the Joint Chapter 11 Plan of Liquidation dated as of November 14, 2016, as modified on November 22, 2016[1], and as supplemented on December 5, 2016, proposed and filed by the Plan Proponents (the "**Creditors' Plan**" or "**Plan**") with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"); and (ii) the hearing on confirmation of the Plan to be scheduled by further notice and/or Order of the Bankruptcy Court. Unless otherwise defined herein, all capitalized terms contained herein will have the meanings ascribed to them in the Plan.

*__The treatment of Claims and Equity Interests will be based upon the results of the Adversary Proceeding (as discussed below).__*

The Plan Proponents are soliciting votes to accept or reject the Creditors' Plan. A copy of the Creditors' Plan is attached as Exhibit A to this Disclosure Statement.

The purpose of the Disclosure Statement is to provide sufficient information to enable the creditors of the Debtors who are entitled to vote to make an informed decision on whether to accept or reject the Plan. The Disclosure Statement describes:

- how the Creditors' Plan treats the Debtors' creditors and shareholders (Sections II and V);

- how to submit a vote on the Creditors' Plan and who is entitled to vote (Section III);

- the businesses of the Debtors, the reasons why they commenced their Chapter 11 Cases and significant events that have occurred in the Chapter 11 Cases (Section IV);

- the funding of Creditors' Plan, the Sale of the Assets, the appointment of the Wind-Down Officer and the wind down and dissolution of the Debtors (Section VI);

- other issues dealt with under the Creditors' Plan (Section VII);

---

[1] Modified solely to amend the Auction date.

- conditions precedent to Confirmation of the Creditors' Plan and the occurrence of the Effective Date (Section VIII);

- the procedure for confirming the Creditors' Plan (Section IX);

- alternatives to confirmation of the Creditors' Plan (Section X); and

- certain tax consequences of the Creditors' Plan (Section XI).

If there is any inconsistency between the Creditors' Plan and the descriptions in the Disclosure Statement, the terms of the Creditors' Plan will govern.

This Disclosure Statement and the Creditors' Plan are the only materials creditors should use to determine whether to vote to accept or reject the Plan.

> **The deadline for Ballots casting votes to accept or reject the Creditors' Plan is January 2, 2017, at 4:00 p.m. (prevailing Eastern Time).  To be counted, your Ballot must be actually *received* by counsel to the Committee by this date and time.**

> **The *record holder* date for determining which creditors may vote on the Plan is December 6, 2016.**

The Plan Proponents believe that confirmation of the Creditors' Plan is in the best interests of the Debtors and their creditors.

> **<u>RECOMMENDATION</u>:  THE COMMITTEE SUPPORTS CONFIRMATION OF THE CREDITORS' PLAN AND, ACCORDINGLY, URGES HOLDERS OF CLAIMS IN CLASSES 1, 2, 3, 4, 5, 6, 7, 8, 9 AND 10 TO VOTE TO ACCEPT THE CREDITORS' PLAN.**
>
> **THE CREDITORS' PLAN PROVIDES FOR A VOLUNTARY PAYMENT – REFERRED TO AS THE LENDER CONTRIBUTION – BEING MADE BY THE LENDER, WHICH IS THE SENIOR SECURED CREDITOR, TO FUND OBLIGATIONS UNDER THE CREDITORS' PLAN AND, THEREFORE, A DISTRIBUTION TO HOLDERS OF ALLOWED CLAIMS.**

Additional copies of this Disclosure Statement can be obtained from the Plan Proponents.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

The Code provides that only creditors who actually vote on the Plan will be counted for purposes of determining whether the requisite acceptances have been attained. Failure to timely deliver a properly completed Ballot by the Voting Deadline will constitute an abstention (i.e., will not be counted as either an acceptance or a rejection), and any improperly completed or late Ballot will not be counted.

## II

## SUMMARY OF PLAN

The table below provides a summary of the classification and treatment of Claims under the Plan. The figures set forth in the table below represent the Plan Proponents' best estimate of the total amount of Allowed Claims in each of these classes of Claims. These estimates have been developed by the Plan Proponents based on: (i) schedules filed by the Debtors; and (ii) filed Proofs of Claim. By an Order of the Bankruptcy Court, July 25, 2016 was set as the last date for filing Proofs of Claim with the Clerk of the Bankruptcy Court for Sutton Mezz and Sutton Owner DE.[2] To the extent that any Claim filed against both Sutton Mezz and Sutton Owner DE, or was listed on the schedules filed by both Sutton Mezz and Sutton Owner DE, such Claim shall be treated under the Plan as a Claim against Sutton Owner DE. There can be no assurance that the amount of Claims that may be filed and allowed by the Bankruptcy Court will not exceed the amounts set forth or described herein. Nothing set forth in the table below shall be deemed an admission by the Plan Proponents as to the existence, validity, priority or amount of any Claim asserted against the Debtors. Except as described herein, the Plan Proponents fully reserve all of their rights to object to Claims.

A.    **Summary of Categories of Claims**:

| Class | Nature of Claims | Approximate Dollar Amount of Claims in Class |
|---|---|---|
| Unclassified — Administrative Expense Claims | Administrative Expense Claims (including Professional Fee Claims and United States Trustee Fees) | $2,000,000[3] |
| Unclassified — Priority Tax Claims | Priority Tax Claims | $5,800 |
| Class 1 | Priority Claims | Unknown[4] |

---

[2] Sutton Owner NY filed a motion seeking to establish a deadline for proofs of claim [Docket No. 187] and Lender filed an objection to that motion [Docket No. 218]. No deadline for filing Proofs of Claim has been set for Sutton Owner NY.

[3] This amount is an estimate derived from the Debtors' Second Amended Joint Disclosure Statement [Docket No. 277] for illustrative purposes only. The Plan Proponents reserve the right to amend this amount.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

| Class | Nature of Claims | Approximate Dollar Amount of Claims in Class |
|---|---|---|
| Class 2 | Cash Collateral Stipulation | $1,804,107 to the extent actually paid and advanced by the Lender in accordance with the Cash Collateral Stipulation |
| Class 3 | Secured Acquisition Loan and Building Loan Claims | At least $184,323,300[5] |
| Class 4 | Other Secured Claims | $1,290,225 |
| Class 5 | Unsecured Claims against Sutton Owner DE | $5,216,490[6] |
| Class 6 | Secured Mezz Loan Claim | At least $32,121,076[7] |
| Class 7 | Unsecured Claims against Sutton Mezz | $5,216,490[8] |
| Class 8 | Subordinated Claims | Unknown |
| Class 9 | Late Filed Claims | Unknown |
| Class 10 | Sutton Mezz Membership Interests | N/A |

---

[4] Based on a review of the Debtors' schedules and filed claims, the Plan Proponents are unaware of any Priority Claims other than Priority Tax Claims.

[5] This amount reflects Lender's allowed claim in this class, including costs and expenses accrued through October 28, 2016 and interest through January 11, 2017. The claim is continuing to accrue interest and other costs and expenses under the operative loan documents.

[6] This amount excludes (a) the amount of the claim filed by Gemini Residential LLC for $24,167,360, which the Plan Proponents understand relates to the Development Rights and will be an obligation to be assumed in connection with purchase of the Debtors' Assets, and (b) Rejection Damage Claims.

[7] This amount reflects Lender's allowed claim in this class, including costs and expenses accrued through October 28, 2016 and interest through January 11, 2017. The claim is continuing to accrue interest and other costs and expenses under the operative loan documents.

[8] Substantially all of the claims scheduled or filed against Sutton Mezz were also filed against Sutton Owner DE, and are duplicative. Also, like the amount of claims in Class 5, this amount excludes (a) the amount of the claim filed by Gemini Residential LLC for $24,167,360, and (b) any late filed claims.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

**B.** **Summary of Plan Distributions**:  A summary description of each class of Claims and Interests, and the treatment of such Claims and Interests is set forth below:

| Class Description | Treatment |
|---|---|
| **Unclassified: Administrative Expense Claims**<br><br>This class consists of Administrative Express Claims, including Professional Fee Claims and United States Trustee Fees incurred by the United States Trustee. | Allowed Administrative Expense Claims (other than Professional Fee Claims or United States Trustee Fees) shall be paid in full, in cash, on or as soon as reasonably practicable after the later of the Effective Date, the Sale Date and the date on which such Claim becomes an Allowed Administrative Expense Claim, or on such other date and upon such other terms as may be agreed by the holder thereof or ordered by the Bankruptcy Court.<br><br>United States Trustee Fees incurred prior to the Effective Date shall be paid by the Wind-Down Officer on or as soon as reasonably practicable after the Effective Date in accordance with the applicable schedule for payment of such fees.  United States Trustee Fees incurred thereafter until each of the Cases is closed by entry of a final decree of the Bankruptcy Court shall be paid by the Wind-Down Officer in accordance with the applicable schedule for the payment of such fees.<br><br>Professional Fee Claims are subject to Bankruptcy Court approval. |
| **Unclassified**: **Priority Tax Claims**<br><br>This class consists of priority claims held by governmental units. | Paid in full, in cash, on or as soon as reasonably practicable after the Effective Date. |
| **Class 1: Priority Claims**<br><br>This class consists of Priority Claims. | Paid in full on or as soon as reasonably practicable after the Effective Date.<br><br>The Allowed Priority Claims of the Lender under the Cash Collateral Stipulation are classified in Class 2. |

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

| Class Description | Treatment |
|---|---|
| **Class 2: Cash Collateral Stipulation**<br><br>This class consists of the Allowed Secured Claim of the Lender under the Cash Collateral Stipulation. | The treatment of this Class shall be based upon whether the Assets are sold to a Third Party Purchaser or the Lender (or its designee).  Except in the event of a Lender Resolution, if the Assets are sold to a Third Party Purchaser, then, on the Sale Date, the Lender's Allowed Secured Claim under the Cash Collateral Stipulation will be paid in full in Cash out of the Sale Proceeds.  In the alternative, the Lender (or its designee) shall be entitled, in the Lender's discretion, to include its Allowed Secured Claim under the Cash Collateral Stipulation as part of any Credit Bid. |

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

| Class Description | Treatment |
|---|---|
| **Class 3: Secured Acquisition Loan and Building Loan Claims**<br><br>This Class consists of the Acquisition Loan and Building Loan Claims to the extent such Claims are Secured Claims. | The Acquisition Loan and Building Loan Claims have been determined by the Bankruptcy Court to be Secured Claims, and shall be treated as Allowed Secured Claims as provided for in this Class 3.[9]<br><br>(i) On the Sale Date, if the Lender (or its designee) is the Purchaser of the Assets, then (x) it will receive the Assets free and clear and (y) it will forego its right to an additional distribution on account of its Class 3 Claims, the Lender Deficiency Claim under Class 5, if any, or any Claim under the Cash Collateral Stipulation;<br><br>(ii) Alternatively, if a Lender Resolution occurs because the Lender consents or otherwise does not object to the sale of the Assets to a Third Party Purchaser for an amount less than the Lender Credit Bid Threshold, then (x) the Class 3 Claims will be paid out of the Sale Proceeds and (y) the Lender will forego its right to an additional distribution on account of its Class 3 Claims, the Lender Deficiency Claim under Class 5, if any, or any Claim under the Cash Collateral Stipulation;<br><br>(iii) Alternatively, if there is a Lender Resolution and the Assets are sold to a Third Party Purchaser for more than the Lender Credit Bid Threshold, then, after payment of Allowed Claims in Classes 1 and 2, on the Sale Date (x) the Class 3 Claims will be paid out of the Sale Proceeds and (y) the Lender will be reimbursed for the amount of the Initial Plan Funding and the Expense Contribution; and<br><br>(iv) Finally, if no Lender Resolution occurs and the Assets are sold to a Third Party Purchaser, then, after payment of Allowed Claims in Classes 1 and 2, on the Sale Date, the Class 3 Claims will be paid out of the Sale Proceeds. |

