UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

BH SUTTON MEZZ LLC, a Delaware Limited
Liability Company,                                                      Chapter 11

SUTTON 58 OWNER, LLC, a Delaware Limited                Case No.:  16-10455 (SHL)
Liability Company, and                                                 (Jointly Administered)

SUTTON 58 OWNER, LLC, a New York Limited
Liability Company,

                                    Debtors.
-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF THE JOINT CHAPTER 11 PLAN OF LIQUIDATION FILED BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND SUTTON 58 ASSOCIATES LLC, AS MODIFIED AND SUPPLEMENTED AND IN RESPONSE TO CERTAIN LIMITED OBJECTIONS

WESTERMAN BALL EDERER
MILLER ZUCKER & SHARFSTEIN, LLP
Attorneys for the Official Committee of Unsecured
Creditors
1201 RXR Plaza
Uniondale, New York 11556
Telephone: (516) 622-9200

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Attorneys for Sutton 58 Associates LLC
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100

Dated: New York, New York
January 9, 2017

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND AND PLAN OVERVIEW ..................................................... 2

    A.   The Adversary Proceeding & Sale of Assets ........................................................ 3

    B.   The Plan Process ........................................................................................................ 4

REQUEST FOR JUDICIAL NOTICE .................................................................................. 8

ARGUMENT ........................................................................................................................... 8

    I.   The Plan Satisfies Each Requirement for Confirmation ................................. 8

        A.   The Plan Complies with the Applicable Provisions of the Bankruptcy
            Code (11 U.S.C. § 1129(a)(1)). ........................................................................... 9

            i   The Plan Satisfies the Classification Requirements of Section
                1122
             .   9

            ii   The Plan Satisfies the Seven Mandatory Plan Requirements of 11
                U.S.C. §§ 1123(a)(1)-(a)(7). ................................................................ 11

        B.   The Plan Proponents Have Complied with the Applicable Provisions of
            the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). ............................................. 13

            i   The Plan Proponents Complied with the Disclosure Statement and
                 Solicitation Requirements of Section 1125. ............................................ 13

            ii   The Plan Proponents Complied with the Plan Acceptance
                Requirements of Section 1126. ................................................................ 14

            iii   The Technical Modifications to the Plan Comply with Section
                1127. ............................................................................................................ 15

        C.   The Plan Has Been Proposed in Good Faith and Not by Any Means
            Forbidden by Law (11 U.S.C. § 1129(a)(3)). ................................................ 17

         D.   The Plan Provides for Bankruptcy Court Approval of Certain
            Administrative Payments (11 U.S.C. § 1129(a)(4)). ..................................... 18

        E.   Post-Emergence Directors, Managers, and Officers Have Been
            Disclosed and Their Appointment is Consistent with Public Policy (11
            U.S.C. § 1129(a)(5)). ............................................................................................ 19

        F.   The Plan Does Not Require Governmental Regulatory Approval of Rate
            Changes (11 U.S.C. § 1129(a)(6)). ................................................................... 20

        G.   The Plan Is in the Best Interests of Creditors and Interest Holdings (11
            U.S.C. § 1129(a)(7)). ............................................................................................ 20

         H.   The Plan Has Been Accepted by the Requisite Classes of Claims and
            Interests (11 U.S.C. § 1129(a)(8)). ................................................................... 21

i       The Plan Satisfies the "Cramdown" Requirements for
        Confirmation (11 U.S.C. § 1129(b)(1)). ................................................... 22

(a)     The Plan Meets All Requirements for Confirmation Other Than
        Section 1129(a)(8)..................................................................................... 22

(b)     The Plan Does Not Discriminate Unfairly ............................................... 23

(c)     The Plan is Fair and Equitable. ............................................................... 23

I.      The Plan Complies with Statutorily Mandated Payment of Priority
        Claims (11 U.S.C. § 1129(a)(9))............................................................... 24

J.      At Least One Impaired Class of Claims Has Accepted the Plan,
        Excluding the Acceptances of Insiders (11 U.S.C. § 1129(a)(10)). ......... 26

K.      The Plan Is Feasible (11 U.S.C. § 1129(a)(11)). ...................................... 26

L.      The Plan Provides for the Payment of All Fees under 28 U.S.C. § 1930
        (11 U.S.C. § 1129(a)(12))......................................................................... 27

M.      Sections 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16) Do Not
        Apply to the Plan. .................................................................................... 27

N.      The Principal Purpose of the Plan Is Not Avoidance of Taxes (11 U.S.C.
        § 1129(d)). ................................................................................................ 28

II.     The Discretionary Contents of the Plan Should Be Approved................... 28

A.      The Assumption and Assignment or Rejection of the Executory
        Contracts and Unexpired Leases under the Plan Should be Approved. ............ 29

B.      The Plan's, Debtor Release, Third Party Release, Exculpation and
        Injunction Provisions Are Appropriate and Should be Approved ................... 29

i       Debtors Release.......................................................................................... 29

ii      Third-Party Releases .................................................................................. 31

iii     Exculpation ................................................................................................ 33

iv      Injunction ................................................................................................... 34

III.    The Court Should Overrule All limited Objections To the Plan ................ 34

A.      Bauhouse Limited Objection ..................................................................... 34

B.      Debtors' Limited Objection ....................................................................... 35

CONCLUSION............................................................................................................... 38

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Adelphia Bus. Sols., Inc.,*
   341 B.R. 415 (Bankr. S.D.N.Y. 2003) ...................................................................26

*In re Adelphia Commc'ns Corp.,*
   368 B.R. 140 (Bankr. S.D.N.Y. 2007) ...............................................................8, 20

*Aetna Cas. & Sur. Co. v. Clerk, U.S. Bankruptcy Court (In re Chateaugay Corp.),*
   89 F.3d 942 (2d Cir. 1996) .................................................................................9, 10

*In re Am. Solar King Corp.,*
   90 B.R. 808 (Bankr. W.D. Tex. 1988) ....................................................................16

*In re Armstrong World Indus., Inc.,*
   348 B.R. 111, 121 (D. Del. 2006) ...........................................................................23

*In re Bally Total Fitness of Greater N.Y., Inc.,*
   No. 07-12395 (BRL), 2007 WL 2779438 (Bankr. S.D.N.Y. Sept. 17, 2007) .........33

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship.,*
   526 U.S. 434 (1999) ...........................................................................................20, 23

*Boston Post Rd. Ltd. P'ship v. FDIC (In re Boston Post Rd. Ltd. P'ship),*
   21 F.3d 477 (2d Cir. 1994) .......................................................................................9

*In re Bryson Props., XVIII,*
   961 F.2d 496 (4th Cir. 1992) .....................................................................................9

*In re Buttonwood Partners, Ltd.,*
   111 B.R. 57 (Bankr. S.D.N.Y. 1990) ......................................................................23

*In re Calpine Corp.,*
   No. 05-60200 BRL, 2007 WL 4565223 (Bankr. S.D.N.Y. Dec. 19, 2007) ......31, 33

*In re Cellular Info. Sys., Inc.,*
   171 B.R. 926 (Bankr. S.D.N.Y. 1994) ....................................................................17

*In re Charter Commc'ns,*
   419 B.R. 221 (Bankr. S.D.N.Y. 2009) ....................................................................31

*In re Chemtura Corp.,*
   439 B.R. 561 (Bankr. S.D.N.Y. 2010) ...............................................................31, 33

*Citicorp Acceptance Co., Inc. v. Ruti-Sweetwater (In re Sweetwater)*,
     57 B.R. 354 (D. Utah 1985) ...................................................................................17

*In re Dallas Proton Treatment Ctr., LLC.*,
     No. 15-33783, 2016 WL 6068816 (Bankr. N.D. Tex. Oct. 14, 2016) .......................................8

*In re Drexel Burnham Lambert Grp., Inc.*,
     138 B.R. 723 (Bankr. S.D.N.Y. 1992) ...................................................................9, 13, 18

*In re Drexel Burnham Lambert Grp., Inc.*,
     960 F.2d 285 (2d Cir. 1992) ...................................................................................21

*In re Eagle-Picher Indus., Inc.*,
     203 B.R. 256 (Bankr. S.D. Ohio 1996) .......................................................................17

*In re El Charro, Inc.*,
     No. 05-60294, 2007 WL 2174911 (Bankr. D. Kan. July 26, 2007) ...........................................8

*In re Elsinore Shore Assocs.*,
     91 B.R. 238 (Bankr. D.N.J. 1988) ............................................................................18

*In re Enron Corp.*,
     326 B.R. 497 (S.D.N.Y. 2005) .................................................................................33

*Enron Corp. v. New Power Co. (In re New Power Co.)*,
     438 F.3d 1113 (11th Cir. 2006) ...............................................................................16

*In re Genco Shipping & Trading Ltd.*,
     513 B.R. 233 (Bankr. S.D.N.Y. 2014) ......................................................................31, 32

*In re General Maritime Corp., et al.*,
     Case No. 11-15285 (MG) (Bankr. S.D.N.Y. May 7, 2012) ....................................................31

*In re Granite Broad. Corp.*,
     369 B.R. 120 (Bankr. S.D.N.Y. 2007) .........................................................................23

*In re Heritage Org., L.L.C.*,
     375 B.R. 230 (Bankr. N.D. Tex. 2007) ..........................................................................9

*In re Ionosphere Clubs, Inc.*,
     98 B.R. 174 (Bankr. S.D.N.Y. 1989) ............................................................................9

*In re Journal Register Co.*,
     407 B.R. 520 (Bankr. S.D.N.Y. 2009) ..........................................................................26

*In re Kaiser Aluminum Corp.*,
     No. 02-10429, 2006 WL 616243 (Bankr. D. Del. Feb. 6, 2006) .............................................10

*Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*,
    843 F.2d 636 (2d Cir. 1988)................................................................9, 13, 17

*In re Johns-Manville Corp*
    78 B.R. 407 (S.D.N.Y. 1987)...............................................................13

*In re Johns-Manville Corp.*,
    68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986)..........................................13

*In re Leslie Fay Cos.*,
    207 B.R. 764 (Bankr. S.D.N.Y. 1997).................................................20

*In re Metromedia Fiber Network, Inc.*,
    416 F.3d 136 (2d Cir. 2005)................................................................32

*In re Mirant Corp.*,
    No. 03-46590, 2007 WL 1258932 (Bankr. N.D. Tex. Apr. 27, 2007) ....................9

*Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*,
    25 F.3d 1132 (2d Cir. 1994)................................................................13

*In re Mt. Vernon Plaza Cmty. Urban Redevelopment Corp. I*,
    79 B.R. 305 (Bankr. S.D. Ohio 1987)..................................................16

*Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*,
    761 F.2d 1374 (9th Cir. 1985).............................................................26

*In re Texaco, Inc.*,
    84 B.R. 893 (Bankr. S.D.N.Y. 1988)...................................................17

*In re Texaco, Inc.*,
    92 B.R. 38 (S.D.N.Y. 1998)................................................................17

*In re Worldcom, Inc.*,
    2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) .........................18

