UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

BH SUTTON MEZZ LLC, a Delaware Limited
Liability Company,                                              Chapter 11

SUTTON 58 OWNER, LLC, a Delaware Limited          Case No.:  16-10455 (SHL)
Liability Company, and                                          (Jointly Administered)

SUTTON 58 OWNER, LLC, a New York Limited
Liability Company,

                                        Debtors.
-------------------------------------------------------------X

**ORDER CONFIRMING  JOINT CHAPTER 11 PLAN OF LIQUIDATION FILED BY
OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND SUTTON 58
ASSOCIATES LLC, AS MODIFIED AND SUPPLEMENTED**

The Official Committee of Unsecured Creditors (the "Committee") and Sutton 58

Associates, LLC ("Lender" and together with the Committee, the "Plan Proponents"), each as a

"proponent of the plan" under section 1129 of title 11 of the United States Code (the "Bankruptcy

Code"), having:

a.      filed with this Court the Joint Plan of Liquidation dated November 14,
        2016, as modified on November 22, 2016, and as supplemented on
        December 5, 2016 [Docket No. 334, Exhibit 1] (as subsequently modified,
        the "Creditors' Plan" or "Plan")[1] in accordance with  section 1121 of the
        Bankruptcy Code; and

b.      filed with this Court the Disclosure Statement for the Joint Plan of
        Liquidation dated November 14, 2016, as modified on November 22,
        2016, and as supplemented on December 5, 2016 [Docket No. 334,
        Exhibit 3] (the "Disclosure Statement")[2]

---

[1]      Except as otherwise noted, capitalized terms used but not defined in this Order shall have the meanings
ascribed to such terms in the Plan.
[2]      Additionally, the Plan and Disclosure Statement include a technical amendment made on December 8,
2016 [Docket No. 334].  The Plan Proponents filed a further revised version of the Plan on January 9, 2017 [Docket
No. 358] to reflect certain non-material, technical modifications to the Plan.

The United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") having:

c.      entered the *Order (A) Approving the Creditors' Disclosure Statement, Filed by the Official Committee of Unsecured Creditors and Sutton 58 Associates LLC, (B) Scheduling Hearing on Confirmation of Creditors' Plan, and Approving Notice Procedures, (C) Establishing Procedures for Solicitation and Tabulation of Ballots; and (D) Granting Related Relief* [Docket No. 333] (the "Disclosure Statement Order"), which, among other things, (i) approved the Disclosure Statement under section 1125 of the Bankruptcy Code and Rule 3017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (ii) established January 11, 2017 as the date for the commencement of the hearing to consider confirmation of the Plan (the "Confirmation Hearing"), (iii) approved the form and manner of notice of the Confirmation Hearing, (iv) established certain procedures for soliciting and tabulating votes with respect to the Plan and (v) established January 4, 2017 at 5:00 p.m. (ET) as the deadline for objections to confirmation of the Plan (the "Confirmation Objection Deadline") and January 2, 2017 at 5:00 p.m. (ET) as the Voting Deadline;

The Plan Proponents (either individually or collectively) having:

a.      timely and properly:

(i)     solicited votes on the Plan and provided Solicitation Packages to Holders of Claims and Interests; and

(ii)    provided due and proper notice of the Confirmation Hearing, the Confirmation Objection Deadline and the Voting Deadline to Holders of Claims against, and Interests in, the Debtors and other parties in interest, in each case, in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules") and the Disclosure Statement Order, as established by the Affidavit of Service of Andrea Chouprouta filed on December 12, 2016 [Docket No. 338] (the "Solicitation Materials Affidavit of Service");

b.      on December 13, 2016, filed the *Notice of Auction Sale Results* [Docket No. 339] (the "Auction Results Notice");

c.      on December 16, 2016, filed the *Notice of Filing of Credit Bid Agreement (Successful Bid)* [Docket No. 341] (the "Credit Bid Agreement Notice"), including Exhibit B to the Credit Bid Agreement, which is a list of Executory Contracts designated for assumption (the "List of Contracts");

d.      on December 21, 2016, filed the Notice of Supplement to Disclosure Statement Filed by the Official Committee of Unsecured Creditors and Sutton 58 Associates LLC- Distribution Analysis [Docket No. 345] (the "Distribution Analysis");

e.      on December 23, 2016, filed the *Notice of Supplement to Disclosure Statement Filed by the Official Committee of Unsecured Creditors and Sutton 58 Associates LLC- Wind-Down Officer Agreement* [Docket No. 348] (as the same may be modified from time to time, the "Wind-Down Officer Agreement", and together with the Auction Results Notice, the Credit Bid Agreement Notice, and the Distribution Analysis, the "Plan Supplement");

f.      on January 4, 2017, filed the *Summary and Certification of Chapter 11 Plan Acceptances* [Docket No. 353] (the "Certification of Ballots"), setting forth the tabulation of votes with respect to acceptances and rejections of the Plan;

g.      received certain limited objections to Confirmation of the Plan [Docket Nos. 354, 356] (the "Objections");

h.      agreed that, in the event that the Effective Date under the Plan occurs prior to the Sale Date, Lender's consent and the authority for use of Cash Collateral under the Cash Collateral Stipulation shall continue through the Sale Date and, accordingly, that the Termination Date (as defined in the Cash Collateral Stipulation) under the Cash Collateral Stipulation shall occur upon the earlier of the following:  (i) the Sale Date, (ii) five days after notice is delivered by the Lender to the Wind-Down Officer identifying a violation of any of the Covenants (as defined in the Cash Collateral Stipulation) and which violation has not been cured within such five day period, and (iii) any use of Cash Collateral other than as expressly provided for in the Budget (as defined in the Cash Collateral Stipulation);

i.      filed:

    (i)    the *Memorandum of Law in Support of Confirmation of the Joint Plan of Liquidation Filed by Official Committee of Unsecured Creditors and Sutton 58 Associates LLC, as Modified and Supplemented and In Response to Certain Limited Objections* [Docket No. 360] (the "Confirmation Brief"); and

    (ii)    the *Declaration of Jonathan Kalikow in support of Confirmation of the Joint Plan of Liquidation Filed by Official Committee of Unsecured Creditors and Sutton 58 Associates LLC, as Modified and Supplemented* [Docket No. 359] (the "Kalikow Declaration");

The Bankruptcy Court having:

KL2 2988586.9

j.      found that due and proper notice has been given with respect to the Confirmation Hearing and the deadlines and procedures for filing objections to the Plan and voting on the Plan, and that no further notice is required;

k.      familiarity with the Plan and other relevant factors affecting the Chapter 11 Cases;

l.      familiarity with, and having taken judicial notice of, the entire record of the Chapter 11 Cases;

m.      conducted the Confirmation Hearing on January 11, 2017;

n.      considered the entire record of the Confirmation Hearing, including, but not limited to:

    (i)      the Kalikow Declaration, which was admitted into evidence at the Confirmation Hearing;

    (ii)      the exhibits admitted into evidence at the Confirmation Hearing;

    (iii)      the arguments of counsel presented at the Confirmation Hearing;

    (iv)      the Objections; and

    (v)      the pleadings filed by the Committee and Lender in support of the Plan;

o.      overruled any and all objections to the Plan and to Confirmation not consensually resolved or withdrawn, including, but not limited to, the Objections, unless otherwise indicated herein;

p.      found the legal and factual bases set forth in the pleadings, documents, testimony and evidence filed or adduced in support of confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and

after due deliberation and good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND, DETERMINED AND CONCLUDED, based on the record of the case and the representations of the Plan Proponents, that:**

A.      <u>Findings of Fact and Conclusions of Law.</u>  The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy

- 4 -

Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law,

they are adopted as such.  To the extent any of the following conclusions of law constitute

findings of fact, they are adopted as such.

      B.      <u>Jurisdiction and Venue</u>.  The Bankruptcy Court has jurisdiction over these

Chapter 11 Cases pursuant to 28 U.S.C. §§ 157(a) and 1334(a). Venue is proper pursuant to 28

U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2), and this Court has exclusive jurisdiction to determine whether the Plan complies

with the applicable provisions of the Bankruptcy Code and should be confirmed and to enter a

final order with respect thereto.

      C.      <u>Eligibility for Relief.</u>  The Debtors[3] qualify as "debtors" under section 109

of the Bankruptcy Code, and the Committee and Lender are proper proponents of the Plan.

      D.      <u>Commencement and Joint Administration of the Chapter 11 Cases.</u>  The

Debtors commenced their Chapter 11 Cases, as applicable, on February 26, 2016, April 6, 2016

and July 12, 2016, respectively, and have authority to operate their businesses and manage their

properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  No trustee or examiner has been appointed in the Chapter 11 Cases pursuant to

section 1104 of the Bankruptcy Code.  In accordance with certain orders of this Court, the

Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

      E.      <u>Appointment of Statutory Committee.</u>  On March 23, 2016, as amended on

May 3, 2016, the United States Trustee for the Southern District of New York (the "<u>U.S.</u>

<u>Trustee</u>"), pursuant to sections 1102(a) and (b) of the Bankruptcy Code, appointed certain

unsecured creditors to the Committee to represent the interests of all unsecured creditors in these

---

[3] As provided for below, Debtor Sutton 58 Owner, LLC, a Delaware Limited Liability Company, is the successor by merger to Debtor Sutton 58 Owner, LLC, a New York Limited Liability Company.

Chapter 11 Cases.  The Committee currently consists of the following four members: (i)

Pembrooke & Ives Luxurious Interiors LLC, (ii) Desimone Consulting Engineering Group LLC,

(iii) S.M. Berger Architecture P.C, and (iv) Adam Hakim.

      F.     Judicial Notice.  The Bankruptcy Court takes judicial notice of the docket

of the Chapter 11 Cases maintained by the Clerk of the Bankruptcy Court or its duly appointed

agent, including, but not limited to, all pleadings and other documents filed, all orders entered,

and all evidence and arguments made, proffered, adduced, and/or presented at the various

hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases.

      G.     Solicitation and Notice.  As evidenced by the Affidavits of Service, the

Solicitation Packages were transmitted and served in accordance with the terms of the Disclosure

Statement Order.  Under the circumstances of the Chapter 11 Cases, such service of the

Solicitation Packages, together with the other notices delivered pursuant to the terms of the

Disclosure Statement Order, were (i) conducted in good faith, (ii) provided all parties in interest

adequate and sufficient notice of the Confirmation Hearing and the other requirements, deadlines

and matters  related to Confirmation of the Plan, (iii) timely and properly served or published in

compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and

the Disclosure Statement Order and (iv) provided due process and an opportunity to appear and

to be heard to all parties in interest.  Because the foregoing transmittals, notices, and service

were adequate and sufficient, no other or further notice is necessary or shall be required.

      H.     Voting.  As evidenced by the Certification of Ballots, votes on the Plan

were solicited and tabulated fairly, in good faith and in a manner consistent with the Bankruptcy

Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Disclosure Statement Order.

As set forth in the Certification of Ballots, the following Classes of Claims voted to accept the

- 6 -

Plan:  Class 2 (Cash Collateral Stipulation), Class 3 (Secured Acquisition Loan and Building

Loan Claims), Class 4 (Other Secured Claims), Class 5 (Unsecured Claims against Sutton Owner

DE), and Class 6 (Sutton Mezz Loan Claim).

I.      Burden of Proof.  The Plan Proponents have the burden of proving all

elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the

evidence, and the Plan Proponents have met that evidentiary burden to satisfy this applicable

standard.  Each witness who testified on behalf of the Plan Proponents at or in connection with

the Confirmation Hearing was credible, reliable and qualified to testify as to the topics addressed

in his testimony.

J.      Plan Supplement.  The filing and notice of the Plan Supplement was

proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local

Bankruptcy Rules and the Disclosure Statement Order, and no other or further notice of the

materials in the Plan Supplement is or shall be required.

K.      Plan Modifications.  Any modifications to the Plan since the

commencement of solicitation and as described in the Confirmation Brief (the "Modifications")

constitute immaterial modifications and/or do not adversely affect or change the treatment of any

Claims or Interests.  Pursuant to section 1127(b) of the Bankruptcy Code and Bankruptcy Rule

3019, the Modifications do not require additional disclosure under section 1125 of the

Bankruptcy Code or the resolicitation of acceptances or rejections of the Plan under section 1126

of the Bankruptcy Code, nor do they require that holders of Claims against the Debtors be

afforded an opportunity to change previously cast acceptances or rejections of the Plan.  The

filing of the Modifications and the disclosure of the Modifications on the record at the

Confirmation Hearing constitute due and sufficient notice thereof under the circumstances of the

Chapter 11 Cases.  Accordingly, the Plan is properly before the Bankruptcy Court, and all votes cast with respect to the Plan prior to the Modifications shall be binding and shall apply with respect to the Plan.

L.    Bankruptcy Rule 3016.  The Plan is dated and identifies the Committee and Lender as the Plan Proponents, thereby satisfying Bankruptcy Rule 3016(a).  The Disclosure Statement and the Plan were filed together under Docket No. 334 in the Chapter 11 Cases, thereby satisfying Bankruptcy Rule 3016(b).  The injunction, release and exculpation provisions in the Disclosure Statement and the Plan describe, in bold font and with specific and conspicuous language, all acts to be enjoined and identify the entities that will be subject to the injunction, thereby satisfying Bankruptcy Rule 3016(c).

M.    Good Faith Solicitation and Section 1125(e) of the Bankruptcy Code.  The Plan Proponents solicited votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Disclosure Statement Order.  Based on the record before the Bankruptcy Court in these Chapter 11 Cases, including, but not limited to, the evidence and testimony proffered, adduced or presented at the Confirmation Hearing, the Plan Proponents and their representatives (as applicable) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules in connection with all of their respective activities relating to the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 9.08 of the Plan.

- 8 -

N.      Conditions Precedent.  Subject to entry of this Order in form and
substance reasonably acceptable to the Plan Proponents, each of the conditions precedent to the
entry of this Order has been satisfied or waived in accordance with Section 5.01 of the Plan.

## COMPLIANCE WITH THE REQUIREMENTS
## OF SECTION 1129 OF THE BANKRUPTCY CODE

O.      The evidentiary record of the Confirmation Hearing supports the findings
of fact and conclusions of law set forth in the following paragraphs.