---

[9] In accordance with the Bankruptcy Court's determination pursuant to the Adversary Proceeding, Lender has amended its Claim to exclude interest on the Building Loan.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

| Class Description | Treatment |
|---|---|
| **Class 4: Other Secured Claims**<br><br>This Class consists of Other Secured Claims. | Except to the extent that a holder agrees to a less favorable treatment, such holder shall receive on or as soon as practicable after the later of the Effective Date and the Sale Date, at the election of the Wind-Down Officer: (A) payment in full in Cash, or (B) delivery of the collateral securing such Claim.<br><br>To the extent the value of the Assets is less than Lender's total Allowed Secured Claims for the Acquisition Loan and Building Loan Claims and under the Cash Collateral Stipulation, then, pursuant to Section 506(a) of the Bankruptcy Code, any mechanic's lien claims that are junior to such Allowed Secured Claims of Lender will be classified and treated as Unsecured Claims as provided for in Class 5. |
| **Class 5: Unsecured Claims against Sutton Owner DE**<br><br>This Class consists of Unsecured Claims against Sutton Owner DE. | After satisfaction in full of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Claims in Classes 1, 2, 3 and 4, and unless otherwise agreed to by the holder of an Allowed Unsecured Claim in Class 5, such holder shall receive its Pro Rata Share of Available Cash (not to exceed the amount of its Allowed Claim) on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the Sale Date and (iii) the date on which such Claim becomes an Allowed Claim.<br><br>After the Effective Date, each holder of an Allowed Unsecured Claim in Class 5 will be paid on a Subsequent Distribution Date, if any, and the Final Distribution Date its Pro Rata Share of any additional Available Cash at such time in accordance with Section 11.02 of the Plan, provided that the aggregate distributions received pursuant to the Plan do not exceed the amount of the Allowed Claim. |
| **Class 6: Secured Mezz Loan Claim**<br><br>This Class consists of the Mezz Loan Claim to the extent such Claim is a Secured Claim. | In the event of a Sale to a Third Party Purchaser, the Lender shall receive all Available Cash after the payment in full of (or establishment of a reserve for) all Allowed Unsecured Claims against Sutton Owner DE in Class 5, until the payment in full of the Mezz Loan Claims. |

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

| Class Description | Treatment |
|---|---|
| **Class 7: Unsecured Claims against Sutton Mezz**<br><br>This Class consists of any Unsecured Claims against Sutton Mezz. | In the event of a Sale to a Third Party Purchaser, if Available Cash remains after the payment in full of (or establishment of a reserve for) all Allowed Claims in all prior classes of Claims, then each holder of Allowed Unsecured Claims against Sutton Mezz shall receive its Pro Rata Share of such remaining Available Cash until the payment in full of all Allowed Unsecured Claims against Sutton Mezz. |
| **Class 8: Subordinated Claims**<br><br>This Class consists of any Subordinated Claims. | In the event of a Sale to a Third Party Purchaser, if Available Cash remains after payment in full of (or establishment of a reserve for) all Allowed Claims in all prior classes of Claims, then each holder of an Allowed Claim that is a Subordinated Claim shall receive its Pro Rata Share of such remaining Available Cash until the payment in full of such Allowed Claim. |
| **Class 9: Late Filed Claims**<br><br>This Class consists of any Late Filed Claims. | In the event of a Sale to a Third Party Purchaser, if Available Cash remains after payment in full of (or establishment of a reserve for) all Allowed Claims in all prior classes of Claims, then each holder of an Allowed Claim that is a Late Filed Claim shall receive its Pro Rata Share of such remaining Available Cash until the payment in full of such Allowed Claim. |
| **Class 10: Sutton Mezz Membership Interests**<br><br>This Class consists of the Sutton Mezz Membership Interests. | In the event of a Sale to a Third Party Purchaser, if Available Cash remains after the payment in full of (or establishment of a reserve for) all Allowed Claims in all prior classes of Claims, then the holders of the Sutton Mezz Membership Interests shall receive their pro rata share of such remaining Available Cash. |

## III

## <u>VOTING PROCEDURES AND REQUIREMENTS</u>

Voting instructions are provided with the Ballot accompanying this Disclosure Statement. The following Classes are the only Classes entitled to vote to accept or reject the Plan:

| Class | Description |
|---|---|
| 1 | Priority Claims |
| 2 | Cash Collateral Stipulation |
| 3 | Secured Acquisition Loan and Building Loan Claims |
| 4 | Other Secured Claims |
| 5 | Unsecured Claims against Sutton Owner DE |
| 6 | Mezz Loan Claim |
| 7 | Unsecured Claims against Sutton Mezz |
| 8 | Subordinated Claims |
| 9 | Late Filed Claims |
| 10 | Interests |

If your Claim or Interest is not in any of these Classes, you are not entitled to vote and you will not receive a Ballot with this Disclosure Statement.  If your Claim is in one of these Classes, you should read your Ballot and follow the listed instructions carefully.  Please use only the Ballot that accompanies this Disclosure Statement.

**A.    Vote Required for Acceptance by a Class**

Under the Code, acceptance of a Chapter 11 plan by a class of claims is determined by calculating the number and the amount of claims voting to accept, based on the actual total allowed claims voting.  Acceptance requires an affirmative vote of more than one-half of the total allowed claims voting and two-thirds in amount of the total allowed claims voting in any given class.

**B.    Classes Not Entitled to Vote**

Under the Code, creditors and equity holders are not entitled to vote if their contractual rights are unimpaired by the Plan or if they will receive no property under the Plan.

**C.    Voting**

**IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE SUBMITTED TO COUNSEL TO THE COMMITTEE BY MAIL, HAND DELIVERY, OR OVERNIGHT COURIER, SO THAT IT IS ACTUALLY RECEIVED ON OR BEFORE THE VOTING DEADLINE OF 4:00 P.M., PREVAILING EASTERN TIME, ON JANUARY 2, 2017:**

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

Westerman Ball Ederer Miller Zucker & Sharfstein, LLP
1201 RXR Plaza
Uniondale, New York 11556
Attn: Thomas A. Draghi, Esq.
Telephone No. 516/622-9200
Facsimile No. 516/622-9212

If a Ballot is damaged or lost, you may contact Counsel to the Committee at the number set forth above.  Any Ballot that is executed and returned but which does not indicate an acceptance or rejection of the Plan will not be counted.

## IV

## HISTORY OF THE CHAPTER 11 CASE

**A.**   **The Debtors' Business and Events Leading to the Chapter 11 Filings**

**i.**   **The Assets**

The Debtors' businesses consisted of the development of a 950-foot building in midtown Manhattan (the "**Project**") in the historic Sutton Place neighborhood located at 428, 430 and 432 East 58th Street, New York, New York 10022 (the "**Real Property**").

On or about June 13, 2014, Sutton Owner NY entered into an agreement of sale with 428-430-432 East 58th Street, LLC to purchase the Real Property for $32,000,000. Sutton Owner NY paid a non-refundable deposit of $3,200,000, with the remaining purchase price to be paid at closing.

**ii.**   **The January 2015 Financing**

Sutton Owner NY obtained acquisition financing for the initial phase of the Project from Gamma Lending S58 LP ("**Gamma Lending**"), an affiliate of the Lender.  On or about January 16, 2015, Gamma Lending and Sutton Owner NY entered into a loan agreement pursuant to which Gamma Lending would provide Sutton Owner NY with a loan of $32.25 million (the "**Initial Loan**"). The Initial Loan was secured by a first priority mortgage on the Real Property and certain development rights in favor of Gamma Lending (the "**Initial Mortgage**"). The Initial Loan had a maturity date of August 1, 2016.

On or about January 16, 2015, Gamma Lending and Sutton Mezz entered into a Mezzanine Loan Agreement in the principal amount of $20 million secured by a pledge of Sutton Mezz's membership interest in Sutton Owner NY (the "**January Mezz Loan**"). The January Mezz Loan had a maturity date of August 1, 2016.

On January 20, 2015, Sutton Owner NY consummated its purchase of the Real Property for $32.250 million.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

Days later, on January 23, 2015, Sutton Owner NY and Gamma Lending entered into a first amendment to the loan agreement for the Initial Loan, which increased the Initial Loan from $32.250 million to $43 million through an additional loan of $10.75 million (the "**GAP Loan**", and together with the Initial Loan, the "**January Loan**"). On the same date, Sutton Owner NY executed a consolidated, amended and restated mortgage against the Real Property in favor of Gamma Lending in the amount of $45,979,880 (the "**Amended January Mortgage**").[10] The January Loan had a maturity date of August 1, 2016.

On January 23, 2015, using proceeds from GAP Loan, Sutton Owner NY acquired certain unused developmental rights in connection with the Project for $8,847,129 (the "**Development Rights**").[11]

### iii.    The June 2015 Financing

Pursuant to an Acquisition Loan Agreement dated June 19, 2015, the Lender extended a loan to Sutton Owner DE[12] in the principal amount of $125.85 million (the "**Acquisition Loan**"). The Acquisition Loan had a maturity date of January 19, 2016. The Acquisition Loan was evidenced, in part, by a $82,850,000 promissory note (the "**Acquisition GAP Note**") and secured by a mortgage encumbering the Real Property and Development Rights (the "**Acquisition GAP Mortgage**").

The Acquisition GAP Note and the promissory notes evidencing the January Loan were then consolidated into a $125,850,000 amended and restated promissory note (the "**Consolidated Acquisition Note**"), representing the entire principal amount of the Acquisition Loan. Similarly, the Acquisition GAP Mortgage and the Amended January Mortgage were consolidated into an amended and restated mortgage on the Real Property securing the Consolidated Acquisition Note (the "**Consolidated Acquisition Mortgage**").

As part of an integrated financing transaction that included the Acquisition Loan, Sutton Owner DE and the Lender also entered into a building loan agreement (the "**Building Loan Agreement**") for a loan of $1.4 million, bearing interest at a rate of 6% per year, and imposing additional interest of $280,000 to be paid at maturity or upon prepayment (the "**Building Loan**"). The maturity date for the Building Loan was January 19, 2016. The Building Loan was evidenced by a $1.4 million promissory note (the "**Building Note**") and secured by a mortgage encumbering the Real Property and Development Rights (the "**Building Mortgage**").

At the same time, Sutton Mezz and the Lender entered into a mezzanine loan agreement (the "**June Mezz Agreement**") pursuant to which the Lender provided financing (the "**June Mezz Loan**") to refinance the January Mezz Loan. The June Mezz Loan was evidenced by a

---

[10] The difference between $10,750,000 and $11,494,970 relates to $744,970 of accrued interest.

[11] The Development Rights include 16,490 square feet of Affordable Floor Area acquired from Gemini Residential LLC ("**Gemini**") in accordance with the Inclusionary Air Rights Purchase Agreement dated January 20, 2015, which equates to 57,715 square feet of Inclusionary Air Rights ("**IAR**") because each square foot of newly constructed affordable housing generates 3.5 square feet of IAR. Accordingly, the receiving site, 428-432 East 58th Street, New York, NY, will have the right to use 57,715 of IAR when Gemini's development project, which includes 16,490 square feet of affordable housing, is completed and receives a temporary certificate of occupancy and HPD approval.

[12] Sutton Owner NY was merged into Sutton Owner DE in March 2015.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

$20 million promissory note (the "**June Mezz Note**") and secured by a pledge of Sutton Mezz's membership interests in Sutton Owner DE (the Acquisition Loan, the Building Loan and the June Mezz Loan are collectively referred to as the "**June Loans**").

Sutton Owner DE and Sutton Mezz applied the proceeds of the June Loans to: (a) refinance the January Loan and the January Mezz Loan; (b) purchase certain additional development rights and expenses; (c) fund additional interest reserves; and (d) pay transactional costs and fees. Sutton Owner DE applied the proceeds of the Building Loan to: (a) fund an interest reserve; (b) fund an architectural reserve; and (c) fund a demolition reserve.

### iv.    Debtors' Default, Lender's Efforts to Foreclose, and the State Court Action

Throughout fall 2015, the Debtors unsuccessfully sought to obtain replacement financing to fund the long term development of the Real Property.  On January 19, 2016, the June Loans matured.  The Debtors did not repay any portion of the June Loans by that date.  On January 20, 2016, the Lender delivered notices of default to the Debtors in respect of the June Loans.  The Lender also delivered to Sutton Mezz a notice informing it that, in accordance with the June Mezz Agreement, the Lender would conduct a UCC foreclosure sale (the "**UCC Sale**") on February 11, 2016.  The Lender delivered a subsequent notice on February 5, 2016, rescheduling the UCC foreclosure sale to February 29.

On February 17, 2016, the Debtors commenced an action in the Supreme Court of the State of New York, County of New York (the "**State Court**"), captioned as Sutton 58 Owner, LLC and BH Sutton Mezz LLC v. Sutton 58 Associates, LLC, under Index Number 650832/2016, seeking a temporary restraining order and preliminary injunction enjoining the UCC Sale from moving forward on February 29, 2016.  After initially issuing a TRO, the State Court denied the Debtors' request for a preliminary injunction.