## STATUTES

11 U.S.C. § 503(b) .................................................................19, 24, 25

11 U.S.C. § 507..................................................................................27

11 U.S.C. § 510(c) .............................................................................32

11 U.S.C. § 1114................................................................................27

11 U.S.C. § 1122................................................................8, 9, 11, 15, 17

11 U.S.C. § 1122(a) ...................................................................................................9

11 U.S.C. § 1123 ..........................................................................8, 9, 15, 17, 30

11 U.S.C. § 1123(a) ........................................................................11, 12, 13

11 U.S.C. § 1123(a)(2) ...........................................................................11

11 U.S.C. § 1123(a)(3) ...........................................................................11

11 U.S.C. § 1123(a)(4) ...........................................................................11

11 U.S.C. § 1123(a)(5) ...........................................................................12

11 U.S.C. § 1123(a)(6) ...........................................................................12

11 U.S.C. § 1123(a)(7) ...........................................................................12

11 U.S.C. § 1123(b) ...............................................................................28

11 U.S.C. § 1123(b)(2) ...........................................................................29

11 U.S.C. § 1123(b)(3)(A) .......................................................................30

11 U.S.C. § 1125 .............................................................................8, 13

11 U.S.C. § 1126 ..................................................................8, 13, 14, 15

11 U.S.C. § 1126(c) ......................................................................14, 15, 21

11 U.S.C. § 1126(f) ...............................................................................22

11 U.S.C. § 1126(g) ...............................................................................22

11 U.S.C. § 1127 .............................................................................8, 15

11 U.S.C. § 1127(a) ...............................................................................16

11 U.S.C. § 1127(d) ..........................................................................16, 17

11 U.S.C. § 1129 .........................................................................1, 8, 38

11 U.S.C. § 1129(a) ..........................................................................8, 13

11 U.S.C. § 1129(a)(1) ...........................................................................9

11 U.S.C. § 1129(a)(2) ...........................................................................13

11 U.S.C. § 1129(a)(3) ......................................................................17, 18

11 U.S.C. § 1129(a)(4) ................................................................................................18, 19

11 U.S.C. § 1129(a)(5) ................................................................................................19, 20

11 U.S.C. § 1129(a)(6) .....................................................................................................20

11 U.S.C. § 1129(a)(7) ................................................................................................20, 21

11 U.S.C. § 1129(a)(8) ............................................................................................21, 22, 23

11 U.S.C. § 1129(a)(9) ...................................................................................7, 17, 22, 25

11 U.S.C. § 1129(a)(9)(A) .........................................................................................24, 25

11 U.S.C. § 1129(a)(9)(B) ...............................................................................................25

11 U.S.C. § 1129(a)(10) ...................................................................................................26

11 U.S.C. § 1129(a)(11) ...............................................................................................26, 27

11 U.S.C. § 1129(a)(12) ...................................................................................................27

11 U.S.C. § 1129(a)(13) ...............................................................................................27, 28

11 U.S.C. § 1129(a)(14) ...............................................................................................27, 28

11 U.S.C. § 1129(a)(15) ...............................................................................................27, 28

11 U.S.C. § 1129(a)(16) ...............................................................................................27, 28

11 U.S.C. § 1129(b) ...................................................................................................22, 24

11 U.S.C. § 1129(b)(1) ...............................................................................................22, 23

11 U.S.C. § 1129(b)(2) ...............................................................................................23, 24

11 U.S.C. § 1129(b)(2)(B)(ii) ..........................................................................................23

11 U.S.C. § 1129(b)(2)(C)(ii) ..........................................................................................23

11 U.S.C. § 1129(d) .........................................................................................................28

28 U.S.C. § 1930 ..............................................................................................................27

Securities Act of 1933 § 5 ...............................................................................................28

**OTHER AUTHORITIES**

Fed. R. Bank. P. 2002 ........................................................................................................5

Fed. R. Bank. P. 3001(e) ...........................................................................................5

Fed. R. Bank. P. 3017 ............................................................................................13

Fed. R. Bank. P. 3018 ............................................................................................13

Fed. R. Bank. P. 3019 ............................................................................................16

Fed. R. Evid. 201(c) .................................................................................................8

H.R. Rep. No. 95-595 (1977)................................................................................9, 13

S. Rep. No. 95-989 (1978) ...............................................................................9, 13, 22

The Official Committee of Unsecured Creditors (the "**Committee**") and Sutton 58 Associates, LLC ("**Lender**" and together, the "**Plan Proponents**"), in the above-referenced chapter 11 cases (the "**Chapter 11 Cases**"), submit this memorandum of law in support of entry of an order (the "**Confirmation Order**") confirming the *Joint Chapter 11 Plan of Liquidation Filed by the Official Committee of Unsecured Creditors and Sutton 58 Associates LLC, As Modified and Supplemented*, dated as of December 5, 2016 [Docket No. 334, Exhibit 1] (as modified, amended or supplemented from time to time, the "**Plan**"),[1] pursuant to Section 1129 of title 11 of the United States Code (the "**Bankruptcy Code**").[2]  In support of Confirmation of the Plan, and in response to the Limited Objections (as defined below), the Debtors respectfully submit the *Declaration of Jonathan Kalikow in Support of Confirmation of the Joint Chapter 11 Plan of Liquidation Filed by the Official Committee of Unsecured Creditors and Sutton 58 Associates LLC, As Modified and Supplemented* (the "**Kalikow Declaration**").

## PRELIMINARY STATEMENT

But for confirmation of the Plan, the Debtors' Estates would be administratively insolvent.  The final adjudication of the Adversary Proceeding (defined below) paved the way for a successful Sale of the Debtors' Assets to Lender (or is designee) and confirmation of the Plan, which solely through a material payment – the $4.3 to $4.8 million Lender Contribution[3] – voluntarily offered by Lender, guarantees a recovery for administrative, priority and unsecured creditors despite Lender's substantial deficiency and other claims.

The Plan complies with each of the requirements for Confirmation set forth in the

---

[1]      Except as otherwise noted, capitalized terms used but not defined in this Memorandum shall have the meanings ascribed to such terms in the Plan and Disclosure Statement (defined below).

[2]      Unless otherwise explicitly provided, all statutory section references are to the Bankruptcy Code.

[3]      Additional creditor recoveries will be based upon the net proceeds realized from the liquidation of Excluded Assets, including the pursuit of any Causes of Action.

Bankruptcy Code. The Plan provides for appointment of a Wind-Down Officer who shall, among other things, distribute the Lender Contribution to holders of Allowed Claims, manage and liquidate any Post-Confirmation Estate Assets and implement and enforce all provisions of the Plan. Five Classes of Claims voted unanimously to accept the Plan.[4] No creditor rejected the Plan.

Only two limited objections (the "**Limited Objections**") were filed to the Plan – one from the Debtors and another from Bauhouse Group I, LLC ("**Bauhouse**"), an entity related to the Debtors. Both are either in the nature of a reservation of rights or requests for clarifications. Neither substantively objects to confirmation.  To the extent not otherwise withdrawn or resolved by this memorandum of law or statements made at the Confirmation Hearing, the Limited Objections should be overruled.

## FACTUAL BACKGROUND AND PLAN OVERVIEW[5]

1.    On February 26, 2016, BH Sutton Mezz, LLC, a Delaware Limited Liability Company ("**Sutton Mezz**") filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.   On April 6, 2016, Sutton 58 Owner, LLC, a Delaware Limited Liability Company ("**Sutton Owner DE**"), filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. Finally, on July 12, 2016, Sutton 58 Owner, LLC, a New York Limited Liability Company ("**Sutton Owner NY**"), filed its voluntary petition for relief under chapter 11

---

[4]      *See Certification of Ballots* (defined below).
[5]      The factual background concerning the Debtors' business, prepetition capital structure, and the events leading to the commencement of the Chapter 11 Cases are detailed in the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation Filed by Official Committee of Unsecured Creditors and Sutton 58 Associates LLC, As Modified and Supplemented* [Docket No. 334, Exhibit 3] (the "**Disclosure Statement**").  Further relevant facts are in the Plan, the Kalikow Declaration, the Certification of Ballots and any evidence presented or testimony that may be adduced or proffered at the Confirmation Hearing (defined below).  These facts are incorporated by reference.  This Memorandum assumes the Court's familiarity with the key background of these cases.

of the Bankruptcy Code.[6]  The bankruptcy cases of Sutton Mezz, Sutton Owner DE and Sutton Owner NY (collectively, the "**Debtors**") are being jointly administered.

2.    On March 23, 2016, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the Creditors' Committee [Docket No. 27].

A.    **The Adversary Proceeding & Sale of Assets**

3.    As the Court is aware, the cornerstone of the Debtors' cases were efforts to attack Lender's claims through, among other things, an adversary proceeding asserting twenty-six claims for legal, equitable and declaratory relief [Adv. Pro. No. 16-01187(SHL)] (the "**Adversary Proceeding**").  On December 1, 2016, the Bankruptcy Court issued a Post-Trial Memorandum of Decision, denying all of the Debtors' claims, with one limited exception.[7] Consequently, the Court allowed Lender's claims and held that Lender is entitled to credit bid at least $184 million on account of its Allowed Secured Acquisition Loan and Building Loan Claims.  The Court also allowed Lender's Mezz Loan Claims in the amount of at least $32,121,076.

4.    On November 4, 2016, the Debtors filed a *Motion to Sell Property Free and Clear of Liens Under Section 363(f), Approve Terms and Conditions of Sale, Set Auction Sale Date and Grant Related Relief* [Docket No. 271].   On November 21, 2016, the Court approved certain negotiated terms and conditions of the Auction and set an auction date [Docket No. 301] (the "**Sale Procedures Order**").

5.    The Debtors conducted an Auction of their Assets on December 13, 2016,

---

[6]    The Lender has consistently reserved its claims that Sutton Owner NY's case was improper as Sutton Owner NY was merged prior to the petition date with Sutton Owner DE and, therefore, not a distinct legal entity. The Debtors' abandoned their claims that the merger was ineffective as part of the Adversary Proceeding.

[7]    The Court held in favor of the Debtors' concerning the interest rate on one loan (the Building Loan), which interest the Lender subsequently agreed to waive.

receiving two Qualified Bids, including Lender's Credit Bid.  After six rounds of bidding, the Lender's Credit Bid in the amount of $86,000,000 prevailed.  The Court approved the results of the Auction providing for a sale to Lender (or its designee) on December 22, 2016.

B.    **The Plan Process**

6.    On August 10, 2016, the Debtors filed a Plan, as modified on August 11, 2016, and further amended on November 11, 2016 [Docket No. 278] (the "**Debtors' Plan**") and a Joint Disclosure Statement [Docket No. 277] (the "**Debtors' Disclosure Statement**").