P.      Section 1129(a)(1) of the Bankruptcy Code.  The Plan complies with each
applicable provision of the Bankruptcy Code.  In particular, the Plan complies with the
requirements of sections 1122 and 1123 of the Bankruptcy Code as follows:

1.      Section 1122 of the Bankruptcy Code.  In accordance with section 1122(a)
of the Bankruptcy Code, Section 2.03 of the Plan classifies each Claim
against and Interest in each of the Debtors into a Class containing only
substantially similar Claims asserted against or Interests in each such
Debtor;

2.      Section 1123(a)(1) of the Bankruptcy Code.  In accordance with
section 1123(a)(1) of the Bankruptcy Code, Section 2.03 of the Plan
properly classifies all Claims and Interests that require classification;

3.      Section 1123(a)(2) of the Bankruptcy Code.  All Classes of Claims and
Interests are Impaired under the Plan.  Accordingly, Section 1123(a)(2) of
the Bankruptcy Code is not applicable in these Chapter 11 Cases;

4.      Section 1123(a)(3) of the Bankruptcy Code.  In accordance with
section 1123(a)(3) of the Bankruptcy Code, Article III of the Plan properly
identifies and describes the treatment of each Class of Claims or Interests
that is Impaired under the Plan;

5.      Section 1123(a)(4) of the Bankruptcy Code.  In accordance with
section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same
treatment for each Claim or Interest of a particular Class pertaining to each
Debtor unless the holder of such a Claim or Interest has agreed to less
favorable treatment;

6.      Section 1123(a)(5) of the Bankruptcy Code.  In accordance with
section 1123(a)(5) of the Bankruptcy Code, the Plan and the documents in

the Plan Supplement provide adequate and proper means for the implementation of the Plan;

7.    <u>Section 1123(a)(6) of the Bankruptcy Code.</u>  The Plan is a liquidating plan and does not provide for the issuance of equity or other securities by the Debtors.  Accordingly, Section 1123(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases;

8.    <u>Section 1123(a)(7) of the Bankruptcy Code.</u>  In accordance with section 1123(a)(7) of the Bankruptcy Code, the provisions of the Plan with respect to the manner of selection of the Wind-Down Officer, including, without limitation, the provisions of Section 6.06 of the Plan, are consistent with the interests of creditors and equity security holders and with public policy;

9.    <u>Section 1123(b)(1) of the Bankruptcy Code.</u>  In accordance with section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan impairs each Class of Claims and Interests;

10.   <u>Section 1123(b)(2) of the Bankruptcy Code.</u>  In accordance with section 1123(b)(2) of the Bankruptcy Code, Section 8.01 and other provisions of the Plan provide for the assumption and assignment or rejection of the Executory Contracts of the Debtors that have not been previously assumed, assumed and assigned or rejected pursuant to section 365 of the Bankruptcy Code and orders of the Bankruptcy Court;

11.   <u>Section 1123(b)(3) of the Bankruptcy Code.</u>  In accordance with section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, Section 9.03 of the Plan provides for the compromise and settlement of Claims belonging to the Debtors and the Estates, including pursuant to the Debtor Release;

12.   <u>Section 1123(b)(4) of the Bankruptcy Code.</u>  In accordance with section 1123(b)(4) of the Bankruptcy Code, Section 6.03 of the Plan provides for the Sale of substantially all of the property of the Estates, and the distribution of the proceeds of such Sale among the holders of Claims or Interests;

13.   <u>Section 1123(b)(5) of the Bankruptcy Code.</u>  In accordance with section 1123(b)(5) of the Bankruptcy Code, Article III of the Plan modifies the rights of holders of Claims in each Class;

14.   <u>Section 1123(b)(6) of the Bankruptcy Code.</u>  In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code, including, without limitation, provisions (a) for distributions on account of Allowed Claims, (b) establishing procedures for resolving Disputed Claims and making distributions on account of

such Disputed Claims once resolved, (c) regarding the release and injunction against the pursuit of Claims and termination of Interests, and (d) regarding the retention of the Bankruptcy Court's jurisdiction; and

15.     Section 1123(d) of the Bankruptcy Code.  In accordance with section 1123(d) of the Bankruptcy Code, Section 8.01 of the Plan provides for cure of defaults associated with each Executory Contract to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code.  All Claims relating to cure amounts will be determined in accordance with the Plan and the underlying agreements and applicable law.

Q.     Section 1129(a)(2) of the Bankruptcy Code.  The Plan Proponents have complied with all applicable provisions of the Bankruptcy Code except as otherwise provided or permitted by order of the Bankruptcy Court, with respect to the Plan and the solicitation of acceptances or rejections thereof.  In particular, the Plan complies with the requirements of sections 1125 and 1126 of the Bankruptcy Code as follows:

1.     In compliance with the Disclosure Statement Order, the Plan Proponents caused copies of the following materials to be transmitted to all holders of Claims and Interests in Classes that were entitled to vote to accept or reject the Plan (*i.e.*, Allowed Claims and Interests in Classes 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10):

- *Notice of (I) Approval of the Disclosure Statement Filed by the Official Committee of Unsecured Creditors and Sutton 58 Associate LLC; (II) Hearing on Confirmation of the Creditors' Plan and Procedures for Objecting Thereto; (III) Procedures and Deadline for Voting on the Creditors' Plan; and (IV) Related Relief* (the "Solicitation Notice");

- the Plan;

- the Disclosure Statement;

- the Disclosure Statement Order; and

- a Ballot for accepting or rejecting the Plan (the "Ballot", collectively with the materials described in the preceding bullets, the "Solicitation Package").

*See* Solicitation Materials Affidavit of Service.

KL2 2988586.9

2.      In compliance with the Disclosure Statement Order, the Plan Proponents caused copies of the Solicitation Package to be transmitted to all parties in interest, including the Debtors, the U.S. Trustee, all holders of equity interests, all persons who have filed proofs of claim in the Debtors' cases, all persons who have requested notice in the Debtors' cases pursuant to Rule 2002 of the Bankruptcy Rules, the Internal Revenue Service, the Securities and Exchange Commission, any entity that has filed with the Court a notice of transfer of a claim under Bankruptcy Rule 3001(e) on or prior to December 6, 2016 (the "Record Date"), all persons or entities listed in the Debtors' schedules, and all other known creditors of the Debtors (collectively, the "Notice Parties"). *See* Solicitation Materials Affidavit of Service.

3.      On December 13, 2016, the Plan Proponents filed the Auction Results Notice and caused such Notice to be served upon the Notice Parties. *See* Affidavit of Service re: Auction Results, filed on December 14, 2016 [Docket No. 340].

4.      On December 16, 2016, the Plan Proponents filed the Credit Bid Agreement Notice and caused such Notice to be served upon the Notice Parties. *See* Affidavit of Service re: Credit Bid Agreement, filed on December 19, 2016 [Docket No. 342].

5.      On December 21, 2016, the Plan Proponents filed the Distribution Analysis and caused such Distribution Analysis to be served upon the Notice Parties. *See* Affidavit of Service re: Distribution Analysis, filed on December 21, 2016 [Docket No. 347].

6.      On December 23, 2016, the Plan Proponents filed the Wind-Down Officer Agreement and caused such Agreement to be served upon the Notice Parties. *See* Affidavit of Service re: Wind-Down Officer Agreement, filed on December 23, 2016 [Docket No. 348].

7.      All persons entitled to receive notice of the Disclosure Statement, the Plan and the Confirmation Hearing have received proper, timely and adequate notice in accordance with the Disclosure Statement Order, applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and have had an opportunity to appear and be heard with respect thereto.

8.      The Plan was voted on by the Classes of Impaired Claims that were entitled to vote pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the Disclosure Statement Order (*i.e.*, Classes 1, 2, 3, 4, 5, 6, 7, 8, 9 and 10).

9.      In compliance with the Disclosure Statement Order, on January 4, 2017, Committee Counsel filed the Certification of Ballots.

R.    <u>Section 1129(a)(3) of the Bankruptcy Code.</u>  The Plan has been proposed in good faith and not by any means forbidden by law.  The Plan fairly achieves a result consistent with the objectives and purposes of the Bankruptcy Code.  In so finding, the Bankruptcy Court has considered the totality of the circumstances in these Chapter 11 Cases.

S.    <u>Section 1129(a)(4) of the Bankruptcy Code.</u>  To the extent applicable, all payments made or to be made by the Debtors or the Plan Proponents for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to approval by, the Bankruptcy Court, as provided in Section 3.04 of the Plan.

T.    <u>Section 1129(a)(5) of the Bankruptcy Code.</u>  The Plan Proponents have disclosed the identity of Esther DuVal as the Wind-Down Officer as of the Effective Date of the Plan.

U.    <u>Section 1129(a)(6) of the Bankruptcy Code.</u>  Section 1129(a)(6) of the Bankruptcy Code is not applicable.  The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency.

V.    <u>Section 1129(a)(7) of the Bankruptcy Code.</u>    The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis included in the Disclosure Statement, as supplemented by the Distribution Analysis and the other evidence proffered or adduced at the Confirmation Hearing establish that each holder of an impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

- 13 -

W.    Section 1129(a)(8) of the Bankruptcy Code.    The requirements of section 1129(a)(8) of the Bankruptcy Code are satisfied with respect to Classes 2, 3, 4, 5 and 6, which are impaired by the Plan and have voted to accept the Plan.    Because Classes 1, 7, 8, 9 and 10 are impaired and will receive no distribution and retain no property under the Plan, they are deemed to have rejected the Plan.    Notwithstanding that Bankruptcy Code section 1129(a)(8) has not been satisfied with respect to all Classes, pursuant to Bankruptcy Code section 1129(b), the Plan may be confirmed over the nonacceptance of Classes 1, 7, 8, 9 and 10.

X.    Section 1129(a)(9) of the Bankruptcy Code.    The Plan provides treatment for Administrative Claims, Priority Tax Claims and Priority Claims that are consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code.

Y.    Section 1129(a)(10) of the Bankruptcy Code.    Section 1129(a)(10) of the Bankruptcy Code has been satisfied because Classes 2, 3, 4, 5 and 6 are impaired and have voted to accept the Plan, determined without including any acceptance of the Plan by an insider.

Z.    Section 1129(a)(11) of the Bankruptcy Code.    The Plan calls for liquidation of the Debtors. Confirmation of the Plan is not likely to be followed by the need for further financial reorganization of the Debtors, thereby satisfying Bankruptcy Code section 1129(a)(11).

AA.    Section 1129(a)(12) of the Bankruptcy Code.    All fees due and payable under 28 U.S.C. § 1930 on or before the Effective Date, as determined by the Court, have been paid or will be paid on or as soon as reasonably practicable after the Effective Date pursuant to Section 3.02 of the Plan, thus satisfying the requirements of Bankruptcy Code section 1129(a)(12).

BB.    Section 1129(a)(13) of the Bankruptcy Code.    The Debtors have no obligations to pay retiree benefits (as defined in section 1114(a) of the Bankruptcy Code).

KL2 2988586.9

Accordingly, the requirements of section 1129(a)(13) of the Bankruptcy Code are not applicable in these Chapter 11 Cases.

CC.    <u>Section 1129(a)(14), (15) and (16) of the Bankruptcy Code.</u> Sections 1129(a)(14), (15) and (16) of the Bankruptcy Code are not applicable to the Debtors' Chapter 11 Cases.

DD.    <u>Section 1129(b) of the Bankruptcy Code.</u>  Although Classes 1, 7, 8, 9 and 10 are deemed to have rejected the Plan for  purposes of section 1129(a)(8) of the Bankruptcy Code, the Plan is confirmable pursuant to section 1129(b) of the Bankruptcy Code notwithstanding such rejection because, based upon the record before the Bankruptcy Court and the treatment provided to such Claims and Interests, the Plan does not discriminate unfairly against, and is fair and equitable with respect to, such Classes of Claims and Interests in such Classes, and the Plan satisfies all the requirements for confirmation set forth in section 1129(a) of the Bankruptcy Code, except section 1129(a)(8) of the Bankruptcy Code.  The evidence in support of confirmation of the Plan proffered or adduced by the Plan Proponents at, or prior to, or in declarations filed in connection with, the Confirmation Hearing regarding the Plan Proponents' classification and treatment of Claims and Interests and the requirements for confirmation of the Plan under section 1129(b) of the Bankruptcy Code:  (1) is reasonable, persuasive, credible, and accurate; (2) utilizes reasonable and appropriate methodologies and assumptions; and (3) has not been controverted by other credible evidence.

EE.    <u>Section 1129(c) of the Bankruptcy Code.</u>  The Plan is the only plan for which votes have been solicited in these Chapter 11 Cases.  The Debtors filed a separate plan (as amended, the "<u>Debtor Plan</u>") on August 10, 2016, but withdrew the Debtor Plan and corresponding disclosure statement in a letter to the Court dated December 2, 2016 [Docket No. 321].

KL2 2988586.9

Accordingly, the requirements of section 1129(c) of the Bankruptcy Code are not applicable in these Chapter 11 Cases.

FF.    <u>Section 1129(d) of the Bankruptcy Code.</u>    The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of the application of section 5 of the Securities Act of 1933.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

GG.    <u>Section 1129(e) of the Bankruptcy Code.</u>    None of the Chapter 11 Cases are small business cases within the meaning of the Bankruptcy Code.  Accordingly, section 1129(e) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

HH.    <u>Satisfaction of Confirmation Requirements.</u>    Based upon the foregoing, and all other pleadings and evidence proffered or adduced at or prior to the Confirmation Hearing, the Plan and the Plan Proponents satisfy all of the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

II.    <u>Objections</u>.    All parties have had a full and fair opportunity to litigate all issues raised in the Objections, or which might have been raised, and the Objections have been fully considered by the Bankruptcy Court.

## FINDINGS REGARDING IMPLEMENTATION OF THE PLAN

A.    <u>Sale of the Assets</u>.    In accordance with the Bankruptcy Court's Order dated November 21, 2016 [Docket No. 301] (the "<u>Sale Procedures Order</u>"), on December 13, 2016, the Debtors conducted an Auction of the Assets.  Due and proper notice of the Auction was provided in accordance with the Sale Procedures Order, and the Auction was conducted in accordance with the Terms and Conditions of Sale annexed to the Sale Procedures Order.

B.    <u>Highest and Best Bid</u>.    The Credit Bid Agreement to which Lender is a party constitutes the highest and best bid received by the Debtors for the Assets.  The Credit Bid

KL2 2988586.9

Agreement and each of the transactions contemplated therein were negotiated, proposed and

entered into by the Debtors and the Lender in good faith, without collusion and from arm's-

length bargaining positions. The consideration to be paid by Lender under the Credit Bid

Agreement constitutes fair value for the Assets, and the Sale of the Assets to Lender (or its

Assignee (as defined in the Credit Bid Agreement)) is a reasonable exercise of the Debtors'

business judgment.

    C. <u>Good Faith Purchaser; No Collusion</u>.  Lender (or its Assignee) is a "good

faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is

hereby granted all the protections afforded thereby.  The consideration provided by the Lender

(or its Assignee) for the Assets shall be deemed for all purposes to constitute reasonably

equivalent value and fair consideration under the Bankruptcy Code and any other applicable law,

and the Sale may not be avoided, or costs or damages imposed or awarded under Bankruptcy

Code section 363(n) or any other provision of the Bankruptcy Code, the Uniform Fraudulent

Transfer Act, the Uniform Fraudulent Conveyance Act or any other similar federal or state laws.

Lender (or its Assignee) is not an "insider" of the Debtors, as that term is defined in section 101

of the Bankruptcy Code.

    D. <u>Wind Down and Dissolution of the Debtors</u>.  The wind down and

dissolution of the Debtors pursuant to Article VI of the Plan have been proposed in good faith,

and promote the maximization of the value of the ultimate recoveries to all creditor groups on a

fair and equitable basis in accordance with the priorities established by the Bankruptcy Code.