## B.    The Jointly Administered Chapter 11 Cases

### i.    The Sutton Mezz Case

On February 26, 2016, Sutton Mezz filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court. On April 6, 2016, Sutton Mezz filed its schedules of assets and liabilities and statement of financial affairs, certain of which were amended on August 5, 2016. Sutton Mezz owns 100% of the membership interests in Sutton Owner DE and owned 100% of the membership interests in Sutton Owner NY before it was merged into Sutton Owner DE.

No Trustee or Examiner has been appointed in the Sutton Mezz case.  On March 23, 2016, an Official Committee of Unsecured Creditors was formed in the Sutton Mezz case (the "**Committee**").

### ii.    The Sutton Owner DE Case

On April 6, 2016, Sutton Owner DE filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

No Trustee or Examiner has been appointed in the Sutton Owner DE case. On May 3, 2016, an amended appointment of the Committee was filed with the Bankruptcy Court.

### iii.    The Sutton Owner NY Case

On July 12, 2016, Sutton Owner NY filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

Sutton Owner DE is the successor by merger to Sutton Owner NY and, accordingly, the Chapter 11 Case of Sutton Owner NY shall be deemed automatically dismissed on the Effective Date.[13]

Pursuant to Orders of the Bankruptcy Court, the Debtors' cases are being jointly administered under the Sutton Mezz case.

### iv.    The Debtors' Assets and Organizational Structure

The Debtors' assets consist of the following:

| Debtor | Assets |
| --- | --- |
| Sutton Mezz | 100% interest in Sutton Owner DE<br>Accounts Receivable<br>Office Equipment and Furniture |
| Sutton Owner DE | Real Property<br>Development Rights<br>Accounts Receivable<br>Office Equipment and Furniture<br>Cooperative Apartments located at 504 Merrick Road, Lynbrook, New York 11563 |
| Sutton Owner NY | None[14] |

## C.    Adversary Proceeding

From the outset of these Chapter 11 Cases, the Debtors have asserted that the Lender and its affiliates were responsible for the Debtors' default. The Debtors have accused the Lender of

---

[13] The alleged continued existence of Sutton Owner NY as a legal entity was predicated on certain claims asserted in the adversary proceeding initiated by the Debtors, as described below. Those claims were withdrawn with prejudice on October 25, 2016. Adv. Pro. No. 16-1187 (SHL) [Docket No. 24].

[14] Sutton Owner NY was merged into Sutton Owner DE in March 2015. The Debtors no longer allege that the merger did not occur. *See supra* note 13.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

taking advantage of them and improperly exercising control over the Project. *See, e.g.*, *Declaration of Joseph Beninati in Support of the Debtor's Opposition to Sutton 58 Associates LLC's Motion for an Order Dismissing the Chapter 11 Case Or, in the Alternative, Modifying the Automatic Stay* [Docket No. 38-2]. Based on these allegations, the Debtors conducted extensive discovery pursuant to Bankruptcy Rule 2004 of the Lender, Lender's counsel, and the Debtors' own former counsel [Docket Nos. 74, 75, 80].

On July 13, 2016, the Debtors filed a complaint (the "**Complaint**") against the Lender and affiliated defendants (the "**Defendants**") asserting twenty-six (26) claims for legal, equitable and declaratory relief [Adv. Pro. No. 16-1187 (SHL)] (the "**Adversary Proceeding**"). The Debtors asserted numerous claims against the Defendants in the Complaint for, among other things, breach of contract, breach of implied duty of good faith and fair dealing, breach of fiduciary duty, contractual unconscionability, equitable subordination, objection to claim, criminal usury and lender liability.

On August 29, 2016, the Defendants filed an Answer to the Complaint [Adv. Pro. Docket No. 5], which answered the Complaint, raised certain affirmative defenses, and set forth counterclaims in connection with claims that the Debtors later withdrew with prejudice. The Defendants have denied any breach of contract or duty, as well as any wrongdoing in connection with the loan agreements or otherwise, and have denied that any of the loan documents are unconscionable. The Defendants further have asserted that the Debtors have not made the requisite showing to equitably subordinate the Defendants' claims, nor have the Debtors provided grounds for objecting to the Defendants' claims.

The trial on the claims asserted in the Adversary Proceeding concluded on November 17, 2016. On November 30, 2016, the Bankruptcy Court issued a bench ruling summarizing its adjudication of the issues in the Adversary Proceeding. The next day, on December 1, 2016, the Bankruptcy Court issued a Post-Trial Memorandum of Decision [Adv. Pro. Docket No. 58]. With one exception, the Bankruptcy Court denied all of the Debtors' claims, thereby allowing the Lender's claims against the Debtors in full. With respect to the one claim upheld by the bankruptcy court (concerning the interest rate on the Building Loan), the Lender agreed to waive any interest on account of the Building Loan, thereby resolving the matter completely. The Bankruptcy Court further held that the Lender shall be entitled to credit bid up to the full amount of its Allowed Secured Acquisition Loan and Building Loan Claims (with the limited exception of the interest portion of the Building Loan Claim) at the Auction. This is in addition to the Lender's existing right to also credit bid all or a portion of its Allowed Secured Claim under the Cash Collateral Stipulation (as discussed below).

## D.     The Agreed Cash Collateral Order

The Debtors, the Committee and the Lender all agreed that the demolition of the existing buildings on the Real Property was important. To this end, the Debtors, the Committee and Lender negotiated a stipulated order (the "**Cash Collateral Order**") and budget (as amended pursuant to the Cash Collateral Order, the "**Budget**") for the Debtors' use of cash collateral (the "**Cash Collateral**" or the "**Cash Collateral Funds**") in order to pay the actual and reasonable costs of the demolition. The Cash Collateral Order was approved by the Bankruptcy Court on August 9, 2016.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

The Cash Collateral Funds (from a reserve account established in connection with prior funding but secured to the Lender) are in the amount of $ 1,804,107.07. The Cash Collateral Funds, as set forth in the Budget, have been and may continue to be used to demolish the existing buildings at the Real Property and to undertake such other permitted uses (if any).

In consideration for the use of the Cash Collateral and pursuant to the Cash Collateral Order, the Lender has a replacement lien and allowed first priority secured claim against all of the Debtors' assets (except for claims and causes of action under Chapter 5 of the Bankruptcy Code) in the amount of the Cash Collateral Funds. Further, the Lender has an allowed super-priority administrative expense claim for such amount.

The Cash Collateral Order is in the best interest of the Debtors and of all interested parties in order to accomplish the demolition of the buildings at the Real Property.

### E.    Retention of Professionals

By Orders of the Bankruptcy Court, the Debtors employed LaMonica Herbst & Maniscalco, LLP ("**LH&M**") as their counsel effective as of their respective petition dates.

By Orders of the Bankruptcy Court, the Debtors employed CohnReznick LLP as their general accountants effective as of their respective petition dates.

By Order of the Bankruptcy Court, the Debtors employed Meridian Capital Group LLC and Jones Lang LaSalle Americas, Inc. as co-real estate brokers to market and sell the Debtors' assets in connection with these Chapter 11 Cases.

By Order of the Bankruptcy Court, the Committee employed Westerman Ball Ederer Miller Zucker & Sharfstein, LLP as its counsel.

### F.    Claims Bar Dates

By Order of the Bankruptcy Court dated June 8, 2016 (the "**Mezz and DE Claims Order**"), the Bankruptcy Court fixed July 25, 2016 (the "**Mezz and DE Bar Date**") as the date by which creditors, with claims against Sutton Mezz or Sutton Owner DE must have filed a proof of claim ("**Proof of Claim**"). Accordingly, any Creditor having filed a Proof of Claim with the Bankruptcy Court on or before the Mezz and DE Bar Date, and whose Claim is an Allowed Claim, will receive payment in accordance with the terms of the Plan. Any Creditor of Sutton Mezz or Sutton Owner DE who failed to file a Proof of Claim on or before the Mezz and DE Bar Date, i.e. July 25, 2016, which: (i) is not listed on the Sutton Mezz or Sutton Owner DE's schedules of assets and liabilities; or (ii) is listed as "disputed," "contingent" or "unliquidated" on the Debtors' schedules, will receive a distribution under the Plan only to the extent that all other creditors are paid in full and excess cash remains to pay holders of claims in Class 9.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

V

**THE PLAN OF LIQUIDATION**

**A.     Explanation of Chapter 11**

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor seeks to reorganize its business and financial affairs. A debtor's estate may also liquidate its assets and wind up its affairs in Chapter 11. The formulation and confirmation of a plan of reorganization or liquidation is the principal purpose of a Chapter 11 case. A plan of reorganization or liquidation sets forth the means of satisfying or discharging the holders of claims against a Chapter 11 debtor. Chapter 11 does not require that each holder of a claim against a debtor vote in favor of a plan in order for the Bankruptcy Court to approve a plan. If any class of claimants is "impaired" by a plan, the plan must be accepted by at least one "impaired" class of claims. A claim that will not be repaid in full, or a Claimant whose legal rights are altered, or an interest that is adversely affected, are deemed "impaired."

The holder of an impaired claim is entitled to vote to accept or reject the plan if the claim has been allowed under Section 502 of the Bankruptcy Code, or temporarily allowed for voting purposes under Rule 3018 of the Federal Rules of Bankruptcy Procedure. Acceptance by a particular class must be by a majority in number and two-thirds (2/3) of the dollar amount of the total claims actually voting in the class.

**B.     Claims**

Pursuant to the Mezz and DE Claims Order, any Creditor of Sutton Mezz or Sutton Owner DE who failed to file a proof of Claim on or before the Mezz and DE Bar Date and: (i) was not listed on the schedules of Sutton Mezz or Sutton Owner DE; or (ii) was listed as "disputed," "contingent" or "unliquidated" cannot be treated as a Creditor with respect to such Claim for purposes of voting on and receiving a Distribution under the Plan.

All Proofs of Claim filed in this case will be reviewed, and the Wind-Down Officer and/or any Plan Proponent may file objections to filed Claims. The Bankruptcy Court will retain jurisdiction to adjudicate objections to claims brought by the Wind-Down Officer and/or any Plan Proponent, including any settlements or compromises of such claims. As and to the extent provided in the Plan, the Wind-Down Officer shall have the exclusive authority (except with respect to the rights of the Lender as a Plan Proponent in the Plan) to file, settle, compromise, withdraw, or litigate to judgment any objections to Administrative Expense Claims and other Claims, except as provided in the Plan and except with respect to the Acquisition Loan and Building Loan Claims, the Mezz Loan Claims, the Lender's Allowed Secured Claim under the Cash Collateral Stipulation, and any other Claim deemed to be an Allowed Claim as of the Effective Date or waived, relinquished, exculpated, released, compromised, settled or Allowed in the Plan or in a Final Order, which Acquisition Loan and Building Loan Claims, Mezz Loan Claims, Lender's Allowed Secured Claim under the Cash Collateral Stipulation and other Claims are not subject to objection by the Wind-Down Officer or any other Entity, but shall be resolved by the Bankruptcy Court, either in the Adversary Proceeding or otherwise; provided, however, this provision shall not apply to Professional Fee Claims, which may be objected to by any party-

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

in-interest in these Chapter 11 Cases. From and after the Effective Date, and except as provided in the Plan, the Wind-Down Officer shall have and shall retain any and all available rights and defenses that the Debtors had with respect to any Claim based on the limitations imposed by Section 502 of the Bankruptcy Code and may settle or compromise any Disputed Claim without further notice to, order from, or approval of the Bankruptcy Court.

At any time prior to the Claims Objection Deadline, the Wind-Down Officer and/or the Lender as a Plan Proponent may file objections with the Bankruptcy Court and serve such objections on the holders of the Claims or Equity Interests to which objections are made. Nothing contained in the Plan, however, shall limit the right of the Wind-Down Officer or the Lender as a Plan Proponent to object to Claims or Equity Interests, if any, filed or amended after the Claims Objection Deadline.   The Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the Wind-Down Officer without notice or hearing.