7.    Following the termination of the Debtors' exclusivity periods at the request of Lender, the Creditors' Committee and Lender were authorized to, and did, file their competing Plan and Disclosure Statement on November 14, 2016, as modified on November 22, 2016, and as supplemented on December 5, 2016.[8]

8.    On November 22, 2016, the Plan Proponents filed a joint motion seeking approval of their Disclosure Statement and procedures for solicitation and tabulation of votes to accept or reject the Plan (the "**Joint Disclosure Statement Motion**"), including proposed solicitation procedures (the "**Solicitation Procedures**") and vote tabulation procedures (the "**Tabulation Procedures**").[9]

9.    On December 2, 2016, immediately following the Lender's prevailing in the Adversary Proceeding, the Debtors withdrew the Debtors' Disclosure Statement and the Debtors' Plan [Docket No. 321].

10.    On December 6, 2016, the Court entered an order granting the Creditors'

---

[8]    Additionally, the Plan and Disclosure Statement include a technical amendment made on December 8, 2016 [Docket No. 334].  Concurrently with the filing of this memorandum, the Plan Proponents are filing a further revised version of the Plan to reflect certain non-material and technical changes to the Plan.
[9]    *See Joint Motion of the Official Committee of Unsecured Creditors and Sutton 58 Associates LLC for an Order (A) Approving the Creditors' Disclosure Statement; (B) Approving Notice Procedures; (C) Scheduling Hearing on Confirmation of the Creditors' Plan; (D) Establishing Procedures for Solicitation and Tabulation of Ballots; And (E) Granting Related Relief* [Docket No. 305].

Committee and Lender's Joint Disclosure Statement Motion, approving the Disclosure Statement, Solicitation Procedures and Tabulation Procedures [Docket No. 333] (the "**Disclosure Statement Order**").

11.    In furtherance of the Plan, the following steps were taken:  On or before December 9, 2016, the Plan Proponents, timely mailed a solicitation package (the "**Solicitation Package**") to all required parties requiring service.[10]  On December 13, 2016, the Plan Proponents filed the *Notice of Auction Sale Results* [Docket No. 339] (the "**Auction Results Notice**").  On December 16, 2016, the Plan Proponents filed the *Notice of Filing of Credit Bid Agreement (Successful Bid)* [Docket No. 341] (the "**Credit Bid Agreement**").  On December 21, 2016, the Plan Proponents filed the *Notice of Supplement to Disclosure Statement Filed by the Official Committee of Unsecured Creditors and Sutton 58 Associates LLC - Distribution Analysis* [Docket No. 345] (the "**Distribution Analysis**").  On December 23, 2016, the Creditors' Committee filed the *Notice of Supplement to Disclosure Statement Filed by the Official Committee of Unsecured Creditors and Sutton 58 Associates LLC - Wind-Down Officer Agreement* [Docket No. 348] (as the same may be modified from time to time, "**Wind-Down Officer Agreement**", and together with the Auction Results Notice, the Credit Bid Agreement, and the Distribution Analysis, the "**Plan Supplement**").

12.    The Plan, among other things, provides for the post-Effective Date appointment of a Wind-Down Officer (Esther Duval of CBIZ Accounting, Tax & Advisory of New York, LLC) and treatment of Classes of Claims.  Because Lender (or its designee) will be

---

[10]    The Plan Proponents mailed the solicitation package to all parties in interest, including the Debtors, the U.S. Trustee, all holders of equity interests, all persons who have filed proofs of claim in the Debtors' cases, all persons who have requested notice in the Chapter 11 Cases pursuant to Rule 2002 of the Bankruptcy Rules, the Internal Revenue Service, the Securities and Exchange Commission, any entity that has filed with the Court a notice of transfer of a claim under Bankruptcy Rule 3001(e) on or prior to December 6, 2016 (the "**Record Date**"), all persons or entities listed in the Debtors' schedules, and all other known creditors of the Debtors.

the Purchaser of the Debtor's Assets, on the Sale Date, Lender (or its designee) shall receive the Assets free and clear of all Liens, claims, charges, encumbrances or interests of any kind or nature, and Lender voluntarily agrees to forego any right to an additional distribution from Sutton Owner DE under the Plan on account of: (i) its Class 3 Acquisition Loan and Building Loan Claims, (ii) its Class 5 Lender Deficiency Claim, or (iii) its Class 2 Claim under the Cash Collateral Stipulation for any Secured Claim, Priority Claim, Administrative Expense Claim or other Claim of Lender as provided for under such Cash Collateral Stipulation; provided, however, that nothing in the Plan impairs in any respect, any Claim or Cause of Action that Lender has or may have against any other Entity relating to or arising in connection with any such Lender Deficiency Claim or other Claims, or any right of Lender to pursue such Claims and Causes of Action, all of which shall survive the confirmation and effectiveness of the Plan.[11] Lender also agreed that it will not receive any distributions from the Lender Contribution. Nothing in Section 3.07 of the Plan impairs Lender's Claims in any other Class (e.g., Class 6) should there be additional value recovered from Post-Confirmation Estate Assets.

13.    Importantly, the sale of the Debtors' Assets did not result in a distribution of Sale Proceeds for the benefit of creditors other than Lender as the Senior Secured Creditor. However, under the Plan, Lender voluntarily agreed to pay the Lender Contribution of $4 million in Initial Plan Funding, $300,000 to fund the Wind-Down Reserve and, potentially, up to $500,000 in Subsequent Plan Funding.[12]  Solely by virtue of Lender's voluntary agreement, the

---

[11]    One of the modifications to the Plan is to permit the Lender to provide that any designee (under the Credit Bid Agreement) may assume one or more of the Lender's existing mortgages in connection with the Sale of Assets if the Purchaser is the designee of the Lender.  This modification has no adverse impact upon holders of Allowed Claims and has no impact upon Lender's agreement to forego certain distributions under the Plan.

[12]    Section 6.02 of the Plan provides for the possibility of a Subsequent Plan Funding: (i) in the amount of $500,000 upon the qualification of the Real Property for Grandfathering or (ii) if the Lender sells the Real Property to a third party on or before the nine-month anniversary of the Sale Date and the Net Sale Proceeds exceed $190 million, Lender shall fund 50% of such excess (up to $500,000).

Available Cash under the Plan for distribution to holders of Allowed Claims shall consist of the Initial Plan Funding, cash released from the Wind-Down Reserve,[13] and, potentially, the Subsequent Plan Funding and any rent or sale proceeds received from the Cooperative Apartments located at 504 Merrick Road, Lynbrook, New York 11563. To the extent that there are net recoveries from other Post-Confirmation Estate Assets (e.g., net proceeds of Causes of Action), those net proceeds would be available for distribution under the Plan.

14.    The deadline to file objections to the Plan was January 4, 2017 at 4:00 p.m. (prevailing Eastern time) (the "**Plan Objection Deadline**") and the deadline for all holders of Claims entitled to vote on the Plan to cast their ballots was January 2, 2017 at 4:00 p.m. (prevailing Eastern Time) (the "**Voting Deadline**"). Five Classes of Creditors entitled to vote have voted in favor of confirmation of the Plan. The Creditors' Committee filed the Summary and Certification of Chapter 11 Plan Acceptances on January 4, 2017 [Docket No. 353] (the "**Certification of Ballots**").

| Class | Description | Treatment (Impaired/ Unimpaired) | Ballots | Voting Result |
|-------|-------------|----------------------------------|---------|---------------|
| Class 1 | Priority Claims | I | 0-Accepting 0- Rejecting | Deemed Rejected[14] |
| Class 2 | Cash Collateral Stipulation Claims | I | 1-Accepting 0- Rejecting | Accepted |
| Class 3 | Secured Acquisition Loan and Building Loan Claims | I | 2-Accepting 0- Rejecting | Accepted |
| Class 4 | Other Secured Claims | I | 2-Accepting 0- Rejecting | Accepted |
| Class 5 | Unsecured Claims against Sutton Owner DE | I | 7- Accepting 0- Rejecting | Accepted |

---

[13]    Section 6.05 provides that any cash released from the $300,000 Wind-Down Reserve shall be available for distribution to holders of Allowed Unsecured Claims.

[14]    Although no ballots were returned for this Class – and in fact, the Plan Proponents are unaware of any creditors holding claims in this Class – as discussed below, despite the "deemed rejection" by this Class, the Plan satisfies the requirements of Section 1129(a)(9).

| Class 6 | Secured Mezz Loan Claim | I | 1-Accepting<br>0- Rejecting | Accepted |
| Class 7 | Unsecured Claims against Sutton Mezz | I | 0 - Accepting<br>0 - Rejecting | Deemed Rejected |
| Class 8 | Subordinated Claims | I | 0 - Accepting<br>0 - Rejecting | Deemed Rejected |
| Class 9 | Late Filed Claims | I | 0 - Accepting<br>0 - Rejecting | Deemed Rejected |

15.    The hearing on Plan confirmation (the "**Confirmation Hearing**") is scheduled to take place on January 11, 2017 at 10:00 a.m. (prevailing Eastern Time).

## REQUEST FOR JUDICIAL NOTICE

16.    The Plan Proponents respectfully request that the Court take judicial notice of the entire docket of the Chapter 11 Cases, including the Adversary Proceeding, and all pleadings and other documents filed, all Orders entered, and evidence and arguments made, proffered or adduced at, the hearings held before the Court during the pendency of these Chapter 11 Cases.[15]

## ARGUMENT

### I.    THE PLAN SATISFIES EACH REQUIREMENT FOR CONFIRMATION

17.    To confirm the Plan, the Plan Proponents must demonstrate by a preponderance of the evidence that they have satisfied the provisions of Section 1129 of the Bankruptcy Code.[16] Here, as discussed below, the Plan complies with all relevant sections of the Bankruptcy Code (including Sections 1122, 1123, 1125, 1126, 1127 and 1129) as well as the Bankruptcy Rules and applicable non-bankruptcy law.

---

[15]    *See* FED. R. EVID. 201(c).

[16]    *In re Dallas Proton Treatment Ctr., LLC.*, No. 15-33783, 2016 WL 6068816, at *2 (Bankr. N.D. Tex. Oct. 14, 2016) ("Committee, as the Plan proponent, has the burden of proving the elements of Bankruptcy Code section 1129(a) by a preponderance of the evidence."); *In re El Charro, Inc.*, No. 05-60294, 2007 WL 2174911, at *4 n.4 (Bankr. D. Kan. July 26, 2007) (preponderance of evidence standard applies to valuation and every element governing confirmation); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 252 (Bankr. S.D.N.Y. 2007) ("The plan proponent has the burden of proof to establish by a preponderance of the evidence that its plan meets the Best Interests test.").

A. **The Plan Complies with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

18.    Section 1129(a)(1) requires that a chapter 11 plan "compl[y] with the applicable provisions of [the Bankruptcy Code]."[17]  The legislative history of Section 1129(a)(1) explains that this provision encompasses the requirements of Sections 1122 and 1123 including, principally, rules governing classification of claims and interests and the contents of a chapter 11 plan.[18]  As explained below, the Plan complies with Sections 1122 and 1123.

*i*    ***The Plan Satisfies the Classification Requirements of Section 1122.***

19.    The classification requirements of Section 1122 provide "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."[19]

20.    The Second Circuit has recognized that, under Section 1122, plan proponents have significant flexibility to place similar claims into different classes ("**Classes**"), provided there is a rational basis for doing so.[20]  For example, courts have allowed separate classification: (a) where members of a class possess different legal rights,[21] and (b) where there

---

[17]    11 U.S.C. § 1129(a)(1).