    E. <u>Implementing Documents.</u>  All documents and agreements necessary to

implement the Plan, including, but not limited to, those contained in the Plan Supplement, and all

other relevant and necessary documents  (including, but not limited to, the Credit Bid Agreement

and all documents and instruments delivered pursuant thereto) are essential elements of the Plan

and have been negotiated in good faith and at arm's-length, and entry into and consummation of

the transactions contemplated by each such document and agreement is in the best interests of

the Debtors, their Estates, and the holders of Claims and Interests and shall, upon completion of

documentation and execution, be valid, binding, and enforceable agreements and not be in

conflict with any federal, state or local law.  The Plan Proponents have provided sufficient and

adequate notice of such documents and agreements.  The Debtors are authorized and directed,

and the Plan Proponents and Wind-Down Officer are authorized, in each case without any

further notice to, or action, order or approval of, the Bankruptcy Court, to finalize, execute and

deliver all agreements, documents, instruments and certificates relating to the Plan and to

perform their obligations under such agreements, documents, instruments and certificates.

       F.      <u>Treatment of Lender's Claims</u>.  Pursuant to the Plan and Sale

Confirmation Order, Lender (or its Assignee) is the Purchaser of the Assets.  Pursuant to the Plan

and the Credit Bid Agreement, on the Sale Date, the Lender (or its Assignee) shall receive all of

the Debtors' right, title and interest in and to the Assets free and clear of all Liens, claims,

charges, encumbrances or interests of any kind or nature (except as expressly discussed below in

this paragraph with respect to the Lender's right to have the Purchaser assume one or more of the

mortgages relating to the Assets).  Pursuant to the Plan, Lender has agreed to forego any right to

an additional distribution from Sutton Owner DE under the Plan on account of (1) its Class 3

Acquisition Loan and Building Loan Claims, (2) its Class 5 Lender Deficiency Claim, or (3) its

Class 2 Claim under the Cash Collateral Stipulation for any Secured Claim, Priority Claim,

Administrative Expense Claim or other Claim of the Lender as provided for under such Cash

Collateral Stipulation; provided, however, that nothing in the Plan has impaired in any respect

(x) the Lender's (or its Assignee's) rights to have included such Claims as part of its Credit Bid, or (y) any Claim or Cause of Action that the Lender has or may have against any other Entity relating to or arising in connection with any such Lender Deficiency Claim or other Claims, or any right of the Lender to pursue such Claims and Causes of Action, all of which shall survive the confirmation and effectiveness of the Plan.  For the avoidance of doubt, (i) Lender will not receive any distributions from the Lender Contribution, and (ii) nothing in the Plan or this Order will impair Lender's Claims in any other Class.  Notwithstanding anything otherwise contained in this Order, in the event that an Assignee acquires the Assets in accordance with the Credit Bid Agreement, then the Lender shall have the right (but not the obligation) to elect in its sole and absolute discretion, the following: (a) (i) one or more of the existing mortgages held by the Lender in respect of the Acquisition Loan and the Building Loan that encumber the Real Property (collectively, the "Existing Mortgages") will not be extinguished in connection with the Sale of the Assets and the effectuation of the Plan, (ii)  the Sale of the Assets to  such Assignee as Purchaser will be subject to such of the Existing Mortgages as shall be identified by the Lender and (iii) upon the occurrence of the Closing (as defined in the Credit Bid Agreement) such Existing Mortgage(s) identified by the Lender will remain in effect and encumber the Real Property, and (b) the matters described in clause (a) shall not affect any Claim or Cause of Action that the Lender has or may have against any other Entity relating to or arising in connection with any Lender Deficiency Claim or other Claims, or any right of the Lender to pursue such Claims and Causes of Action.

G.    Executory Contracts.  Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Sale Date, Section 8.01 of the Plan provides for the assumption and assignment or rejection of certain Executory Contracts.  Determinations

KL2 2988586.9

regarding the assumption and assignment or rejection of Executory Contracts are based on sound business judgment, are necessary to the implementation of the Plan and are in the best interests of the Estates, holders of Claims and other parties in interest in the Chapter 11 Cases.  Exhibit B to the Credit Bid Agreement (filed with the *Notice of Filing of Credit Bid Agreement (Successful Bid)* [Docket No. 341]) identifies Executory Contracts designated for assumption and assignment, and the Plan Proponents have provided notice to the affected counterparties of determinations regarding the assumption and assignment of Executory Contracts.

       H.     <u>Settlement and Releases</u>.  Pursuant to section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits under the Plan being provided by Released Parties, the provisions of the Plan, including the releases and other provisions set forth in Sections 9.06, 9.07 and 9.08 of the Plan, constitute a consensual good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Claim or Interest or any distribution to be made pursuant to the Plan on account of any Allowed Claim or Interest.

       Accordingly, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

**A.**     **Confirmation of Plan**

       1.     The Plan and each of its provisions, the Plan Supplement and any related document (whether or not specifically approved or referred to herein) are CONFIRMED in their entirety in each and every respect, pursuant to section 1129 of the Bankruptcy Code.  To the extent there is any direct conflict between the terms of the Plan or any document in the Plan Supplement and the terms of this Order, the terms of this Order shall control solely to the extent of the conflict.  The terms of the Plan, the Plan Supplement and the exhibits thereto are incorporated herein by reference, and are an integral part of this Order.  The terms of the Plan,

the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents shall be

effective and binding as of the Effective Date.

2.    Any objections or responses to Confirmation of the Plan and any

reservation of rights contained therein that (a) have not been withdrawn, waived or settled prior

to the entry of this Order or (b) are not cured by the relief granted herein are hereby

OVERRULED in their entirety and on their merits, and all withdrawn objections or responses

are hereby deemed withdrawn with prejudice.

3.    The Effective Date of the Plan shall occur on the date determined by the

Plan Proponents when the conditions set forth in Section 5.02 of the Plan have been satisfied or,

if applicable, have been waived in accordance with Section 5.03 of the Plan.

**B.    Plan Classifications Controlling**

4.    The classification of Claims and Interests for purposes of distributions

made under the Plan shall be governed solely by the terms of the Plan. The classifications set

forth on the Ballots tendered to or returned by Creditors in connection with voting on the Plan:

(a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; and (b)

do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the

actual classification of such Claims under the Plan for distribution purposes.

**C.    Plan Implementation**

5.    The Plan Proponents, the Debtors, the Wind-Down Officer, their

respective members, directors, officers, representatives and agents are hereby authorized to enter

into, execute, deliver, file and/or implement any documents and instruments substantially

consistent with or incidental to the Plan (including, without limitation, the Credit Bid Agreement

and any and all documents and instruments delivered pursuant thereto or in connection

therewith), and any amendments, supplements or modifications thereto as may be appropriate,

- 21 -

and to take such other steps and perform such other acts as may be necessary, useful or appropriate to implement and effectuate the Plan and all other related instruments and documents and this Confirmation Order, and to satisfy all other conditions precedent to the implementation and effectiveness of the Plan. The Wind-Down Officer is hereby authorized to make distributions and other payments in accordance with the Plan and the Wind-Down Officer Agreement.  The Cash Collateral Stipulation is hereby amended to extend the Lender's consent and the authority for use of Cash Collateral under the Cash Collateral Stipulation in accordance with the terms of Lender's consent set forth in the Plan Proponents' recitals recited above, such that, pursuant to the Lender's agreement, the consent and authority continues through the Sale Date and, accordingly, that the Termination Date under the Cash Collateral Stipulation shall occur upon the earlier of the following:  (i) the Sale Date; (ii) five days after notice is delivered by the Lender to the Wind-Down Officer identifying a violation of any of the Covenants and which violation has not been cured within such five day period, and (iii) any use of Cash Collateral other than as expressly provided for in the Budget.

D.     **Approval of Sale of Assets**

6.     The Credit Bid Agreement, all transactions contemplated therein and all of the terms and conditions thereof are approved.  The Debtors and their officers, employees and agents, and, as applicable, the Wind-Down Officer, are authorized and directed to execute and deliver, and to perform under, consummate and implement, the Credit Bid Agreement pursuant to the Plan and all transactions pursuant thereto, together with all additional instruments and documents that may be necessary or desirable to implement the Credit Bid Agreement pursuant to the Plan and to take all further actions as may be reasonably (a) requested by Lender (or its Assignee) for the purpose of assigning, transferring, granting, conveying and conferring to Lender (or its Assignee), or reducing to possession, the Assets free and clear of all Liens, claims,

- 22 -

charges, encumbrances or interests of any kind or nature (except as expressly discussed above

with respect to the Lender's right to have the Purchaser assume one or more of the mortgages

relating to the Assets), or (b) necessary or appropriate to the performance of the obligations

contemplated by the Credit Bid Agreement, all without further order of the Court.  In furtherance

of the Sale, the Lender (or its Assignee) shall be authorized to file for recordation or other

purposes deemed necessary or appropriate by the Lender (or its Assignee) a short-form of order

of the Bankruptcy Court, substantially in the form annexed hereto as **Exhibit 1** (the "Short-Form

Sale Order"), to evidence the Sale of Assets.  Each and every federal, state and local government

agency or department is hereby directed to accept any and all documents and instruments

necessary and appropriate to consummate the Sale of the Assets discussed herein and a copy of

this Order and/or the Short-Form Sale Order may be filed or recorded in any place where state,

federal or local law permits filing or recording, including in the records of the County where the

Real Property is located.

**E.        Transfer of Assets Free and Clear**

7.        On the Sale Date, the Assets shall be transferred to Lender (or its

Assignee), and such transfer shall (a) be legal, valid and effective; (b) vest Lender (or its

Assignee) with all right, title and interest of the Debtors in and to the Assets; and (c) be free and

clear of all Liens, claims, charges, encumbrances or interests of any kind or nature (except as

expressly discussed above with respect to the Lender's right to have the Purchaser assume one or

more of the mortgages relating to the Assets), as provided in the Plan, the Credit Bid Agreement

and this Order.

**F.        Exemption from Certain Transfer Taxes**

8.        Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of

property pursuant to the Plan and the making or delivery of an instrument of transfer of property

- 23 -

or otherwise, pursuant to or in connection with the Plan, including the Sale pursuant to the Credit Bid Agreement, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax or governmental assessment in the United States or by any other governmental unit, and the appropriate federal, state or local (domestic or foreign) governmental officials or agents are hereby authorized and directed to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to or in connection with such transfers of property without the payment of any such tax or governmental assessment.  Such exemption specifically applies, without limitation, to (i) the Sale of the Assets to Lender (or its Assignee) and (ii) the sale or other disposition of the Excluded Assets to the extent permitted by applicable law.

**G.      Wind Down of the Debtors**

9.      The Debtors shall continue to exist after the Effective Date for the purposes of making distributions to holders of Allowed Claims under the Plan, and to take any other steps in furtherance thereof or as may be reasonably necessary or appropriate to wind-down their affairs and their Estates, including with respect to liquidating and/or abandoning the Excluded Assets, as appropriate, and filing and prosecuting objections to Claims.  The principal purpose of the Debtors shall be to implement the Plan, including to liquidate, collect and maximize the Cash value of the Assets and the Excluded Assets, and to make distributions on account of Allowed Claims in accordance with the terms of the Plan.

10.      On the Effective Date, all existing officers, directors, managers and members of the Debtors shall be deemed to have resigned and the Wind-Down Officer is hereby deemed appointed to wind up the affairs of the Debtors, as provided in the Plan.

11.      The establishment of the Wind-Down Reserve pursuant to Section 6.05 of the Plan is hereby approved.

- 24 -

H.    **Wind-Down Officer**

12.    The appointment of the Wind-Down Officer pursuant to Section 6.06 of

the Plan is hereby approved. The Wind-Down Officer shall be deemed the sole representative of

the Estates under Section l123(b)(3)(B) of the Bankruptcy Code, and shall have all rights

associated therewith.   Pursuant to the terms of the Wind-Down Officer Agreement, the Wind-

Down Officer shall have all duties, powers, and standing authority necessary to implement the

Plan and to administer and liquidate the assets of the Estates for the benefit of the holders of

Allowed Claims, and shall be entitled to indemnification and exculpation from the Estates as

provided in Section 6.06 of the Plan.

I.    **Dissolution of the Debtors**

13.    Pursuant to Section 6.06 of the Plan, the Wind-Down Officer is hereby

authorized to take all actions reasonably necessary to manage and dissolve the Debtors and their

subsidiaries under applicable laws, including the laws of the jurisdictions in which they may be

organized or registered, notwithstanding any applicable consent requirements or other

restrictions contained in any agreements or other documents to which any Debtor is a party.  In

this regard, the notices of the filing of these Chapter 11 Cases and the Plan to creditors, the

opportunity provided to creditors to file proofs of claims in these Chapter 11 Cases and the

provisions for payments to creditors provided under the Plan shall be deemed to constitute and

effectuate the dissolution and winding-up of the Debtors' business as contemplated under

applicable non-bankruptcy law for dissolved limited liability companies without any further

action or notice by (i) the Debtors or their former or existing members, managers, officers,

directors, representatives or employees, or (ii) the Wind-Down Officer.  All applicable

regulatory or governmental units or agencies shall accept any certificates or other documents

filed by the Wind-Down Officer and shall take all steps necessary or appropriate to allow and

- 25 -

effect the prompt dissolution and/or winding-up of the Debtors as provided in the Plan.  The

Wind-Down Officer is hereby authorized to pay all reasonable costs and expenses in connection

with such dissolutions, including the costs of preparing or filing any necessary paperwork or

documentation.  Whether or not dissolved, the Debtors shall have no authorization to implement

the provisions of the Plan from and after the Effective Date except as specifically provided

otherwise in the Plan.

14.      Without limitation on the foregoing, in light of the withdrawal with

prejudice by the Debtors of any claims in the Adversary Proceeding relating to the effectiveness

of the pre-petition merger between Sutton Owner NY and Sutton Owner DE, Sutton Owner DE

is the successor by merger to Sutton Owner NY, and, accordingly, the Chapter 11 Case of Sutton

Owner NY is hereby dismissed as of the Effective Date.  Pursuant to section 349(b) of the

Bankruptcy Code, the Bankruptcy Court retains jurisdiction to hear and determine all

Professional Fee Claims relating to Sutton Owner NY, subject to the right of all parties in

interest to object to such claims.

**J.      Corporate Action; Effectuating Documents**

15.      Pursuant to Section 6.08 of the Plan, the Wind-Down Officer is hereby

authorized to take any actions and effect transactions, including conversions, dissolutions,

transfers, liquidations and other corporate transactions, as may be determined by the Wind-Down

Officer to be necessary or appropriate to implement the terms of the Plan.  The Wind-Down

Officer may utilize the aforementioned authority without any further notice to or action, order or

approval of the Bankruptcy Court.

16.      The Wind-Down Officer is hereby authorized and directed to issue,

execute, deliver, file or record the contracts, agreements, securities, instruments, deeds, omnibus

assignments, notices, other instruments of transfer and other documents reasonably necessary or

desirable to effectuate the transactions contemplated by the Plan, and take such actions as may be

necessary or appropriate to effectuate, implement and further evidence the terms and conditions

of the Plan in the name of and on behalf of the Debtors, in each case without the need for any

approvals, authorizations or consents, except for those expressly required by the Plan.