Notwithstanding anything in the Plan to the contrary with respect to the rights of the Wind-Down Officer, (i) the Lender as a Plan Proponent shall have the right to file, settle, compromise, withdraw, or litigate to judgment any objections to Administrative Expense Claims and other Claims, whether arising prior to or after the commencement of the Chapter 11 Cases, (ii) the Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the Lender as a Plan Proponent without notice or hearing, (iii) any rights of the Wind-Down Officer to settle, compromise, or withdraw any Administrative Expense Claims or other Claims shall be subject to the prior written consent of the Lender as a Plan Proponent not to be unreasonably withheld, or an order of the Bankruptcy Court, and (iv) any rights of the Lender as a Plan Proponent to settle, compromise, or withdraw any Administrative Expense Claims or other Claims shall be subject to the prior written consent of the Wind-Down Officer not to be unreasonably withheld, or an order of the Bankruptcy Court.

## C.     Classes Of Claims or Interests

### Unclassified Claims

**1.     Administrative Expenses**:  Allowed Administrative Expense Claims are claims against the Estates for any costs or expenses incurred during the Chapter 11 Case that are allowed and entitled to priority under Sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, but not limited to, all actual and necessary expenses, and all allowances of compensation or reimbursement of expenses of professionals retained by the Debtors to the extent permitted by the Bankruptcy Court. Administrative Claims include statutory quarterly fees due to the United States Trustee.

Administrative Claims also include claims of Professionals approved by Order of the Bankruptcy Court who have assisted in the administration of this case and the administrative proofs of claims that were filed with the Bankruptcy Court. This sum includes the fees and expenses of all Professionals retained or to be compensated in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court.  All Professional Fee Claims are subject to Bankruptcy Court approval.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

2.      **Priority Tax Claims**: Allowed Priority Tax Claims that are entitled to priority in payment over Allowed Unsecured Claims pursuant to section 507(a)(8) of the Bankruptcy Code.

### Classified Claims

Class 1 Claims:  Class 1 consists of Priority Claims.

Class 2 Claims:  Class 2 consists of the Allowed Secured Claim of the Lender under the Cash Collateral Stipulation.

Class 3 Claims:  Class 3 consists of the Acquisition Loan and Building Loan Claims to the extent such Claims are Secured Claims.

Class 4 Claims:  Class 4 consists of Other Secured Claims.

Class 5 Claims:  Class 5 consists of Unsecured Claims against Sutton Owner DE.

Class 6 Claims:  Class 6 consists of the Mezz Loan Claim to the extent such Claim is a Secured Claim.

Class 7 Claims:  Class 7 consists of any Unsecured Claims against Sutton Mezz.

Class 8 Claims:  Class 8 consists of any Subordinated Claims.

Class 9 Claims:  Class 9 consists of any Late Filed Claims.

Class 10 Interests:   Class 10 consists of consists of the Sutton Mezz Membership Interests.

**D.**     **Treatment of Allowed Claims**

**Allowed Administrative Expense Claims**

Administrative Expense Claims include (a) United States Trustee Fees; (b) Professional Fee Claims; and (c) the Debtors' post-Filing Date, pre-Effective Date operating expenses.

A notice setting forth the Administrative Expense Claim Bar Date will be filed on the Bankruptcy Court's docket and served with the notice of the Effective Date. No other notice of the Administrative Expense Claim Bar Date will be provided. All requests for payment of Administrative Expense Claims that accrued on or before the Effective Date (other than Professional Fee Claims, which are subject to the provisions of Section 3.04 of the Plan) must be filed with the Bankruptcy Court and served on counsel for the Plan Proponents and the Wind-Down Officer by the Administrative Expense Claim Bar Date. Any requests for payment of Administrative Expense Claims that are not properly filed and served by the Administrative Expense Claim Bar Date shall be disallowed automatically without the need for any objection or any action by the Bankruptcy Court.

Unless Lender as a Plan Proponent or the Wind-Down Officer objects to a timely filed and properly served Administrative Expense Claim by the Claims Objection Deadline, or such

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

Administrative Expense Claim has been allowed by prior order of the Bankruptcy Court, then such Administrative Expense Claim shall be deemed allowed in the amount requested. If Lender as a Plan Proponent or the Wind-Down Officer objects to an Administrative Expense Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Expense Claim should be allowed and, if so, in what amount.

Each holder of an Allowed Administrative Expense Claim (other than holders of Professional Fee Claims or United States Trustee Fees) shall be paid in full, in cash, by the Wind-Down Officer on or as soon as reasonably practicable after the later of the Effective Date, the Sale Date and the date on which such Claim becomes an Allowed Administrative Expense Claim, or on such other date and upon such other terms as may be agreed by the holder of such Allowed Administrative Expense Claim and the Wind-Down Officer or ordered by the Bankruptcy Court. Holders of Administrative Expense Claims are not entitled to vote on the Plan and are deemed to have accepted the Plan.

Allowed Administrative Expense Claims other than Professional Fee Claims representing liabilities incurred in the ordinary course of business by the Debtors will be paid by the Wind-Down Officer in accordance with the terms and conditions of the arrangements with the particular creditor and in accordance with ordinary business terms.

The Allowed Administrative Expense Claims of the Lender under the Cash Collateral Stipulation are subject to the treatment of such Claims under Section 3.06 below.

### United States Trustee Fees

The United States Trustee Fees are unimpaired. The Wind-Down Officer shall pay all statutory quarterly fees due to the United States Trustee in accordance with the applicable schedule for the payment of such fees until the Chapter 11 Cases are closed by entry of a final decree of the Bankruptcy Court.

### Priority Tax Claims

Priority Tax Claims are unimpaired. Allowed Priority Tax Claims, if any, will be paid in full, in cash, by the Wind-Down Officer on or as soon as reasonably practicable after the later of Effective Date and the Sale Date.

### Professional Fee Claims

All final applications for payment of Professional Fee Claims shall be filed with the Bankruptcy Court and served on the Plan Proponents and the Wind-Down Officer on or before the Professional Fee Claims Bar Date. Any Professional Fee Claim that is not so asserted shall be deemed disallowed under the Plan and the holder thereof shall be enjoined from commencing or continuing any Cause of Action, employment of process or act to collect, offset, recoup or recover such Claim against any of the Estates, the Wind-Down Officer or any of their respective assets or property.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

Each holder of an Allowed Professional Fee Claim shall be paid in cash in an amount equal to such Allowed Professional Fee Claim on or as soon as reasonably practicable after the first Business Day following the date upon which such Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court, unless such holder shall agree to a different treatment of such Claim.

### Class 1 Claims – Priority Claims

Each holder of an Allowed Claim in this Class will be paid in full on or as soon as reasonably practicable after the later of the Sale Date or the Effective Date. Class 1 is impaired and entitled to vote on the Plan.

### Class 2 Claims — Cash Collateral Stipulation

The treatment of this Class shall be based upon whether the Assets are sold to a Third Party Purchaser or the Lender (or its designee). Except in the event of a Lender Resolution, if the Assets are sold to a Third Party Purchaser, then, on the Sale Date, the Wind-Down Officer shall apply the Sale Proceeds to pay, in full in Cash, the Lender's Allowed Secured Claim under the Cash Collateral Stipulation. In the alternative, the Lender (or its designee) shall be entitled, in the Lender's discretion, to include its Allowed Secured Claim under the Cash Collateral Stipulation as part of any Credit Bid. For the avoidance of doubt, Lender will not receive any distributions from the Lender Contribution on account of its Class 2 Claim. Class 2 is impaired and entitled to vote on the Plan.

### Class 3 Claims - Secured Acquisition Loan and Building Loan Claims

The Acquisition Loan and Building Loan Claims have been determined by the Bankruptcy Court to be Secured Claims, and shall be treated as Allowed Secured Claims as provided for in this Class 3.[15]

(i) On the Sale Date, if the Lender (or its designee) is the Purchaser of the Assets, then (x) the Lender (or its designee) shall receive the Assets free and clear of all Liens, claims, charges, encumbrances or interests of any kind or nature, as provided in the Credit Bid Agreement and the Confirmation Order, and (y) the Lender agrees to forego any right to an additional distribution from Sutton Owner DE under the Plan on account of (1) its Class 3 Acquisition Loan and Building Loan Claims, (2) its Class 5 Lender Deficiency Claim, if any, or (3) its Class 2 Claim under the Cash Collateral Stipulation for any Secured Claim, Priority Claim, Administrative Expense Claim or other Claim of the Lender as provided for under such Cash Collateral Stipulation; provided, however, that nothing in the Plan shall impair in any respect (x) the Lender's (or its designee's) rights to include any such Claims as part of any Credit Bid, or (y) any Claim or Cause of Action that the Lender has or may have against any other Entity relating to or arising in connection with any such Lender Deficiency Claim or other Claims, or any right of the Lender to pursue such Claims and Causes of Action, all of which shall survive the confirmation and effectiveness of the Plan. For the avoidance of doubt, (i) under this

---

[15] In accordance with the Bankruptcy Court's determination pursuant to the Adversary Proceeding, Lender has amended its Claim to exclude interest on the Building Loan.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

scenario Lender will not receive any distributions from the Lender Contribution, and (ii) nothing in the Plan shall impair Lender's Claims in any other Class.

(ii)    Alternatively, if a Lender Resolution occurs because the Lender consents or otherwise does not object to the sale of the Assets to a Third Party Purchaser for an amount <u>less than</u> the sum of (x) Lender's Allowed Secured Claims for the Acquisition Loan and Building Loan, and (y) Lender's Claims under the Cash Collateral Stipulation, then (a) the Wind-Down Officer shall apply the Sale Proceeds on the Sale Date to pay, in Cash, the aggregate amount of the Allowed Claims in Class 3 until fully paid, and (b) the Lender agrees to forego any right to an additional distribution from Sutton Owner DE under the Plan on account of its Class 3 Acquisition Loan and Building Loan Claims, its Class 5 Lender Deficiency Claim, if any, or its Class 2 Claim under the Cash Collateral Stipulation for any Secured Claim, Priority Claim, Administrative Expense Claim or other Claim of the Lender as provided for under such Cash Collateral Stipulation; provided, however, that nothing in the Plan shall impair in any respect (x) the Lender's (or its designee's) rights to include any such Claims as part of any Credit Bid, or (y) any Claim or Cause of Action that the Lender has or may have against any other Entity relating to or arising in connection with any such Lender Deficiency Claim or other Claims, or any right of the Lender to pursue such Claims and Causes of Action, all of which shall survive the confirmation and effectiveness of the Plan.  For the avoidance of doubt, (i) under this scenario Lender will not receive any distributions from the Lender Contribution, and (ii) nothing in the Plan shall impair Lender's Claims in any other Class.

(iii)  Alternatively, if there is a Lender Resolution and the Assets are sold to a Third Party Purchaser for an amount <u>in excess of</u> the sum of (x) Lender's Allowed Secured Claims for the Acquisition Loan and Building Loan, and (y) Lender's Claims under the Cash Collateral Stipulation,  then, after payment in full of (or establishment of reserves for) Allowed Claim in Class 2, on the Sale Date, the Wind-Down Officer shall apply the Sale Proceeds to pay, in Cash, (aa) the aggregate amount of Lender's Allowed Secured Claims in Class 3 until fully paid, and (bb) to reimburse the Lender in full for the amount of the Initial Plan Funding and the Expense Contribution (if such amounts are paid by the Lender).  For the avoidance of doubt, (i) under this scenario Lender will not receive any distributions from the Lender Contribution, but rather, will be reimbursed for the Initial Plan Funding and the Expense Contribution to the extent such amounts are paid by the Lender and (ii) nothing in the Plan shall impair Lender's Claims in any other Class.

(iv)  Finally, if no Lender Resolution occurs and the Assets are sold to a Third Party Purchaser, then, after payment in full of (or establishment of reserves for) Allowed Claim in Classe 2, on the Sale Date, the Wind-Down Officer shall apply the remaining Sale Proceeds to pay, in Cash, the aggregate amount of Lender's Allowed Secured Claims in Class 3 until fully paid.

Class 3 is impaired and entitled to vote on the Plan.

**<u>Class 4 Claims – Other Secured Claims</u>**

Except to the extent that a holder of an Other Secured Claim that is an Allowed Secured Claim agrees to a less favorable treatment of such Other Secured Claim, in full and final

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

satisfaction, settlement, release, and discharge of and in exchange for such Other Secured Claim, the holder thereof shall receive on or as soon as practicable after the later of the Effective Date or the Sale Date, at the election of the Wind-Down Officer: (A) payment in full in Cash, or (B) delivery of the collateral securing such Claim. Class 4 is impaired and entitled to vote on the Plan.