[18]    S. Rep. No. 95-989, at 126 (1978); H.R. Rep. No. 95-595, at 412 (1977); *see also Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 648-49 (2d Cir. 1988) (suggesting Congress intended the phrase "'applicable provisions' in [section 1129(a)(1)] to mean provisions of Chapter 11 . . . such as section[s] 1122 and 1123"); *see also In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) (noting that "[t]he legislative history of § 1129(a)(1) explains that this provision embodies the requirements of §§ 1122 and 1123, respectively, governing classification of claims and the contents of the Plan").

[19]    11 U.S.C. § 1122(a)

[20]    *See Aetna Cas. & Sur. Co. v. Clerk, U.S. Bankruptcy Court (In re Chateaugay Corp.)*, 89 F.3d 942, 949 (2d Cir. 1996) ("[C]lassification is constrained by two straightforward rules: [d]issimilar claims may not be classified together; similar claims may be classified separately only for a legitimate reason"); *Boston Post Rd. Ltd. P'ship v. FDIC (In re Boston Post Rd. Ltd. P'ship)*, 21 F.3d 477, 482 (2d Cir. 1994) (holding that similar claims may be separately classified unless sole purpose is to engineer an assenting impaired class); *In re Bryson Props., XVIII*, 961 F.2d 496, 502 (4th Cir. 1992) (noting section 1122 "grants some flexibility in classification of unsecured claims"); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177-78 (Bankr. S.D.N.Y. 1989) ("[A] debtor may place claimants of the same rank in different classes and thereby provide different treatment for each respective class.").

[21]    *In re Heritage Org., L.L.C.*, 375 B.R. 230, 299 n. 86 (Bankr. N.D. Tex. 2007) (finding that if creditors had different legal rights under equitable subordination, then separate classification would be appropriate); *see In re Mirant Corp.*, No. 03-46590, 2007 WL 1258932, at *7 (Bankr. N.D. Tex. Apr. 27, 2007) (permitting separate

***(continued on next page)***

are good business reasons for separate classification.[22]

21.     The Plan provides for the separate classification of Claims into ten different Classes based upon differences in the legal or factual nature of those Claims or other relevant and objective criteria.  Additionally, each of the Claims in a particular Class under the Plan is substantially similar to the other Claims in such Class, and the classification structure is necessary to implement certain aspects of the Plan.  Administrative Expense Claims and Priority Tax Claims (the "**Unclassified Claims**") are not classified and are separately treated under Article II of the Plan.

22.     Article II of the Plan sets forth the classification of Claims under the Plan based on the nature of the Claimants' Claims.  Each Class comprises only Claims or Interests that are substantially similar to one another, and the Classes themselves are all based on valid business, factual, or legal considerations.   Secured Claims are classified separately from unsecured claims.  Secured Claims are placed in separate classifications based on the nature and priority of such Secured Claims.  The Sutton Mezz Membership Interests occupies its own class. More specifically, the Plan divides the classified Claims into the following Classes: (1) Class 1 provides for the separate classification of all Priority Claims; (2) Class 2 provides for the separate classification of the Cash Collateral Claim; (3) Class 3 provides for the separate classification of the Secured Acquisition Loan and Building Loan Claims; (4) Class 4 provides for the separate classification of all Other Secured Claims; (5) Class 5 provides for the separate classification of all Unsecured Claims against Sutton Owner DE; (6) Class 6 provides for the

---

classification because holders of claims had different legal interests in debtor's estate); *In re Kaiser Aluminum Corp.*, No. 02-10429, 2006 WL 616243, at *5 (Bankr. D. Del. Feb. 6, 2006) (permitting classification scheme after consideration of creditors' legal rights).

[22]     *In re Chateaugay Corp.*, 89 F.3d 942, 949-50 (finding that debtor must have a legitimate business reason supported by credible proof to justify separate classification of unsecured claims).

separate classification of the Mezz Loan Claim; (7) <u>Class 7</u> provides for the separate classification of all Unsecured Claims against Sutton Mezz; (8) <u>Class 8</u> provides for the separate classification of all Subordinated Claims; (9) <u>Class 9</u> provides for the separate classification of all Late Filed Claims; and (10) <u>Class 10</u> provides for the separate classification of all Interests.

23.    Finally, the classification structure was not designed to gerrymander the Classes to create an impaired Class.  All Classes of Claims and Interests are impaired in this case and the Plan Proponents are (or in the case of the Creditors' Committee, represents) the largest creditor constituencies in these Chapter 11 Cases.  The Plan is a liquidating plan that allocates value in accordance with the statutory rights and structural seniority of the respective Debtors, e.g., holders of Allowed Claims of Sutton Mezz being subordinate to holders of Allowed Claims against Sutton Owner DE.  Accordingly, the Plan complies with Section 1122.

**ii    *The Plan Satisfies the Seven Mandatory Plan Requirements of 11 U.S.C. §§ 1123(a)(1)-(a)(7).***

24.    Section 1123(a) sets forth seven requirements with which the plan proponent of every chapter 11 plan, other than individual debtors, must comply.  The Plan satisfies the mandatory plan requirements in Section 1123(a).

25.    Articles II, III and IV of the Plan satisfy the <u>first three requirements</u> of Section 1123(a) by designating Classes of Claims and Interests that require classification, as required by Section 1123(a)(1), specifying the Classes of Claims and Interests that are unimpaired under the Plan, as required by Section 1123(a)(2), and specifying the treatment of each Class of Claims and Interests that are impaired, as required by Section 1123(a)(3).

26.    The Plan also satisfies Section 1123(a)(4) — the <u>fourth mandatory requirement</u> – because the treatment of each Allowed Claim or Interest within a Class is the same as the treatment of each other Allowed Claim in that Class, unless the holder of a Claim or

Interest consents to less favorable treatment on account of its Claim.

27.    The provisions of the Plan and the documents in the Plan Supplement provide adequate means for the Plan's implementation, thus satisfying the fifth requirement of Section 1123(a).[23] The provisions of Article VI of the Plan relate to, among other things: (a) the conditions precedent to the payment of the Lender Contribution; (b) the Sale of the Debtors' Assets; (c) the establishment of a Distribution Reserve; (d) the establishment of a Disputed Claims Reserve; (e) the appointment of a Wind-Down Officer and establishment of the Wind-Down Reserve; (f) the dissolution of the Debtors; and (g) the preservation of all Causes of Action that were owned by the Debtors or their Estates as of the Effective Date.

28.    The sixth requirement of Section 1123(a) — *i.e.*, that if a debtor is a corporation, its plan must prohibit the issuance of nonvoting equity securities — is also met. The Plan is a liquidating plan pursuant to which all Post-Confirmation Estate Assets will be in the full authority and control of the Wind-Down Officer.  Moreover, the Debtors' are in the process of consummating the Sale of substantially all of its Assets to Lender and the existing Membership Interests of all Debtors will be deemed cancelled.   Thus, the Plan complies with Section 1123(a)(6).[24]

29.    Finally, the Plan fulfills the seventh requirement in Section 1123(a), requiring Plan provisions regarding selection of officers, directors and trustees contain provisions consistent with the interests of creditors and with public policy.[25]  The provisions of the Plan with respect to the manner of selection of the Wind-Down Officer, including, without limitation,

---

[23]    Section 1123(a)(5) specifies that adequate means for implementation of a plan may include: retention by the debtor of all or part of its property; the transfer of property of the estate to one or more entities; cancellation or modification of any indenture; curing or waiving of any default; amendment of the debtor's charter; or issuance of securities for cash, property, or existing securities, in exchange for claims or interests or for any other appropriate purpose. 11 U.S.C. § 1123(a)(5).

[24]    *See* Plan, Section 6.08.

[25]    11 U.S.C. § 1123(a)(7).

the provisions of Section 6.06 of the Plan, are consistent with the interests of creditors and equity

security holders and with public policy.  Accordingly, the Plan complies with Section 1123(a).

**B.**    **The Plan Proponents Have Complied with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

30.    Section 1129(a)(2) requires that the proponent of the chapter 11 plan

comply with the applicable provisions of the Bankruptcy Code.   The legislative history to

Section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and

solicitation requirements set forth in Section 1125 and the plan acceptance requirements set forth

in Section 1126.[26]  The Plan Proponents have complied with these provisions, including Sections

1125 and 1126, as well as Bankruptcy Rules 3017 and 3018, by carrying out the Solicitation

Procedures approved by the Court in its Disclosure Statement Order.

*i*    ***The Plan Proponents Complied with the Disclosure Statement and Solicitation Requirements of Section 1125.***

31.    Section 1125(b) prohibits the solicitation of acceptances or rejections of a

plan "unless, at the time of or before such solicitation, there is transmitted to such holder the plan

or a summary of the plan, and a written disclosure statement approved, after notice and a

hearing, by the court as containing adequate information."[27]

32.    The Plan Proponents have satisfied Section 1125.  Upon the filing of their

original plan and disclosure statement on November 22, 2016, the Plan Proponents also sought

---

[26]    *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986) ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the [Bankruptcy] Code."), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd, Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636 (2d Cir. 1988); *see In re Drexel*, 138 B.R. at 759 (noting that the provision's legislative history "explains that this provision embodies the disclosure and solicitation requirements" under sections 1125 and 1126); *see also* H.R. REP. NO. 95-595, at 412 (1977); S. REP. NO. 95-989, at 126 (1978) ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure.").

[27]    *See Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) (finding that section 1125 of the Bankruptcy Code obliges a Debtor to engage in full and fair disclosure that would enable a hypothetical reasonable investor to make an informed judgment about the plan).

relief on shortened notice that adjusted the notice periods for approval of the Disclosure Statement and confirmation of the Plan in order to meet the deadlines negotiated between the Creditors' Committee, Lender and the Debtors for an expedited confirmation of the Plan and orderly Auction and Sale of the Debtor's Assets.

33.    Thereafter, on December 8, 2016, the Court entered the Disclosure Statement Order, approving the Disclosure Statement as containing adequate information, and approving the Solicitation Procedures.  The Disclosure Statement Order approved the contents of the Solicitation Packages that the Plan Proponents provided to holders of Claims in Voting Classes and the timing and method of delivery of the Solicitation Packages.[28]  As detailed in the Kalikow Declaration, the Plan Proponents complied in all respects with the Solicitation Procedures as outlined in the Disclosure Statement Order, including their compliance with service requirements and not soliciting acceptance of the Plan from any creditor prior to sending the Solicitation Packages that contained the Court-approved Disclosure Statement.[29]

### ii    The Plan Proponents Complied with the Plan Acceptance Requirements of Section 1126.

34.    Section 1126 provides that only holders of claims and equity interests in impaired classes that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject a plan.[30]  Sections 1126(c) and (d) specify the requirements for acceptance of a plan by a class of claims.  Specifically, Section 1126(c) provides a class of claims has deemed to have accepted the plan if the plan is accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed

---

[28]    *See* Disclosure Statement Order at ¶ 9.
[29]    *See* Kalikow Declaration at ¶ 8; Affidavit of Service, December 12, 2016  [Docket No. 338].
[30]    11 U.S.C. § 1126.

claims.[31]

35.     There are no unimpaired Classes under the Plan.  Accordingly, all Classes of Claims and Interests are entitled to vote and Section 1126(f) is not applicable.   The Plan Proponents solicited votes on the Plan from the Voting Classes — that is the holders of all Allowed Claims in each impaired Class entitled to receive distributions under the Plan: Classes 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10.  As noted above, the Voting Deadline occurred on January 2, 2017, and the Certification of Ballots, which was filed on January 4, 2017, detailed the results of the voting process in accordance with Section 1126, in which the Plan was unanimously supported by five Classes of Claims.  Based upon the foregoing, the Plan Proponents' solicitation of votes on the Plan was undertaken in conformity with Section 1126  and the Disclosure Statement Order.