**K.     Termination of Officers, Directors and Managers**

17.     Each of the Debtors' officers, directors and managers, and any Person

having any similar position or performing similar services, shall be deemed to have resigned as

of the Effective Date, in each case without any further action, filing, vote, consent or notice, and

all such Persons shall be released from all further authority relating to the Debtors or the Chapter

11 Cases.  Upon such resignation, the Wind-Down Officer shall be charged with the authority,

duties, responsibilities and obligations relating to and arising from operations of the Debtors and

these Chapter 11 Cases in accordance with the Plan and the Wind-Down Officer Agreement.

**L.     Cancellation of Membership Interests**

18.     Pursuant to Section 6.08 of the Plan, on the Effective Date, the

Membership Interests and all other instruments evidencing Equity Interests in the Debtors shall

be deemed cancelled without further act or action under any applicable agreement, law,

regulation, order or rule, and the Equity Interests evidenced thereby shall be extinguished;

provided however that this shall not affect the right to distributions (if any) to Classes 6 through

10 under the Plan.

**M.     Preservation of Causes of Action**

19.     Pursuant to Section 6.09 of the Plan, except as otherwise provided in the

Plan, or in any contract, instrument, release or other agreement entered into or effected in

connection with or pursuant to the Plan, in accordance with Section 1123(b) of the Bankruptcy

Code, any and all Claims and Causes of Action that were owned by the Debtors or their Estates

- 27 -

as of the Effective Date, including all Avoidance Actions, shall vest in the Estates on the

Effective Date, and the Wind-Down Officer shall have the exclusive right to pursue and enforce

such Claims and Causes of Action.  Without limitation of the foregoing, such preservation shall

include any Claims and Causes of Action against the Debtors' professionals and advisors,

including, without limitation, any alleged claims against Herrick Feinstein, LLP.

**N.    Amendments of the Plan**

20.    The Plan may be amended, modified, or supplemented by the Plan

Proponents in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise

permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code,

except as the Bankruptcy Court may otherwise direct.  In addition, after the Confirmation Date,

so long as such action does not materially adversely affect the treatment of holders of Claims or

Equity Interests hereunder, the Plan Proponents may institute proceedings in the Bankruptcy

Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the

Confirmation Order with respect to such matters as may be necessary to carry out the purposes

and effects of the Plan.  Prior to the Effective Date, the Plan Proponents may, upon not less than

three (3) Business Days' notice to the attorneys for the Debtors, make appropriate technical

adjustments and modifications to the Plan without further order or approval of the Bankruptcy

Court; provided, however, that such technical adjustments and modifications do not adversely

affect in a material way the treatment of holders of Claims or Equity Interests.  Any such

modification or supplement shall be considered a modification of the Plan and shall be made in

accordance with this Section 7.01.

21.    All modifications or amendments to the Plan occurring after the

solicitation thereof are hereby approved pursuant to Section 1127(a) of the Bankruptcy Code and

do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

- 28 -

O.     **Executory Contracts**

22.     The Executory Contract provisions of Section 8.01 of the Plan are specifically approved in all respects, are incorporated herein in their entirety and are so ordered. The Debtors are authorized to assume and assign or reject Executory Contracts in accordance with Section 8.01 of the Plan.

23.     Pursuant to Section 8.01 of the Plan, the assumption and assignment of the Executory Contracts included as one of the Contracts (as defined in the Credit Bid Agreement) on the List of Contracts attached as Exhibit B to the Credit Bid Agreement, as amended, modified or supplemented from time to time, is hereby authorized, with such assumption and assignment to be effective as of, and subject to the occurrence of, the Sale Date. Each Executory Contract assumed and assigned pursuant to the Plan, or by Bankruptcy Court order, shall vest in and be fully enforceable by the applicable assignee in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court. No Executory Contract shall be deemed assumed absent actual assignment of such Executory Contract subject to the occurrence of the Sale Date. Without limitation of the foregoing, the form of Assignment and Assumption Agreement attached as Exhibit D to the Credit Bid Agreement is hereby approved.

24.     On or after the Effective Date and prior to the Sale Date, (a) the Lender as a Plan Proponent and/or (b) the Wind-Down Officer, with the consent of Lender as a Plan Proponent, are each authorized to reject Executory Contracts (that are not Executory Contracts being assumed and assigned pursuant to the Credit Bid Agreement) by filing one or more notices of rejection (each such notice, a "Rejection Notice") identifying the applicable Executory Contracts that are being rejected and serving the Rejection Notice upon the non-Debtor parties to the applicable Executory Contracts being rejected. Upon the filing and service of each Rejection Notice, the applicable Debtor(s) Estate(s) shall be deemed to have rejected the applicable

- 29 -

Executory Contract to which it is a party in accordance with the provisions and requirements of

sections 365 and 1123 of the Bankruptcy Code effective as of the date of the Rejection Notice.

Additionally, except with respect to the Executory Contracts being assumed and assigned

pursuant to the Credit Bid Agreement or rejected through a Rejection Notice, as provided for

above, effective as of the Sale Date, each Debtor's Estate shall be deemed to have rejected each

remaining Executory Contract to which it is a party in accordance with the provisions and

requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract

(i) was previously assumed or rejected by the Debtors prior to the Effective Date, or (ii)

previously expired or terminated pursuant to its own terms.  Such rejections are hereby approved

pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Sale Date.  On or after the

Sale Date, the Wind-Down Officer shall file a Rejection Notice identifying the additional

Executory Contracts that have been rejected, if any, as of the Sale Date and shall serve the

Rejection Notice upon the non-Debtor parties to such Executory Contracts.

        25.     Any Rejection Damage Claim for an Executory Contract rejected by the

Plan must be filed with the Bankruptcy Court within thirty (30) days of filing of the applicable

Rejection Notice, with a copy thereof served upon the Plan Proponents and the Wind-Down

Officer.  Any claimant, Person or Entity that fails to file and serve its Rejection Damage Claim

within the period set forth above shall be forever barred from asserting a Claim against the

Debtors, the Estates, the Post-Confirmation Estate Assets or otherwise in or in connection with

the Chapter 11 Cases.  All Allowed Rejection Damage Claims shall be classified and treated as

Unsecured Claims as provided for in Class 5 or Class 7, as applicable.

**P.**     **Binding Effect**

        26.     Subject to the provisions of Section 9.01 of the Plan and Bankruptcy

Rule 3020(e), in accordance with section 1141(a) of the Bankruptcy Code and notwithstanding

- 30 -

any otherwise applicable law, on the Effective Date, the terms of the Plan shall be immediately

effective and enforceable and shall bind all holders of all Claims against or Equity Interests in

the Debtors, whether or not such holders accept this Plan.

**Q.      No Discharge**

27.      Pursuant to Section 1141(d)(3) of the Bankruptcy Code, neither the Plan

nor confirmation of the Plan shall discharge any Claim against any of the Debtors or any of their

respective Related Persons (including, without limitation, Herrick Feinstein, LLP), and nothing

in the Plan or in this Order shall or shall be deemed to discharge, release or exculpate any of the

Debtors or any of their respective Related Persons (including, without limitation, Herrick

Feinstein, LLP) from any Claims, all of which Claims shall survive the confirmation and

effectiveness of the Plan.

**R.      Settlement**

28.      In accordance with and subject to the provisions of the Plan, pursuant to

Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice to

or action, order or approval of the Bankruptcy Court, after the Effective Date, the Wind-Down

Officer may compromise and settle Claims against the Debtors and Causes of Action against

other Entities.  Subject to the payment of the Initial Plan Funding and Expense Contribution to

the extent required under Section 6.02, the Lender and its Related Persons are hereby entitled to

receive the Debtor Release and the Third Party Releases.

**S.      Employee and Retiree Benefits**

29.      Pursuant to Section 9.04 of the Plan, to the extent not previously

terminated or transferred to the Purchaser, all employee benefit plans shall be terminated as of

the Effective Date.

**T.      Injunction**

- 31 -

30.    Except as otherwise provided in or to enforce the Plan or this Confirmation Order, on and after Effective Date, all Entities who have held, currently hold, or may hold Claims, Liens, Equity Interests or Causes of Action against or in any Debtor, or that constitute Released Claims, are permanently enjoined from taking any of the following actions: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the Assets, the Excluded Assets, the Wind-Down Officer, any Released Party or the assets of any Released Party, or any direct or indirect successor in interest of any of the foregoing, or any assets of any such transferee or successor, in each case on account of or in connection with or with respect to any such Claim, Lien, Equity Interest, Cause of Action or Released Claim, other than as contemplated by the Plan; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree or order against the Assets, the Excluded Assets, the Wind-Down Officer, any Released Party or the assets of any Released Party, or any direct or indirect successor in interest of any of the foregoing, or any assets of any such transferee or successor, in each case on account of or in connection with or with respect to any such Claim, Lien, Equity Interest, Cause of Action or Released Claim; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien, claim or encumbrance of any kind against the Assets, the Excluded Assets, the Wind-Down Officer, any Released Party or the assets of any Released Party, or any direct or indirect successor in interest thereto, or any assets of any such transferee or successor, in each case on account of or in connection with or with respect to any such Claim, Lien, Equity Interest, Cause of Action or Released Claim, other than as contemplated by the Plan; (iv) asserting any set-off, right of subrogation or recoupment of any kind directly or indirectly against the Assets, the Excluded

- 32 -

Assets, the Wind-Down Officer, any Released Party or the assets of any Released Party, or any

obligation due from any Released Party, or any direct or indirect transferee of any assets thereof,

or successor in interest thereto, in each case on account of or in connection with or with respect

to any such Claim, Lien, Equity Interest, Cause of Action or Released Claim; and (v)

commencing or continuing in any manner or action or other proceeding of any kind against the

Assets, the Excluded Assets, the Wind-Down Officer, any Released Party or the assets of any

Released Party, in each case on account of or in connection with or with respect to any such

Claim, Lien, Equity Interest, Cause of Action or Released Claim; provided, that nothing

contained herein shall be construed to prevent any entity from objecting to claims or defending

against claims objections or collection actions whether by asserting a right of setoff or otherwise

to the extent permitted by law.

**U.    Debtor Release**

31.    Effective as of the Effective Date, pursuant to Section 1123(b) of the

Bankruptcy Code, to the fullest extent permitted by applicable law, and for good and valuable

consideration, the adequacy of which is hereby confirmed on and after the Effective Date, each

Released Party shall be deemed released by each and all of the Debtors, the Estates and the

Wind-Down Officer from any and all Claims, interests, obligations, rights, suits, damages,

Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted

or assertable on behalf of any or all of the Debtors, the Estates or the Wind-Down Officer, as

applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising,

in law, equity, or otherwise, that any or all of the Debtors, the Estates or the Wind-Down Officer

could have been legally entitled to assert in its or their own right (whether individually or

collectively), or on behalf of the holder of any Claim or Equity Interest or other Entity, based on

or relating to, or in any manner arising from, in whole or in part, (i) any or all of the Debtors or

KL2 2988586.9

the Estates, (ii) the Debtors' restructuring efforts, (iii) the Chapter 11 Cases, (iv) the subject

matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated

in the Plan, (v) the business or contractual arrangements between any Debtor and any Released

Party, (vi) the restructuring or any alleged restructuring or reorganization of Claims and Equity

Interests prior to or in the Chapter 11 Cases, (vii) the formulation, preparation, negotiation,

dissemination, implementation, administration, confirmation or consummation of the Plan (or the

property to be distributed under the Plan), the Disclosure Statement, any contract, instrument,

release or other agreement or document related to any Debtor, the Chapter 11 Cases or the

Estates created, modified, amended, terminated or entered into in connection with the Plan, (viii)

the process of marketing, selling and disposing of the Assets pursuant to the Confirmation Order,

the Bid Procedures Order or other orders entered by the Bankruptcy Court in the Chapter 11

Cases approving the sale or other disposition of Assets; or (ix) any other act or omission,

transaction, agreement, event or other occurrence taking place on or before the Effective Date

relating to the Debtors, the Estates, the Chapter 11 Cases or the Plan or the property to be

distributed thereunder, including, for the avoidance of doubt, those alleged in or related to the

Complaint and the Adversary Proceeding and all Claims, Causes of Action or liabilities arising

out of or relating to the Chapter 11 Cases. Notwithstanding anything to the contrary in the

foregoing, the Debtor Release shall not affect the liability of any Released Party that otherwise

would result from any act or omission to the extent that act or omission subsequently is

determined in a Final Order to have constituted gross negligence, willful misconduct, or actual

fraud.

32.    Entry of this Order constitutes the Bankruptcy Court's approval, under

Section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, of the Debtor Release, which

includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors, the Estates, the Wind-Down Officer and all holders of Claims and Equity Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any or all of the Debtors, their respective Estates or the Wind-Down Officer and any holder of a Claim or Equity Interest or other Entity who would have been legally entitled to assert such Claim or Equity Interest on behalf of any of the Debtors or any of their Estates from asserting any Claim or Cause of Action released pursuant to the Debtor Release.

## V.    Third Party Release

33.    Effective as of the Effective Date, each and all of the Releasing Parties (regardless of whether a Releasing Party is a Released Party) conclusively, absolutely, unconditionally, irrevocably and forever discharges and releases (and each Person so discharged and released shall be deemed discharged and released by the Releasing Parties) each and all of the Released Parties and their respective assets and property from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including with respect to any rights or Claims that could have been asserted against any or all of the Released Parties with respect to any derivative claims, asserted or assertable on behalf of any or all of the Debtors, the Estates or the Wind-Down Officer, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, (i) any or all of the Debtors or the Estates, (ii) the Debtors' restructuring efforts, (iii) the Chapter 11 Cases, (iv) the

- 35 -

subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated

in the Plan, (v) the business or contractual arrangements between any Debtor and any Released

Party, (vi) the restructuring or any alleged restructuring or reorganization of Claims and Equity

Interests prior to or in the Chapter 11 Cases, (vii) the formulation, preparation, negotiation,

dissemination, implementation, administration, confirmation or consummation of the Plan (or the

property to be distributed under the Plan), the Disclosure Statement, any contract, instrument,

release or other agreement or document related to any Debtor, the Chapter 11 Cases or the

Estates created, modified, amended, terminated or entered into in connection with the Plan, (viii)

the process of marketing, selling and disposing of the Assets pursuant to the Confirmation Order,

the Bid Procedures Order or other orders entered by the Bankruptcy Court in the Chapter 11

Cases approving the sale or other disposition of Assets; or (ix) any other act or omission,

transaction, agreement, event, or other occurrence taking place on or before the Effective Date

relating to the Debtors, the Estates or the Chapter 11 Cases, including, for the avoidance of

doubt, those alleged in or related to the Complaint and the Adversary Proceeding and all Claims,

Causes of Action or liabilities arising out of or relating to the Chapter 11 Cases.

Notwithstanding anything to the contrary in the foregoing, the Third Party Release shall not (a)

release any obligation or liability of any party under the Plan or any document, instrument or

agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or

(b) affect the liability of any Released Party that otherwise would result from any act or omission

to the extent that act or omission subsequently is determined in a Final Order to have constituted

gross negligence, willful misconduct, or actual fraud.