Notwithstanding the foregoing, to the extent the value of the Assets is less than Lender's total Allowed Secured Claims for the Acquisition Loan and Building Loan Claims and under the Cash Collateral Stipulation, then, pursuant to Section 506(a) of the Bankruptcy Code and as a result of the Lender being undersecured, any mechanic's lien claims that are junior to such Allowed Secured Claims of Lender will be classified and treated as Unsecured Claims as provided for in Class 5.

### Class 5 Claims — Unsecured Claims against Sutton Owner DE

This Class is impaired. Each holder of an Allowed Claim against Sutton Owner DE in this Class shall receive its Pro Rata Share of Available Cash (as provided for below) when and as such distributions are made. Class 5 is impaired and entitled to vote on the Plan.

After satisfaction in full of all Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Claims in Classes 1, 2, 3 and 4, and unless otherwise agreed to by the holder of an Allowed Unsecured Claim in Class 5, the Wind-Down Officer shall pay to each holder of an Allowed Unsecured Claim in Class 5 its Pro Rata Share of Available Cash (not to exceed the amount of its Allowed Claim) on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the Sale Date and (iii) the date on which such Claim becomes an Allowed Claim. If, after the Effective Date, any Cash is available from, among other things, the liquidation of the Excluded Assets, the prosecution and enforcement of Causes of Action, the release of funds from the Distribution Reserve or the Disputed Claims Reserve or the Wind-Down Reserve, or unclaimed, undeliverable or time-barred distributions to holders of Allowed Claims pursuant to this Plan and, in any such case, becomes Available Cash, each holder of an Allowed Unsecured Claim in Class 5 will be paid on a Subsequent Distribution Date, if any, and the Final Distribution Date its Pro Rata Share of such Available Cash at such time in accordance with Section 11.02 of this Plan, provided that the aggregate distributions received pursuant to the Plan do not exceed the amount of the Allowed Claim.

The treatment of the Lender's Allowed Unsecured Claim (if any) in Class 5 shall be subject to the provisions of Section 3.07(b) of the Plan.

### Class 6 Claims — Secured Mezz Loan Claim

The Mezz Loan Claim has been determined by the Bankruptcy Court to be an Allowed Secured Claim pursuant to the Adversary Proceeding.

In the event of a Sale to a Third Party Purchaser, the Lender shall receive all Available Cash after the payment in full of (or establishment of a reserve for) all Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Claims in all prior classes of Claims, until the payment in full of the Mezz Loan Claim.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

Class 6 is impaired and is entitled to vote on the Plan.

### Class 7 Claims — Unsecured Claims against Sutton Mezz

This Class is impaired.  In the event of a Sale to a Third Party Purchaser, if Available Cash remains after the payment in full of (or establishment of a reserve for) all Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Claims in all prior classes of Claims, then each holder of Allowed Unsecured Claims against Sutton Mezz shall receive its Pro Rata Share of such remaining Available Cash until the payment in full of all Allowed Unsecured Claims against Sutton Mezz. Class 7 is impaired and entitled to vote on the Plan.

### Class 8 Claims — Subordinated Claims

This Class is impaired.  In the event of a Sale to a Third Party Purchaser, if Available Cash remains after payment in full of (or establishment of a reserve for) all Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Claims in all prior classes of Claims, then each holder of an Allowed Claim that is a Subordinated Claim shall receive its Pro Rata Share of such remaining Available Cash until the payment in full of such Allowed Claim.  Class 8 is impaired and entitled to vote on the Plan.

### Class 9 Claims — Late Filed Claims

This Class is impaired.  In the event of a Sale to a Third Party Purchaser, if Available Cash remains after payment in full of (or establishment of a reserve for) all Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Claims in all prior classes of Claims, then each holder of an Allowed Claim that is a Late Filed Claim shall receive its Pro Rata Share of such remaining Available Cash until the payment in full of such Allowed Claim.  Class 9 is impaired and entitled to vote on the Plan.

### Class 10 Interests — Sutton Mezz Membership Interests

This Class is impaired.  In the event of a Sale to a Third Party Purchaser, if Available Cash remains after the payment in full of (or establishment of a reserve for) all Allowed Administrative Expense Claims, Allowed Priority Tax Claims and Allowed Claims in all prior classes of Claims, then the holders of the Sutton Mezz Membership Interests shall receive their pro rata share of such remaining Available Cash.  Class 10 is impaired and entitled to vote on the Plan.

## VI

## IMPLEMENTATION OF THE PLAN

### A.    Timing of Plan

The Plan provides that notwithstanding anything in Bankruptcy Rule 3020(e) to the contrary, (i) the entry of the Confirmation Order shall constitute a Final Order and the period in which an appeal must be filed shall commence upon the entry thereof, and (ii) the Confirmation

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

Order shall take effect immediately upon its entry and the Plan Proponents are authorized to consummate the Plan immediately after entry of the Confirmation Order and the satisfaction or waiver of all other conditions to the Effective Date of the Plan, in accordance with the terms of the Plan.

## B.   <u>Plan Funding</u>

The Plan provides that it will be implemented based upon the Sale of the Assets.

<u>Lender Contribution</u>.  In the event a Lender Resolution occurs, including if the Lender elects to deem a Lender Resolution to have occurred as provided in the Plan, then on the later of (i) the Effective Date or as soon as reasonably practicable thereafter if the Lender Resolution occurs after the Effective Date, or (ii) the Sale Date, the Lender will fund the Plan by transferring to the Wind Down Officer (x) the Initial Plan Funding and (y) the Expense Contribution; provided, however, that as and to the extent provided in Section 3.07(b) of the Plan, the Sale Proceeds shall be applied on the Sale Date to reimburse the Lender in full for the amount of the Initial Plan Funding and the Expense Contribution (if such amounts have been paid by the Lender).  Any portion of the Expense Contribution that is not required for the payment of the costs and expenses described above may be distributed to holders of Allowed Claims as provided in the Plan.  If the Lender (or its designee) acquires the Assets as the Purchaser pursuant to the Credit Bid Agreement, then one (but not both) of the following will apply:  (A) upon the qualification of the Real Property for Grandfathering, the Lender shall fund an additional $500,000 under the Plan, or (B) alternatively, if the Lender sells the Real Property to a third party on or before the nine-month anniversary of the Sale Date and the Net Sale Proceeds exceed $190 million, then the Lender shall fund 50% of such excess under the Plan (up to $500,000), but in no event will the Lender be required to fund more than an additional $500,000 under the Plan. The additional alternative (and mutually exclusive) funding contributions contemplated by the immediately preceding sentence are referred to as the "**Subsequent Plan Funding**".  For purposes of this provision, "**Net Sale Proceeds**" means the cash proceeds received by the Lender for the sale of the Real Property net of (a) commissions, broker fees, attorneys' fees, accountants' fees, investment banking fees and other reasonable transaction costs, fees and expenses properly attributable to such transaction and payable by the Lender in connection therewith; (b) all stamp, transfer, mortgage recording or other similar tax or governmental assessment paid by Lender (or its designee) in connection with any such sale, including an appropriate reserve (if applicable) for taxes; (c) carrying costs (including insurance, taxes, security and other direct preservation and maintenance costs) for the Property incurred by the Lender (or its designee) for any period prior to and including the date of any such sale; and (d) any amounts escrowed or reserved against indemnification obligations or purchase price adjustments.  The Lender Contribution shall be payable only in the event that a Lender Resolution occurs, including if the Lender elects to deem a Lender Resolution to have occurred as provided in the Plan.  For the avoidance of doubt, the Lender's sole payment obligation under the Plan, including in respect of any acquisition of Assets under a Credit Bid Agreement, shall be the Lender Contribution; provided however that if and to the extent the Lender (or its designee) acquires the Assets under the Plan for an amount in excess of the Lender Credit Bid Threshold, then the Lender (or its designee) shall pay as additional consideration the cash portion of its purchase price on account of its purchase of the Assets in excess of the Lender Credit Bid Threshold (such excess amount, the "**Lender Additional Cash Bid**") (and, for the avoidance of

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

doubt, the Lender's obligation with respect to the Subsequent Plan Funding shall be reduced or extinguished on a dollar for dollar basis by the amount of the Lender Additional Cash Bid); provided further however that cure amounts and other obligations assumed by the Lender (or its designee) on account of any assumed Executory Contracts shall not be included in the determination of the cash portion of its purchase price for such calculation purposes. In the event that a Third Party Purchaser is the successful bidder, then the Plan shall be funded with the Sale Proceeds of such Sale as provided for in the Plan, proceeds of the sale of Post-Confirmation Estate Assets and, if applicable, the Lender Contribution.

## C.      **Sale of Assets**

The Plan provides that pursuant to the Confirmation Order and the Bid Procedures, the Assets will be sold at the Auction pursuant to Sections 363, 365 and 1123(a)(5) of the Bankruptcy Code.

In the event a Lender Resolution occurs, including if the Lender elects to deem a Lender Resolution to have occurred as provided in the Plan, the following procedures shall govern the Sale:  The Lender agrees to serve (either directly or through a designee) as a stalking horse bidder pursuant to a Credit Bid Agreement, which offer is subject to a marketing and auction process pursuant to the Bid Procedures to solicit higher and better bids.  The Auction shall take place on or before December 13, 2016. The Auction may be adjourned for up to one week such that it occurs on or before December 20, 2016 with the prior consent of the Committee and the Lender, which consent shall not be unreasonably withheld.  The Lender shall be entitled to submit one or more Credit Bids in the Auction that may include a bid of up to the full amount of the Allowed Secured Claims for the Acquisition Loan and Building Loan Claims (including all pre- and post-petition interest, additional interest, fees, costs, protective advances and expenses) plus the Allowed Secured Claim under the Cash Collateral Stipulation, without regard to the value of the Lender's collateral, and any Credit Bids that include such Allowed Secured Claims shall be treated as equal in value to a cash bid of an equal amount.  At the conclusion of the Auction, and in accordance with the Bid Procedures, the Debtors shall select the highest and best bid.  In the event that a Third Party Purchaser is the successful bidder, then the Debtors and the Third Party Purchaser shall enter into the Purchase Agreement, which shall be in form and substance acceptable to the Lender (whose consent shall not be unreasonably withheld).  The Sale of the Assets to a Third Party Purchaser under the Purchase Agreement or to the Lender (or its designee) under the Credit Bid Agreement shall be consummated on the terms thereof on or before February 28, 2017, and the Assets shall be sold to the Purchaser free and clear of all Liens, claims, charges, encumbrances or interests of any kind or nature.

## D.      **Exemption From Certain Transfer Taxes**

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan and the making or delivery of an instrument of transfer of property, pursuant to or in connection with the Plan, the Sale pursuant to the Purchase Agreement or any Credit Bid Agreement shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax or governmental assessment in the United States or by any other governmental unit, and the Confirmation Order shall direct and be deemed to direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to the Sale of the Assets to the Purchaser and the sale or other disposition of the Excluded Assets.

## E.    <u>Wind Down of the Debtors</u>

The Debtors shall continue to exist after the Effective Date for the purposes of making distributions to holders of Allowed Claims under the Plan, and to take any other steps in furtherance thereof or as may be reasonably necessary or appropriate to wind-down their affairs and their Estates, including with respect to liquidating and/or abandoning the Excluded Assets, as appropriate, and filing and prosecuting objections to Claims. The principal purpose of the Debtors shall be to implement the Plan, including to liquidate, collect and maximize the Cash value of the Assets and the Excluded Assets, and to make distributions on account of Allowed Claims in accordance with the terms of the Plan.

On the Effective Date, all existing officers, directors, managers and members of the Debtors shall be deemed to have resigned and the Wind-Down Officer shall be appointed to wind up the affairs of the Debtors, as provided in the Plan.

The activities and operations of the Debtors and the Wind-Down Officer shall be funded through the Wind-Down Reserve to be established on or as soon as reasonably practicable after the Effective Date for the purpose of maintaining Cash from time to time necessary to satisfy the reasonable costs and expenses of the Wind-Down Officer, including fees and costs incurred in connection with (i) the implementation of the Plan, (ii) the liquidation of the Excluded Assets, (iii) the resolution of Disputed Claims and Causes of Action, (iv) the winding down of the Estates and affairs of the Debtors, (v) the reserves for potential liabilities and (vi) compensation for the Wind-Down Officer and its professionals, advisors and other agents. The Wind-Down Reserve shall initially be funded as of the later of the Effective Date and the Sale Date from either (i) the Expense Contribution in the event of a Lender Resolution or (ii) after the application of the Sale Proceeds pursuant to Section 3.07(b), the Wind-Down Officer from the Sale Proceeds and proceeds of the sale of Post-Confirmation Estate Assets in all other circumstances. Any cash released from the Wind-Down Reserve shall be available for distribution to holders of Allowed Unsecured Claims.