*iii*     ***The Technical Modifications to the Plan Comply with Section 1127.***

36.     In the interest of clarifying and consensually resolving outstanding issues and informal objections to confirmation of the Plan, the Plan Proponents have made certain non-material modifications to the Plan (the "**Technical Modifications**").   Concurrently with the filing of this memorandum, the Plan Proponents are filing a revised version of the Plan to reflect certain non-material and technical changes that do not materially or adversely affect the treatment of any holder of a Claim under the Plan.  In addition, the Plan Proponents are filing an incorporating the Technical Modifications to the prior version of the Plan.

37.     Section 1127, which allows a plan proponent to modify the plan "at any time" before confirmation, provides: (a) the modification must not cause the plan to fail to meet the requirements of Sections 1122 and 1123 and (b) a claimant's acceptance or rejection to the

---

[31]        *Id.* at § 1126(c)

plan shall apply to the modified plan, unless, within the time fixed by the court, such holder changes its previous acceptance or rejection. [32]   Accordingly, bankruptcy courts have typically allowed a plan proponent to make non-material changes to a plan without any special procedures or vote resolicitation.[33]

38.    In addition, Bankruptcy Rule 3019, designed to implement Section 1127(d), provides in relevant part that a Plan Proponent may file a modification of the plan after the plan has been accepted and before confirmation and retain acceptances to the plan, if the court finds after hearing on notice that the proposed change does not adversely affect any holder of a claim or interest. [34]

39.    Here, the proposed changes meet the applicable standard.   The Plan Proponents received certain informal comments, including from the Office of the United States Trustee, prior to the Plan Objection Deadline.   In response, the Plan Proponents made certain revisions to the Plan.   The Technical Modifications primarily consist of the following: (i) conforming the date by which the Sale must be consummated; (ii) clarifying the definition of Allowed Claim as relates to when an objection may be filed to any Claim; (iii) carving out acts constituting gross negligence, willful misconduct, actual fraud from the Debtor Release, Third Party Release and Exculpation; (iv) clarifying that Priority Claims shall be treated, at a

---

[32]    11 U.S.C. §§ 1127(a), (d).

[33]    *See, e.g., Enron Corp. v. New Power Co. (In re New Power Co.)*, 438 F.3d 1113, 1117-18 (11th Cir. 2006) ("[T]he bankruptcy court may deem a claim or interest holder's vote for or against a plan as a corresponding vote in relation to a modified plan unless the modification materially and adversely changes the way that claim or interest holder is treated."); *In re Am. Solar King Corp.*, 90 B.R. 808, 826 (Bankr. W.D. Tex. 1988) (stating that "if a modification does not 'materially' impact a claimant's treatment, the change is not adverse and the court may deem that prior acceptances apply to the amended plan as well.") (citation omitted); *In re Mt. Vernon Plaza Cmty. Urban Redevelopment Corp. I*, 79 B.R. 305, 306 (Bankr. S.D. Ohio 1987) (all creditors were deemed to have accepted plan as modified because "[n]one of the changes negatively affects the repayment of creditors, the length of the [p]lan, or the protected property interests of parties in interest.").

[34]    FED. R. BANKR. P. 3019.

minimum, in accordance with Section 1129(a)(9); (v) preservation of any Claims and Causes of

Action against Debtors' professionals, including, Herrick Feinstein, LLP; (vi) authorization for

Wind-Down Officer to donate remaining Available Cash if final distribution to holders of

Allowed Claims is not cost effective; and (vii) conforming changes based upon the Credit Bid

Agreement (which do not adversely affect any claim or interest holder).

40.    All creditors in these Chapter 11 Cases have notice of the Confirmation

Hearing, and will have an opportunity to object to the Technical Modifications at that time,

consistent with the requirements of Section 1127(d).[35]  Accordingly, because the proposed Plan

modifications are non-material and do not materially or adversely affect the treatment of any

creditor that has previously accepted the Plan, the Plan, as modified, continues to comply with

Sections 1122 and 1123, and no further solicitation is required.

**C.    The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law (11 U.S.C. § 1129(a)(3)).**

41.    Section 1129(a)(3) requires that a chapter 11 plan be proposed in good

faith and not be forbidden by the law.[36]  The Second Circuit has construed the good faith

standard to be that "the plan was proposed with honesty and good intentions and with a basis for

expecting that a reorganization can be effected."[37]  Additionally, courts generally hold that "good

faith" should be evaluated in light of the totality of the circumstances surrounding

confirmation.[38]

---

[35]    *See Citicorp Acceptance Co., Inc. v. Ruti-Sweetwater (In re Sweetwater)*, 57 B.R. 354, 358 (D. Utah 1985) (creditors who had knowledge of pending confirmation hearing had sufficient opportunity to raise objections to modification of the plan).

[36]    11 U.S.C. § 1129(a)(3).

[37]    *Johns-Manville*, 843 F.2d at 649 (internal quotation marks omitted); *see also In re Texaco, Inc.*, 84 B.R. 893, 907 (Bankr. S.D.N.Y. 1988) ("[I]n the context of a [Chapter 11] reorganization . . . a plan is considered proposed in good faith if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the Code.") (internal quotation marks omitted), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1998).

[38]    *In re Cellular Info. Sys., Inc.*, 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994) (citing cases).

42.    Good faith for purposes of Section 1129(a)(3) may be found where the plan is supported by key creditor constituencies, or was the result of extensive arm's-length negotiations with creditors.[39]    Here, the Plan is the product of extensive arm's-length negotiations between Lender and the Creditors' Committee.   These negotiations resulted in a feasible liquidating plan that provides for recovery to unsecured creditors, *who would not likely otherwise recover anything in these cases based upon the size of the Lender's Allowed Claims and the results of the Auction*.   Unsecured creditors are receiving a recovery solely because Lender, having prevailed in the Adversary Proceeding, is the Successful Bidder at the Auction and has voluntarily agreed to make the Lender Contribution to fund the Plan.   This process has facilitated the best possible recovery for creditors despite the outcome of these cases.   As a result, the Plan has the support of all of the major creditor constituencies in these Chapter 11 Cases.   The support from each of these constituencies evidences the Plan Proponents' good faith and good intentions in proposing the Plan, and the totality of circumstances surrounding its formulation clearly promotes the purposes of the Bankruptcy Code.   Lastly, the Plan is in no way an attempt to abuse the judicial process or delay the legitimate efforts of creditors to enforce their rights. Thus, the Plan complies with Section 1129(a)(3).

### D.    The Plan Provides for Bankruptcy Court Approval of Certain Administrative Payments (11 U.S.C. § 1129(a)(4)).

43.    Section 1129(a)(4) requires that certain professional fees and expenses paid by the plan proponent, by the debtor, or by a person issuing securities or acquiring property under a plan, be subject to Court approval as reasonable.[40]   Here, the Plan[41] mandates that all

---

[39]    *In re Eagle-Picher Indus., Inc.*, 203 B.R. 256, 274 (Bankr. S.D. Ohio 1996) (finding that plan of reorganization was proposed in good faith when, among other things, it was based on extensive arm's-length negotiations among plan proponents and other parties-in-interest).
[40]    *See, e.g., In re Worldcom, Inc.*, 2003 WL 23861928, at *53-54 (Bankr. S.D.N.Y. Oct. 31, 2003); *Drexel*,

**(continued on next page)**

payments made by the Wind-Down Officer for services, costs, or expenses in connection with these Chapter 11 Cases before the Effective Date, including Professional Fee Claims,[42] must be approved by, or are subject to the approval of, the Bankruptcy Court as reasonable.

44.     The Plan makes clear that such Professional Fee Claims are contingent on Bankruptcy Court approval of a professional's fees or expenses, holders of such Professional Fee Claims shall be paid "following the date upon which such Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court."[43]   In addition, Article XII of the Plan provides that the Bankruptcy Court will retain jurisdiction after the Effective Date to hear and determine all applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan.   Accordingly, the Plan complies with Section 1129(a)(4).

### E.     Post-Confirmation Directors, Managers, and Officers Have Been Disclosed and Their Appointment is Consistent with Public Policy (11 U.S.C. § 1129(a)(5)).

45.     In relevant part, Section 1129(a)(5) requires that (i) the plan proponent disclose the identity and affiliations of the proposed directors and officers of the debtor and (ii) the appointment or continuance of such directors and officers be consistent with the interests of creditors and equity security holders and public policy.[44]

46.     Section 1129(a)(5) has been satisfied.   The Plan provides that on the Effective Date, all existing officers, directors, managers and members of the Debtors shall be

---

138 B.R. at 760; *In re Elsinore Shore Assocs.*, 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (holding that requirements of section 1129(a)(4) were satisfied where plan provided for payment of only "allowed" administrative expenses).

[41]     *See* Plan, Section 3.04

[42]     The Plan defines Professional Fee Claims as "Claims against the Debtors of Professionals or any other Person for compensation and/or reimbursement of expenses pursuant to Section 327, 328, 330, 331, 363 or 503(b) of the Bankruptcy Code for Claims of Professionals accruing prior to the Effective Date."

[43]     *See* Plan, Section 3.04(b).

[44]     *See* 11 U.S.C. § 1129(a)(5).

deemed to have resigned.[45]   The Wind-Down Officer shall serve in accordance with the Plan and

Wind-Down Officer Agreement, invested with full authority and control over the Post-

Confirmation Assets.  The identity and affiliations of the Wind-Down Officer has been disclosed

in the Wind-Down Officer Agreement.  Further, the appointment of the Wind-Down officer is

consistent with the interest of the Debtors' creditors and public policy.  Thus, the Plan complies

with Section 1129(a)(5).

### F.    The Plan Does Not Require Governmental Regulatory Approval of Rate Changes (11 U.S.C. § 1129(a)(6)).

47.    Section 1129(a)(6), which permits confirmation of a chapter 11 plan only

if any regulatory commission that will have jurisdiction over the debtor after confirmation has

approved any rate change provided for in the plan,[46] is inapplicable here.