    34.  Entry of this Order constitutes the Bankruptcy Court's approval, pursuant

to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the

KL2 2988586.9

related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy

Court's finding that the Third-Party Release is: (1) in exchange for the good and valuable

consideration provided by the Released Parties; (2) a good faith settlement and compromise of

the claims released by the Third-Party Release; (3) in the best interests of the Debtors and all

holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after due

notice and opportunity for hearing; and (6) a bar to any of the Releasing Parties asserting any

claim or cause of action released pursuant to the Third-Party Release.

**W.      Exculpation**

35.      Effective as of the Effective Date, to the fullest extent permissible under

applicable law and without affecting or limiting either of the Debtor Release or Third-Party

Release, and except as otherwise specifically provided in the Plan, the Exculpated Parties are

hereby released and exculpated from any claim, obligation, Cause of Action or liability for any

act taken or omission occurring on or after the Applicable Petition Date in connection with or

related to the Debtors, the Estates or the Chapter 11 Cases, including but not limited to (i)

formulating, preparing, disseminating, implementing, confirming, consummating or

administering the Plan (including soliciting acceptances or rejections thereof); (ii) the Disclosure

Statement or any contract, instrument, release or other agreement or document entered into or

any action taken or omitted to be taken during the administration of these Chapter 11 Cases or in

connection with the Plan; (iii) any distributions made pursuant to the Plan; (iv) the negotiation,

formulation or preparation of the Purchase Agreement, any Credit Bid Agreement and the sale of

the Assets pursuant thereto; and (v) the negotiation, formulation or preparation of the Wind-

Down Officer Agreement. Notwithstanding anything to the contrary in the foregoing, this

exculpation shall not affect the liability of any Exculpated Party that otherwise would result from

any act or omission to the extent that act or omission subsequently is determined in a Final Order

to have constituted gross negligence, willful misconduct, or actual fraud. Nothing in the Plan

shall limit the liability of applicable attorneys to their respective clients pursuant to N.Y. Comp.

Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).  The foregoing shall also not limit the

right of any party in interest to object to Professional Fee Claims.

## X.    Objections to Claims

36.    Pursuant to Section 10.01 of the Plan, the Wind-Down Officer shall have

the exclusive authority (except with respect to the rights of the Lender as a Plan Proponent) to

file, settle, compromise, withdraw, or litigate to judgment any objections to Administrative

Expense Claims and other Claims; provided, however, this provision shall not apply to

Professional Fee Claims, which may be objected to by any party-in-interest in these Chapter 11

Cases.  From and after the Effective Date, and except as provided herein, the Wind-Down

Officer shall have and shall retain any and all available rights and defenses that the Debtors had

with respect to any Claim based on the limitations imposed by Section 502 of the Bankruptcy

Code and may settle or compromise any Disputed Claim without further notice to, order from, or

approval of the Bankruptcy Court.

37.    At any time prior to the Claims Objection Deadline, the Wind-Down

Officer and/or the Lender as a Plan Proponent may file objections with the Bankruptcy Court and

serve such objections on the holders of the Claims or Equity Interests to which objections are

made.  Nothing contained in the Plan, however, shall limit the right of the Wind-Down Officer or

the Lender as a Plan Proponent to object to Claims or Equity Interests, if any, filed or amended

after the Claims Objection Deadline.  The Claims Objection Deadline may be extended by the

Bankruptcy Court upon motion by the Wind-Down Officer without notice or hearing.

38.    In accordance with Section 10.01 of the Plan, (i) the Lender as a Plan

Proponent has the right to file, settle, compromise, withdraw, or litigate to judgment any

- 38 -

objections to Administrative Expense Claims and other Claims, whether arising prior to or after the commencement of the Chapter 11 Cases, (ii) the Claims Objection Deadline may be extended by the Bankruptcy Court upon motion by the Lender as a Plan Proponent without notice or hearing, (iii) any rights of the Wind-Down Officer to settle, compromise, or withdraw any Administrative Expense Claims or other Claims are subject to the prior written consent of the Lender as a Plan Proponent not to be unreasonably withheld, or an order of the Bankruptcy Court, and (iv) any rights of the Lender as a Plan Proponent to settle, compromise, or withdraw any Administrative Expense Claims or other Claims are subject to the prior written consent of the Wind-Down Officer, not to be unreasonably withheld, or an order of the Bankruptcy Court.

**Y.      Distribution Reserve**

39.      Pursuant to Section 10.05 of the Plan, the Distribution Reserve shall, to the extent there is Available Cash, be established on the later of the Sale Date or the Effective Date or as soon as reasonably practicable thereafter for the purpose of maintaining cash from time to time necessary to satisfy (i) Administrative Expense Claims, Priority Tax Claims, Priority Claims and Other Secured Claims that are (a) Allowed Claims as of the Effective Date but that cannot be paid on or promptly following the Effective Date, or (b) Disputed Claims as of the Effective Date but that may become Allowed Claims after the Effective Date; and (ii) Professional Fee Claims that are Allowed Claims or that may become Allowed Claims on or after the Effective Date.  Any cash released from the Distribution Reserve shall be included in the calculation of Available Cash.

**Z.      Disputed Claims Reserve**

40.      Pursuant to Section 10.06 of the Plan, the Wind-Down Officer shall establish the Disputed Claims Reserve from Available Cash on the later of the Sale Date or the Effective Date or as soon thereafter as is reasonably practicable.  The Disputed Claims Reserve

KL2 2988586.9

shall hold distributions to which holders of such Disputed Claims would be entitled under the

Plan as of such date as if such Disputed Claims were Allowed Claims either in the amounts of

the Unsecured Claims as filed or in such amounts as estimated in accordance with Section 10.02

of the Plan.  Distributions from the Disputed Claims Reserve shall be made in accordance with

Section 10.06 of the Plan.

## AA.    Plan Distributions

41.      On or as soon as possible after the Effective Date, the Wind-Down

Officer, in its capacity as Disbursing Agent, shall make cash distributions to holders of Allowed

Claims as provided for under the Plan.

42.      Unless otherwise provided in this Plan, to the extent Available Cash is

available subsequent to the Effective Date, the Wind-Down Officer shall, on a Subsequent

Distribution Date and on the Final Distribution Date, distribute such Available Cash to the

holders of Claims entitled thereto that were Allowed Claims on the Effective Date or

subsequently have become Allowed Claims on or before the Subsequent or Final Distribution

Date, as the case may be, in amounts necessary to cause such holders to have received aggregate

distributions of Cash in respect of such Allowed Claims equal to the distributions that such

holders would have received in respect of such Allowed Claims on the Effective Date if (x) such

Available Cash had been available for distribution on the Effective Date, (y) such Allowed

Claims had been Allowed Claims on the Effective Date in the amounts in which they are

Allowed Claims on the Subsequent or Final Distribution Date, as the case may be, and (z)

Claims or portions thereof that have become disallowed subsequent to the Effective Date and on

or before the Subsequent or Final Distribution Date, as the case may be, had been disallowed on

the Effective Date.  Notwithstanding the foregoing, in lieu of making a distribution to holders of

Allowed Claims on the Final Distribution Date, the Wind-Down Officer is authorized to donate

KL2 2988586.9

the remaining Available Cash to charity if the Wind-Down Officer determines, in its reasonable

discretion, that making a final distribution to holders of Allowed Claims is not cost effective.

**BB.     Retention of Jurisdiction**

43.     Subject to Article XII of the Plan, on and after the Effective Date, the

Bankruptcy Court shall retain exclusive jurisdiction under Chapter 11 of the Bankruptcy Code

over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to

Sections 105(a) and 1142 of the Bankruptcy Code.

**CC.     Dissolution of Committee**

44.     On the Effective Date, the Committee shall dissolve and its members shall

be released and discharged from all further authority, duties, responsibilities and obligations

related to and arising from and in connection with the Chapter 11 Cases; provided, that, the

Committee will not be dissolved, and the members of the Committee will not be released or

discharged of duties with respect to any applications for allowance of compensation and

reimbursement of expenses (the "Post-Effective Date Matters"); provided, further, that, the

Committee will be dissolved and the members thereof discharged from all duties and obligations

on the date upon which all services related the Post-Effective Date Matters are completed.

**DD.     Post-Confirmation Reporting**

45.     The Wind-Down Officer shall file post-confirmation operating reports on

a quarterly basis, upon the conclusion of each respective quarter until the earlier of the entry of a

final decree, conversion or dismissal of these cases.

**EE.     Governing Law**

46.     Except to the extent that the Bankruptcy Code is applicable, the rights and

obligations arising under the Plan shall be governed by, and construed and enforced in

accordance with, the laws of the State of New York.

KL2 2988586.9

**FF.     Binding Effect of Prior Orders**

47.     Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Order, all prior orders entered in the Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before the Bankruptcy Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors and their respective successors and assigns.

**GG.     Substantial Consummation**

48.     On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

**HH.     Final Order**

49.     This Order is a Final Order, and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

**II.     Order Effective Immediately**

50.     Notwithstanding Bankruptcy Rules 3020(e) and 7062 or otherwise, the stay provided for under Bankruptcy Rule 3020(e) shall be waived and this Order shall be effective immediately and enforceable upon entry.  The Debtors and the Plan Proponents are hereby authorized to consummate the Plan and the transactions contemplated thereby immediately after entry of this Order and upon, or concurrently with, the satisfaction or waiver of the conditions to the Effective Date set forth in the Plan.

**JJ.     Notice of Confirmation of the Plan**

KL2 2988586.9

51.    Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), the Plan

Proponents are authorized to serve a notice of the entry of this Order and the establishment of bar

dates for certain Claims hereunder on all Notice Parties.


Dated: New York, New York
        January 18, 2016


                            */s/ Sean H. Lane*_____
                            THE HONORABLE SEAN H. LANE
                            UNITED STATES BANKRUPTCY JUDGE

KL2 2988586.9

**<u>EXHIBIT 1</u>**

**Short-Form Sale Order**

KL2 2988586.9

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

BH SUTTON MEZZ LLC,                                    Chapter 11
a Delaware Limited Liability Company,                  Case No.: 16-10455 (SHL)
SUTTON 58 OWNER LLC,                                   (Jointly Administered)
a Delaware Limited Liability Company, and
SUTTON 58 OWNER LLC,
a New York Limited Liability Company,

                            Debtors.
-------------------------------------------------------------------x

## ORDER CONFIRMING SALE OF ASSETS

Upon the *Order Confirming Joint Chapter 11 Plan of Liquidation Filed by Offical
Committee of Unsecured Creditors and Sutton 58 Associates LLC, as Modified and Supplemented*
[Dkt. No. _____] (the "Confirmation Order") [1] authorizing and approving, inter alia, (i) that certain
Credit Bid Agreement dated December 15, 2016 between BH Sutton Mezz LLC, a Delaware
limited liability company ("Sutton Mezz"), Sutton 58 Owner, LLC, a Delaware limited liability
company ("Sutton Owner DE") Sutton 58 Owner, LLC, a New York limited liability company
("Sutton Owner NY", and together with Sutton Mezz and Sutton DE, the "Debtors") and Sutton
58 Associates LLC ("Lender") (as modified, amended or supplemented from time time as
permitted by the Confirmation Order, the "Credit Bid Agreement"; a copy of the Credit Bid
Agreement is annexed as Exhibit A hereto) with respect to the sale (the "Sale") of certain Assets
(as defined in the Credit Bid Agreement) comprised of (a) the Premises (as defined in the Credit
Bid Agreement (i.e., (x) the land known as and located at 428, 430 and 432 East 58th Street, New
York, New York 10022 (Block 1369, Lots 34, 35 and 133) (which land is more particularly

---

[1]    Except as otherwise noted, capitalized terms used but not defined in this Order shall have the meanings
ascribed to such terms in the Confirmation Order.

described in <u>Exhibit A</u> to the Credit Bid Agreement), (y) any and all improvements now or hereafter located thereon, and (z) any and all rights, interests, hereditaments, entitlements and appurtenances of any nature now or hereafter belonging, relating or pertaining thereto, and (b) the other rights and interests more particularly described in the Credit Bid Agreement, (ii) all transactions contained in the Credit Bid Agreement and all of the terms and conditions thereof, and any and all deed(s), assignment(s) and other documents and instruments delivered pursuant thereto or in connection therewith, and (iii) recordation of this Order Confirming Sale of Assets (this "<u>Order</u>"); without limitation of anything contained in, and in furtherance of and implementation of, the Confirmation Order, it is hereby **ORDERED, ADJUDGED AND DECREED, that:**

1.      The Sale of the Assets (as defined in the Credit Bid Agreement) to [INSERT NAME OF LENDER OR ITS ASSIGNEE (AS DEFINED IN THE CREDIT AGREEMENT), AS ASSIGNEE OF LENDER, AS APPLICABLE ("<u>PURCHASER</u>")], and all provisions, terms and conditions of the Credit Bid Agreement and all transactions contemplated therein, and any and all deed(s), assignment(s) and other documents and instruments delivered pursuant thereto or in connection therewith, are hereby confirmed and approved.

2.      The Purchaser is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is hereby granted all the protections afforded thereby. The consideration provided by the Purchaser for the Assets shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded under Bankruptcy Code section 363(n) or any other provision of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance

Act or any other similar federal or state laws.  The Purchaser is not an "insider" of the Debtors, as that term is defined in section 101 of the Bankruptcy Code.

       3.      The Debtors and, as applicable, the Wind-Down Officer (as such term is used in the Confirmation Order) are each authorized and directed to take such steps, execute such documents, agreements and instruments, and expend such funds as may be reasonably necessary to effectuate and implement the terms and conditions of this Order and the Confirmation Order and to close on the Sale of the Assets in accordance with this Order, the Confirmation Order and the Credit Bid Agreement.

       4.      The Debtors and their officers, employees and agents, and, as applicable, the Wind-Down Officer (as such term is used in the Confirmation Order), are authorized and directed to execute and deliver, and to perform under, consummate and implement, the Credit Bid Agreement and all transactions pursuant thereto, together with all additional instruments and documents that may be necessary or desirable to implement the Credit Bid Agreement and to take all further actions as may be (a) reasonably requested by Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to Purchaser, or reducing to possession, the Assets free and clear of all liens, claims, charges, encumbrances or interests of any kind or nature [ADD FOLLOWING IF ELECTED BY LENDER PURSUANT TO CONFIRMATION ORDER: (except solely to the extent expressly set forth in the next succeeding paragraph with respect to the Lender's right to elect to cause the Sale to occur subject to the Identified Mortgage[s] (as defined below), as more particularly set forth below)], or (b) necessary or appropriate to the performance of the obligations contemplated by the Credit Bid Agreement, all without further order of the Court.

5.      [ADD FOLLOWING IF ELECTED BY LENDER PURSUANT TO CONFIRMATION ORDER:The [DESCRIBE APPLICABLE MORTGAGE[S]] (the "Identified Mortgage[s]") will not be extinguished in connection with the Sale of the Assets pursuant to the Credit Bid Agreement, it being understood that Purchaser, in its capacity as the purchaser of the Assets pursuant to the Credit Bid Agreement, shall take title to the Premises subject to the Identified Mortgage[s] and upon the occurrence of the Closing such Identified Mortgage[s] will remain in effect and encumber the Premises.]