The certificate of incorporation, by-laws, limited liability company agreement, operating agreement or similar corporate constituent documents of each Debtor shall be deemed amended, to the extent necessary, in order to effectuate the provisions of this Article VI, and to the extent such documents are deemed amended, such amendments are deemed to be approved pursuant to the Plan and require no further action or approval of any kind or nature.

## F.    <u>Wind-Down Officer</u>

The Plan provides for the appointment of a wind-down officer to oversee the wind-down of the affairs of the Debtors. The identity of the Wind-Down Officer shall be disclosed in a Plan Supplement and will be subject to the approval of the Bankruptcy Court in the Confirmation Order.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

After the Effective Date, the Wind-Down Officer may be removed and/or replaced by order of the Bankruptcy Court. The Wind-Down Officer may appoint a successor reasonably acceptable to the Lender, it being understood that there shall exist no period of time in which no person or entity has assumed the rights, and is responsible for performing the duties and obligations, of the Wind-Down Officer hereunder. The Wind-Down Officer shall have the right to petition the Court to appoint a successor Wind-Down Officer. Any such successor shall have and shall assume all of the rights, duties and obligations of the Wind-Down Officer as set forth in the Plan.

The Wind-Down Officer shall be deemed the representative of the Estates under Section l123(b)(3)(B) of the Bankruptcy Code, and shall have all rights associated therewith. Pursuant to the terms of the Wind-Down Officer Agreement, the Wind-Down Officer shall have all duties, powers, and standing authority necessary to implement the Plan and to administer and liquidate the assets of the Estates for the benefit of the holders of Allowed Claims, and shall be entitled to indemnification and exculpation from the Estates, including the following:

Appointment of Wind-Down Officer. Effective immediately on the Effective Date, the Wind-Down Officer will be designated, appointed and vested with full authority and control over the Post-Confirmation Estate Assets, including, without limitation, the Excluded Assets, and to effectuate and consummate the Sale of the Assets at the Auction in accordance with the terms of the Plan. The Wind-Down Officer will have the powers and responsibilities of a Disbursing Agent and trustee in all respects as it relates to all matters set forth in the Plan, including the Sale of the Assets in accordance with the terms hereof and the Bid Procedures and the distribution of any Sale Proceeds.

Duties and Powers.

On the Effective Date, the Wind-Down Officer will be the representative of and successor to the Debtors, and will have the rights and powers provided in the Bankruptcy Code, in addition to any rights and powers granted in the Plan and in the Confirmation Order. Without limiting the foregoing, the Wind-Down Officer will be the successor-in-interest to the Debtors with respect to all interests constituting Post-Confirmation Estate Assets and with respect to the creditors holding Claims under the Plan. The Wind-Down Officer shall act in a fiduciary capacity for the holders of all Allowed Claims under the Plan. The Wind-Down Officer shall assume all of the responsibilities, duties and obligations of the Debtors' former officers, directors, managers or managing members that arise on or after the Effective Date, and is empowered and authorized to satisfy such responsibilities, duties and obligations without further corporate or limited liability company authority as may have been required prior to the Effective Date. The Wind-Down Officer will pay from the Post-Confirmation Estate Assets (other than the Assets) all ordinary and necessary costs of protecting, preserving, disposing, liquidating and realizing upon the Post-Confirmation Estate Assets. The Wind-Down Officer will liquidate and administer the Post-Confirmation Estate Assets, including making distributions therefrom, all in accordance with the terms of the Plan. Unless otherwise excused or exempted from doing so by the Bankruptcy Code, the Wind-Down Officer will abide by all laws, including tax laws. The Wind-Down Officer shall have sole and exclusive authority for the retention of professionals to assist in any manner on and after the Effective Date.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

The Wind-Down Officer will have the power to take any and all actions which, in the business judgment of the Wind-Down Officer, are necessary or appropriate to fulfill its obligations under the Plan, including, but not limited to, each of the powers set forth below:

(A) hold, manage, protect, administer, collect, sell, liquidate, prosecute, transfer, resolve, settle, adjust, invest, distribute or otherwise dispose of any Post-Confirmation Estate Assets solely for the benefit of holders of Allowed Claims and solely in accordance with the Plan and, as to the Assets, the Bid Procedures, including without limitation executing deeds, assignments and similar conveyance instruments with respect to the Assets;

(B) make all distributions to be funded under the Plan;

(C) assume control over all of the Post-Confirmation Estate Assets;

(D) pay all necessary expenses incurred in connection with the duties and responsibilities of the Wind-Down Officer under the Plan to the extent of available funds, including funds in the Wind-Down Reserve;

(E) administer, implement and enforce all provisions of the Plan;

(F) administer the Plan and the Post-Confirmation Estate Assets;

(G) abandon any Post-Confirmation Estate Assets (other than the Assets);

(H) to invest Cash in accordance with Section 345 of the Bankruptcy Code or otherwise as permitted by order of the Bankruptcy Court;

(I) to purchase and carry all insurance policies and pay all premiums and costs deemed necessary and advisable;

(J) undertake such other responsibilities as are reasonable and appropriate in connection with the Plan; and

(K) take all actions necessary to effectuate the Auction of the Assets and the disposition of the Sale Proceeds in accordance with the terms hereof and the Bid Procedures.

Compensation.  The Wind-Down Officer shall be compensated as specified in the Wind-Down Officer Agreement and shall be paid by the Estates, subject to and consistent with the Wind-Down Budget.

Wind-Down Officer Exculpation.  To the extent permitted by Section 1125(e) of the Bankruptcy Code, the Wind-Down Officer, together with its partners, members, officers, directors, employees, agents and representatives, are exculpated pursuant to the Plan from all Persons, Entities, holders of Claims and Interests, and all other parties in interest, from any and all causes of action, of any kind or nature, arising out of the discharge by the Wind-Down Officer of the powers and duties conferred upon the Wind-Down Officer by the Plan, any Final

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Wind-Down Officer's willful misconduct or gross negligence.  To the extent permitted by Section 1125(e) of the Bankruptcy Code, no Holder of a Claim or an Interest, or representative thereof, shall have or pursue any cause of action (i) against the Wind-Down Officer or its partners, members, officers, directors, employees, agents and representatives for making Plan Distributions in accordance with the Plan, or (ii) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan.  Nothing contained in this section shall preclude or impair any holder of an Allowed Claim from bringing an action in the Bankruptcy Court to compel the making of Distributions contemplated by the Plan on account of such Allowed Claim.

Miscellaneous.  Upon the completion of all acts required to be performed by the Wind-Down Officer under the Plan and the filing by the Wind-Down Officer of a certification to that effect with the Bankruptcy Court (which may be included in the application for entry of the Final Decree), the Wind-Down Officer shall be relieved of its duties under the Plan for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Wind-Down Officer or payments to be made in connection therewith.  From and after the Effective Date, the Wind-Down Officer shall not be required to file any document, or take any action, to withdraw the Debtors' business operation from any States where the Debtors previously conducted business operations.

As soon as practicable after final distributions under the Plan, the Wind-Down Officer shall wind up the affairs of the Debtors, pay all applicable Taxes, file final tax returns, arrange for storage of its records and dissolve the Debtors pursuant to applicable law. As soon as practicable thereafter, the Wind-Down Officer shall file with the Bankruptcy Court a final report of distributions and perform such other duties as are specified in the Plan, whereupon the Wind-Down Officer shall have no further duties under the Plan.

## G.    **Dissolution of the Debtors**

The Plan provides that pursuant to the Confirmation Order, the Wind-Down Officer shall be authorized, in its sole and absolute discretion, to take all actions reasonably necessary to manage and dissolve the Debtors and their subsidiaries under applicable laws, including the laws of the jurisdictions in which they may be organized or registered, notwithstanding any applicable consent requirements or other restrictions contained in any agreements or other documents to which any Debtor is a party.  In this regard, the notices of the filing of the Chapter 11 Cases and the Plan to creditors, the opportunity provided to creditors to file proofs of claims in the Chapter 11 Cases and the provisions for payments to creditors provided under the Plan shall be deemed to constitute and effectuate the dissolution and winding-up of the Debtors' business as contemplated under applicable non-bankruptcy law for dissolved limited liability companies without any further action or notice by (i) the Debtors or their former or existing members, managers, officers, directors, representatives or employees, or (ii) the Wind-Down Officer.  All applicable regulatory or governmental units or agencies shall accept any certificates or other documents filed by the Wind-Down Officer and shall take all steps necessary or appropriate to allow and effect the prompt dissolution and/or winding-up of the Debtors as provided in the Plan. The Wind-Down Officer is authorized to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

30

documentation.  Whether or not dissolved, the Debtors shall have no authorization to implement the provisions of the Plan from and after the Effective Date except as specifically provided otherwise in the Plan.

Without limiting the foregoing, Sutton Owner DE is the successor by merger to Sutton Owner NY and, accordingly, the Chapter 11 Case of Sutton Owner NY shall be deemed automatically dismissed on the Effective Date.

## H.    Corporate Action; Effectuating Documents

The Wind-Down Officer will be authorized to take any actions and effect transactions, including conversions, dissolutions, transfers, liquidations and other corporate transactions, as may be determined by the Wind-Down Officer to be necessary or appropriate to implement the terms of the Plan.  The Wind-Down Officer may utilize the aforementioned authority without any further notice to or action, order or approval of the Bankruptcy Court.

The Wind-Down Officer shall be authorized and directed to issue, execute, deliver, file or record the contracts, agreements, securities, instruments, deeds, omnibus assignments, notices, other instruments of transfer and other documents reasonably necessary or desirable to effectuate the transactions contemplated by the Plan, and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, in each case without the need for any approvals, authorizations or consents, except for those expressly required by the Plan.

Each of the Debtor's officers, directors and managers, and any Person having any similar position or performing similar services, shall be deemed terminated as of the Effective Date, in each case without any further action, filing, vote, consent or notice, and all such Persons shall be released from all further authority relating to the Debtors or the Chapter 11 Cases.  Upon such termination, the Wind-Down Officer shall be charged with the authority, duties, responsibilities and obligations relating to and arising from operations of the Debtors and these Chapter 11 Cases.

On the Effective Date, the Membership Interests and all other instruments evidencing Equity Interests in the Debtors shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order or rule, and the Equity Interests evidenced thereby shall be extinguished.

## I.    Preservation of Causes of Action

Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement entered into or effected in connection with or pursuant to the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, any and all Claims and Causes of Action that were owned by the Debtors or their Estates as of the Effective Date, including all Avoidance Actions, will vest in the Estates on the Effective Date, and the Wind-Down Officer will have the exclusive right to pursue and enforce such Claims and Causes of Action.

## J.    Assumption/Rejection of Executory Contracts

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

The Plan provides that except as otherwise provided in the Credit Bid Agreement or any Purchase Agreement, as of the Sale Date, each Debtor shall be deemed to have rejected each Executory Contract to which it is a party, unless such Executory Contract (i) was previously assumed or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to assume and assign filed on or before the Confirmation Date, including in connection with the Sale; or (iv) is designated as an Executory Contract on the Schedule of Assumed and Assigned Executory Contracts and Unexpired Leases attached to the Plan or filed as part of the Plan Supplement.  The Confirmation Order shall constitute an order of the Court under Sections 363, 365 and 1123(b) of the Bankruptcy Code approving the assumptions and assignments or rejections described above, as of the Sale Date.  Each Executory Contract assumed and assigned pursuant to the Plan, or by Bankruptcy Court order, will vest in and be fully enforceable by the applicable assignee in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court.  No Executory Contract shall be deemed assumed absent actual assignment of such Executory Contract to the Purchaser.