### G.    The Plan Is in the Best Interests of Creditors and Interest Holdings (11 U.S.C. § 1129(a)(7)).

48.    The "best interests of creditors" test of Section 1129(a)(7) requires that,

with respect to each impaired class of claims or interests, each individual holder of a claim or

interest has either accepted the plan or will receive or retain property having a present value, as

of the effective date of the plan, of not less than what such holder would receive if the debtor

were liquidated under chapter 7 of the Bankruptcy Code at that time.[47]   The best interests test is

satisfied where the estimated recoveries for a debtor's stakeholders in a hypothetical chapter 7

liquidation are less than or equal to the estimated recoveries under the debtor's plan.[48]

---

[45]    *See* Plan, Section 6.05.

[46]    11 U.S.C. § 1129(a)(6).

[47]    *Id.* §1129(a)(7); *In re Adelphia Commc'ns Corp.*, 368 B.R. at 251; *see In re Leslie Fay Cos.*, 207 B.R. 764, 787 (Bankr. S.D.N.Y. 1997).

[48]    *Adelphia*, 368 B.R. at 252 ("In determining whether the best interests standard is met, the court must measure what is to be received by rejecting creditors in the impaired classes under the plan against what would be received by them in the event of liquidation under chapter 7."); *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N.*

***(continued on next page)***

49.     First, the best interests test is satisfied to the extent each holder of an impaired Claim votes to accept the Plan.[49]  All holders of Claims in Classes 2, 3, 4, 5 and 6 that returned ballots voted to accept the Plan.   Therefore, the best interests test is satisfied with respect to all holders of Claims that voted to accept the Plan in Classes 2, 3, 4, 5 and 6.

50.     Second, to the extent holders of Claims did not vote on the Plan, these Claimants are receiving no less under the Plan than they would have in a chapter 7 liquidation. To the contrary, absent the voluntary payment of the Lender Contribution by Lender *which is only available under the Plan*, holders of Allowed Claims would very likely receive no distributions given the size of the Lenders' Allowed Secured Claims and the results of the Auction.   Further, the Assets and the other Post-Confirmation Estate Assets to be sold, administered and/or distributed under the Plan are the same assets that would be sold, administered and/or distributed in chapter 7.  Because the Lender Contribution provides material funds – not otherwise available to a Chapter 7 trustee – to fund the wind-down and dissolution of the Debtors and administration of the Plan, holders of Claims in Classes 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10 would do no better under a hypothetical dissolution of the Debtors' Estates under chapter 7.  Thus, the Plan complies with Section 1129(a)(7).

**H.     The Plan Has Been Accepted by the Requisite Classes of Claims and Interests (11 U.S.C. § 1129(a)(8)).**

51.     Section 1129(a)(8) requires that each class of impaired claims or equity interests accept the plan or be unimpaired.[50]  Pursuant to Section 1126(c), a class of claims accepts a plan if holders of at least two-thirds in amount and more than one-half in number of the

---

*LaSalle St. P'ship.*, 526 U.S. 434, 441-42 n.13 (1999).
[49]     See 11 U.S.C. § 1129(a)(7)
[50]     11 U.S.C. § 1129(a)(8).

allowed claims in that class vote to accept the plan.[51]  A class that is not impaired under a plan is conclusively presumed to have accepted the plan.[52]  On the other hand, a class is deemed to reject a plan if the plan provides that the claims of the class do not receive or retain any property under the plan on account of such claims or interests.[53]

52.    The Plan Proponents filed the Certification of Ballots on January 4, 2017 showing that the Plan has been accepted by Classes 2, 3, 4, 5 and 6. However, while no rejections were received, certain Classes did not vote at all: Classes 1, 7, 8, 9 and 10.  Therefore, these Classes are "deemed" to have rejected the Plan.  Accordingly, the requirements of Section 1129(a)(8) are not met with respect to Classes 1, 7, 8, 9, and 10.

> ### *i*    *The Plan Satisfies the "Cramdown" Requirements for Confirmation (11 U.S.C. § 1129(b)(1)).*

53.    Even where certain impaired classes of claims or interests do not accept a plan, and therefore the requirements of Section 1129(a)(8) are not satisfied, such plan nevertheless may be confirmed over such non-acceptance pursuant to the "cramdown" provisions of Section 1129(b)(1).[54]  As a result, the condition precedent to confirmation contained in Section 1129(a)(8) is the only condition of Section 1129(a) that is not necessary for confirmation of a chapter 11 plan.

### (a) The Plan Meets All Requirements for Confirmation Other Than Section 1129(a)(8).

54.    Here, the Plan complies with Section 1129(a), except for the requirement

---

[51]    *Id.* § 1126(c).

[52]    *Id.* § 1126(f); *see also In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 290 (2d Cir. 1992) (noting that an unimpaired class is presumed to have accepted plan); *see also* S. REP. 95-989, at 123 (1978) (section 1126(f) of the Bankruptcy Code "provides that no acceptances are required from any class whose claims or interests are unimpaired under the Plan or in the order confirming the Plan.").

[53]    11 U.S.C. § 1126(g).

[54]    While the cramdown provisions do not expressly include priority claims (as in Class 1), a plan cannot be confirmed under Section 1129(a)(9) unless priority claims (as in Class 1) are properly treated, thereby making Section 1129(b) irrelevant.

of Section 1129(a)(8) with respect to Classes 1, 7, 8, 9 and 10.

### (b) The Plan Does Not Discriminate Unfairly

55.    Section 1129(b)(1) does not prohibit discrimination between classes under a plan of liquidation; it prohibits only discrimination that is "unfair."  Generally speaking, Section 1129(b)(1) is intended to "ensure[ ] that a dissenting class will receive relative value equal to the value given to all other similarly situated classes.  Thus a plan proponent may not segregate two similar claims or groups of claims into separate classes and provide disparate treatment for those classes."[55]

56.    Here, the Plan does not "discriminate unfairly" against Classes 7, 8, 9 and 10. As an initial matter, the Plan's treatment of Membership Interests in Class 10 (Membership Interests in Sutton Mezz) is proper because no similar Class of Interests exist.  With respect to Classes 7, 8 and 9, each Class has a different level of priority, holds Claims that are potentially against different Debtors and thus has varied legal rights of recovery.

### (c) The Plan is Fair and Equitable.

57.    Sections 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii) set forth the so-called "absolute priority rule."[56]  This central tenet of bankruptcy law requires that if the holders of claims or interests in a particular class receive less than full value for their claims or interests, no holders of claims or interests in a junior class may receive any property under the plan.[57]  The corollary of the absolute priority rule is that if the holders of claims or interests in a particular class receive less than full value for their claims or interests, then senior classes cannot receive

---

[55]    *Johns-Manville*, 68 B.R. at 635; *see also In re Armstrong World Indus.*, Inc., 348 B.R. 111, 121 (D. Del. 2006) (citing Johns-Manville and stating that the "hallmarks of the various tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination."); *In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990).

[56]    11 U.S.C. §§ 1129(b)(2)(B)(ii), (C)(ii).

[57]    11 U.S.C. § 1129(b)(2)(B)(ii), (C)(ii); se*e also 203 N. LaSalle St. P'Ship*, 526 U.S. at 441-42.

more than a 100% recovery for their claims or interests.[58]

58.    The Plan meets the standards of Section 1129(b)(2) with respect to Classes 7, 8, 9 and 10.  First, the Plan satisfies the "fair and equitable" requirements[59] with respect to the Membership Interests in Sutton Mezz in Class 10 because Class 5, 6 and 7 creditors who have senior rights to recovery will not be paid in full and there are no Classes of Claims or Equity Interests junior to Class 10 that are retaining any property under the Plan on account of their Claims or Equity Interests.

59.    Second, Classes of Claims junior to Class 5, such as Classes 7, 8, 9 and 10, will receive a distribution to the extent of net proceeds from Post-Confirmation Estate Assets. At the present time, holders of Class 5 Claims are only receiving distributions because Lender has voluntarily agreed to: (i) forego any right to additional distribution on account of its Class 2, 3 or 5 Claims and (ii) provide the Lender Contribution of between $4.3 million and $4.8 million. Accordingly, the Plan complies with Section 1129(b) as to Classes 7, 8, 9 and 10.

## I.    The Plan Complies with Statutorily Mandated Payment of Priority Claims (11 U.S.C. § 1129(a)(9)).

60.    Section 1129(a)(9) requires that certain priority claims be paid in full on the effective date of a plan and authorizes the holders of certain other priority claims to be paid the value of their allowed claim through deferred cash payments.  In particular, pursuant to Section 1129(a)(9)(A), holders of claims of a kind specified in Section 507(a)(2) — administrative expenses allowed under Section 503(b) — must receive on the effective date cash

---

[58]    *See In re Granite Broad. Corp.*, 369 B.R. 120, 140 (Bankr. S.D.N.Y. 2007) ("There is no dispute that a class of creditors cannot receive more than full consideration for its claims, and that excess value must be allocated to junior classes of debt or equity, as the case may be.").
[59]    *See* 11 U.S.C. §§ 1129(b)(2).

equal to the allowed amount of such claims.[60]

61.     In accordance with Sections 1129(a)(9)(A) and (B), Article III of the Plan provides as follows:

- Allowed Administrative Claims under Section 503(b), unless the holder of such Claim agrees to less favorable treatment, will be paid in full, in cash, by the Wind-Down Officer either: (a) as soon as reasonably practicable after the later of the Effective Date, the Sale Date and the date on which such Claim becomes an Allowed Administrative Claim, or (b) such other date and upon such other terms agreed by the holder of such Allowed Administrative Expense Claim and the Wind-Down Officer or ordered by the Bankruptcy Court.

- Allowed Priority Tax Claims will be paid in full, in cash, by the Wind-Down Officer on or as soon as reasonably practicable after the later of the Effective Date and the Sale Date.

- The Wind-Down Officer shall pay Allowed Professional Fee Claims in full, in cash, on or as soon as reasonable practicable after the first Business date upon which the Claim becomes an Allowed Claim.

62.     Accordingly, Article III of the Plan complies with Sections 1129(a)(9)(A) and (B).

63.     Finally, with respect to the non-voting Class 1 – Priority Claims, the Plan Proponents reviewed the Debtors' Schedules and the claims register and are unaware of any claims in this specific Class.   Nonetheless, because no ballots were returned, this Class is "deemed rejected."   To the extent there are any holders of Allowed Class 1 Claims, the Plan is confirmable as to this Class because such holders will receive the treatment provided for under Section 1129(a)(9)(B), thereby satisfying the conditions for confirmation for this Class.   In fact, one of the technical modifications to the Plan is to expressly clarify that any holder of an Allowed Class 1 Claim shall receive the treatment provided for in Section 1129(a)(9)(B).

---

[60]     11 U.S.C. § 1129(a)(9).

**J.     At Least One Impaired Class of Claims Has Accepted the Plan, Excluding the Acceptances of Insiders (11 U.S.C. § 1129(a)(10)).**

64.     Section 1129(a)(10) provides that, if a class of claims is impaired under a plan, at least one impaired class of claims must accept the plan, excluding acceptance by any insider.  Here, five impaired Classes of Claims – including impaired claims against each Debtor – have accepted the Plan.  Therefore, the Certification of Ballots confirms that the Plan satisfies Section 1129(a)(10).