6.      Each and every federal, state and local government agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Sale of the Assets discussed herein and a copy of this Order may be filed or recorded in any place where state, federal or local law permits filing or recording, including in the records of the County where the Real Property is located.

7.      On the date of the Closing under the Credit Bid Agreement, the Assets shall be transferred to Purchaser, and such transfer shall (a) be legal, valid and effective; (b) vest Purchaser with all right, title and interest of the Debtors in and to the Assets; and (c) be free and clear of all liens, claims, charges, encumbrances or interests of any kind or nature [ADD FOLLOWING IF ELECTED BY LENDER PURSUANT TO CONFIRMATION ORDER: (except solely to the extent expressly set forth above with respect to the Lender's right to elect to cause the Sale  to occur subject to the Identified Mortgage[s]].

8.      As more particularly provided in the Confirmation Order, pursuant to section 1146 of the Bankruptcy Code, the Sale of the Assets shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax or governmental assessment in the United States or by any other governmental unit, and the appropriate federal, state or local

(domestic or foreign) governmental officials or agents are hereby authorized and directed to

forgo the collection of any such tax or governmental assessment and to accept for filing and

recordation instruments or other documents pursuant to such transfers of property or in

connection therewith without the payment of any such tax or governmental assessment.

.

Dated: January ___, 2017
      New York, New York

_____
Honorable Sean H. Lane
United States Bankruptcy Judge

**EXHIBIT A**
Credit Bid Agreement

EXECUTION VERSION

CREDIT BID AGREEMENT


This Credit Bid Agreement (this "Agreement") made this 15th day of December, 2016, by and between the Debtors (as defined below) (each as applicable), having an address at c/o LaMonica Herbst & Maniscalco, LLP, Attention: Joseph S. Maniscalco (hereinafter called "Seller") and Sutton 58 Associates LLC, a Delaware limited liability company, having an address at c/o Gamma Lending, 101 Park Avenue, Suite 2602, New York, New York, 10178, Attention: Jonathan Kalikow (together with its successors and assigns, collectively, hereinafter called "Buyer").

W I T N E S S E T H :

A.    Sutton 58 Owner, LLC a Delaware limited liability company ("Sutton Owner DE")[1] is the owner of the land known as 428, 430 and 432 East 58th Street, New York, New York 10022, situated in the County and State of New York, and which land is more fully described by metes and bounds on Exhibit "A" hereto attached and made a part hereof, together with any and all improvements now or hereafter located thereon, and any and all rights, interests, hereditaments, entitlements and appurtenances of any nature now or hereafter belonging, relating or pertaining thereto (collectively, the "Premises").

B.    Seller is also party to various agreements, including, without limitation, those certain agreements pertaining to the Development Rights (as defined in the Plan)[2], relating to the Premises.

C.    Sutton Owner DE, BH Sutton Mezz LLC, a Delaware limited liability company ("Sutton Mezz") and Sutton 58 Owner, LLC, a New York limited liability company (collectively with Sutton Mezz and Sutton Owner DE, the "Debtors") are debtors and debtors-in possession in jointly administered bankruptcy cases currently pending in the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court"), pursuant to Chapter 11 of Title 11 of the United States Code, and any amendments thereof applicable to the

---

[1] Sutton Owner DE is the successor by merger to Sutton 58 Owner, LLC ("Sutton Owner NY"), a New York limited liability company and one of the Debtors in the Chapter 11 Cases herein described. Any claims by the Debtors relating to the effectiveness of the merger between Sutton Owner DE and Sutton Owner NY were withdrawn with prejudice, and the Plan (as defined below) provides for the dismissal of the Chapter 11 case of Sutton Owner NY. In the exercise of caution, however, Sutton Owner NY, as a Debtor, is included as a party to this contract, and, collectively with the other Debtors, is entering into this Agreement as "Seller".

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Plan.

1

Debtors (the "Bankruptcy Code"), under lead Case Number 16-10455 (SHL)(collectively, the "Chapter 11 Cases").

        D.      Buyer and the official committee of unsecured creditors (the "Committee") appointed in the Chapter 11 Cases, jointly proposed and filed a Joint Chapter 11 Plan of Liquidation dated November 14, 2016, as modified on November 22, 2016, and as supplemented on December 5, 2016, pursuant to the Bankruptcy Code (as may be further amended or modified, the "Plan").

        E.      The Plan is subject to confirmation and approval by the Bankruptcy Court pursuant to Section 1129 of the Bankruptcy Code and subject to entry of an order in form and substance acceptable to the Buyer and the Committee, among others things, approving the sale of the Assets (as defined below) subject to this Credit Bid Agreement (the "Confirmation Order").

        F.      Pursuant to an order of the Bankruptcy Court dated November 21, 2016, the Bankruptcy Court approved an auction (the "Auction") for the sale of the Premises together with certain related Assets.

        G.      The Auction occurred on December 13, 2016 and Buyer's Credit Bid (as defined in the Plan) was selected by Seller at the Auction as the highest and best bid for the purchase of the Assets (as defined below).

        H.      Seller desires to sell and Buyer desires to buy the Assets and such related assets, upon the terms and conditions hereinafter set forth.

        NOW THEREFORE, the parties hereto, in consideration of the mutual covenants herein contained, and respectively expressing the intention to be legally bound hereby, covenant and agree as follows:

        1.    Sale:

        1.1.      Seller agrees to sell and convey to Buyer and Buyer agrees to purchase and take from Seller the Premises, including, without limitation the following, all of which shall be included within the term "Assets"[3]:

        (a)      Any and all easements, rights of way, privileges, appurtenances, and rights to the same belonging to and inuring, to the benefit of the Premises;

---

[3] For the avoidance of doubt, Assets as defined herein shall not include any Excluded Assets as defined in the Plan.

(b)    Any strips and gores adjacent to the land forming part of the Premises, and any land lying in the beds of any street, road or avenue, open or proposed, in front of or adjoining said land to the center line thereof;

(c)    All fixtures, machinery and equipment, if any, located on or used at or in connection with the Premises;

(d)    Any unpaid awards for any taking by condemnation or any damage to the Premises by reason of a change of grade of any street or highway, or any award paid to Seller and not used or applied by Seller to the restoration of the Premises;

(e)    Any unpaid proceeds for any damage to the Premises by reason of fire or other casualty, or any proceeds paid to Seller and not used or applied by Seller to the restoration of the Premises;

(f)    Any and all development rights with respect to the Premises, including, but not limited to, the Development Rights (as defined in the Plan);

(g)    The Contracts (as defined below);

(h)    Any and all rights to any claims against any third party related to, or in connection with, the Assets (or any portion thereof), including, but not limited to, any claims against any third party that performed work on the Premises; and

(i)    Any and all rights to any existing permits, licenses and authorizations in respect of the Premises.

1.2.    Buyer agrees to purchase the Assets subject to the contracts listed on Exhibit "B" annexed hereto (collectively, the "Contracts").  Seller shall assign and Buyer shall assume the Contracts and any and all obligations and liabilities of Seller thereunder, including any amounts required to cure defaults pursuant to Section 365 of the Bankruptcy Code. Seller acknowledges and agrees that, from the period between the date hereof until the Closing (as defined below), Buyer shall have the right, in its sole discretion, to update Exhibit "B" annexed hereto to include additional contracts to which Seller is a party (collectively, "Additional Contracts").  If Buyer so elects to update Exhibit "B" annexed hereto to include Additional Contracts pursuant to the immediately preceding sentence, the term "Contracts" shall then be deemed to mean all the contracts listed on Exhibit "B" annexed hereto as of the date hereof and the Additional Contracts.

2.    Purchase Price:

Buyer's Credit Bid in the amount of Eighty Six Million ($86,000,000.00) Dollars shall be the purchase price hereunder.  Payment of the purchase price hereunder shall be deemed satisfied in full upon delivery of the Deed (as defined below) from Seller to Buyer at the Closing.

3.    Inspection by Buyer; Operations Prior to Closing:

3.1.    Buyer and Buyer's authorized agents and representatives may, from time to time, prior to the Closing, during regular business hours, inspect all areas of the Premises and make tests, surveys, studies and inspections, and generally obtain such other information and data as Buyer shall deem necessary or desirable.  Seller shall cooperate with Buyer in connection with the exercise by Buyer of its rights under this Section 3.1.

3.2.    Buyer is authorized and permitted, at any time prior to Closing, to communicate, as the contract vendee, with any and all third parties, including, without limitation, any governmental authorities (including, without limitation, the New York City Department of Buildings), concerning the Premises (including, without limitation, any contemplated future development thereof), and, without limitation of the foregoing, Buyer may file any applications and permits (including, without limitation, any foundation permits and building permits) and other filings of any nature with any governmental authorities concerning the Premises and any future development thereof.  Seller shall cooperate with Buyer in the exercise of its rights under this Section 3.2 (and, without limitation, Seller shall execute any such applications, filings and other items as may be requested by Buyer).

4.    Closing:

The Deed and other closing instruments herein required shall be delivered by Seller at the office of Buyer's counsel, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, or at such other place as is mutually agreed to by the parties, at 10:00 A.M. on a date to be mutually agreed by the parties, but no later than February 28, 2017 (unless otherwise mutually agreed by the parties) (the "Closing").

5.    Title and Survey:

5.1.    Title to the Premises shall be good and marketable, free and clear of all liens, restrictions, easements, encumbrances, leases and tenancies and without title company exceptions, disclaimers of liability or objections, except for the items set forth on Exhibit "C" hereto; and Buyer shall have the option to obtain, at Buyer's expense, a title policy from the title insurance company chosen by Buyer (the "Title Company") to insure Buyer's title to the Premises.

5.2.    Unpaid liens for taxes, water charges and assessments shall not be objections to title, but the amount thereof plus interest and penalties thereon to the date of the Closing shall be paid by Buyer at Closing.

5.3.    Buyer shall have the option to obtain, at Buyer's expense, prior to the Closing, a current ALTA "as built" survey of the Premises and any appurtenant easements and other related matters certified to Buyer, Buyer's lender (if any) and the Title Company which shall locate all exceptions susceptible of being located on a survey and shall contain a metes and bounds description.  Seller shall cooperate with Buyer in connection with the foregoing, and without limitation, Seller shall cooperate with Buyer in seeking to cause any counterparty to any of the Contracts to cooperate with Buyer in connection with the foregoing and otherwise in connection with enforcing the Contracts.

6.    Representations and Warranties of Seller:

4

Seller represents, warrants and covenants to Buyer that Seller has the requisite power and authority to enter into this Agreement and perform its obligations hereunder.  The person signing this Agreement on behalf of Seller has the requisite power and authority to execute and deliver this Agreement, and to create thereby the binding obligation of Seller, without the consent or approval of any other persons or entities.

7.   Representations and Warranties of Buyer:

Buyer represents, warrants and covenants that Buyer has the requisite power and authority to enter into this Agreement and perform its obligations hereunder. The person signing this Agreement on behalf of Buyer has the requisite power and authority to execute and deliver this Agreement, and to create thereby a binding obligation of Buyer without the consent or approval of any other persons or entities.

8.   Conditions of Buyer's Obligation:

8.1.    The obligation of Buyer under this Agreement to purchase the Premises from Seller is subject to fulfillment of each of the following conditions (any one or more of which may be waived in whole or in part by Buyer in writing at or prior to the Closing):

(a)    The representations of Seller set forth in Section 6 of this Agreement shall be true and correct as of the date of this Agreement and at the time of the Closing, except as otherwise specified.

(b)    Seller shall have performed all covenants, undertakings and obligations to be performed by Seller under this contract.

If any of the conditions set forth above are not fulfilled or waived in writing by Buyer then Buyer shall not have the obligation to complete the Closing hereunder and the parties shall have no further liability hereunder.

9.   Provisions with Respect to Closing:

9.1.    At the Closing Seller shall deliver to Buyer the following:

(a)    Deed.  A bargain and sale deed without covenants to the Premises, duly executed and acknowledged by Seller and in proper form for recording.  The deed shall be in form and substance reasonably acceptable to Buyer, and shall, among other things, recite that it is delivered pursuant to the Confirmation Order, and attach thereto a certified copy of the Confirmation Order.

(b)    Assignment and Assumption Agreement.  A valid assignment and assumption agreement in the form of Exhibit "D" annexed hereto (the "Assignment Agreement"), executed by Seller, whereby Seller shall assign, among other things, all of Seller's right, title and interest in and to the Contracts and certain Other Rights (as defined in the Assignment Agreement), and Buyer shall assume the Contracts and, in accordance with and subject to Section 365 of the Bankruptcy Code,  all costs and responsibilities associated therewith.

5

      (c)    <u>Copies of Contracts</u>.   To the extent in Seller's possession or control, true and complete, original executed counterparts of each of the Contracts.

      (d)    <u>Title Insurance</u>.  To the extent Buyer elects, at its own expense, to obtain a title policy with the Title Company, any and all reasonable affidavits and other instruments and reasonable documents which the Title Company shall require in order to insure title to the Premises to Buyer.

      (e)    <u>FIRPTA Certificate</u>.  A Foreign Investors Real Property Tax Act Certificate.

      (f)    <u>Transfer Tax Forms</u>.   The New York City Department of Finance Real Property Transfer Tax Return, the New York State Combined Real Estate Transfer Tax Return and Credit Line Mortgage Certificate and the New York Real Property Transfer Report (the "<u>Transfer Tax Forms</u>"), executed by Seller and, where required, acknowledged (it being understood that the transaction contemplated by this Agreement is exempt from all taxes, levies and impositions pursuant to the Confirmation Order and Plan).

      (g)    <u>Additional Documents</u>.  Such other documents as may be reasonably required to consummate the transactions herein contemplated.

    9.2.    At the Closing, Buyer shall deliver to Seller the following:

      (a)    Deliver a counterpart of the Assignment Agreement to Seller, executed by Buyer.

      (b)    Deliver the Transfer Tax Forms to Seller, executed by Buyer and, where required, acknowledged.

      (c)    Execute and deliver such other documents as may be reasonably required to consummate the transactions herein contemplated.

    10. <u>Contracts and Leases</u>:

      Between the date hereof and the Closing, Seller shall not extend, renew, replace or otherwise modify or terminate or cancel any Contract in writing or enter into any new service or maintenance or other contract or agreement without the prior written consent of Buyer.

    11. <u>Casualty Loss</u>:

      Seller shall maintain in effect until the time of the Closing the insurance policies now in effect with respect to the Premises.  If at any time prior to the date of the Closing any portion of the Premises is destroyed or damaged as a result of fire or any other casualty, (i) Seller shall promptly provide written notice thereof to Buyer, (ii) neither Seller nor Buyer shall have the right to terminate this Agreement, and (iii) Seller shall assign to Buyer at the Closing all rights under Seller's insurance policy to collect any and all proceeds thereunder. Seller shall not adjust or settle any claim under said policy without Buyer's approval.  For the

avoidance of doubt, the Closing shall occur regardless of a casualty occurring in respect of the Premises prior to the date of the Closing and Buyer shall accept the Premises in their damaged condition.  The parties agree that this Section 11 constitutes an express agreement to the contrary governing any case of damage or destruction of the Premises by fire or other casualty under Section 227 of the New York Real Property Law, and such law or any other law of like import providing to the contrary now or hereafter in force shall have no application.