To the extent applicable, any monetary amounts by which each Executory Contract to be assumed and assigned pursuant to the Plan is in default shall be satisfied, under Section 365(b)(1) of the Bankruptcy Code, by the assignee of such Executory Contract, (i.e., the Purchaser of the Assets to the extent that the acquired Assets include such Executory Contract(s)), by cure, or by such other treatment as to which the assignee and such non-Debtor party to the Executory Contract shall have agreed in writing.  If there is a dispute regarding (i) the nature or amount of any cure, (ii) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the Executory Contract to be assumed and assigned, or (iii) any other matter pertaining to assumption, cure shall occur within thirty days following the entry of a Final Order resolving the dispute and approving the assumption and assignment, or as may be agreed upon by the assignee and the counterparty to such Executory Contract; provided, however, that, with respect to any Credit Bid Agreement, the Lender reserves the right to exclude from assignment any and all Executory Contracts should it determine not to pay the applicable cure costs; provided further, however, that the Gemini Contract shall be assumed and assigned to Lender (or its designee) under any Credit Bid Agreement, and, in such circumstances, the Lender (or its designee) will pay all required cure costs relating to the Gemini Contract without offset or deduction to the Lender Contribution at the closing of the Sale.  If a Third Party Purchaser acquires the Assets, the Gemini Contract and such other Executory Contracts (if any) that constitute Development Rights shall be assumed and assigned to such Third Party Purchaser under the Purchase Agreement and such Third Party Purchaser will pay all required cure costs relating to the Gemini Contract and such other Executory Contracts (if any) that constitute Development Rights at the closing of the Sale.

The Plan Proponents shall provide notices of proposed assumption and assignment and proposed cure amounts to applicable Executory Contract counterparties, together with procedures for objecting thereto and resolution of disputes by the Bankruptcy Court.  Any objection by a counterparty to a proposed assumption and assignment or related cure amount must be filed, served and actually received by the Plan Proponents no later than the date on which objections to confirmation are due (or such other date as may be provided in the applicable assumption and assignment notice).  Any counterparty to an Executory Contract that fails to object timely to the proposed assumption and assignment or cure amount will be deemed

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

to have assented to such assumption and assignment and related cure cost (if any).  Prior to the Effective Date, the Plan Proponents may settle any dispute regarding the amount of any cure cost without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

Unless otherwise provided for by an order of the Bankruptcy Court entered on or prior to the Confirmation Date, any Rejection Damage Claim for an Executory Contract rejected by the Plan must be filed with the Bankruptcy Court within thirty (30) days of entry of the Confirmation Order, with a copy thereof served upon the Plan Proponents and the Wind-Down Officer.  Any claimant, Person or Entity that fails to file and serve its Rejection Damage Claim within the period set forth above shall be forever barred from asserting a Claim against the Debtors, the Estates, the Post-confirmation Estate Assets or otherwise in or in connection with the Chapter 11 Cases.  All Allowed Rejection Damage Claims shall be classified and treated as Unsecured Claims as provided for in Class 5.

## VII

## EFFECT OF CONFIRMATION; DISCHARGE OF DEBTS; INJUNCTION; RELEASE

### A.      Effect of Confirmation

On the Effective Date, the terms of the Plan shall be immediately effective and enforceable and shall bind all holders of all Claims against or Equity Interests in the Debtors, whether or not such holders accepted the Plan.

### B.      No Discharge of Debts

Pursuant to Section 1141(d)(3) of the Bankruptcy Code, neither the Plan nor confirmation of the Plan shall discharge any Claim against any of the Debtors or any of their respective Related Persons, and nothing therein or in the Confirmation Order shall or shall be deemed to discharge, release or exculpate any of the Debtors or any of their respective Related Persons from any Claims, all of which Claims shall survive the confirmation and effectiveness of the Plan.

### C.      Settlement

In accordance with and subject to the provisions of the Plan, pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date, the Wind-Down Officer may compromise and settle Claims against the Debtors and Causes of Action against other Entities.

Subject to the payment of the Initial Plan Funding and Expense Contribution to the extent required under Section 6.02 or the other occurrence of a Lender Resolution, and in exchange for other consideration provided by the Lender under the Plan, the Lender and its Related Persons shall be entitled to receive the Debtor Release and the Third Party Releases.

### D.      Employee and Retiree Benefits

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

Except as otherwise provided in the Purchase Agreement or the Plan Supplement, to the extent not previously terminated or transferred to the Purchaser, all employee benefit plans shall be terminated as of the Effective Date.

## E.    **Injunction**

Except as otherwise provided in or to enforce the Plan or Confirmation Order, on and after Effective Date, all Entities who have held, currently hold, or may hold Claims, Liens, Equity Interests or Causes of Action against or in any Debtor, or that constitute Released Claims, are permanently enjoined from taking any of the following actions:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the Assets, the Excluded Assets, the Wind-Down Officer, any Released Party or the assets of any Released Party, or any direct or indirect successor in interest of any of the foregoing, or any assets of any such transferee or successor, in each case on account of or in connection with or with respect to any such Claim, Lien, Equity Interest, Cause of Action or Released Claim, other than as contemplated by the Plan; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Assets, the Excluded Assets, the Wind-Down Officer, any Released Party or the assets of any Released Party, or any direct or indirect successor in interest of any of the foregoing, or any assets of any such transferee or successor, in each case on account of or in connection with or with respect to any such Claim, Lien, Equity Interest, Cause of Action or Released Claim; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien, claim or encumbrance of any kind against the Assets, the Excluded Assets, the Wind-Down Officer, any Released Party or the assets of any Released Party, or any direct or indirect successor in interest thereto, or any assets of any such transferee or successor, in each case on account of or in connection with or with respect to any such Claim, Lien, Equity Interest, Cause of Action or Released Claim, other than as contemplated by the Plan; (iv) asserting any set-off, right of subrogation or recoupment of any kind directly or indirectly against the Assets, the Excluded Assets, the Wind-Down Officer, any Released Party or the assets of any Released Party, or any obligation due from any Released Party, or any direct or indirect transferee of any assets thereof, or successor in interest thereto, in each case on account of or in connection with or with respect to any such Claim, Lien, Equity Interest, Cause of Action or Released Claim; and (v) commencing or continuing in any manner or action or other proceeding of any kind against the Assets, the Excluded Assets, the Wind-Down Officer, any Released Party or the assets of any Released Party, in each case on account of or in connection with or with respect to any such Claim, Lien, Equity Interest, Cause of Action or Released Claim; provided, that nothing contained in the Plan shall be construed to prevent any entity from objecting to claims or defending against claims objections or collection actions whether by asserting a right of setoff or otherwise to the extent permitted by law.

## F.    **Debtor Release**

Effective as of the Effective Date, pursuant to Section 1123(b) of the Bankruptcy Code, to the fullest extent permitted by applicable law, and for good and valuable consideration, the adequacy of which is hereby confirmed on and after the Effective Date, each Released Party will be deemed released by each and all of the Debtors, the Estates and the Wind-Down Officer from any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

34

liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any or all of the Debtors, the Estates or the Wind-Down Officer, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that any or all of the Debtors, the Estates or the Wind-Down Officer could have been legally entitled to assert in its or their own right (whether individually or collectively), or on behalf of the holder of any Claim or Equity Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, (i) any or all of the Debtors or the Estates, (ii) the Debtors' restructuring efforts, (iii) the Chapter 11 Cases, (iv) the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, (v) the business or contractual arrangements between any Debtor and any Released Party, (vi) the restructuring or any alleged restructuring or reorganization of Claims and Equity Interests prior to or in the Chapter 11 Cases, (vii) the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of the Plan (or the property to be distributed under the Plan), the Disclosure Statement, any contract, instrument, release or other agreement or document related to any Debtor, the Chapter 11 Cases or the Estates created, modified, amended, terminated or entered into in connection with the Plan, (viii) the process of marketing, selling and disposing of the Assets pursuant to the Confirmation Order, the Bid Procedures Order or other orders entered by the Bankruptcy Court in the Chapter 11 Cases approving the sale or other disposition of Assets; or (ix) any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date relating to the Debtors, the Estates, the Chapter 11 Cases or the Plan or the property to be distributed thereunder, including, for the avoidance of doubt, those alleged in or related to the Complaint and the Adversary Proceeding and all Claims, Causes of Action or liabilities arising out of or relating to the Chapter 11 Cases.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, under Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors, the Estates, the Wind-Down Officer and all holders of Claims and Equity Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any or all of the Debtors, their respective Estates or the Wind-Down Officer and any holder of a Claim or Equity Interest or other Entity who would have been legally entitled to assert such Claim or Equity Interest on behalf of any of the Debtors or any of their Estates from asserting any Claim or Cause of Action released pursuant to the Debtor Release.

## G.   **Third Party Release**

Effective as of the Effective Date, each and all of the Releasing Parties (regardless of whether a Releasing Party is a Released Party) conclusively, absolutely, unconditionally, irrevocably and forever discharges and releases (and each Person so discharged and released shall be deemed discharged and released by the Releasing Parties) each and all of the Released Parties and their respective assets and property from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including with respect to any rights or Claims that could have been asserted against any or all of the Released

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

Parties with respect to any derivative claims, asserted or assertable on behalf of any or all of the Debtors, the Estates or the Wind-Down Officer, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, (i) any or all of the Debtors or the Estates, (ii) the Debtors' restructuring efforts, (iii) the Chapter 11 Cases, (iv) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (v) the business or contractual arrangements between any Debtor and any Released Party, (vi) the restructuring or any alleged restructuring or reorganization of Claims and Equity Interests prior to or in the Chapter 11 Cases, (vii) the formulation, preparation, negotiation, dissemination, implementation, administration, confirmation or consummation of the Plan (or the property to be distributed under the Plan), this Disclosure Statement, any contract, instrument, release or other agreement or document related to any Debtor, the Chapter 11 Cases or the Estates created, modified, amended, terminated or entered into in connection with the Plan, (viii) the process of marketing, selling and disposing of the Assets pursuant to the Confirmation Order, the Bid Procedures Order or other orders entered by the Bankruptcy Court in the Chapter 11 Cases approving the sale or other disposition of Assets; or (ix) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to the Debtors, the Estates or the Chapter 11 Cases, including, for the avoidance of doubt, those alleged in or related to the Complaint and the Adversary Proceeding and all Claims, Causes of Action or liabilities arising out of or relating to the Chapter 11 Cases. Notwithstanding anything to the contrary in the foregoing, the Third Party Release shall not release any obligation or liability of any party under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the Third-Party Release; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any claim or cause of action released pursuant to the Third-Party Release.

## H.    **Exculpation**

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either of the Debtor Release or Third-Party Release, and except as otherwise specifically provided in the Plan, the Exculpated Parties will be released and exculpated from any claim, obligation, Cause of Action or liability for any act taken or omission occurring on or after the Applicable Petition Date in connection with or related to the Debtors, the Estates or the Chapter 11 Cases, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummating or administering the Plan (including soliciting acceptances or rejections thereof); (ii) this Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken during the administration of these Chapter 11 Cases or in connection with the Plan; (iii)

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

any distributions made pursuant to the Plan; (iv) the negotiation, formulation or preparation of the Purchase Agreement, any Credit Bid Agreement and the sale of the Assets pursuant thereto; and (v) the negotiation, formulation or preparation of the Wind-Down Officer Agreement.

## VIII

## CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN
## AND THE EFFECTIVE DATE

### A.    Conditions Precedent to Confirmation

The Plan provides that as a condition precedent to Confirmation of the Plan, the following conditions shall have been satisfied or waived in accordance with the terms of the Plan:

1.  The Bankruptcy Court shall have approved the Disclosure Statement in form and substance reasonably acceptable to the Plan Proponents;

2.  The Bankruptcy Court shall have entered the Bid Procedures Order in form and substance reasonably acceptable to the Plan Proponents;

3.  The Plan shall be in form and substance reasonably acceptable to the Plan Proponents;

4.  The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Plan Proponents; and

5.  The Bankruptcy Court shall have determined and entered an order finally adjudicating the issues in the Adversary Proceeding, including without limitation, the allowance of the Acquisition Loan and Building Loan Claims and the Mezz Loan Claim.