**K.     The Plan Is Feasible (11 U.S.C. § 1129(a)(11)).**

65.     Section 1129(a)(11) requires that a plan be feasible to be confirmed. Specifically, the Court must determine that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."[61]

66.     The key element of feasibility is whether there is a reasonable probability that the provisions of the plan can be performed.  As noted by the Ninth Circuit: "The purpose of [S]ection 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation."[62]  In making a feasibility determination, "a bankruptcy court does not need to know to a certainty, or even a substantial probability, that the plan will succeed.  All it needs to know is that the plan has a reasonable likelihood of success."[63]  For liquidating plans, the feasibility test evaluates whether the plan proponents will be able to meet the conditions

---

[61]     11 U.S.C. § 1129(a)(11).

[62]     *Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.)*, 761 F.2d 1374, 1382 (9th Cir. 1985) (quotation marks and citation omitted).

[63]     *In re Adelphia Bus. Sols., Inc.*, 341 B.R. 415, 421-22 (Bankr. S.D.N.Y. 2003).

precedent to the effective date and to make the payments required under its chapter 11 plan.[64]

67.     Here, the Plan provides for the Sale of the Assets to Lender (or its designee) and the payment of the Initial Plan Funding and Expense Contribution by Lender on the Effective Date.[65]  As demonstrated in the Distribution Analysis, the Plan Proponents submit that adequate sources of Cash exist to implement the Plan, fund the wind-down and liquidation of the Estate and make all Distributions contemplated under the Plan.    Accordingly, the feasibility requirement of Section 1129(a)(11) is satisfied.

### L.    The Plan Provides for the Payment of All Fees under 28 U.S.C. § 1930 (11 U.S.C. § 1129(a)(12)).

68.     Section 1129(a)(12) requires that, as a condition precedent to the confirmation of a plan of reorganization, "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan."[66]  The Plan complies with Section 1129(a)(12) by providing that all United States Trustee Fees incurred prior to the Effective Date shall be paid by the Wind-Down Officer on or as reasonably practicable after the Effective Date.[67]  In accordance with Sections 507 and 1129(a)(12), the Plan provides that the Wind-Down Officer shall pay U.S. Trustee fees until the Chapter 11 Cases are closed or converted or final decrees are entered.  Thus, the Plan complies with Section 1129(a)(12).

### M.    Sections 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16) Do Not Apply to the Plan.

69.     Section 1129(a)(13) requires a plan to provide for retiree benefits at levels

---

[64]     *See, e.g., In re Journal Register Co.*, 407 B.R. 520, 539 (Bankr. S.D.N.Y. 2009) (explaining that the feasibility test is "whether the things which are to be done after confirmation can be done as a practical matter under the facts") (quotation marks omitted).

[65]     *See* Plan, Section 6.03.

[66]     11 U.S.C. § 1129(a)(12).

[67]     *See* Plan, Section 3.02.

established pursuant to Section 1114.[68]  Section 1129(a)(14) relates to the payment of domestic support obligations.  Section 1129(a)(15) applies only in cases in which the debtor is an "individual" as defined in the Bankruptcy Code.  Section 1129(a)(16) provides that applicable nonbankruptcy law will govern all transfers of property under a plan to be made by "a corporation or trust that is not a moneyed, business, or commercial corporation or trust."  The legislative history of Section 1129(a)(16) demonstrates that this section was intended to "restrict the authority of a trustee to use, sell, or lease property by a nonprofit corporation or trust."[69]  None of these Sections apply to these Chapter 11 Cases.

### N.    The Principal Purpose of the Plan Is Not Avoidance of Taxes (11 U.S.C. § 1129(d)).

70.    Section 1129(d) states "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."  The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act of 1933.  Nor has any holder of Priority Tax Claims raised any objection arguing that the Plan Proponents have proposed the Plan to either avoid taxes or the application of section 5 of the Securities Act of 1933.  Thus, the Plan complies with Section 1129(d).

## II.    THE DISCRETIONARY CONTENTS OF THE PLAN SHOULD BE APPROVED

71.    Section 1123(b) identifies additional provisions that may be included in a chapter 11 plan.  The Plan includes certain such additional provisions such as (i) treatment for executory contracts and unexpired leases[70] and (ii) release, exculpation and injunction

---

[68]    *See* 11 U.S.C. § 1129(a)(13).
[69]    H.R. REP. 109-31(I), 145, 2005 WL 832198, 121, 2005 U.S.C.C.A.N. 88 (2005).
[70]    *See* Plan, Article VIII.

provisions.[71]  As discussed below, each of these provisions is appropriate.

**A.**      **The Assumption and Assignment or Rejection of the Executory Contracts and Unexpired Leases under the Plan Should be Approved.**

72.      In accordance with Section 1123(b)(2), Section 8.01 of the Plan provides, except as otherwise provided in the Credit Bid Agreement, as of the Sale Date, that each Debtor shall be deemed to have rejected all executory contracts and unexpired leases that exist between the Debtors and any other person or entity prior to the Petition Date on the Sale Date, unless such Executory Contract (i) was previously assumed or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, (iii) is the subject of a motion to assume and assign filed on or before the Confirmation Date, including in connection with the Sale, or (iv) is designated as an Executory Contract on the Schedule of Assumed and Assigned Executory Contracts and Unexpired Leases attached to the Plan or filed as part of the Plan Supplement. Significantly, Exhibit B to the Credit Bid Agreement identifies the Executory Contracts to be assumed and assigned to Lender (or its designee) pursuant to the Sale.  Accordingly, the Plan satisfies Section 1123(b)(2).

**B.**      **The Plan's, Debtor Release, Third Party Release, Exculpation and Injunction Provisions Are Appropriate and Should be Approved**

73.      The Plan's Debtor Release, Third Party Release, Exculpation and Injunction provisions are proper because, among other things, they are the product of arm's-length negotiations and have been critical to key provisions of the liquidating Plan.

*i*      *Debtors Release*

74.      Section 9.06 of the Plan provides that the Debtors, the Estates and the

---

[71]      *Id.* at Sections 9.05-9.08.

Wind-Down Officer shall release the Released Parties[72] (who, by definition, are neither the Debtors nor the Debtors' Related Parties) from any and all claims and causes of action relating to the Debtors, the Chapter 11 Cases and certain other matters as set forth in Section 9.06 of the Plan (the "**Debtor Release**").  The Debtor Release does not affect the liability of any Released Party with respect to actions or inactions found by Final Order to be gross negligence, willful misconduct, or actual fraud.

75.    Section 1123(b)(3)(A) specifically provides that a chapter 11 plan may provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate."[73]  Here, pursuant to Section 1123 and Bankruptcy Rule 9019, the Debtor Release is: (1) in exchange for the good and valuable consideration provided by, or on behalf of, the Released Parties; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors, the Estates, the Wind-Down Officer and all holders of Claims and Equity Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any or all of the Debtors, their respective Estates or the Wind-Down Officer and any holder of a Claim or Equity Interest or other Entity who would have been legally entitled to assert such Claim or Equity Interest on behalf of any of the Debtors or any of their Estates from asserting any Claim or Cause of Action released pursuant to the Debtor Release.

76.    First, the Released Parties have provided substantial contributions and

---

[72]    Section 1.101 of the Plan defines "**Released Party**" (emphasis added) as

> members of the Creditors' Committee in their capacity as such and the Lender and all of their respective Related Persons.  **For the avoidance of doubt, neither the Debtors nor any Related Person relative to the Debtors is a Released Party or otherwise entitled to any of the releases and exculpations under the Plan.**

[73]    11 U.S.C. § 1123(b)(3)(A).

played an integral in the pendency of these Chapter 11 Cases.  Importantly, the Released Parties

are the Plan Proponents and their Related Persons, who have expended significant time and

resources working to maximize recovery to creditors.  Moreover, with respect to Lender and its

Related Parties, Lender is providing a material, voluntary payment, in the form of the Lender

Contribution, which is the basis by which the Plan provides any distribution to creditors.

77.    Second, the Debtor Release is a good faith settlement of the Claims

released by the Debtor Release, is in the best interests of the Debtors' creditors and is fair,

equitable and reasonable.  There is no indication that any party would have a viable claim against

any of the Released Parties.[74]  Pursuit of claims against the Released Parties would be a costly

and futile exercise that would only distract the Wind-Down Officer from its primary obligation

of making distributions to creditors and winding up the estate.  *Notably, neither the Debtors nor*

*any of their Related Persons (including, without limitation, the Debtors' professionals, including*

*Herrick Feinstein, LLP) are "Released Parties".*

78.    Third, the Debtor Release is similar in scope to those approved by courts

in this district.[75]

### *ii    Third-Party Releases*

79.    In addition to the Debtor Release, the Plan also provides that all Releasing

---

[74]    With respect to Lender, the Court has already ruled against the Estates' claims against Lender in the Adversary Proceeding and (with limited exception) allowed all of Lender's claims.

[75]    *See, e.g., In re Genco Shipping & Trading Ltd.*, 513 B.R. 233, 272 (Bankr. S.D.N.Y. 2014) (approving debtor release and third-party releases of non-debtors parties, including lenders); *In re General Maritime Corp., et al.*, Case No. 11-15285 (MG) (Bankr. S.D.N.Y. May 7, 2012) [Docket No. 794] (confirming chapter 11 plan which contained debtor releases for the debtors, creditors' committee, lenders, plan sponsors, and the affiliates, officers, directors, and employees of each); *In re Chemtura Corp.*, 439 B.R. 561, 611 (Bankr. S.D.N.Y. 2010) (approving debtor release that released debtors, creditors' committee and Ad Hoc bondholders' committee; *In re Calpine Corp.*, No. 05-60200 BRL, 2007 WL 4565223, at *10 (Bankr. S.D.N.Y. Dec. 19, 2007) (releasing DIP lenders, new credit facility lenders, statutory committees, indenture trustee and other ad hoc committees).

Parties[76] shall release all Released Parties and their respective assets and property from all claims

and causes of action relating to the Debtors, the Chapter 11 Cases and certain other matters as set

forth in Section 9.07 of the Plan (the "**Third Party Release**").  The Third Party Release does not

affect the liability of any Released Party with respect to actions or inactions found by Final Order

to be gross negligence, willful misconduct, or actual fraud.

       80.    The Second Circuit has held that third party releases are permissible where

the released party provides substantial consideration and where the releases are important to the

success of the plan.[77]  Here, under the Plan, the Lender is providing substantial consideration by

contributing $4.3 as Initial Plan Funding and to fund the Wind-Down Reserve.  The Plan also

provides for up to $500,000 in Subsequent Plan Funding by the Lender, should those conditions

be satisfied.  (The Lender also voluntarily waived the right to participate in distributions under

the Plan on account of certain of its claims to maximize recoveries for third party creditors).  The

Third Party Release is important to the success of the Plan, as it has allowed the Plan Proponents

to freely negotiate with each other without the concern of litigation.[78]  The Third Party Release is

---

[76]    Section 1.102 of the Plan defines "**Releasing Party**" as

        (a) the holders of Claims, (b) the holders of Equity Interests, (c) the Creditors' Committee, and (d)
        with respect to each of the foregoing entities in clauses (a) through (c), such person's current and
        former Affiliates, subsidiaries, officers, directors, principals, employees, agents, financial advisors,
        attorneys, accountants, investment bankers, consultants, representatives and other professionals, in
        each case in their capacity as such.