## 12. Eminent Domain:

12.1.    In the event of a taking of any portion of the Premises by eminent domain proceedings, (i) Buyer shall be entitled to any remaining portions of the Premises and (ii) Seller shall pay to Buyer any awards or other proceeds received by Seller with respect to any such taking, and at the Closing, Seller shall assign to Buyer all rights of Seller in and to any awards or other proceeds payable by reason of any taking.

12.2.    Seller agrees to notify Buyer of any eminent domain proceedings within five (5) days after Seller learns of such proceedings.  Until such time as the Closing has occurred, or this Agreement terminates, any negotiation for, or agreement to, and all contests of any offers and awards relating to eminent domain proceedings shall be conducted in accordance with the sole approval and consent of the Buyer.

## 13. Possession:

Possession of the Premises shall be given to Buyer at the time of the Closing unoccupied and free of any leases. Seller acknowledges that the Premises are currently being demolished and Buyer accepts the Premises in the "As Is" and "Where Is" condition and without any representation or warranty.

## 14. Brokerage:

Seller and Buyer each represent and warrant to the other that as to itself, it has not dealt with any broker or other intermediary to whom a fee or commission is payable in connection with or relating to the sale and purchase which is the subject of this Agreement (and the Auction conducted pursuant to the Plan) other than Jones Lang LaSalle Americas, Inc. ("JLL") and Meridian Capital Group ("Meridian")  (collectively, the "Broker").  Buyer shall pay any amounts payable to the Broker in accordance with the agreed Order approving employment of JLL and Meridian dated September 20, 2016.

## 15. Jurisdiction

The parties hereto irrevocably and unconditionally submit to the exclusive jurisdiction of the Bankruptcy Court in any dispute or litigation arising out of or relating to this Agreement or the transactions contemplated hereby (including, without limitation, in connection with any disputes pertain to the Contracts) and agree that all claims in respect of this Agreement and such Contracts may be heard and determined in the Bankruptcy Court.  Each party also agrees not to (a) attempt to deny or defeat such exclusive jurisdiction by motion or other request for leave from the Bankruptcy Court or (b) bring any action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby in any other court.

16. <u>Entire Agreement</u>:

This is the entire agreement between the parties and there are no other terms, obligations, covenants, representatives, statements or conditions, oral or otherwise, of any kind whatsoever.  Any agreement hereafter made shall be ineffective to change, modify, discharge or effect an abandonment of this Agreement in whole or in part unless such agreement is in writing, and signed by the party against whom enforcement of the change, modification, discharge or abandonment is sought.

17. <u>Notices</u>:

(a)   All notices, demands, requests or other communications required or permitted under the terms of this instrument shall be in writing and, unless and until otherwise specified in a written notice by the party to whom notice is intended to be given, shall be sent to the parties at the respective addresses:

If intended for Seller:

(x)      If the Closing occurs <u>before</u> the Effective Date of the Plan:

Joseph Beninati
500 West Putnam Ave, Suite 400
Greenwich, Connectivut 06830

With a copy to:

Joseph S. Maniscalco, Esq.
LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Attn.: Joseph S. Maniscalco, Esq.

-        And –

Counsel to the Committee
Westerman Ball Ederer
   Miller Zucker & Sharfstein, LLP
1201 RXR Plaza
Uniondale, New York 11556
Attn.: Thomas A. Draghi, Esq.

(y)      If the Closing occurs <u>on or after</u> the Effective Date of the Plan:

Esther DuVal, Managing Director, CBIZ Corporate
Recovery Services, as Wind-Down Officer
1065 Avenue of the Americas

8

New York, New York  10018

With a copy to:

Westerman Ball Ederer
  Miller Zucker & Sharfstein, LLP
1201 RXR Plaza
Uniondale, New York 11556
Attn.: Thomas A. Draghi, Esq.

If intended for Buyer:

Sutton 58 Associates LLC
c/o Gamma Lending
101 Park Avenue, Suite 2602
 New York, New York, 10178
Attn: Jonathan Kalikow

With a copy to:

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY  10036
Attn:  Adam Rogoff, Esq.

(b)    Each such notice, demand, request or other communication may be given on behalf of any party by its legal counsel, shall be deemed to have been properly served for all purposes if (i) hand delivered against a written receipt of delivery, or (ii) mailed by registered or certified mail of the United States Postal Service, return receipt requested, postage paid, or (iii) delivered to a nationally recognized overnight courier service for next postage prepaid business day delivery, to its addressee at the address set forth above in this Paragraph.

18. Miscellaneous:

18.1.    The captions in this Agreement are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this Agreement or any of the provisions hereof.

18.2.    This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and assigns.

18.3.    This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same original, and the execution of separate counterparts by Buyer and Seller shall bind Buyer and Seller as if they had each executed the same counterpart.

9

18.4.     This Agreement shall be governed by and shall be construed and interpreted in accordance with the laws of the New York, and, in all events, shall be subject to the Confirmation Order.

18.5.     Seller shall, at or after the Closing, execute, acknowledge and deliver to Buyer and the Title Company such document, instrument and further assurances as Buyer or the Title Company may reasonably request in order to carry out the purposes of the Agreement.  This Section 18.5 shall survive the Closing.

18.6.     Buyer may assign this Agreement (together with any and all rights and entitlements of the Buyer hereunder) to any other person or entity (each, on "Assignee") Seller shall accept any such Assignee's performance of Buyer's obligations under this Agreement in lieu of Buyer.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**SELLER**

Sutton 58 Owner, LLC, a Delaware limited liability company

By: _____
    Name: Joseph Beninati
    Title: Manager

BH Sutton Mezz LLC, a Delaware limited liability company

By: _____
    Name: Joseph Beninati
    Title: Manager

Sutton 58 Owner, LLC, a New York limited liability company

By: _____
    Name: Joseph Beninati
    Title: Manager

**BUYER**

Sutton 58 Associates, LLC

By: _____
    Name: Jonathan Kalikow
    Title: Authorized Signatory

11

## **Exhibits**

| | |
|---|---|
| Exhibit A | Metes and Bounds |
| Exhibit B | Contracts |
| Exhibit C | Permitted Title Exceptions |
| Exhibit D | Form of Assignment of Contracts, Licenses and Permits |

## EXHIBIT A

## METES AND BOUNDS

**PARCEL A:**

**ALL THAT CERTAIN** plot, piece or parcel of land, with the buildings and improvements thereon erected (including, without limitation, any and all appurtenant Development Rights (as defined in the within Agreement)), situate, lying and being in the Borough of Manhattan, County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of East 58th Street at a point opposite the center of a party wall, which point is distant about 260 feet 11-1/2 inches westerly from the southwesterly corner of East 58th Street and Sutton Place;

RUNNING THENCE southerly parallel with Sutton Place and Part of the distance through the center of a party wall 100 feet 5 inches to the center line of the block;

THENCE westerly along the center line of the block 20 feet 6 inches more or less to a point distant 281 feet 5-1/2 inches westerly from the westerly side of Sutton Place measured along said center line of the block;

THENCE northerly parallel with Sutton Place and part of the way through another party wall 100 feet 5 inches to the southerly side of East 58th Street; and

THENCE easterly along said southerly side of East 58th Street, 20 feet 6 inches more or less to the point or place of BEGINNING.

For Information Only:   Said premises are known as 428 East 58th Street, New York, NY and designated as Block 1369 Lot 35 as shown on the Tax Map of the City of New York, County of New York.

**PARCEL B:**

**ALL THAT CERTAIN** plot, piece or parcel of land, with the buildings and improvements thereon erected (including, without limitation, any and all appurtenant Development Rights (as defined in the within Agreement)), situate, lying and being in the Borough of Manhattan, County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of East 58th Street distant 241 feet 8 ½ inches westerly from the corner formed by the intersection of the westerly side of Avenue A with the said southerly side of East 58th Street;

RUNNING THENCE southerly parallel with the westerly side of Avenue A and part of the distance through a party wall 100 feet 5 inches to the center line of the block;

THENCE westerly along the center line of the block 19 feet 3 inches;

THENCE northerly and again parallel with the said westerly side of Avenue A and part of the way through a party wall 100 feet 5 inches to the southerly side of East 58th Street;

THENCE easterly along the southerly side of East 58th Street, 19 feet 3 inches to the point or place of BEGINNING.

For Information Only:   Said premises are known as 430 East 58th Street, New York, NY and designated as Block 1369 Lot 34 as shown on the Tax Map of the City of New York, County of New York.

## PARCEL C:

**ALL THAT CERTAIN** plot, piece or parcel of land, with the buildings and improvements thereon erected (including, without limitation, any and all appurtenant Development Rights (as defined in the within Agreement)), situate, lying and being in the Borough of Manhattan, County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of East 58th Street distant 221 feet 5 ½ inches westerly from the corner formed by the intersection of the westerly side of Avenue A with the said southerly side of East 58th Street;

RUNNING THENCE southerly parallel with the westerly side of Avenue A, 100 feet 5 inches to the center line of the block;

THENCE westerly along the center line of the block 20 feet 3 inches;

THENCE northerly and again parallel with the said westerly side of Avenue A and part of the way through a party wall 100 feet 5 inches to the southerly side of East 58th Street;

THENCE easterly along the southerly side of East 58th Street 20 feet 3 inches to the point place of BEGINNING.

For Information Only:   Said premises are known as 432 East 58th Street, New York, NY and designated as Block 1369 Lot 133 as shown on the Tax Map of the City of New York, County of New York.

## PARCEL D:

**TOGETHER WITH THE BENEFITS OF** (1) a covenant not to build upon and easement of light and air over the burdened premises, and (2) any and all other easements, rights and entitlements over the burdened premises (including, without limitation, any and all transferred development rights and any and all cantilever rights and easements), each as more particularly described in the Zoning Lot and Development Agreement between ECC Realty LLC and Sutton 58 Owner, LLC recorded 1/29/2015 as CRFN 2015000032095 covering the premises described as follows:

14

**ALL THAT CERTAIN** plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of East 58th Street, distant 281 feet 5 ¼ inches westerly from the southwesterly corner of East 58th Street and Avenue A;

RUNNING THENCE southerly and parallel with Avenue A, 100 feet 4 inches to middle line of the block between East 58th Street and East 57th Street;

THENCE westerly along said middle line of the block, 20 feet;

THENCE northerly parallel with Avenue A, 100 feet 4 inches to the southerly line of East 58th Street;

THENCE easterly along said southerly side of East 58th Street, 20 feet to the point or place of BEGINNING.

For Information Only:   Said premises are known as 426 East 58th Street, New York, NY and designated as Block 1369 Lot 36 as shown on the Tax Map of the City of New York, County of New York.


**PARCEL E:**

**TOGETHER WITH THE BENEFITS OF** (1) a covenant not to build upon and easement of light and air over the burdened premises, and (2) any and all other easements, rights and entitlements over the burdened premises (including, without limitation, any and all transferred development rights and any and all cantilever rights and easements), each as more particularly described in the Zoning Lot and Development Agreement between JAL 58, L.L.C. and Sutton 58 Owner, LLC recorded 2/6/2015 as CRFN 2015000041819 covering the premises described as follows:

**ALL THAT CERTAIN** plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of East 58th Street, distant 301 feet 5 1/2 inches westerly from the corner formed by the intersection of the westerly side of Sutton Place (formerly Avenue "A") and the southerly side of East 58th Street;

RUNNING THENCE southerly parallel with Sutton Place 100 feet 5 inches to the center line of the block;

THENCE westerly along said center line of the block and parallel with East 58th Street, 40 feet;

THENCE northerly, again parallel with Sutton Place, 100 feet 5 inches to the southerly side of East 58th Street;

15

THENCE easterly along the southerly side of East 58th Street, 40 feet to the point or place of BEGINNING.

For Information Only:   Said premises are known as 422-424 East 58th Street, New York, NY and designated as Block 1369 Lot 37 as shown on the Tax Map of the City of New York, County of New York.

**PARCEL F:**

**TOGETHER WITH THE BENEFITS OF** (1) a covenant not to build upon and easement of light and air over the burdened premises, and (2) any and all other easements, rights and entitlements over the burdened premises (including, without limitation, any and all transferred development rights and any and all cantilever rights and easements), each as more particularly described in the Zoning Lot and Development Agreement between 434 East 58th Street Owners LLC and Sutton 58 Owner, LLC to be recorded in the Office of the City Register of the City of New York, New York County.

**ALL THAT CERTAIN** plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of East 58th Street, distant 161 feet 5 ½ inches westerly from the southwesterly corner of East 58th Street and Sutton Place (formerly Avenue A);

RUNNING THENCE westerly along the southerly side of East 58th Street, 60 feet;

THENCE southerly parallel with the westerly side of Sutton Place, 100 feet 4 inches;

THENCE easterly parallel with the southerly side of East 58th Street, 60 feet;

THENCE northerly parallel with the westerly side of Sutton Place, 100 feet 4 inches to the southerly side of East 58th Street at the point or place of BEGINNING.

For Information Only:   Said premises are known as 434-436 East 58th Street, New York, NY and designated as Block 1369 Lots 31 and 33 as shown on the Tax Map of the City of New York, County of New York.

**PARCEL G:**

**TOGETHER WITH THE BENEFITS OF** (1) a covenant not to build upon and easement of light and air over the burdened premises, and (2) any and all other easements, rights and entitlements over the burdened premises (including, without limitation, any and all transferred development rights and any and all cantilever rights and easements), each as more particularly described in the Zoning Lot and Development Agreement between E.G.A. Associates, Inc. and

16

Sutton 58 Owner, LLC to be recorded in the Office of the City Register of the City of New York, New York County.

**ALL THAT CERTAIN** plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of East 58th Street, distant one hundred forty-one feet five and one-half inches westerly from the corner formed by the intersection of the southerly side of East 58th Street and the westerly side of Sutton Place, formerly Avenue A;

RUNNING THENCE Southerly parallel with the said westerly side of Sutton Place, formerly Avenue A one hundred feet four inches to the centre line of the block;

THENCE westerly along the said center line of the block and parallel with the southerly side of East 58th Street, twenty feet;

THENCE northerly parallel with the said westerly side of Sutton Place formerly Avenue A, one hundred feet four inches to the said southerly side of East 58th Street and

THENCE easterly along the said southerly side of East 58th Street, twenty feet to the point or place of BEGINNING.

For Information Only:   Said premises are known as 440 East 58th Street, New York, NY and designated as Block 1369 Lot 30 as shown on the Tax Map of the City of New York, County of New York.

## PARCEL H:

**TOGETHER WITH THE BENEFITS OF** (1) a covenant not to build upon and easement of light and air over the burdened premises, and (2) any and all other easements, rights and entitlements over the burdened premises (including, without limitation, any and all transferred development rights and any and all cantilever rights and easements), each as more particularly described in the Zoning Lot and Development Agreement between Barbara Packer-Rosen and Ira J. Weinstein and Sutton 58 Owner, LLC to be recorded in the Office of the City Register of the City of New York, New York County.