### B.    Conditions Precedent to the Effective Date

The Plan provides that as a condition precedent to the Effective Date, the following conditions shall have been satisfied or waived in accordance with the terms of the Plan:

1.  The Bankruptcy Court shall have entered the Confirmation Order, which shall grant final approval of the Plan;

2.  The Confirmation Order shall be in full force and effect and not subject to any stay, modification or injunction;

3.  Except to the extent not required under the Confirmation Order or other order of the Bankruptcy Court, all governmental and material third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Plan shall have been obtained or entered, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

waiting periods shall have expired without any action being taken or threatened by any competent authority that could restrain, prevent or otherwise impose materially adverse conditions on such transactions; and

4.  All documents and agreements necessary to implement the Plan, as listed and set forth in the Plan Supplement, will have (a) been tendered for delivery and (b) been effected or executed by all Entities party thereto, or will be deemed executed and delivered by virtue of the effectiveness of the Plan as expressly set forth therein, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

## C.   Waiver of Conditions to Confirmation or the Effective Date

The Plan provides that the conditions precedent set forth therein to Confirmation of the Plan and the occurrence of the Effective Date may be waived in whole or part in writing by the Plan Proponents at any time without an order of the Bankruptcy Court.

## IX

## REQUIREMENTS FOR CONFIRMATION OF THE PLAN

## A.   Confirmation Hearing

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. The confirmation hearing (the "**Confirmation Hearing**") shall be scheduled by the Bankruptcy Court to be held before the Honorable Sean H. Lane, in the United States Bankruptcy Court, Southern District of New York, One Bowling Green, Courtroom 701 New York, New York 10004-1408. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

## B.   Objections to Confirmation

Pursuant to Section 1128(b) of the Bankruptcy Code, any party in interest may object to confirmation of the Plan.  Any objection to confirmation of the Plan must be in writing, must conform to the Federal Rules of Bankruptcy Procedure, must set forth the name of the objector, the nature and amount of Claims or interests held or asserted by the objector against the particular Debtor or Debtors, the basis for the objection and the specific grounds therefor, and must be filed with the Bankruptcy Court, with a courtesy copy to chambers of the Honorable Sean H. Lane, with proof of service, and served upon and received no later than 4:00 p.m. prevailing Eastern Time on January 4, 2017, by (i) Westerman Ball Ederer Miller Zucker & Sharfstein, LLP, 1201 RXR Plaza, Uniondale, New York 11556, Attention: Thomas A. Draghi, Esq. and Eric G. Waxman III, Esq.; (ii) Kramer Levin Naftalis & Frankel LLP, Attorneys for the Lender, 1177 Avenue of the Americas, New York, New York 10036, Attention: Adam Rogoff, Esq. and P. Bradley O'Neill, Esq.; and (iii) The Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attention: Susan Golden, Esq.  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

**UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE COURT.**

## C.    Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies all of the requirements of Section 1129 of the Bankruptcy Code. The Plan Proponents believe that (i) the Plan satisfies or will satisfy all of the necessary statutory requirements of Chapter 11; (ii) the Plan Proponents have complied or will have complied with all of the necessary requirements of Chapter 11; and (iii) the Plan has been proposed in good faith.

Among the requirements for Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code are that (i) the Plan is feasible; (ii) the Plan is in the "best interests" of Holders of Claims; and (iii) the Plan is accepted by all Impaired Classes of Claims, or if rejected by an Impaired Class, the Plan "does not discriminate unfairly" and is "fair and equitable" as to that Class.

## D.    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor, or any successor to the debtor (unless such liquidation or reorganization is proposed in the plan of reorganization).

The Plan provides for the wind down and dissolution of the Debtors. Pursuant to the Plan, the Assets will be sold to the Lender, who will make the Lender Contribution, or to a third party purchaser, who will pay the Sale Proceeds. The Lender Contribution or the Sale Proceeds, as the case may be, together with the remainder of the Post Confirmation Estate to fund distributions under the Plan and the orderly wind down of the Debtors' Estates. Accordingly, confirmation of the Plan is not likely to be followed by a further financial reorganization and, therefore, the Plan is feasible.

## E.    Best Interests of Creditors

Often called the "best interests" test, Section 1129(a)(7) of the Bankruptcy Code requires that each holder of an impaired claim or equity interests either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive if the Debtors were liquidated under Chapter 7 of the Code. Chapter 7 is a portion of the Code under which a debtor's estate is liquidated under the control of an independent trustee. In the typical case, a Chapter 7 debtor ceases business operations, and a Chapter 7 trustee liquidates the assets of the debtor's estate.

To determine the value that a holder of a Claim or Interest in an impaired Class would receive if the Debtors were liquidated under Chapter 7, the Bankruptcy Court must determine the aggregate dollar amount that would be generated from the liquidation of the Debtors' assets if the Debtors' Chapter 11 Cases were converted to Chapter 7 liquidation cases and the Debtors' assets were liquidated by a Chapter 7 trustee (the "**Liquidation Value**"). The Liquidation Value would consist of cash held by the Debtors plus the net proceeds from the disposition of the

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

39

Debtors' assets, reduced by certain increased costs and Claims that arise in a Chapter 7 liquidation case that do not arise in a Chapter 11 case.

As a preliminary matter, the Plan Proponents believe that satisfaction of the "best interests" test can be demonstrated by the fact that the Assets and the other Post-Confirmation Estate Assets to be sold, administered and/or distributed under the Plan are the same assets that would be sold, administered and/or distributed in Chapter 7, plus certain additional assets, and by the fact that the expenses of administration of Chapter 7 cases for each Debtor would be the same as or greater than the expenses to be incurred under the Plan.  Moreover, in the event of a sale of the Assets or certain of the Excluded Assets by a trustee, the Estates would suffer the impact of applicable transfer taxes because such sales would not be subject to the tax exemption provided for by Section 1146(a) of the Bankruptcy Code.

Additionally, the Plan provides for a minimum distribution to unsecured creditors, through a payment by the Lender of the Lender Contribution even if the Assets are not sold for more than the Lender's Allowed Secured Claims.   Under Chapter 7, the distributions to unsecured creditors would be governed by statute and would require payment in full of the Lender's Allowed Secured Claim under the Cash Collateral Stipulation, which is not required if the Lender purchases the Assets in the Sale.  Furthermore, the Lender would have no obligation to make any portion of the Lender Contribution, which provides unsecured creditors with a significant recovery and also provides funds to fund the wind down and dissolution of the Debtors and the administration of the Plan.  If the Assets were sold in Chapter 7 for less than the Lender's Allowed Secured Claims, the estates would be left administratively insolvent, and unsecured creditors would receive no recovery.

Accordingly, the "best interests" test is satisfied by the facts that the assets being administered under the Plan are greater than those that would be administered in Chapter 7 and the expenses of administration will be equal to or less than those that would be incurred in Chapter 7, which should result in greater recoveries to holders of general unsecured claims than they would receive in Chapter 7.

F.      **Acceptance of the Plan by Impaired Classes**

The Bankruptcy Code requires, as a condition to confirmation, except as described in the following section, that each class of claims or equity interests impaired under a plan, accept the plan.  A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such a class is not required.  Classes 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10 are impaired under the Plan and are entitled to vote to accept or reject the Plan.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in a dollar amount and more than one-half in a number of allowed claims in that class, counting only those claims that have actually voted to accept or to reject the plan.  Thus, a Class of Claims will have voted to accept the Plan only if two-thirds in amount and a majority in number actually cast their ballots in favor of acceptance.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

### G.     Confirmation without Acceptance by All Impaired Classes

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired classes have not accepted it; provided, however, that the plan has been accepted by at least one impaired class.

Pursuant to Section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class's rejection or deemed rejection of the plan, the plan will be confirmed, at the plan proponent's request, in a procedure commonly known as a "cram down" so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or equity interests that is impaired under, and has not accepted, the Plan.

If any impaired Class rejects the Plan, the Plan Proponents reserve the right to seek to confirm the Plan utilizing the "cram down" provisions of Section 1129(b) of the Bankruptcy Code.  To the extent that any impaired Class rejects the Plan, the Plan Proponents will request Confirmation of the Plan, as it may be modified from time to time, under Section 1129(b) of the Bankruptcy Code.

#### 1.    No Unfair Discrimination

The "unfair discrimination" test applies to classes of claims or interests that are of equal priority and are receiving different treatment under a plan.  The test does not require that the treatment be the same or equivalent, but that treatment be "fair."  In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (e.g., classes of the same legal character).  Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly.  A plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

#### 2.    Fair and Equitable Test

The "fair and equitable" test applies to classes of different priority and status (e.g., secured versus unsecured) and includes the general requirement that no class of claims receive more than 100 percent of the amount of the allowed claims in the class.  As to the dissenting class, the test sets different standards depending upon the type of claims or equity interests in the class.

The Plan Proponents submit that if the Plan Proponents seek to "cram down" the Plan pursuant to Section 1129(b) of the Bankruptcy Code, the Plan is structured so that it does not "discriminate unfairly" and satisfies the "fair and equitable" requirement.  With respect to the unfair discrimination requirement, all Classes under the Plan are provided treatment that is substantially equivalent to the treatment that is provided to other Classes that have equal rank. The Plan Proponents believe that the Plan and the treatment of all Classes of Claims and Interests under the Plan satisfy the foregoing requirements for nonconsensual Confirmation of the Plan.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

X

**ALTERNATIVES TO THE PLAN AND OTHER CONSIDERATIONS**

**A.**    **Liquidation Under Chapter 7**

If the Plan is not confirmed, the Chapter 11 Cases may be converted to cases under Chapter 7 of the Code, in which a trustee would be elected or appointed to liquidate the assets of the Debtors for distribution in accordance with the priorities established by the Bankruptcy Code. A discussion of the effect that a Chapter 7 liquidation would have on the recoveries of holders of Claims is set forth in Section IX.E of this Disclosure Statement.  The Plan Proponents believe that liquidation under Chapter 7 would result in either no distributions, or in the best case, smaller distributions, being made to unsecured creditors and no distributions to equity holders, including as a result of additional administrative expenses attendant to the appointment of a trustee and the trustee's employment of attorneys and other professionals, and additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation.  Furthermore, in the event of a sale of the Assets or certain of the Excluded Assets by a trustee, the Estates would suffer the impact of applicable transfer taxes and would not obtain the benefit of the tax exemption under Section 1146(a) of the Bankruptcy Code.

**B.**    **Alternative Plan of Reorganization**

If the Plan is not confirmed, the Plan Proponents or any other party in interest could attempt to formulate a different plan or plans of reorganization or liquidation.  However, the Plan Proponents have concluded that the Plan enables creditors to realize the most value under the circumstances.  The Plan is premised upon a settlement of certain of the Lender's rights and Claims and the Lender's commitment to make the Lender Contribution as and to the extent provided in the Plan.  Another plan may not have the Lender's support or involve the same concessions.  In addition, if the Plan is rejected, any alternative Chapter 11 plan would involve further negotiations and formulation, thereby increasing administrative expenses and reducing creditor distributions.

The Debtors and the Committee believe that confirmation of the Plan is preferable to the alternatives described above because the Plan maximizes the value of all property available for distribution to all Classes of Claims.  Accordingly, the Debtors and the Committee believe that confirmation of the Plan, rather than the alternatives described above, is in the best interests of creditors and all parties in interest.

XI

**TAX CONSEQUENCES**

Creditors should consult with their own tax advisor concerning any tax consequences resulting from confirmation of the Plan.  Creditors should consult with their tax advisor concerning (a) any deductions which may be applicable to them as bad debt deductions, or (b) income tax implications based upon forgiveness of debt, if applicable, based upon the provisions of the Plan.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

Pursuant to IRS Circular 230 Notice: To ensure compliance with IRS Circular 230, holders of Claims are hereby notified that (a) any discussion of U.S. federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims for the purpose of avoiding penalties that may be imposed on them under the Tax Code; (b) such discussion is written in connection with the promotion or marketing by the Debtors of the transactions or matters addressed herein; and (c) holders of Claims should seek advice based upon their particular circumstances from an independent tax advisor.

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6

**XII**

**CONCLUSION**

The Debtors and the Committee strongly support the Plan and believe that Confirmation of the Plan is in the best interests of all creditors and equity holders and urge the holders of impaired claims in Classes 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10 to accept the Plan and to evidence such acceptance by returning their Ballots.


Dated:  December 5, 2016
   New York, New York

       THE OFFICIAL COMMITTEE OF UNSECURED
       CREDITORS


       ___*/s/ Joshua Kupchik* _____ _____
       Pembrooke & Ives Luxurious Interiors LLC,
        Committee Chair
       By:  Joshua Kupchik


       SUTTON 58 ASSOCIATES LLC


       ___*/s/ Jonathan Kalikow*_____ _____
       By:  Jonathan Kalikow
        Authorized Signatory

Exhibit 3 - Disclosure Statement.DOCX
KL2 2984792.6