[77]    *See In re Chemtura Corp.*, 439 B.R. 561, 611 (Bankr. S.D.N.Y. 2010) (acknowledging that third party
releases are permissible under certain circumstances including those where the provisions are important to a plan
and where the released party provides substantial consideration); *see e.g.*, *In re Charter Commc'ns*, 419 B.R. 221,
258 (Bankr. S.D.N.Y. 2009) (holding non-debtor releases were permissible because, among other things, the
Debtors were receiving substantial consideration in exchange for the releases and the releases were important to the
success of the plan).

[78]    As the Court may recall, the Debtors previously (and misguidedly) sought sanctions against Lender for
even discussing the Plan with the Committee – which Plan is the only feasible alternative to conversion and/or
dismissal of these cases.  *See Chapter 11 Debtors' Motion Seeking the Entry of an Order: (i) Precluding Sutton 58
Associates LLC from Filing a Chapter 11 Plan of Liquidation; (ii) Denying the Rights of Sutton 58 Associates LLC
and Jones Lang LaSalle Americas, Inc. to Vote on the Debtors' Joint Plan of Reorganization Pursuant to Rules
1121(b), 1125(b) and 1126(e) of the Federal Rules of Bankruptcy Procedure; and (iii) Subordinating the Claims of
Sutton 58 Associates LLC Under 11 U.S.C. § 510(c)* [Docket No. 214].

appropriate under applicable law because it is consistent with established Second Circuit case law.[79]

81.    Accordingly, the Third Party Release is appropriate and should be approved.

### iii    Exculpation

82.    Section 9.08 of the Plan provides for the release of Exculpated Parties from any claim, obligation, Cause of Action or liability for any act occurring on or after the Applicable Petition Date in connection with the Debtors, the Estates or the Chapter 11 Cases.

83.    Here, the Exculpation Provision is appropriate under applicable law because it is part of a Plan proposed in good faith and was vital to the Chapter 11 Cases and Plan formulation process.    Negotiation and compromise between the Creditors' Committee and Lender were crucial to the formulation of a feasible plan that would provide recovery to creditors, and could not have occurred without the protection from liability that the Exculpation Provision provides.

84.    The appropriateness of the Exculpation is further demonstrated by its limited scope.    Specifically, the Exculpation carves out claims of gross negligence, willful misconduct, actual fraud and any limitation on claims of applicable attorneys to their respective clients pursuant to New York law[80] (the "**Exculpation Carve-Outs**").    The Exculpation Carve-Outs appropriately limit the scope of the Exculpation, and were negotiated with, and agreed upon by, the U.S. Trustee.    These Exculpation Carve-Outs are similar in scope to those approved by

---

[79]       *See In re Genco Shipping & Trading Ltd.*, 513 B.R. at 272; *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005) (identifying factors the court looks to approve third-party releases).
[80]       *See* Plan, Section 9.08.

this Court and this district.[81]

### iv    Injunction

85.    Section 9.05 of the Plan includes a provision enjoining parties from pursuing Claims released under the Plan (the "**Injunction Provision**").  The Injunction Provision is necessary to effectuate and implement the Plan after the Effective Date.  Any such litigation would hinder the efforts of the Wind-Down Officer to effectively fulfill its responsibilities as contemplated in the Plan and thereby undermine efforts to maximize value for the Debtors' creditors.  Further, the Injunction Provision is necessary to preserve and enforce the Debtor Release, the Third-Party Release and the Exculpation Provision, and is narrowly tailored to achieve that purpose.  Thus, this Court should approve the Injunction Provision together with the Debtor Release, the Third-Party Release and the Exculpation Provision.

## III.    THE COURT SHOULD OVERRULE ALL LIMITED OBJECTIONS TO THE PLAN

86.    As described in the Preliminary Statement, the Plan Proponents received only two limited objections, both really in the nature of reservation of rights or requests for clarification.  Neither presents a substantive basis to deny confirmation of the Plan.

### A.    Bauhouse Limited Objection

87.    Bauhouse Limited Objection[82] relates to an alleged $14.5 million claim

---

[81]    *See e.g., In re Chemtura Corp.*, 439 B.R. 561, 611 (Bankr. S.D.N.Y. 2010) ("[E]xculpation provisions (and their first cousins, so-called 'third party releases') are permissible under some circumstances . . . including those where . . . the released party provides substantial consideration . . . or where creditors consent . . ." and may include creditors' committees and their professionals.); *In re Calpine Corp.*, No. 05-60200 BRL, 2007 WL 4565223, at *10 (Bankr. S.D.N.Y. Dec. 19, 2007) (approving exculpation provisions that included lenders, various Ad Hoc Committees and their professionals); *In re Bally Total Fitness of Greater N.Y., Inc.*, No. 07-12395 (BRL), 2007 WL 2779438, at *12 (Bankr. S.D.N.Y. Sept. 17, 2007) (approving the exculpation provisions which included the DIP lenders and the Creditors' Committee and their respective representatives, attorneys or agents); *In re Enron Corp.*, 326 B.R. 497, 501 and 504 (S.D.N.Y. 2005) (approving an exculpation provision that exculpated negligent conduct of parties that included the attorneys of the committee's committee).

[82]    *See Limited Objection and Reservation of Rights of Bauhouse Group I, Inc. to Confirmation of Joint Chapter 11 Plan of Liquidation Filed by the Official Committee of Unsecured Creditors and Sutton 58 Associate*

**(continued on next page)**

under an asserted Development Agreement with a Debtor.    After the Bar Date in the Sutton Mezz and Sutton Owner DE cases passed, Bauhouse filed a proof of claim against Sutton Owner NY and Sutton Mezz.  In addition to its already filed claim, Bauhouse observes that it is still permitted to file a claim to the extent that its asserted Development Agreement is an Executory Contract that is rejected under the Plan.  Bauhouse correctly notes that Section 8.01 of the Plan provides a prospective deadline for any Executory Contracts that are rejected under the Plan.[83]

88.    The Bauhouse Limited Objection is essentially a reservation of rights for treatment of Bauhouse's potential claims under the Plan (broadly, "**Bauhouse Claims**"). However, the Plan already provides for any eventuality as to how any Bauhouse Claims – if Allowed – will be treated.  For example, to the extent that Bauhouse has asserted its claim *against Sutton Owner NY* (e.g., the already filed proof of claim), any Allowed Claim *against Sutton Owner NY* would be treated as a Class 9 – Late Filed Claim.  To the extent that Bauhouse also timely files a claim against *Sutton Owner DE* relating to the rejection of its asserted Development Agreement, then any such claim will be addressed under the Plan and ultimately, any such resolution will address the proper treatment of the claim, if Allowed, whether a claim under Class 5 Claim or another Class under the Plan, e.g., Class 8 Subordinated Claim.

89.    Because the Plan adequately addresses how any existing or future filed Bauhouse Claims will be treated, the Bauhouse Limited Objection (to the extent not resolved by this clarification or withdrawn) should be overruled.

B.    **Debtors' Limited Objection**

90.    The Debtors' filed a limited objection to the Debtor Release and a request

---

*LLC, As Modified and Supplemented* [Docket No. 354] ("**Bauhouse Objection**").
[83]    Nothing herein is an acknowledgement by the Plan Proponents that the asserted Development Agreement is an Executory Contract and all rights are reserved.

for the Bankruptcy Court's jurisdiction over the Sutton Owner NY Case for the limited purpose of resolving Debtors' counsel's fee applications.[84]

91.    First, the Debtors' request that the Debtor Release carve out claims against Herrick Feinstein, LLP ("**Herrick**") for legal malpractice arising out of Herrick's representation of the Debtors.    In support of this request the Debtors' point to the language of the Debtor Release and the definition of Released Party, which includes the "Creditors' Committee in their capacity as such and the Lender and all of their respective Related Persons."[85]    The Debtors argue that the definition of "Related Persons" in the Plan covers attorneys, suggesting that Herrick could be covered under the release.

92.    The Debtors' Limited Objection is misplaced.    Herrick is not a "Related Person" *of the Creditors' Committee or Lender*.    To the contrary, as the Debtors well know, Herrick was *the Debtors'* former counsel.    Instead of releasing any claims against any of the Debtors' professionals, the Plan already expressly retains such claims.[86]    Thus, the Plan already excluded any of the *Debtors' professionals* – who are the Debtors' Related Persons – from being Released Parties.[87]

93.    Second, the Debtors' request that in connection with dismissal of the Sutton Owner NY Chapter 11 Case, the Court retain jurisdiction for the limited purposes awarding fees to professionals retained by Sutton Owner NY.    Nothing in the Plan precludes the

---

[84]    *See Limited Objection and Reservation of Rights of the Debtors to the Joint Chapter 11 Plan of Liquidation Filed by the Official Committee of Unsecured Creditors and Sutton 58 Associates LLC, As Modified and Supplemented* [Docket No. 356] ("**Debtors Limited Objection**").
[85]    See Plan, Sections 1.101 & 9.06 (emphasis added).
[86]    Section 1.101 of the Plan, which defines Released Parties, explicitly states: "For the Avoidance of doubt, neither the debtors *nor any Related Person relative to the Debtors* is a Released Party or otherwise entitled to any of the releases and exculpations under the Plan." (emphasis added).
[87]    Unrelated to the release section, the Plan Proponents are clarifying in the Plan that the preservation of Causes of Action include any Claims and Causes of Action against the Debtors' professionals and advisors, including, without limitation, any alleged claims against Herrick.

ability of the Court to review any Professional Fee Claims, including as relates to Sutton Owner NY, subject to the right of all parties-in-interest to object to such claims.   Nonetheless, as a clarification, the proposed confirmation order will expressly provide for this retention of jurisdiction.

94.    In sum, the Debtors Limited Objection is not an impediment to confirmation and to the extent not resolved by this clarification or withdrawn, should be overruled.

## <u>CONCLUSION</u>

For the reasons set forth herein, the Plan Proponents submit that the Plan satisfies fully all

applicable requirements of the Bankruptcy Code and therefore respectfully request that the Court

confirm the Plan pursuant to Section 1129 of the Bankruptcy Code.

Dated:    New York, New York
          January 9, 2017

WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN, LLP

By:    _/s/ Thomas A. Draghi_____
       Thomas A. Draghi, Esq.
       1201 RXR Plaza
       Uniondale, New York 11556
       (516) 622-9200
       *Attorneys for the Official Committee of Unsecured*
       *Creditors*

       - and –

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Tel.: (212) 715-9100

By:    _/s/ Adam C. Rogoff_____
       Adam C. Rogoff, Esq.
       P. Bradley O'Neill, Esq.
       Natan M. Hamerman, Esq.
       *Attorneys for Sutton 58 Associates LLC*