**ALL THAT CERTAIN** plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of East 58th Street, distant 121 feet 5 ½ inches westerly from the southwest corner of Sutton Place (formerly Avenue A) and East 58th Street;

RUNNING THENCE southerly and parallel with Sutton Place (formerly Avenue A) and part of the distance through a party wall, 100 feet 4 inches according to deed, 100 feet 5 inches according to survey, to the center line of the block between East 57th Street and East 58th Street;

THENCE westerly along the middle line of the block, 20 feet;

17

THENCE northerly and parallel with Sutton Place (formerly Avenue A), 100 feet 4 inches according to deed, 100 feet 5 inches according to survey, to the southerly side of East 58th Street;

THENCE easterly along East 58th Street, 20 feet to the point or place of BEGINNING, the easterly wall of said building being a party wall.

For Information Only:   Said premises are known as 442 East 58th Street, New York, NY and designated as Block 1369 Lot 129 as shown on the Tax Map of the City of New York, County of New York.

**PARCEL I:**

**TOGETHER WITH THE BENEFITS OF** (1) a covenant not to build upon and easement of light and air over the burdened premises, and (2) any and all other easements, rights and entitlements over the burdened premises (including, without limitation, any and all transferred development rights and any and all cantilever rights and easements), each as more particularly described in the Zoning Lot and Development Agreement between 444-446 East 58th Owners Corp. and Sutton 58 Owner, LLC to be recorded in the Office of the City Register of the City of New York, New York County.

**ALL THAT CERTAIN** plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of East 58th Street, distant 80 feet westerly from the southwesterly corner of East 58th Street and Avenue A, now known as Sutton Place;

RUNNING THENCE southerly parallel or nearly so with the westerly side of Avenue A and part of the way through a party wall, 100 feet 5 inches to the center line of the block;

THENCE westerly parallel or nearly so with the southerly side of East 58th Street, 21 feet 5 ½ inches;

THENCE northerly parallel with Avenue A, 1 inch;

THENCE again westerly and parallel or nearly so with the southerly side of East 58th Street, 20 feet;

THENCE northerly parallel or nearly so with the westerly side of Avenue A and part of the distance through a party wall, 100 feet 4 inches to the southerly side of East 58th Street;

THENCE easterly along said southerly side of East 58th Street, 41 feet 5 ½ inches to the point or place of BEGINNING.

For Information Only:   Said premises are known as 444-446 East 58th Street, New York, NY and designated as Block 1369 Lot 29 as shown on the Tax Map of the City of New York, County of New York.

18

## PARCEL J:

**TOGETHER WITH THE BENEFITS OF** (1) a covenant not to build upon and easement of light and air over the burdened premises, and (2) any and all other easements, rights and entitlements over the burdened premises (including, without limitation, any and all transferred development rights and any and all cantilever rights and easements), each as more particularly described in the Zoning Lot and Development Agreement between 455 E. 57, Inc., and Sutton 58 Owner, LLC to be recorded in the Office of the City Register of the City of New York, New York County.

**ALL THAT CERTAIN** plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, County of New York, City and State of New York, bounded and described as follows:

BEGINNING at a point in the northerly side of East 57th Street, distant sixty-five feet and five and one-half inches (65 feet 5 ½ inches) westerly from the westerly side of Sutton Place (formerly Avenue A);

RUNNING THENCE northerly parallel with Sutton Place and part of the way through a party wall, one hundred feet five inches (100 feet 5 inches) to the center line of the block;

THENCE westerly along said line, eighty feet (80 feet);

THENCE southerly parallel with Sutton Place, and part of the way through the center line of another party wall, one hundred feet five inches (100 feet 5 inches) to the northerly side of East 57th Street;

THENCE easterly along East 57th Street, eighty feet (80 feet) to the point or place of BEGINNING.

For Information Only:   Said premises are known as 455 East 57th Street, New York, NY and designated as Block 1369 Lot 19 as shown on the Tax Map of the City of New York, County of New York.

## PARCEL K:

**TOGETHER WITH THE BENEFITS OF** (1) a covenant not to build upon and easement of light and air over the burdened premises, and (2) any and all other easements, rights and entitlements over the burdened premises (including, without limitation, any and all transferred development rights and any and all cantilever rights and easements), each as more particularly described in the Zoning Lot and Development Agreement between Welcome to the Top, LLC and Sutton 58 Owner, LLC insured to be recorded in the Office of the City Register of the City of New York, New York County.

**ALL THAT CERTAIN** plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Manhattan, County of New York, City and State of New York, bounded and described as follows:

19

BEGINNING at a point on the northerly side of East 57th Street distant 33 feet 5-1/2 inches westerly from the northwesterly corner of Avenue "A" and East 57th Street;

THENCE northerly parallel with Avenue A and partly through a party wall, 100 feet 5 inches to center line of the block between East 57th Street and East 58th Street;

THENCE westerly along said center line and parallel with East 57th Street, 32 feet;

THENCE southerly and parallel with Avenue A and partly through a party wall, 100 feet 5 inches to the said northerly side of East 57th Street and ;

THENCE easterly along said northerly side of East 57th Street, 32 feet to the point or place of BEGINNING.

For Information Only:   Said premises are known as 461 East 57th Street, New York, NY and designated as Block 1369 Lot 22 as shown on the Tax Map of the City of New York, County of New York.

# EXHIBIT B

## CONTRACTS

(a) The Inclusionary Air Rights Purchase Agreement dated as of January 20, 2015, between one or more of the Debtors and Gemini Residential, LLC ("Gemini") (as the same may have been modified by that certain letter dated August 19, 2015 from Herrick, Feinstein LLP to Gemini; and that certain letter dated August 25, 2015 from Sutton 58 Associates LLC to Gemini).

(b) The Construction License Agreement dated as of January 16, 2015, between one or more of the Debtors and ECC Realty LLC.

(c) The Construction License Agreement dated as of June 19, 2015, between one or more of the Debtors and 434 East 58th Street Owners Inc.

(d) The following Contracts, to the extent constituting executory contracts pursuant to the Bankruptcy Code:

     i. The Zoning Lot Development and Easement Agreement dated as of January 20, 2015, between one or more Debtors and ECC Realty LLC and recorded in the Office of the City Register of the City of New York (the "City Register") on January 29, 2015 at CRFN 2015000032095;

     ii. The Zoning Lot Development and Easement Agreement dated as of January 23, 2015, between one or more Debtors and JAL 58, L.L.C. and recorded in the City Register on February 6, 2015 at CRFN 2015000041819;

     iii. The Zoning Lot Development and Easement Agreement dated as of June 19, 2015, between one or more Debtors and 434 East 58th Street Owners Inc. and recorded in the City Register on July 30, 2015 at CRFN 2015000262078;

     iv. The Zoning Lot Development and Easement Agreement dated as of June 19, 2015, between one or more Debtors and EGA Associates, Inc. and recorded in the Office of the City Register on July 30, 2015 at CRFN 2015000262076;

     v. The Zoning Lot Development and Easement Agreement dated as of June 19, 2015, between one or more Debtors and Barbara Packer-Rosen and Ira J. Weinstein and recorded in the City Register on July 30, 2015 at CRFN 2015000262074;

     vi. The Zoning Lot Development and Easement Agreement dated as of June 19, 2015, between one or more Debtors and 444-446 East 58th Owners Corp. and recorded in the City Register on July 30, 2015 at CRFN 2015000262072;

     vii. The Zoning Lot Development and Easement Agreement dated as of June 19, 2015, between one or more Debtors and Welcome To The Top LLC and recorded in the City Register on July 30, 2015 at CRFN 2015000262070; and

viii.    The Zoning Lot Development and Easement Agreement dated as of May 22, 2015, between one or more Debtors and 455 E. 57 Inc. and recorded in the City Register on July 30, 2015 at CRFN 2015000262067.

## <u>EXHIBIT C</u>

## PERMITTED TITLE EXCEPTIONS

1.      The terms and conditions of this Agreement.

2.      Restrictions, easements and covenants of record.

3.      The Confirmation Order.

4.      All present and future laws, ordinances, codes, orders, restrictions and regulations (including, without limitation, zoning, building and environmental laws, ordinances, codes, restrictions and regulations) of all federal, state, municipal or other governmental departments, authorities or other entities having jurisdiction over the Premises and the use thereof.

5.      Taxes and assessments not yet due and payable with respect to the Premises.

## **EXHIBIT D**

**FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT**

## ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT (this "Assignment"), is made as of [January][__], 2017 by and between Sutton 58 Owner, LLC, a Delaware limited liability company ("Sutton Owner DE"), BH Sutton Mezz LLC, a Delaware limited liability company ("Sutton Mezz") and Sutton 58 Owner, LLC, a New York limited liability company (collectively with Sutton Mezz and Sutton Owner DE (each as applicable), the "Assignor"), and [_____] ("Assignee").

### *W I T N E S S E T H:*

WHEREAS, pursuant to the terms of that certain Credit Bid Agreement, dated as of December 15, 2016, by and between Assignor, as seller, and Assignee (as successor in interest to Sutton 58 Associates LLC), as buyer (the "Credit Bid Agreement"), Assignor agreed to sell to Assignee, *inter alia*, the Premises (as defined in the Credit Bid Agreement), together with certain rights and privileges appurtenant thereto, all as more particularly described in the Credit Bid Agreement.  Initially capitalized terms not otherwise defined herein shall have the respective meanings ascribed to such terms in the Credit Bid Agreement;

WHEREAS, the Credit Bid Agreement provides, *inter alia*, that Assignor shall assign to Assignee all of Assignor's right, title and interest in and to, and Assignee shall assume all obligations and responsibilities under, the Contracts; and

WHEREAS, a complete list of the Contracts is annexed to this Assignment as Exhibit A.

NOW, THEREFORE, in consideration of the premises and the mutual covenants herein contained, the parties hereto hereby agree as follows:

1.      Assignment of Contracts and Other Rights, and Assumption of Contracts. Assignor hereby assigns, sets over, transfers and conveys to Assignee all of Assignor's right, title and interest in, to and under the Contracts, together with all of Assignor's right, title and interest in, to and under (i) any and all downpayments and/or deposits made under or in connection with the Contracts (including, without limitation, any downpayments and/or deposits made to and/or held by a third party, whether acting as escrow agent or otherwise), (ii) without limitation of clause (i), all of Assignor's right, title and interest in, to and under all downpayments and/or deposits made under or in connection with the Gemini Contract (as defined in Exhibit A annexed hereto) (including, without limitation, any and all sums which may be held in connection with the Gemini Contract by Commonwealth Land Title Insurance Company as the escrow agent thereunder), (iii) any and all rights to any claims against any third party related to, or in connection with, the Contracts and/or the other Assets, including, but not limited to, any claims against any third party that performed work on the Premises, (iv) any licenses, permits and other authorizations affecting or benefitting the Premises, and (v) any and all other rights and entitlements appurtenant to the Contracts (collectively, "Other Rights"). Assignee hereby accepts the foregoing assignment of the Contracts and the Other Rights, and assumes any and all obligations, responsibilities and liabilities of Assignor under the Contracts, including any amounts required to cure defaults thereunder pursuant to section  365 of the Bankruptcy Code. To the extent any Contract does not qualify as an executory contract pursuant to section 365 of

the Bankruptcy Code, Assignor shall assign, set over, transfer and convey to Assignee all of Assignor's right, title and interest in, to and under such Contract, together with the Other Rights, pursuant to section 363 of the Bankruptcy Code.

2.    <u>Miscellaneous</u>.    This Assignment and the obligations of the parties hereunder shall be binding upon and inure to the benefit of the parties hereto, their respective legal representatives, successors and assigns, shall be governed by and construed in accordance with the laws of the State in which the Premises are located applicable to agreements made and to be wholly performed within said State and may not be modified or amended in any manner other than by a written agreement signed by the party to be charged therewith.

3.    <u>Severability</u>.    If any term or provision to this Assignment or the application thereof to any persons or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Assignment or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of this Assignment shall be valid and enforced to the fullest extent permitted by law.

4.    <u>Counterparts</u>.    This Assignment may be executed in counterparts, each of which shall be an original and all of which counterparts taken together shall constitute one and the same agreement.

*[Remainder of page intentionally blank]*

KL3 3103717.11

IN WITNESS WHEREOF, the undersigned have executed this Assignment to be effective as of the date first set forth hereinabove.

**ASSIGNOR:**

Sutton 58 Owner, LLC, a Delaware limited liability company

By:_____
  Name:
  Title:

BH Sutton Mezz LLC, a Delaware limited liability company

By:_____
  Name:
  Title:

Sutton 58 Owner, LLC, a New York limited liability company

By:_____
  Name:
  Title:

**ASSIGNEE:**

[_____]

By: _____
  Name:
  Title:

## Exhibit A

Contracts

1. The Inclusionary Air Rights Purchase Agreement dated as of January 20, 2015, between one or more of the Debtors and Gemini Residential, LLC ("Gemini") (as the same may have been modified by that certain letter dated August 19, 2015 from Herrick, Feinstein LLP to Gemini; and that certain letter dated August 25, 2015 from Sutton 58 Associates LLC to Gemini) (the "Gemini Contract").

2. The Construction License Agreement dated as of January 16, 2015, between one or more of the Debtors and ECC Realty LLC.

3. The Construction License Agreement dated as of June 19, 2015, between one or more of the Debtors and 434 East 58th Street Owners Inc.

4. The following Contracts, to the extent they are executory contracts pursuant to the Bankruptcy Code:

    i. The Zoning Lot Development and Easement Agreement dated as of January 20, 2015, between one or more Debtors and ECC Realty LLC and recorded in the Office of the City Register of the City of New York (the "City Register") on January 29, 2015 at CRFN 2015000032095;

    ii. The Zoning Lot Development and Easement Agreement dated as of January 23, 2015, between one or more Debtors and JAL 58, L.L.C. and recorded in the City Register on February 6, 2015 at CRFN 2015000041819;

    iii. The Zoning Lot Development and Easement Agreement dated as of June 19, 2015, between one or more Debtors and 434 East 58th Street Owners Inc. and recorded in the City Register on July 30, 2015 at CRFN 2015000262078;

    iv. The Zoning Lot Development and Easement Agreement dated as of June 19, 2015, between one or more Debtors and EGA Associates, Inc. and recorded in the Office of the City Register on July 30, 2015 at CRFN 2015000262076;

    v. The Zoning Lot Development and Easement Agreement dated as of June 19, 2015, between one or more Debtors and Barbara Packer-Rosen and Ira J. Weinstein and recorded in the City Register on July 30, 2015 at CRFN 2015000262074;

    vi. The Zoning Lot Development and Easement Agreement dated as of June 19, 2015, between one or more Debtors and 444-446 East 58th Owners Corp. and recorded in the City Register on July 30, 2015 at CRFN 2015000262072;

vii.    The Zoning Lot Development and Easement Agreement dated as of June 19, 2015, between one or more Debtors and Welcome To The Top LLC and recorded in the City Register on July 30, 2015 at CRFN 2015000262070; and

viii.    The Zoning Lot Development and Easement Agreement dated as of May 22, 2015, between one or more Debtors and 455 E. 57 Inc. and recorded in the City Register on July 30, 2015 at CRFN 2015000262067.